UNITED STATES COURT OF APPEALS
FOR THE
SECOND CIRCUIT

IN RE: SAIFULLAH KHAN          : CoA No. _____

: Trial Docket: 3:19-cv-1966 (KAD/MEG)

: OCTOBER 21, 2024

**EMERGENCY PETITION FOR WRIT OF MANDAMUS**

1 <u>NATURE OF THE CASE</u>

This Emergency Petition seeks immediate relief from a judicially ordered **prior restraint**, issued by a federal magistrate judge in two orders, dated June 19, 2024 and October 21, 2024. *See* ECF Nos. 119, 217. The prior restraint precludes Petitioner, an asylum applicant, from submitting an unedited, unredacted, official transcript of a criminal proceeding that resulted in his acquittal, which transcript is in his lawful possession, to the Department of Homeland Security ("DHS") by October 24, 2024. Failure to submit this document in time as directed by DHS jeopardizes Petitioner's asylum application and may result in Petitioner's deportation to Afghanistan, the country to which he is citizen but in which he has never lived. Petitioner faces **execution** if he is deported.

2 <u>ISSUE PRESENTED AND RELIEF SOUGHT</u>

**Issue:** Whether Petitioner has shown that no adequate relief other than mandamus is available, the right to be free from prior restraints is clear and unequivocal, and that mandamus is appropriate under the circumstances?

**Relief:** The Court should vacate the portion of the June 19, 2024 order by the

1

Magistrate Judge that restricts Petitioner's speech[1] and should vacate the October 21, 2024 order by the Magistrate Judge in its entirety.

Given the Emergency circumstances, Petitioner respectfully requests judgment by Thursday, October 24, 11:30PM EST so that he may comply with the request by DHS.

## 3 BACKGROUND

This case has come to this Court before in *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023) and *Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022), *certified question answered*, 347 Conn. 1, 295 A.3d 855 (2023). Background facts not specific to this Petition are drawn from those judgments and the judgment of the Connecticut Supreme Court in *Khan v. Yale Univ.*, 347 Conn. 1, 295 A.3d 855 (2023). The operative facts leading up to the Petition are unfortunately complex.

### 3.1 Pre-Suit Factual Background, Up to Expulsion

In *Khan v. Yale Univ.*, *supra*, 27 F.4th at 810–12 (citations omitted), this Court found as follows:

> Saifullah Khan, a citizen of Afghanistan, was born in a refugee camp in Pakistan, to which country his family had fled after their lives threatened by the Taliban. When Khan was sixteen, his family settled in the United Arab Emirates, and it was from there that Khan applied for and received acceptance to Yale's undergraduate class of 2016. . . .
>
> On Halloween night in 2015, Khan and fellow Yale student Jane Doe

---

[1] Petitioner notes that this petition is limited to review of the prior restraint on speech. Although Petitioner is in the process of challenging the pseudonymity order, the interests at stake as to that portion of the Magistrate Judge's order at ECF 119 are different from the deprivation of speech and petition rights. Concerning pseudonymity, interlocutory appeal, when ripe and if necessary, may be sufficient.

separately attended an off-campus party . . . .  At some point, Khan and Doe left the party together to attend an on-campus event. When Doe began to feel unwell, she and Khan left the event and returned to . . .  the Yale dormitory where both resided. Khan asserts that after he dropped Doe off at her room and started to return to his own, Doe called him back and asked him to check on a friend. After Khan did so, he returned to Doe's room where the two had consensual sex before falling asleep.

The next morning, Doe told friends that Khan had raped her. That same day, however, when Doe sought contraceptive assistance at the university's health center, she reported having engaged in consensual, unprotected sex. A few days later, when Doe publicly repeated her rape claim, she was directed to the Yale Women's Center. There, a counselor . . . assisted Doe in preparing a formal university complaint against Khan. Upon receipt of that complaint, a Yale deputy dean . . . suspended Khan, ordering him to vacate his dormitory room and to leave campus. Soon thereafter, Yale began a disciplinary proceeding against Khan under the university's Sexual Misconduct Policy.

At and about the same time, the Yale Police Department opened an investigation into Doe's sexual assault claim. This ultimately resulted in the State of Connecticut criminally charging Khan with [a number of] sexual assault crimes]. . . .

The state's criminal case against Khan would not be resolved for approximately two and a half years. On March 7, 2018, after a two-week trial, a Connecticut jury acquitted Khan of all charges after less than a full day's deliberations. Khan attributes this outcome to his attorney's ability to cross-examine Doe, highlighting various memory lapses and inconsistencies in her accounts of the alleged sexual assault, and eliciting flirtatious communications that she had sent Khan in the days before Halloween 2015.

Khan's trial and its outcome were unfavorably reported on in the Yale Daily News. Thereafter, over 77,000 persons signed a petition urging Yale not to readmit Khan, notwithstanding his acquittal. Yale nevertheless permitted Khan to resume full-time student status at the start of the Fall 2018 term. . . .

Shortly after returning to school, though, Yale suspended Petitioner due to public pressure, claiming it was necessary to "protect" Petitioner.  See *id.* at 811–12.

Sexual misconduct disciplinary proceedings against Petitioner resumed in

November, 2018. *Id.* at 812. These proceedings lacked fundamental due process considerations and procedural safeguards, such as a requirement to testify under oath, notice to the accused, the opportunity to call witnesses or otherwise have them subpoenaed, right to counsel and meaningful assistance of counsel, right to appeal, and right to an adequate record for review. *See Khan v. Yale Univ.*, *supra,* 85 F.4th at 92; *see also Khan v. Yale Univ.*, *supra,* 27 F.4th at 815–16. The disciplinary panel found that Petitioner violated Yale's Sexual Misconduct Policy in his 2015 encounter with Jane Doe and Yale expelled him.

### 3.2 Action Commenced and Appeal

On December 13, 2019, Petitioner commenced the underlying action; 3:19-cv-1966; against Yale, various of its employees, and Doe. *Khan v. Yale Univ.*, *supra,* 27 F.4th at 816. Initially, the District Court granted a FRCP 12(b)(6) motion to dismiss, extending absolute immunity to Doe for her statements during a quasi-judicial proceeding and concluding that other claims were time barred. *See Khan v. Yale Univ.*, 85 F.4th at 88. The issue was appealed and certified questions were posed to the Connecticut Supreme Court. *See Khan v. Yale Univ.*, *supra,* 27 F.4th at 833–34. On the basis of the Connecticut Supreme Court's responses to the certified questions, this Court concluded that while some claims were time barred, Doe did not have absolute immunity. *See Khan v. Yale Univ.*, 85 F.4th 86, 89 (2d Cir. 2023). The case was remanded.

### 3.3 Pseudonymity Reassessed Based on Appellate Judgments

At the outset of the litigation, Petitioner hoped to return to Yale to complete his degree. See ECF No. 2 at 5. Therefore, at that time, he sought to respect the

4

confidentiality rules of Yale as much as possible. *Id.* at 5–6. In support of his request that he proceed under a pseudonym for Doe, Petitioner noted that "During [Petitoiner's criminal] trial, the identity of his accuser, Jane Doe, was kept from the public record by [Connecticut General Statutes] § 54-86e." ECF 2 at 2.

In the wake of the aforementioned appeal concerning absolute immunity, Petitioner personally took note of footnote 39 of the Connecticut Supreme Court opinion. *C.f.* ECF No. 94 at 21 (Petitioner identifying importance of footnote). "Anonymous reporting may trigger further investigations and, if a subsequent hearing ensues, **require that the victim's identity be disclosed.** *See* General Statutes § 10a-55m(d)." *Khan v. Yale Univ.*, *supra*, 347 Conn. at 53.n39 (emphasis added). He furthermore took note of how the Connecticut Supreme Court afforded substantial importance to the right to "confront, and cross-examine witnesses . . . ." *Id.* at 26.

Petitioner also personally took note of footnote 1 in this Court's opinion in 27 F.4th 805 at 809. *C.f.* ECF No. 94 at 21 (Petitioner identifying importance of footnote). There, this Court questioned the applicability of pseudonymity to the case. The Court noted that Rule 10 does not normally allow parties to proceed under a pseudonym. *Khan v. Yale Univ.*, 27 F.4th 805 at 809. This Court noted that because the issue was not squarely before it, it would not address the issue. *Id.*

The appeal and certification halted proceedings for substantial time. Given the length of time that had elapsed since Yale stopped Petitioner's studies in 2015, by the end of 2023, a negotiated return to Yale seemed unlikely and had become far

less attractive than at the outset of the litigation.

### 3.4 Doe Publicly Identified and Flurry of Motion Practice

In late December, 2023, Petitioner publicly identified Doe on his x.com account. A few days later, Doe moved to dismiss the case as a sanction. *See* ECF No. 74 (sealed). On March 4, 2024, Doe moved for a protective order, although Doe's name was not identified through discovery. On March 6, 2024, oral argument on the motion to dismiss was scheduled for March 18, 2024. On March 15, 2024, Petitioner moved to vacate the order concerning the pseudonym. *See* ECF No. 89.

On March 18, 2024, a hearing was held on the motion to dismiss. The motion was denied. ECF No. 91 (on docket). The District Court noted that there was no order concerning Petitioner's speech at that time and that a pseudonymity order does not itself put a restriction on what parties can say in public. ECF No. 94 at 5–6.

The District Court concluded that related issues were not fully briefed. ECF No. 94 at 4. The District Court referred all motions concerning the pseudonymity issue to Magistrate Judge Maria E. Garcia, so that issues could be fully briefed. *See id.* at 4, 20; *see also* ECF No. 110 (on docket).

The District court also ordered that "I am going to direct [Petitioner] not to at least use Jane Doe's real name in his social media communications until such time as all of those motions are adjudicated by the Court." ECF No. 94 at 20. Petitioner indicated he would acquiesce to the authority of the Court and obey the order of the

Court.  *Id.* at 22.[2]

In addition to what was stated in the hearing, the District Court entered an order on the docket that "As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification."  ECF No. 91.[3]

### 3.5 Permanent Gag Order on Petitioner Pursuant to Pseudonymity

Issues continued to be briefed. Among other things, on April 4, 2024, Doe affirmatively moved to proceed pseudonymously.

On June 19, 2024, the Magistrate Judge denied the motion to vacate the order to proceed pseudonymously, granting Doe's motion to proceed under a pseudonym.  *See* ECF No. 119 at 15.  But, at that time, the Magistrate Judge also entered a permanent prior restraint on Petitioner:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.

The judgment does not rest on a compelling interest and has no precedent—there are no other federal cases where a plaintiff cannot identify a defendant whose name is known before litigation.  The order concludes there is no prior restraint because

---

[2] At this time, Petitioner also indicated at that time that his change on the psudonymity issue was based on the two footnotes identified above.  ECF No. 94 at 21.

[3] Of note later in this Petition, there was no canvass, nor finding of waiver, as to any speech rights, during the hearing.

Petitioner stated on March 18, 2024 hearing that he would acquiesce to the authority of the Court and obey the order of the Court. *See* ECF No. 119 at 14; *but see* note 3 of this petition.

On June 19, 2024, Petitioner criticized the judgment of the Magistrate Judge on x.com. Among other things, he wrote, "I have been officially gagged." See ECF 123 at 1 (sealed). On June 23, 2024, Doe filed a Second Emergency Motion to Dismiss, claiming that these statements, although objectively compliant, surreptitiously solicited others to identify Doe by name. One individual did identify Doe by name on x.com in the comments to Petitioner's post.

On June 27, 2024, Petitioner retained new counsel. *See* ECF 127 (appearance).

On June 28, 2024, Yale joined Doe's Second Emergency Motion. *See* ECF No. 130.

On July 3, 2024, Petitioner sought **review** of the June 19, 2024 gag order by way of a timely objection pursuant to District of Connecticut Local Rule 72.2, pointing out that the judgment of the Magistrate Judge was contrary to law. *See* ECF Nos. 152, 153 (sealed), 154. Arguments rested, among other things, on the heavy presumption against prior restraints, that no compelling interest was articulated, and that *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989) prohibited a court from punishing an individual for publishing information contained in an official court record open to the public. **Review of the gag order** and order concerning pseudonymity is **still**

8

**pending** before the District Court (~111 days since objection).

On July 6, 2024, Petitioner filed a joint objection to both Second Emergency Motions. *See* ECF No. 157 (sealed). An evidentiary hearing was to occur on July 11, 2024. On July 10, 2024, however, the District Court indicated it would conduct the hearing on the Emergency Motions to Dismiss, which was instead scheduled for July 25, 2024. *See* ECF No. 173 (on docket). Judgment on the emergency motions to dismiss is **still pending** (~89 days since hearing).

### 3.6 <u>Gag Order Interferes with Asylum Process</u>

#### 3.6.1 Asylum and DHS Letter

In summer, 2016—eight years ago—Petitioner applied for asylum. Petitioner formerly lived in a refugee camp before coming to the U.S. Though he has never lived there, Petitioner is a citizen of Afghanistan.

On November 2, 2021, Petitioner was interviewed by DHS—one of a number of such interviews that had occurred over the years. Petitioner was very candid about the criminal charges against him. At that time, Petitioner submitted three sets of documents to DHS, pursuant to a request from DHS: the official transcript from the criminal matter, a certificate of disposition in that matter, and the only document in his possession concerning a protective order that issued from Indiana.

Petitioner was supposed to receive a decision concerning the interview within 45 days of that interview. He did not receive a decision. These documents caused a delay.

Instead, on October 7, 2024—almost three years later—he received a letter

9

from DHS, requesting the same three documents again.  The letter directs

Petitioner as follows (*see* ECF No. 201-1):

> Please submit the following additional documentary evidence.
>
> 1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict.  Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
>
> 2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online.  Please provide documentation of this protection order.

### 3.6.2 Facts Concerning Claims on Different versions of the Official Transcript

Complying with the DHS request requires submitting an official court

transcript.  There has been a dispute over whether the official transcript is redacted

pursuant to Connecticut General Statutes §54-86e.  As explained below in section

4.1, this is a red herring.  Nonetheless, because this issue factors into the October

21, 2024 order by the Magistrate Judge, this additional background is submitted to

aid the Court.

Both Petitioner's July 3, 2024 Local Rule 72.2 objection and July 6, 2024

objection to the motions to dismiss cite *Florida Star v. B.J.F.*, *supra*, 491 U.S. 524

and *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.  The principle underlying

both cases is that the government cannot punish an individual for publishing facts

in a court document that is available to the public.  The theory in the objections was

that Doe's name appears in the official transcript.  Petitioner has a copy of this

transcript and pointed out that the official transcript was unredacted.

Shortly after these July filings, however, Doe and Yale sought a copy of the

10

official transcript. *See* ECF No. 186. Initially, Yale received an unredacted version, like the version in Petitioner's possession. *See* ECF No. 186-1. After corresponding ex parte with the Court Reporter, the court reporter apparently redacted Doe's name on a single page. *Id.*

This was not a judgment of the Superior Court. There was no adjudication by a judge or agency, no notice to Petitioner and no hearing on the issue. Doe and Yale claim that Connecticut General Statutes §54-86e applies to the transcript after an acquittal. There is no law to support this conclusion.

As noted above, at the start of the case, Petitioner noted that §54-86e applied **during the criminal trial**. ECF 2 at 2. Not after an acquittal. It is not clear from the record whether Doe indicated to the reporter that the result of the trial was an acquittal, and Doe has declined to clarify this on the record. The statute appears in Chapter 961 of the General Statutes, which concerns "Trial and Proceedings After Conviction." Not after acquittal.

The complete transcript is some 1800 pages and contains more than 500 instances of Doe's name across more than 200,000 words. *See* ECF Nos. 207-3–207-9 (sealed). There is no evidence in the record of a transcript redacting all such instances of Doe's name.

Even viewing this exchange in the light most charitable to Doe and Yale, at least up until mid-July, 2024, there is no dispute that for years the official transcript had been an unredacted transcript, that such an unredacted version had been publicly available for years.

As described in 5.1, this issue is a red herring, however.  There is no dispute that Petitioner lawfully has in his possession an unredacted transcript.  Petitioner wishes to publish this document to DHS in support of his asylum petition because he believes this is the official transcript and he believes submitting a modified document prejudices his asylum application.  He has the speech, press, and petition rights to do so.

### 3.6.3 Petitioner Seeks Permission From Magistrate Judge to Publish Documents to DHS

Submitting the same official transcript as previously submitted in 2021 would violate the June 19, 2024 order restricting Petitioner's speech by disclosing Doe's identity directly and indirectly.  Doe's name appears more than 500 times in the unredacted transcript, and there is an enormous amount of biographical and biological data in the transcript by which her identity could be discerned indirectly.

On October 8, 2024, Petitioner filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201.  On October 16, 2024, the Magistrate Judge denied the motion without prejudice, requiring more specificity and briefing, as well as filing all relevant documents under seal.

Doe objected. Doe demanded Petitioner file a redacted transcript.  Among other things, as described the immediately preceding section, Doe claimed that a redacted transcript was an official transcript.

Petitioner believes that submitting an altered transcript risks delaying his application or jeopardizing it all together.  The last time Petitioner submitted documents that raised a question, his case was delayed three years. Being forced to

12

submit a redacted transcript jeopardizes his present procedural right to litigate his asylum application as he feels is best for his life and liberty.

On October 21, 2024, the Magistrate Judge ordered that Plaintiff could only submit a redacted transcript to DHS. *See* ECF No. 216 (on docket).

## 3.7 Harms Presented by Denial of Mandamus

### 3.7.1 Immigration Proceedings are High Stakes and Front-Loaded

The alien has the burden of proof. *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991). Asylum is discretionary. Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien. *See id.* at 191–92. The alien generally must adduce more than mere testimony, with objective, corroborating evidence. *See id.* "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020). Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned. *See, e.g., Singh v. Garland*, 6 F.4th 418, 427 (2d Cir.

13

2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons). All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr, supra,* 838 F. App'x 30 serves as a cautionary tale. Nikpay testified to prior physical abuse he suffered from the Taliban, and threats against his life. But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum. Nikpay was of the Hazara ethnicity. "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34. The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

### 3.7.2 Genuine Physical Danger

The disclosure in this case is necessary to comply with the request of DHS. If Petitioner does not comply he may be deported, where he faces execution.

Petitioner's uncle was executed by the Taliban for advocating for the education of girls. Petitioner is an atheist and according to the laws of Afghanistan, if deported to Afghanistan, he will have three days to convert to Islam or be executed. This is not some remote, speculative kind of harm. These laws are enforced and people are executed on this basis. These are the laws of the nation. The underlying case is well publicized, and Petitioner is well known. Although he is a citizen of Afghanistan, he has never lived there, having grown up in a refugee

14

camp.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g., Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), modified on reh'g, 95 F.4th 151 (4th Cir. 2023),(highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr, supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir. 2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Petitioner is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child). The Petitioner's fear is rational.

### 3.7.3 Harm to Speech and Petition

Petitioner believes that the best way to advocate for his asylum petition is to submit documents identical to those submitted in 2021 in response to the request

from DHS. Petitioner believes the official transcript is the unredacted transcript he actually obtained from the Superior Court—not a hypothetical transcript he has never seen. Moreover, he believes submitting an altered transcript will raise questions and cause delay again. These documents previously caused a three year delay. Another such delay could result in a change in administrations or a change in his ability to seek asylum.

Accordingly, it is critical to Petitioner that he exercise his fundamental right to speech and of the press **now** in pursuit of the asylum petition. Although these circumstances are especially acute, the prior restraint here infringes on Petitioner's speech and press rights every day. Every such day is an irreparable harm depriving Petitiner of his right to speak as he chooses.

Further facts and procedural history are set forth as necessary.

## 4 RELEVANT LEGAL STANDARDS

"The common-law writ of mandamus is codified in the All Writs Act, which provides that federal courts 'may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *In re United States*, 945 F.3d 616, 622 (2d Cir. 2019); see also 28 U.S.C. § 1651(a).

The law concerning a petition for a writ of mandamus is well established:

> The remedy of mandamus is traditionally . . . used in the federal courts only to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so. . . . We may issue a writ of mandamus only if: (1) the petitioners have no other adequate means to attain the relief [they] desire[ ], (2) the petitioners' right to issuance of the writ is clear and indisputable, and (3) we are satisfied that the writ is appropriate under the circumstances.

16

*In re A.H.*, 999 F.3d 98, 105 (2d Cir. 2021)(citations and internal quotation marks omitted).  This Court sometimes calls these factors the *Cheney* factors in reference to *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380, 124 S.Ct. 2576 (2004).  Specific legal principles concerning individual factors are set forth as necessary.

## 5 ALL *CHENEY* FACTORS TILT SHARPLY IN FAVOR OF ISSUING THE WRIT

Without a writ of mandamus, Petitioner will lose his speech and petition rights to immediately communicate the transcript in his lawful possession to DHS, and his immediate procedural right to pursue his asylum application as he sees best fit to protect his life and liberty.

### 5.1 No Other Adequate Means to Obtain Relief Sought

Delay is tantamount to denial in two ways here.  First, timeliness is crucial: the Magistrate Judge's prior restraint denies Petitioner the ability to fulfill the legal requirement by the October 24, 2024 deadline.  This jeopardizes Petitioner's asylum application.  Second, there is no judgment from which appeal can be taken.  Third, the prior restraint's freeze on speech can only be remedied ex ante:  ex post, the daily harm to Petitioner's First Amendment rights is irreparable.

There is a real likelihood that deportation will result in execution, which would make any subsequent legal remedies meaningless.  Petitioner's uncle was executed by the Taliban for advocating that girls should be educated.  Petitioner is an atheist and according to the laws of Afghanistan, if deported to Afghanistan, he will have three days to convert to Islam or be executed.  These fears are not based on rogue agents.  These are the laws of the nation. The underlying case is well

17

publicized, and Petitioner is well known.

There is no judgment from which Petitioner can take interlocutory appeal. Pursuant to District of Connecticut Local Rule 72.2, to challenge a judgment from a magistrate judge, a litigant must first file an objection with the District Court. The procedural history in the underlying case shows that waiting for review from the District Court is an inadequate remedy. Doe filed an emergency motion to dismiss the case on June 23, 2024. That emergency motion concerns the same order by the magistrate judge that restricts Petitioner's speech here. That emergency motion is still pending before the District Court four months later. Similarly, it has been 111 days since Petitioner filed a 72.2 objection to challenge the June 19, 2024 order restricting his speech.

In this case, delay is tantamount to denial. Waiting for a judgment to be rendered from which appeal may be taken will cause Petitioner to miss the October 24, 2024 deadline set by DHS. Indeed, at oral argument on October 21, 2024, the Magistrate Judge stated on the record that it refused to hear constitutional arguments because the 72.2 objection and emergency motion to dismiss were yet pending before the District Court.

Doe may claim that the judgment imposed by the Magistrate Judge is adequate. This is a red herring. The order of the Magistrate Judge presently infringes on Petitioner's right to speak and petition. The order prevents Petitioner from publishing a document in his lawful possession to DHS, and prevents him from exercising his right to petition for asylum as he believes will best protect his life and

liberty. There is no guarantee that DHS will accept a redacted transcript as the "official" transcript. There is no guarantee that such a redacted transcript *even exists*—only a single redacted page of an 1800 word transcript has been produced. *See* ECF No, 186 and exhibits.

Furthermore, the prior restraint freezes Petitioner's protected speech *now*. "A criminal statute chills, prior restraints freeze." *Lusk v. Vill. of Cold Spring*, 475 F.3d 480, 492 (2d Cir. 2007). In First Amendment cases, irreparable harm is presumed when the infringement is direct. *See Bronx Household of Faith v. Board of Education of City of New York*, 331 F.3d 342, 349–50 (2d Cir. 2003). Our mortals time on earth is limited, and every moment Petitioner's speech is curtailed is irreparable harm.

This case is most similar to *In re A.H.*, 999 F.3d 98, 106 (2d Cir. 2021). In that case, mandamus was the only adequate remedy because the district court's order "has caused and is continuing to cause irreparable harm to [the petitioners'] First Amendment rights." *Id.* at 106. Just as the district court in that case failed to "exercise its authority" to protect those petitioners' rights, the Magistrate Judge here failed to exercise its authority in deference to the ancient principle prohibiting prior restraints.

This case is also similar to *In re The City of New York*, 607 F.3d 923 (2d Cir. 2010). That case concerned a discovery order granting a motion to compel disclosure of documents protected by the law enforcement privilege. This Court pointed out that there was no interlocutory appeal available. *Id.* at 933. In

19

addition, the harm was irreparable. There were no guarantees that procedural safeguards could actually protect the privilege sufficiently once disclosed, and thus delay was tantamount to denial.  Likewise, in this case, if Petitioner is deported and executed by the Taliban like his uncle, no appeal can protect his rights.

Finally, this case is similar to I*n re Roman Cath. Diocese of Albany, New York, Inc.*, 745 F.3d 30, 35 (2d Cir. 2014).  In that case, like in the present case, there was no *judgment* in the district court from which appeal could be taken.  This lack of judgment was an important consideration as to the first *Cheney* factor.

### 5.2 <u>The Right to be Free from Prior Restraints is Clear and Indisputable</u>

No constitutional command is as fundamental to American cultural identity and jurisprudence as the prohibition on prior restraints.  The principle predates the republic.  *See* William Blackstone, Commentaries 4:151[4] (liberty of the press consists in laying no previous restraints upon publications)(1769).  This cornerstone of free speech has been reaffirmed time and time again by the Supreme Court[5]— and has even infiltrated popular culture[6].

In its June 19, 2024 order, the Magistrate Judge concluded that its

---

[4] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[5] *See, e.g., Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is . . . clear that the barriers to prior restraint remain high unless we are to abandon what the Court has said for nearly a quarter of our national existence and implied throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91 S.Ct. 2140 (1971) (per curiam).

[6] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title Films 1998) ("For your information, the Supreme Court has roundly rejected prior restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last accessed October 16, 2024).

permanent restriction on Petitioner was not a prior restraint. The order restricting speech is plainly a prior restraint. "The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).

The Magistrate Judge applied none of the jurisprudence concerning prior restraints on June 19, 2024 nor October 21, 2024. There was no compelling interest identified. In the latter, the burden was improperly flipped such that Petitioner had to justify his speech. *See* ECF No. 204 (on docket)(directing Petitioner to "address why it is necessary to disclose Jane Doe's full name . . . ."). Rather, the Magistrate Judge had a duty to put the burden on Doe to show the speech restriction was lawful.

> Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26, 2009)(citations and internal quotation marks omitted).

The standard of review applied to prior restraints is the same as for content-based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a strict test. . . . Under the strict-scrutiny test, a content-based restriction may be upheld if the restriction serves a compelling governmental interest, is *necessary* to serve the asserted [compelling] interest . . . is precisely tailored to serve that interest, and is the least restrictive means readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations omitted; internal quotation marks omitted; emphasis retained); see also *In re Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880 (S.D. Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press under the First Amendment, and must pass muster under well-established constitutional case law.").

This case is similar to *In re United States*, *supra*, 945 F.3d at 625 in that the error here is an erroneous view of the law. The Magistrate Judge fails to identify the prior restraint as a textbook example of such a restraint and applied none of the law concerning prior restraints. There is no compelling interest identified, and the order restricting speech here has no analogues. This is not a case where Doe's identity emerged in the discovery process, where an order of protection could be entered. *See* Fed. R. Civ. P. 26(c). There is no "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or necessity to protect "an ongoing investigation or the identity of witnesses in such a proceeding." *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746). This is not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses. "A presumption of openness pervades federal dockets." *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937). The order is **permanent** on its face. To the extent the Magistrate Judge did not want

the facts of the case reported or discussed publicly, the Judge had a duty to identify a compelling interest. History indicates that there is no compelling interest in preventing the dissemination of truthful information already published in a public court record. *See Florida Star v. B.J.F.*, *supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.

Furthermore, the elementary failure as concerns flipping the burden and forcing the Petitioner to justify his speech is analogous to the error in *In re The City of New York*, *supra*, 607 F.3d at 944. In that case, the district court failed to apply the "strong presumption against lifting the privilege." *Id.* In this case, the Magistrate Judge failed to apply the very heavy presumption against prior restraints.

Accordingly, as to the second *Cheney* factor, Petitioner's right to be free from prior restraints is clear and indisputable.

### 5.3 Mandamus is Appropriate Under the Circumstances

Mandamus is appropriate here. First, it is not uncommon for prior restraint cases to receive accelerated review in general. *See, e.g.*, *The Pentagon Papers Case*, *supra*, 403 U.S. 713; *c.f. Freedman v. State of Md.*, 380 U.S. 51, 55, 57, 58, 60, 85 S. Ct. 734 (1965)(stressing importance of prompt judicial review in prior restraint context).

Second, mandamus is "a drastic and extraordinary remedy reserved for really extraordinary causes." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013). A judicially enforced prior restraint is really extraordinary. It is the kind of order that

"amounts to a judicial usurpation of power or a clear abuse of discretion, or otherwise works a manifest injustice." *Id.* at 187.

## 6 CONCLUSION

All of the *Cheney* factors tilt in favor of issuing the writ of mandamus. Accordingly, the Court should vacate the portion of the June 19, 2024 order by the Magistrate Judge that restricts Petitioner's speech and should vacate the October 21, 2024 order by the Magistrate Judge in its entirety.

Given the Emergency circumstances, Petitioner respectfully requests judgment by Thursday, October 24, 11:30PM EST so that he may comply with the request by DHS.

Respectfully submitted,

SAIFULLAH KHAN

OCTOBER 22, 2024          */s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## CERTIFICATION

I hereby certify that on OCTOBER 22, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

This document complies, to the best of counsel's ability, with FRAP 21(d) limitations on word count or pages, containing 6,599 words.  Because the appendix exceeds 50 pages, hardcopies of the appendix are being generated and shall be delivered as soon as possible by hand.

Pursuant to FRAP 21(a)(1), a copy of the foregoing was filed in the District Court.

/s/ _____
Mario Cerame

25

## CERTIFICATE OF SERVICE

I hereby certify that on OCTOBER 22, 2024, at 9:34AM EDT, a copy of the foregoing was served on the following judges, counsel, and parties by way of CM/ECF, lodged at No. 218 in 3:19-cv-1966; and FURTHERMORE by way of **ACMS**; in addition to by way of Federal Express mail to the two judges:

The Honorable Kari A. Dooley, United States District Court Judge
United States Courthouse, 915 Lafayette Boulevard, Suite 417
Bridgeport, Connecticut 06604

The Honorable Maria E. Garcia, United States Magistrate Judge
Richard C. Lee United States Courthouse, 141 Church Street
New Haven, CT 06510

Alexander T Taubes, Esq.; alextt@gmail.com

Patrick Noonan, Esq.; pnoonan@carmodylaw.com
Giovanna Weller, Esq.; gweller@carmodylaw.com
Maria Laurato, Esq.; mlaurato@carmodylaw.com

James Sconzo, Esq.; jsconzo@carltonfields.com
Brendan Gooley, Esq.; bgooley@carltonfields.com

Yale University
Peter Salovey
Jonathon Halloway
Marvin Chun
Joe Gordon
David Post
Mark Solomon
Ann Kuhlman
Lynn Cooley
Paul Genecin
Stephanie Spangler
Sarah Demers
Jane Doe
Carole Goldberg

/s/ _____
Mario Cerame