# 24-2794

**IN THE**

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———————

**SAIFULLAH KHAN,**

*Petitioner,*

v.

**YALE UNIVERSITY, PETER SALOVEY, JONATHON HALLOWAY, MARVIN CHUN, JOE GORDON, DAVID POST, MARK SOLOMON, ANN KUHLMAN, LYNN COOLEY, PAUL GENECIN, STEPHANIE SPANGLER, SARAH DEMERS, CAROLE GOLDBERG, UNKNOWN PERSONS,**

*Respondents,*

**JANE DOE,**

*Respondent.*

———————

ON PETITION FOR A WRIT OF MANDAMUS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT, NO. 3:19-cv-01966-KAD

══════════

**OBJECTION OF THE DEFENDANT-RESPONDENT JANE DOE**

══════════

James M. Sconzo, Esq.
Brendan N. Gooley, Esq.
Carlton Fields
One State Street
Suite 1800
Hartford, CT 06103
Tel. (860) 392-5000
Fax (860) 392-5058

November 4, 2024

## TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………3

I. PRELIMINARY STATEMENT……………………………………………5

II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY……………7

    A. Petitioner…………………………………………………………..7

    B. Jane's Allegations, The Criminal Case, And The Start Of This Case….7

    C. Petitioner's Early Harassment Of Jane In This Case……………………8

    D. Petitioner Discloses Jane's Name And Jane Moves To Dismiss……….8

    E. The Competing Motions Regarding Continued Anonymity…………...11

    F. Petitioner Violates The Court's Orders And Jane Moves To Dismiss…13

    G. USCIS'S Request And The District Court's Decision…………………16

        1. The October 8, 2024 Emergency Motion And Jane's
        Efforts At Resolution……………………………………………17

        2. Judge Garcia's Denial Of Petitioner's Motion
        Without Prejudice……………………………………………..17

        3. Petitioner's Motion To Vacate…………………………………18

        4. The October 21, 2024 Hearing Before Judge Garcia……………19

        5. Judge Garcia's October 21, 2024 Order…………………………21

    H. Petitioner's Mandamus Petition………………………………………..21

    I. This Court's Initial Order And The Current State Of Affairs………….22

III. LEGAL STANDARD…………………………………………………..22

IV. ARGUMENT……………………………………………………..25

    A. Mandamus Relief Is Not Warranted Because USCIS'S
       Deadline Has Passed…………………………………………...25

    B. Petitioner Has Already Been Granted The Relief He Claims
       He Needs…………………………………………………………25

    C. Petitioner Is Not Entitled To The Relief He Seeks…………………..27

        1. Judge Garcia Gave Petitioner Everything He Is Entitled To……27

        2. The District Court's Underlying Orders Were Proper…………..28

           i. Brief Summary Of Relevant Law…………………………28

           ii. The District Court Properly Regulated A Party Before It...31

    D. The Writ Is Otherwise Improper…………………………………….32

        1. There Is No Emergency………………………………………32

        2. There Are Significant Federalism, Jurisdictional, And
           Abstention Concerns……………………………………………35

        3. Public Policy Strongly Supports Denying The Petition………...36

V.    CONCLUSION………………………………………………………...37

## TABLE OF AUTHORITIES

Connecticut General Statutes § 54-86e……………………………………….*passim*

*Abadir v. Ctr. One, LLC*, No. 14CV855S, 2020 WL 4474070
    (W.D.N.Y. Aug. 4, 2020)…………………………………………………28

*Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988)……12, 29, 32

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000)…..31

*Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023)………………………..36

*Hong Mai Sa v. Doe*, 406 F.3d 155, (2d Cir. 2005)……………………………..23

*In re ALBA Petroleos de El Salvador*, 82 F.4th 105 (2d Cir. 2023)…………….24

*In re Dow Corning Corp.*, 261 F.3d 280(2d Cir. 2001)…………………………24

*In re United States*, 945 F.3d 616 (2d Cir. 2019)……………………………24, 27

*In re Weiss*, 111 F.3d 1159 (4th Cir. 1997)……………………………………...28

*Maye v. City of New Haven*, 89 F.4th 403 (2d Cir. 2023)………………………23

*Norte & Co. v. Defiance Indus., Inc.*, 319 F.2d 336 (2d Cir. 1963)……………..23

*Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43 (2d Cir. 2009)………..23

*Plaintiff B. v. Francis*, No. 5:08-CV-79 RS-GRJ, 2011 WL 809610
    (N.D. Fla. Mar. 2, 2011)………………………………………………………30

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634
    (2d Cir. 2021)………………………………………………………………..35

*Range v. 480-486 Broadway, LLC*, 810 F.3d 108 (2d Cir. 2015)……………….23

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2008)………………..31

*United States v. Trump*, 88 F.4th 990 (D.C. Cir. 2023)……………………..29, 32

*Zanghi v. Callegari*, No. 22-266, 2023 WL 1097560 (2d Cir. Jan. 30, 2023)…..24

## I.    PRELIMINARY STATEMENT

The issue before this Court is very narrow.  Petitioner sought relief from Orders of the District Court precluding him from disseminating Jane's name so that he could respond to a Request from the United States Citizenship and Immigration Services ("USCIS") for a copy of the "official transcript" from his criminal trial underlying this case.  Petitioner admitted that he did not need the District Court to vacate its Orders to respond to USCIS and that all he needed was a minor stay or lifting of those Orders.  The District Court granted Petitioner's Motion and allowed him to submit the "official transcript" to USCIS.  There is nothing for this Court to entertain.

However, Petitioner refuses to accept that the Official Court Reporter for the State of Connecticut Court who transcribed the criminal trial corrected the transcript to remove Jane's last name in accordance with Connecticut General Statutes § 54-86e.  This Petition, therefore, boils down to Petitioner's argument that the official transcript promulgated by the Official Court Reporter is not the "official transcript." Put differently, this Petition is an attempt to get this Court to entangle itself in an issue that was decided by the Connecticut Superior Court.

There is no emergency here.  Petitioner was permitted by the District Court to submit the official transcript by the October 24, 2024 deadline imposed by USCIS. Given that the deadline has passed, the issue is now moot.  The petition for

mandamus should be dismissed for that reason alone. Additionally, Petitioner has a motion pending before the District Court asking it to review the Orders his Petition challenges. Petitioner is trying to circumvent and preempt the District Court's review of those Orders through this Petition. That is an improper use of the extraordinary writ of mandamus, and the Petition should be denied for that reason as well.

Even if the foregoing facts were not sufficient to deny the Petition, the Petitioner has also failed to proffer any justification for requesting that this Court evaluate whether the District Court had the authority to enter its order precluding Petitioner from disseminating Jane's name. Petitioner admitted that it was not necessary for the District Court to vacate its Orders regarding Jane's name in order for him to comply with the USCIS Request. (ECF 201.) The District Court's Orders were the result of Petitioner's misconduct in the District Court. (*E.g.*, Exhibit A; Exhibit B.) District Courts have broad authority to regulate the conduct of the parties before them. That authority encompasses the power to restrict speech, including ordering one party not to breach the anonymity of another. Petitioner himself admitted that public dissemination of Jane's name would expose her to a risk of retaliatory "physical harm," yet he disclosed Jane's name anyway and sought to harass her and deprive her of a fair trial by prejudicing the public against her on the basis of, among other things, her ethnicity. Under these facts, the District Court had

every right, and indeed the obligation, to enter the Orders at issue. The Petition should be denied.

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    Petitioner

Petitioner has never lived in Afghanistan. (Petition at 1.) He lived and attended high school in the United Arab Emirates before coming to the United States and eventually enrolling at Yale University. (Cmplt. ¶ 20; Exhibit C (ECF 212-1).) There is only hyperbolical rhetoric that if Petitioner is deported he will have to go to Afghanistan.

### B.    Jane's Allegations, The Criminal Case, And The Start Of This Case

In 2015, Jane, a classmate of Petitioner's, reported that Petitioner had sexually assaulted her. (*E.g.*, Cmplt.) The State of Connecticut filed criminal charges. It is undisputed that Connecticut General Statutes § 54-86e protected Jane's name from disclosure during the criminal trial—Petitioner conceded that when he sought and received an Order to litigate against Jane by using a pseudonym and again just weeks ago. (ECF 7 (Exhibit D) at 2, 7–8 ("During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e."); ECF 220 (Exhibit E) 16:19–20 ("Unquestionably the statute applied during the trial, Judge.").) In a motion in this case to litigate against Jane by using a pseudonym, Petitioner explained that anonymity was necessary "to protect [Jane] from a [] public

pillorying" and that Jane would "suffer the risk of retaliatory physical or mental harm" if her name was revealed. (Exhibit C at 5, 8.) The District Court agreed and granted Petitioner's motion to use a pseudonym for Jane based on, *inter alia*, "the inherently sensitive and personal nature of the issues raised in this" case and "the risk of harm" to Jane. (ECF 12.)

### C. Petitioner's Early Harassment Of Jane In This Case

Petitioner has repeatedly misused this case to harass Jane. For example, Petitioner emailed Jane (not her counsel) a purported "settlement communication" and made sure to note that Petitioner knew Jane's address and phone number. (Exhibit F (ECF 75-1 (Ex. A)).) As another example, Petitioner submitted harassing filings to Courts overseeing this matter. As an example, Petitioner called Jane "trashy" in the opening lines of a brief. (ECF 31.) Unbeknownst to Jane at this time, but as later revealed in discovery (and as discussed below), Petitioner's harassing actions were part of a calculated plan to, as Petitioner put it, get Jane to "break."

### D. Petitioner Discloses Jane's Name And Jane Moves To Dismiss

Petitioner escalated his harassment of Jane. Petitioner sent Jane's counsel a harassing purported "settlement communication" addressed to Jane at the time of Jane's birthday. (Exhibit F (ECF 75-6 (Ex. F)).) Among other things, the communication stated Petitioner's "hope" that Jane's counsel had made her aware

of "videos about" her online in which Petitioner harassed Jane and asserted that "discovery [would] be gruesome." (Exhibit F (ECF 75-6 (Ex. F)).)

Petitioner's most significant harassment of Jane concerned her name. In Fall 2023, Petitioner conceded that the District Court's anonymity Order precluded him from publicly identifying Jane. (Exhibit G.)

Despite Petitioner's acknowledgments that he was barred from publicly identifying Jane, Petitioner posted Jane's real name on social media *on Christmas Morning* 2023. (Exhibit F (ECF 75-8 (Ex. H)).) Petitioner also commented on Jane's ethnicity in one of those posts. (Exhibit F (ECF 75-8 (Ex. H)).) Petitioner's posts identified Jane as the defendant in this case, as he had been posting about this case and "Jane" for months. (*E.g.*, Exhibit F.)

Petitioner's posts resulted in Jane's name and information about her being disseminated online and, as Petitioner had acknowledged, created a risk of harm for Jane. For example, someone posted Jane's name and information about where she works on a forum for extremists that has a swastika in its logo. (Exhibit H.)

Jane filed a Motion to Dismiss Petitioner's claims as a sanction for Petitioner's posts and other misconduct. (Exhibit F.) Petitioner filed a response admitting that his dissemination of Jane's name violated the Court's Order. (Exhibit I at 1–2.)

The District Court held a hearing on Jane's Motion. (ECF 94 (Exhibit J).) Judge Dooley stated on the record:

What I have seen does give me concern about what's going on here, and some of the things that [Petitioner] has done [] give me pause. Because some of the tenor and tone of [Petitioner's] posts feel less like his plan is to have his rights vindicated as it is to exact retribution, and that is not the purpose of the use of our [C]ourts[.]

When [Petitioner] has posted about the litigation and talking about attending depositions, there is a sense of an intent to intimidate. There is a sense of an intent to harass. The idea of sort of mobilizing the Internet—I mean, this is borderline doxing, and it's very concerning[.]

(Exhibit J 8:23–9:9.)

The District Court also stated:

I think there's certainly language that [Petitioner used] from which a reasonable inference could be drawn that [Petitioner] was looking to set the spark or he was looking to visit upon [Jane] something similar to what has been visited upon [him].

(Exhibit J 19:1–5.)

Incredibly, when the District Court asked Petitioner's attorney what Petitioner's "plan" was, Petitioner's attorney confirmed that Petitioner's plan was to harass Jane:

I think he wants [Jane] to feel what he felt. What it was to have every publication that reports on things like that, like *Time Magazine* reported him to be a rapist[.]

(Exhibit J 11:8–10.)

The District Court expressed concern about Petitioner litigating this case on social media and the effect that would have on the case. (Exhibit J.) While the District Court concluded that its Order did not expressly preclude Petitioner from

publicly identifying Jane and therefore declined to sanction Petitioner, Judge Dooley nevertheless "directed that [Petitioner] . . . abide by the status quo that was the parties' understanding as to the impact of the pseudonym order" and thus "not to publicly identify [Jane] again" pending resolution of a Motion Petitioner had by this time filed to vacate Jane's anonymity.  (Exhibit J 23:21–24.)  The Court also ordered: "[Petitioner] shall not identify Jane Doe in any social media communication or elsewhere."  (Exhibit B (ECF 91).)

Petitioner personally addressed the District Court during the hearing and, as the District Court subsequently found, Petitioner lied to her on the record.  (Exhibit K (ECF 200) at 46:11–13 ("The Court:  . . . .  You just said that I should take your client at his word.  Well, *your client sat in that chair three months ago and was dishonest with me*." (emphasis added).)  Petitioner told the District Court that he had never intended to harass Jane, but, unbeknownst to anyone at that time, Petitioner had written an email in which Petitioner expressly talked about harassing Jane and her mother by disseminating Jane's name to get Jane to "break."  (Exhibit J 21:4–6; Exhibit A (ECF 114-4).)

### E.    The Competing Motions Regarding Continued Anonymity

Jane filed a Motion to Continue Anonymity.  (Exhibit L (ECF 103).)  Jane also sought a continuation of the Court's Order precluding Petitioner from identifying her on social media or elsewhere.  (Exhibit L.)  Citing *Application of*

*Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), and other caselaw, Jane described that the Order was not a "prior restraint." Petitioner did not submit any responsive brief. (ECF.) He did not brief the issue of a "prior restraint" at all.

Jane then discovered that Petitioner was intent on harassing her by disseminating her name and submitted that evidence to the District Court. (Exhibit A.) Jane discovered an email Petitioner had written stating that he would "do everything [he] can to get [Jane] to break," including "spend[ing] thousands of dollars to keep [news] articles [containing Jane's name] circulating on the Internet for years" and sending mail to Jane's mother. (Exhibit A.)

On June 19, 2024, the District Court granted Jane's Motion to Continue Anonymity and denied Petitioner's Motion to Vacate it. (Exhibit M (ECF 119).) The Court held that prohibiting Petitioner from disseminating Jane's name was not a "prior restraint" or "gag order" under this Court's decision in *Application of Dow Jones*, 842 F.2d at 603. (Exhibit M at 13–14.) Again, Petitioner had chosen not to brief any contrary position.

Judge Garcia echoed Judge Dooley's concerns about Petitioner litigating this case on social media and the effect that would have on this case, and she also noted that the documents Jane had submitted "evince[d] [Petitioner]'s intent to use the media and internet to, at best, embarrass Jane Doe publicly." (Exhibit M at 14; Exhibit A.) Judge Garcia therefore ordered:

that [Petitioner] directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform. Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal. . . .

(Exhibit M at 15.)

### F. Petitioner Violates The Court's Orders And Jane Moves To Dismiss

Petitioner responded to Judge Garcia's Order by immediately violating it. Within hours after the Order was issued, Petitioner made a series of social media posts that encouraged his followers to post Jane's name, and one of them did just that. (Exhibit N.)

Despite Judge Garcia having observed that her Order was not a "prior restraint" or "gag order," Petitioner falsely claimed it was a gag order by telling his followers he had been "gagged." (Exhibit N.) Petitioner also stated that the Court's Order only applied to him and encouraged followers to "shame" Jane. (Exhibit N.) When one of his followers responded to Petitioner's posts by stating: "Hoping one day [Jane's] name can be revealed so that her and others like her are shamed," Petitioner wrote: "I'm doing my part. [H]opefully others contribute in their own way." (Exhibit N (emphasis added).)

Petitioner then tagged another user: "@IBlogGod," who had reposted Jane's name when Petitioner first disclosed it on Christmas Morning, but had not been

13

involved in the posts following Judge Garcia's Order. (Exhibit N.) Petitioner told "@IBlogGod" that "this gag order only applies to me" (Exhibit N), thereby encouraging "@IBlogGod" to post Jane's name again. "@IBlogGod" then posted Jane's name and a picture of her from high school. (Exhibit N.)

Jane filed another Motion to Dismiss based on Petitioner's violations of Judge Garcia's Orders and other misconduct, including Petitioner lying to the Court. (Exhibit N.) In response, Petitioner, who had not before briefed the issue of "prior restraint," filed a Local Rule 72.2 Objection asking the District Court to review Judge Garcia's Order. (Exhibit O.) For the first time, Petitioner argued that the Orders were invalid "prior restraints." (Exhibit O.) Petitioner refused to acknowledge that he had violated the Court's Orders and maintained that the Court lacked the authority to sanction him even if he had violated its Orders. (Exhibit O.)

Petitioner's arguments relied in part on his contention that Jane's name was public as a result of the criminal trial (a contention that was the opposite of Petitioner's representation to the Court) (Exhibit O.) Defendants ordered the transcript and received a version with Jane's full name in it. Counsel for Jane contacted the Official Court Reporter. (Exhibit P.) The Court Reporter corrected the transcript pursuant to Conn. Gen. Stat. § 54-86e by removing Jane's last name. (Exhibit P.)

On July 25, 2024, Judge Dooley held oral argument on Jane's Second Motion to Dismiss. The District Court observed, among other things: "[A]t this juncture, based on everything that's been submitted, [Petitioner's] utter disdain and hostility towards at the very least Jane Doe, and probably to a lesser extent the Yale Defendants, is manifest." (Exhibit K 9:24–10:2.) The District Court also expressed disbelief at Petitioner's arguments that he had not violated Judge Garcia's Orders not to directly or indirectly disclose Jane's name: "Is there any question of what he wanted those people to do? *Is there any reasonable inference that can be drawn other than he wanted at least some of those people, one quite specifically, to do exactly what Judge Garcia told him he couldn't do?*" (Exhibit K 43:12–17 (emphasis added).) The District Court also observed that Petitioner was "dishonest" with her when he denied harassing Jane at the hearing on Jane's prior Motion to Dismiss. (Exhibit K 46:11–13 ("Your client sat in that chair three months ago and was dishonest with me.").)

During the oral argument, Jane described that the Court Reporter had corrected the transcript and Jane subsequently filed an excerpt of the corrected transcript, an email from the Official Court Reporter explaining that Jane's last name had been removed pursuant to Conn. Gen. Stat. § 54-86e, and an excerpt from the Connecticut Judicial Branch website showing that Connecticut applies Conn. Gen.

Stat. § 54-86e to preclude the dissemination of the name and address of victims in sexual assault cases regardless of how those cases resolve. (Exhibit P.)

Since July 25, 2024, Petitioner has been on notice that the transcript had been corrected; yet Petitioner has done nothing in the Connecticut Superior Court to challenge the "official transcript." The District Court has not yet ruled on Jane's Second Motion to Dismiss or Petitioner's Rule 72.2 Objection to Judge Garcia's Order. (ECF.) As Judge Garcia noted, Petitioner has had ample time to address the issues surrounding the transcript since July 2024. Even if it was true that Petitioner faced an emergency vis-à-vis immigration, that emergency was Petitioner's doing.

### G.   USCIS's Request And The District Court's Decision

On October 3, 2024, USCIS issued its Request seeking, among other things, (1) "the official transcript from the [C]ourt" "regarding [Petitioner's] case in criminal court" and (2) "documentation of [a] protection order" filed against Petitioner in Indiana. (Exhibit Q.) USCIS's Request gave Petitioner the opportunity to "provide a statement explaining the reasons why [he was] not able to" provide the documents if he was unable to do so. (Exhibit Q.) USCIS's Request stated that Petitioner "must supply the above reasonably available evidence . . . **on or before, October 24, 2024**." (Exhibit Q.)

The Indiana Protection Order was filed by a man who alleged that Petitioner sexually assaulted him in 2018. The Petition for the Protection Order and the Indiana

Court's Order granting that Petition are publicly available. Jane obtained them pursuant to an Indiana Access to Public Records Act Request. Those records comprise fourteen pages. (Exhibit E 20:18–19.)

       1.    *The October 8, 2024 Emergency Motion And Jane's Efforts At Resolution*

On October 8, 2024, Petitioner filed an Emergency Motion asking the District Court for a "limited stay or limited lift" of its Orders to allow him to respond to USCIS's Request. (Exhibit R.) Petitioner did *not* seek to vacate the District Court's Orders. (Exhibit R.) Petitioner thus acknowledged that it was not necessary to vacate the District Court's Orders and that a "limited stay or limited lift" would allow him to respond to USCIS.

Jane attempted to resolve this issue without Court intervention by agreeing that Petitioner could submit to USCIS the official transcript (*i.e.*, the corrected transcript without Jane's last name). (Exhibit S.) Petitioner refused to acknowledge that the corrected transcript was the official transcript. (Exhibit S.) Petitioner also refused to provide Jane the documents he planned to submit to USCIS so that she could review them.

       2.    *Judge Garcia's Denial Of Petitioner's Motion Without Prejudice*

Judge Garcia denied Petitioner's Emergency Motion without prejudice in light of, among other things, Petitioner's failure to submit the documents at issue. (ECF 204.)

Petitioner then gave Jane's counsel the documents he intended to submit to USCIS and filed them under seal. (ECF 207.) Instead of submitting the official transcript (the corrected transcript) that omitted Jane's last name, Petitioner proposed submitting the transcript with Jane's full name. (ECF 207.) Rather than submitting the fourteen pages related to the Indiana Protection Order, Petitioner proposed submitting a conclusory one-page printout regarding the Protection Order. (ECF 207.) Petitioner was willing to assume a risk about filing incomplete and non-responsive documents with USCIS as long as he could disclose Jane's full name.

### 3. *Petitioner's Motion To Vacate*

Instead of filing a renewed Motion for a Limited Stay, Petitioner filed a Motion to Vacate the Court's June 19, 2024 Order. (Exhibit T.) Instead of proffering caselaw discussing the standard for a stay as the Court had Ordered, Petitioner resubmitted his arguments that the Court's Orders were improper under the First Amendment, an issue that was and remains before Judge Dooley pursuant to Petitioner's Rule 72.2 Objection. (Exhibit T.) Incredibly, Petitioner maintained that the District "Court does not have the *power* to *sanction* the [Petitioner] for disclosing Doe's full name." (Exhibit T.)

Petitioner, who claimed he had previously submitted the documents at issue to USCIS, also made an "advice of counsel" argument: "[Petitioner] believes that his best course of legal action is to rely on advice of immigration counsel and submit

the requested documents as he submitted them in 2021. Not modified versions—the same documents." (Exhibit T.)

On the same day that Petitioner filed his Motion to Vacate, Petitioner made the following post establishing that his true motivation in filing his Motion to Vacate was not to comply with USCIS's Request, but to "shame" Jane:



### 4. *The October 21, 2024 Hearing Before Judge Garcia*

Judge Garcia scheduled a hearing and ordered Petitioner's immigration counsel to attend. (ECF 209.) Petitioner's immigration counsel appeared at the hearing and informed the Court that he "effectively [] ha[d] not represented [Petitioner] in years." (Exhibit E 8:8; 8:22–24 ("I'm no longer his attorney and haven't been his attorney for years.").) Jane's counsel expressed concern to the Court that Petitioner had seemingly falsely attempted to convince the Court to allow him to disseminate Jane's name on the advice of his immigration counsel when in fact that lawyer had not provided any advice to him for years. (Exhibit E 19–20.) In response, Petitioner's counsel gave, at best, a murky response. He first stated that a different immigration attorney had given Petitioner that advice. (Exhibit E 25:8–

15.)  But then, after consulting with Petitioner during the hearing, he reported that the Petitioner has been handling the USCIS matter *pro se*.  (Exhibit E 31:13–16, 32:6–7.)

Jane's counsel then argued to the Court that it should view with skepticism Petitioner's position that he had to scrupulously comply with USCIS upon penalty of deportation and death because that was incompatible with Petitioner's positions that he was not going to submit the corrected transcript or the core documents related to the Indiana Protection Order.  (Exhibit E 20–21.)  Judge Garcia had already observed the inconsistency in Petitioner's position:

> [I]t would seem to me that based on your [M]otion where there's such a desire to comply with what DHS is requiring that . . . regardless of whatever objections you may have as to how that original transcript ended up being what it is, [it] is what should be produced because that is what DHS is requiring.

(Exhibit E 15:5–16.)  Judge Garcia also saw the speculative nature of Petitioner's argument that submitting the corrected transcript would undermine Petitioner's immigration application:

> This all seems very speculative because when DHS is requesting an official document I would suspect they want what is the official document, and that's whatever is available in the court right now if you were to go and request it.

(Exhibit E 29:6–10.)

Petitioner attempted to sway Judge Garcia by asserting that he did not have the corrected transcript.  (Exhibit E 26:7–12.)  Judge Garcia pointed-out that

Petitioner could have obtained the corrected transcript. (Exhibit E 26:13–19, 27:13–28:24.) Petitioner argued he was having trouble obtaining it, but could not say when he first requested it. (Exhibit E 27:13–20.)

Judge Garcia declined to vacate her underlying Order because that Order was "squarely before Judge Dooley." (Exhibit E 29:25-30:5.)

5.    *Judge Garcia's October 21, 2024 Order*

Judge Garcia issued an Order granting Petitioner's Motion in part. (ECF 216.) She allowed Petitioner to send USCIS the official transcript (*i.e.*, the one that redacts Jane's last name). (ECF 216.) Judge Garcia noted the federalism issues associated with Petitioner's request that she "disturb what the Superior Court deems to be the Official Transcript." (ECF 216.)

## H.    Petitioner's Mandamus Petition

Petitioner filed this Petition even though he could have: (1) filed the official transcript with USCIS; (2) filed a Rule 72.2 Objection to Judge Garcia's Order and requested expedited review; (3) asked for a ruling on his pending Rule 72.2 Objection to the underlying Orders; (4) clarified any of this with USCIS; and/or (5) addressed his objections about the official transcript with the Superior Court. Petitioner represented to this Court that "delay is tantamount to denial" and that he therefore needed a decision by October 24, 2024 (Petition at 18, 24.)

This mandamus petition boils down to attempts to: (1) drag this Court into a State Court Criminal proceeding; and (2) circumvent the rulings of Connecticut State Court and the District of Connecticut protecting Jane's name. This mandamus also reflects Petitioner's obsession with harassing Jane, as is evidenced by Petitioner's actions, including the post he made on October 17, 2024.

## I.    This Court's Initial Order And The Current State Of Affairs

This Court denied Petitioner's Petition insofar as Petitioner requested a decision by October 24, 2024. (Docket.) Jane's counsel then asked Petitioner what the current status of USCIS's Request was and received a response that included the following:

> I believe my client did submit some documents, but I know that he did not submit any transcripts at all.
>
> I note that if he did submit documents in violation of the order, it seems to me that answering this second question would implicate the Fifth Amendment right against self incrimination, due to exposure to criminal contempt. My client has not invoked those Fifth Amendment rights as of yet, however. . . .
>
> As to your third question, he was not given an extension of time, to the best of my knowledge.

(Exhibit U.)

## III.   LEGAL STANDARD

"Mandamus is a drastic and extraordinary remedy, and only exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of

discretion will justify its invocation." *Maye v. City of New Haven*, 89 F.4th 403, 408 n.2 (2d Cir. 2023) (alterations and internal quotation marks omitted); *e.g.*, *Hong Mai Sa v. Doe*, 406 F.3d 155, 158–59 (2d Cir. 2005) ("Mandamus is not used simply to correct error; rather, it is reserved for judicial usurpations of power . . . . Indeed, an appellate court should not issue mandamus to correct even gross error, but should issue the writ when necessary to confine an inferior court to a lawful exercise of its prescribed jurisdiction . . . ." (alterations, citations, and internal quotation marks omitted)).

The "extraordinary remedy [of a writ of mandamus] may not be used to secure interlocutory review of disputed questions of law which can be reviewed in the ordinary way on appeal." *Norte & Co. v. Defiance Indus., Inc.*, 319 F.2d 336, 337–38 (2d Cir. 1963). Similarly, "the general rule is that appellate courts should avoid determining jurisdictional issues on a petition for mandamus." *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 48 (2d Cir. 2009).

"On an application for mandamus, the petitioner[] bear[s] the burden of showing a clear and indisputable abuse of judicial power by the district court." *Application of Amarnick*, 558 F.2d 110, 112–13 (2d Cir. 1977) (internal quotation marks omitted); *Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 113 (2d Cir. 2015) ("The party seeking the writ must show that its right to issuance of the writ is clear and indisputable." (internal quotation marks omitted)). Thus, a petition for a

mandamus should be denied where the record is inadequate. *In re Dow Corning Corp.*, 261 F.3d 280, 285–86 (2d Cir. 2001).

Because "[m]andamus is a drastic and extraordinary[ remedy], [it] require[es] that [1] there are no other adequate means to attain the relief, [2] the petition has a clear and indisputable right to the writ, and [3] the writ is appropriate under the circumstances." *In re ALBA Petroleos de El Salvador S.E.M. de C.V.*, 82 F.4th 105, 115 (2d Cir. 2023) (internal quotation marks omitted). These are "*demanding* conditions." *Zanghi v. Callegari*, No. 22-266, 2023 WL 1097560, at *2 (2d Cir. Jan. 30, 2023) (emphasis added) (quotation marks omitted).

The first requirement "is generally unsatisfied where (1) the [D]istrict [C]ourt has not yet foreclosed the relief sought in the petition or (2) the petitioner can obtain relief through the regular appeals process." *In re United States*, 945 F.3d 616, 623 (2d Cir. 2019) (citations omitted).

The second requirement is satisfied where a district court commits a clear and indisputable abuse of its discretion, that is, where the court clearly and indisputably bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or . . . renders a decision that cannot be located within the range of permissible decisions." *Id.* (alterations and quotation marks omitted).

The third requirement "recognizes that issuance of the writ is in large part a matter of discretion with the [C]ourt." *Id.* (internal quotation marks omitted). "In

exercising this discretion, [the Court] may consider a range of factors . . . ." *Id.* (internal quotation marks omitted).

## IV.   ARGUMENT

The Petitioner has not met the extremely high standard for a writ of mandamus.

### A.   Mandamus Relief Is Not Warranted Because USCIS's Deadline Has Passed

Petitioner predicated his claim to the extraordinary relief of a mandamus on the purported need for him to respond to USCIS by October 24, 2024. That deadline has now passed. Petitioner submitted whatever documents he chose to USCIS. USCIS will respond to Petitioner's submission however it responds; but Petitioner's request for emergency relief is now moot. The District Court can and should decide any remaining issues in due course. Indeed, if Petitioner had requested that Judge Dooley decide his pending Rule 72.2 Objection expeditiously and/or review Judge Garcia's ruling regarding USCIS's Request expeditiously, he may already have had a ruling. Petitioner chose not to do that to evade Judge Dooley because of her prior rulings.

### B.   Petitioner Has Already Been Granted the Relief He Claims He Needs

The District Court granted the exact relief Petitioner requested: To provide the official transcript to USCIS. Petitioner has known since July 2024 that the

official transcript does not include Jane's last name. Yet Petitioner has not attempted any action in the Connecticut Superior Court if he believes the Court Reporter made an error. Petitioner has not explained this situation to USCIS and has not asked USCIS to confirm what it means by the "official transcript" (the corrected transcript) to ensure that USCIS cannot fault Petitioner for submitting that transcript. Petitioner also has apparently not asked USCIS for an extension of time so that these issues can be resolved by the appropriate authority on a non-emergency basis. Petitioner still has those remedies available to him, and neither this Court nor the District Curt should become entangled in a State Court Criminal process or even with the process at USCIS. That is particularly true in the context of an emergency mandamus proceeding.

To the extent Petitioner seeks to have the underlying Orders vacated through this Petition, that issue is currently before Judge Dooley. A challenge to the underlying Orders does not require a mandamus. Petitioner conceded that it is not necessary for any Court to vacate the Court's Orders protecting Jane's name in order to comply with the USCIS Request. All Petitioner initially sought was "a limited stay or limited lift of" the Orders. Judge Garcia already granted that relief. Petitioner did not file a Rule 72.2 Objection to present that issue to Judge Dooley. Petitioner's request to invalidate the Orders is improper, overbroad, and an abuse of the mandamus process.

Petitioner's decision to circumvent Judge Dooley and undermine the Connecticut Supreme Court by seeking mandamus relief to nullify a Connecticut Official's change to a State Court transcript is telling. This is not an effort to address an emergency. It is an effort to manufacture an emergency so that Petitioner can continue his mission of harassing Jane and revealing her identity and sensitive information from this case despite numerous Court Orders that she is entitled to anonymity.

### C.     Petitioner Is Not Entitled To The Relief He Seeks

Petitioner obtained the relief he requested at the District Court. He is certainly not "clearly and indisputably" entitled to any further relief.

#### 1.     *Judge Garcia Gave Petitioner Everything He Is Entitled To*

In this unique case, Petitioner cannot satisfy the first requirement for a mandamus—that "there are no other adequate means to attain the relief," *In re United States*, 945 F.3d at 623—because, as discussed above, Judge Garcia gave Petitioner the relief he needs and because, even if that were not the case, Petitioner has other means to address his grievances with Judge Garcia's ruling.

Judge Garcia saw the absurdity of Petitioner's argument. Petitioner makes sensational claims about not meticulously complying with the requests of USCIS. Yet Petitioner decided he will not meticulously comply or comply at all. He doesn't

want to submit, and has not submitted, the "official transcript" or all of the documents from the Indiana Protection Order.

### 2.    *The District Court's Underlying Orders Were Proper*

While there is no need for this Court to address this issue at this time, the District Court's Orders were appropriate exercises of the District Court's broad authority to regulate the conduct of parties and prevent abuse.  They are not "prior restraint" or "gag" orders.  The District Court Orders should not be reviewed through this so-called emergency mandamus.  If they are, the Court should recognize they are proper.

### i.    Brief Summary Of Relevant Law

Our Courts "possess[] the inherent power to regulate litigants' behavior . . . ." *In re Weiss*, 111 F.3d 1159, 1171 (4th Cir. 1997); *see also, e.g.*, *Abadir v. Ctr. One, LLC*, No. 14CV855S, 2020 WL 4474070, at *15 (W.D.N.Y. Aug. 4, 2020) ("This Court has an inherent authority to control the conduct of the parties before it.").

That power includes the power to regulate speech:

> While courts have quite limited authority to quiet the speech of the press and public, the Constitution affords judges broader authority to regulate the speech of trial participants.  *See, e.g.*, *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 32 n.18, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984) (noting that "court[s] *often* find[ ] it necessary to restrict the free expression of participants" to a trial) (emphasis added)).  . . . .  The Supreme Court has pointedly said that "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate [the court's] function."  *Sheppard*, 384 U.S. at 363, 86 S.Ct.

28

1507. Courts "must" be proactive, *id.*, and, when warranted, "proscribe[ ] extrajudicial statements by any lawyer, party, witness, or court official" engaging in "prejudicial" communications, *id.* at 361, 86 S.Ct. 1507.

. . . .

[W]hen the parties are trying the case in the media rather than the courtroom, a court cannot sit back and wait for a "carnival atmosphere" to descend before acting. *Sheppard*, 384 U.S. at 356–363, 86 S. Ct. 1507. Quite the opposite. . . . . As part of that duty, courts must "prevent the prejudice" to the trial process "at its inception." *Sheppard*, 384 U.S. at 363, 86 S. Ct. 1507 . . . .

As a result, courts have an ongoing obligation to ensure that speech about a criminal case does not "divert the trial from the 'very purpose of a court system[,]'" which is "'to adjudicate controversies, both criminal and civil, in the calmness and solemnity of the courtroom according to legal procedures.'" *Sheppard*, 384 U.S. at 350–51, 86 S. Ct. 1507 (quoting *Cox*, 379 U.S. at 583 [Black, J. dissenting]).

*United States v. Trump*, 88 F.4th 990, 1005, 1069 (D.C. Cir. 2023) (citations omitted), *reh'g denied*, No. 23-3190, 2024 WL 252746 (D.C. Cir. Jan. 23, 2024).

Petitioner ignores the critical distinction between regulating the press/non-parties on the one hand and parties on the other. (Petition at 8.) This Court has adopted this distinction. In *Application of Dow Jones*, 842 F.2d at 603, the District Court precluded the parties and their agents from making "extrajudicial statement[s] concerning [the] case to the media, subject to limited exceptions." *Id.* at 605–06. The media challenged that order as a "prior restraint." *Id.* at 604. This Court rejected the challenge:

> [T]here is a substantial difference between a restraining order directed against the press—a form of censorship which the First Amendment sought to abolish from these shores—and the order here directed solely against trial participants and challenged only by the press. The distinction is critical.

*Id.* at 608. This Court concluded that the District Court's order "may not . . . be characterized as a prior restraint on the news agencies." *Id.* at 609. This Court went on to find that the Order was justified, noting that the "the solution" to the concerns about precluding publication by the media is to "restrict those at the source of the problem: counsel who serve as officers of the court, a body which has a duty to insure that the accused receives an impartial trial." *Id.* at 609–12. This Court explained that "focus[ing] on the source of potentially prejudicial statements rather than the publisher of such statements has been endorsed by the courts." *Id.* at 612; *see also id..* In a case that is directly on point with the present case, the District Court in *Plaintiff B. v. Francis*, No. 5:08-CV-79 RS-GRJ, 2011 WL 809610, at *1 (N.D. Fla. Mar. 2, 2011) relied on the distinction between Orders applying to the media and Orders applying to litigants, holding that an Order precluding litigants from identifying alleged victims of sexual exploitation was not a "prior restraint."

A Court's authority, and obligation, to restrict litigant speech includes the authority and obligation to restrict the dissemination of a party's name in order to, among other things, protect that party's anonymity. In its seminal decision regarding

anonymity, *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000), the Ninth Circuit held:

> In cases where the plaintiffs have demonstrated a need for anonymity, the [D]istrict [C]ourt should use its powers to . . . issue protective orders limiting disclosure of the party's name, *see* Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case.

This Court cited *Advanced Textile Corp.* favorably in its seminal anonymity decision, *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189, 190 (2008).

      ii.    The District Court Properly Regulated A Party Before It

In this case, the District Court was obligated to address Petitioner's harassment of Jane within and outside of the Court process. Petitioner acknowledged that publicizing Jane's name would put her at risk for retaliatory physical harm. (Exhibit D.) Petitioner's actions undermined the judicial process. As an example, Petitioner tried to impair Jane's right to a fair trial by biasing the public against her based on her ethnicity. Litigants cannot harass each other nor can they use social media to impact the right of a party to a fair trial. Unquestionably, the District Court has the power to address a party's violation of its Orders and to attempt to ensure that Jane receives a fair trial.

Under the facts in this case the District Court acted well within its discretion when it precluded Petitioner from disseminating Jane's name. *See, e.g.*, *Advanced Textile Corp.*, 214 F.3d at 1069 (Courts should prohibit dissemination of the name

31

of a party entitled to anonymity as a matter of course); *Application of Dow Jones*, 842 F.2d at 603 (noting courts' broad authority to regulate speech of parties); *Trump*, 88 F.4th 990, at 1069 (noting courts' broad authority to regulate speech of parties without waiting for a "carnival atmosphere" to develop).

As the District Court held by relying on this Court's binding precedent, the District Court's Orders were not a "prior restraint." *Application of Dow Jones*, 842 F.2d at 603; *Trump*, 88 F.4th 990, at 1069. Petitioner is well aware of this Court's decision in *Application of Dow Jones* because Jane and Judge Garcia cited it below. (Exhibit M.) Petitioner tellingly failed to cite that case to this Court, and he made no attempt to distinguish it. (Petition.)

The District Court's Orders are entirely proper. They are not anything close to "a clear and indisputable abuse of judicial power by the district court." *Application of Amarnick*, 558 F.2d at 112–13. The Court should deny the Petition.

### D. The Writ Is Otherwise Inappropriate

The Court should exercise its discretion not to grant a writ of mandamus.

#### 1. There Is No Emergency

Petitioner's argument that this Court should grant him extraordinary relief rests on his claim that he will end up in Afghanistan if it does not. That claim is baseless.

First, Petitioner's actions demonstrate that he is not concerned that he will be deported based on how he responds to USCIS's Request. Petitioner delayed resolution of these issues because he didn't want to give the Court or Defendants the documents he proposed sending to USCIS. If this were truly a matter of life and death, Petitioner would not have risked delay by refusing to turn over the documents he was demanding the Court allow him to produce. Despite claiming that "'[e]ven a minor inconsistency can support an adverse credibility finding,'" (Petition at 13 (citation omitted)), Petitioner planned to submit the prior transcript instead of what he knows to be the official transcript. He is willing to risk the possibility that USCIS may fault Petitioner for not submitting the corrected transcript. This is a substantial risk because the news media has reported on Petitioner's Petition. (Exhibit V.) If immigration officials Google Petitioner, they will learn that he was aware that the transcript was corrected but neglected to tell them that. Petitioner even chose not to submit the corrected transcript by the October 24, 2024 deadline even though Judge Garcia allowed him to do so. If this were a matter of life and death instead of an attempt to harass Jane, Petitioner would not have taken the risk of not submitting any transcript to USCIS. Petitioner also planned to respond to USCIS's Request for "documentation of [the Indiana] [P]rotection [O]rder" by submitting a conclusory printout instead of the publicly available Petition and the Court's Order granting that Petition. (Exhibit Q.) Petitioner is willing to gamble that USCIS will not conclude

that he was trying to hide the damaging allegations in that Petition and make an adverse credibility finding against him. Petitioner would not be making these sorts of gambles if he truly believed that any "minor inconsistency" could lead to his death. His willingness to gamble with USCIS to disseminate Jane's name establishes that Petitioner is more concerned with harassing Jane than fully complying with USCIS. Petitioner even made a contemporaneous post revealing his motivations are to harass Jane. This is a manufactured "emergency." Petitioner seeks to improperly circumvent and preempt Judge Dooley's impending ruling on his Rule 72.2 Objection to the Orders protecting Jane's name.

Second, the notion that USCIS will deport Petitioner because he submits the corrected transcript instead of the unredacted version when USCIS asked for the "official transcript" is baseless. USCIS's Request states: "If you are not able to provide any of the[] [requested] documents, please provide a statement explaining the reasons why you were not able to do so." (Request.) Petitioner could easily explain that the District Court enjoined the dissemination of Jane's name and/or that the Official Court Reporter has concluded that a Connecticut statute requires the redaction of Jane's name. Or Petitioner could have asked USCIS what it wanted to ensure it did not fault him.

Third, Petitioner's claim that he will end up in Afghanistan even if he is deported is fanciful. Petitioner has *never* lived in Afghanistan. (Petition at 1.) He

lived in the United Arab Emirates for years and attended high school there before coming to the United States. (Exhibit C.) If Petitioner is deported, he could go to the UAE. Petitioner has presented no evidence to support his conclusory claims to the contrary. Petitioner has his immigration records but has not produced them to Defendants even though he waived any objection to the discovery request for these records. (Exhibit S.) If there were anything in those immigration records to support the claim that Petitioner will be deported to Afghanistan, Petitioner would surely have included that in his Petition for mandamus.

If this were a real emergency, Petitioner would not be playing games with his response and would have submitted proper support for his sensational claims that a redacted transcript will cause his execution. A mandamus is not warranted.

### 2. There Are Significant Federalism, Jurisdiction, And Abstention Concerns

Petitioner is asking this Court to invalidate Connecticut's determination that Jane's full name should not appear in the criminal transcript. As Judge Garcia recognized, Petitioner's request raises serious federalism concerns. For example,

> "[u]nder the *Rooker-Feldman* doctrine, federal district courts lack subject matter jurisdiction over cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir.) (internal quotation marks omitted), *certified question accepted*, 36 N.Y.3d

1077, 166 N.E.3d 1053 (2021), and *certified question answered*, 37 N.Y.3d 591, 183 N.E.3d 1185 (2021).

Petitioner seeks to mount a collateral attack on a Connecticut Superior Court ruling protecting Jane's name. Petitioner's attempt to obtain a ruling from this Court that the prior transcript is the "official transcript" should not be countenanced. Federalism and abstention principles counsel strongly against this Court holding that something other than the corrected transcript is the "official transcript." The Connecticut State Court has the right to decide what should and should not be in its "official transcripts" pursuant to its laws. *Hadzi-Tanovic v. Johnson*, 62 F.4th 394, 398 (7th Cir. 2023) (affirming dismissal based on "general abstention principles").

### 3. *Public Policy Strongly Supports Denying The Petition*

The implications of the relief Petitioner seeks are resounding. If this Court holds that District Courts lack the authority to prevent parties from identifying other parties who are entitled to anonymity, thousands of litigants going back decades could be unmasked without further court Orders. That possibility counsels in favor of denying the Petition.

Granting the Petition would also create a substantial risk of harm to Jane. Petitioner's tactics and actions, including his social media posts and his threat to submit the unredacted transcript to USCIS, is nothing more than a pretext to get this Court to release Jane's name so that he can harass her further. Petitioner's actions,

including his post on the same day he filed his Motion to Vacate, stating that "it [was] time to shame" Jane, demonstrate that Petitioner's true motivation is not to comply with USCIS's deadline, which has passed. His true motivation is to harass Jane. As a practical matter, Petitioner also seeks to revoke Jane's anonymity by having this Court allow him to post case filings next to Jane's name. Petitioner incredibly maintains that his actions in disseminating Jane's name and inciting others to do so did not violate any Court Orders and that our Courts lack the power to sanction him for violating their Orders. Simply put, his position on that is wrong.

## V. CONCLUSION

This Court should deny the Petition.


Dated: November 4, 2024

Respectfully submitted,

By: /s/ *Brendan N. Gooley*
James M. Sconzo, Esq.
Brendan N. Gooley, Esq.
CARLTON FIELDS P.A.P.C.
One State Street
Suite 1800
Hartford, CT 06103
Tel:(860) 392-5000
Fax:(860) 392-5058
E-mail: jsconzo@carltonfields.com
bgooley@carltonfields.com

*Attorneys for Respondent Jane Doe*

## CERTIFICATION OF COMPLIANCE

I hereby certify pursuant to Fed. R. App. P. 21(d) that the attached Objection is proportionally spaced, has a typeface (Times New Roman) of 14 points, and contains 7,795 words, as allowed by Fed. R. App. P. 21(d), (excluding the sections of the Objection permitted by Fed. R. App. P. 32(f)), as counted by the Microsoft Word processing system used to produce this Objection.

Dated: November 4, 2024

/s/ *Brendan N. Gooley*
Brendan N. Gooley

## CERTIFICATION OF SERVICE

This is to certify that on this 4th day of November, 2024, a true and correct copy of the foregoing Objection was electronically served through the Court's CM/ECF system upon the following party:

Mario Cerame, Esq.
Brignole, Bush & Lewis LCC
73 Wadsworth Street
Hartford, Connecticut 06106
*Counsel for Petitioner*

/s/ *Brendan N. Gooley*
Brendan N. Gooley

## <u>INDEX OF EXHIBITS</u>

Exhibit A    Petitioner's August 3, 2020 Email (ECF 114-4) (*Sealed*)

Exhibit B    District Court Docket

Exhibit C    Post About Petitioner Attending School In The U.A.E. (ECF 212-1)

Exhibit D    Motion To Proceed Pseudonymously (Without Exhibits) (ECF 7)

Exhibit E    Transcript Of October 21, 2024 Hearing (ECF 220)

Exhibit F    First Motion To Dismiss (ECF 74) & Reply (ECF 79) (*Sealed*)

Exhibit G    Videos Of Petitioner (Filed With ECF 123) (*Sealed*)

Exhibit H    Jane Doe's Sur-Reply (ECF 88) (*Sealed*)

Exhibit I    Response To Jane's First Motion To Dismiss (ECF 77) (*Sealed*)

Exhibit J    Transcript Of March 18, 2024 Hearing (ECF 94)

Exhibit K    Transcript Of July 25, 2024 Hearing (ECF 200)

Exhibit L    Jane's Motion To Continue Anonymity (ECF 103) (*Sealed*)

Exhibit M    Judge Garcia's Ruling And Order (ECF 119)

Exhibit N    Second Motion To Dismiss (ECF 123) & Reply (ECF 166) (*Sealed*)

Exhibit O    Petitioner's Rule 72.2 Objection (ECF 152)

Exhibit P    Documents Related To Corrected Transcript (ECF 186)

Exhibit Q    USCIS Request

Exhibit R    Petitioner's Motion For A Stay (ECF 201)

Exhibit S    Jane's Objection To Motion For A Stay (ECF 203)

Exhibit T    Petitioner's Motion To Vacate (ECF 205)

Exhibit U    Email From Petitioner's Counsel

Exhibit V    Media Report Regarding The Instant Mandamus Petition

# Exhibit A

# To Be Filed Under Seal

# Exhibit B

**Query    Reports    Utilities    Help    Log Out**

EFILE,MEG,MOTREF,REFDIS

# U.S. District Court
## District of Connecticut (New Haven)
## CIVIL DOCKET FOR CASE #: 3:19-cv-01966-KAD

Khan v. Yale University et al                    Date Filed: 12/13/2019
Assigned to: Judge Kari A. Dooley            Jury Demand: Plaintiff
Referred to: Judge Maria E. Garcia          Nature of Suit: 448 Civil Rights: Education
Demand: $110,000,000                         Jurisdiction: Federal Question
Cause: 42:1981 Civil Rights

**Plaintiff**

**Saifullah Khan**                    represented by    **Kevin Murray Smith**
                                                        Pattis & Smith, LLC
                                                        383 Orange Street, First Floor
                                                        New Haven, CT 06511
                                                        203-393-3017
                                                        Fax: 203-393-9745
                                                        Email: kms@kevinsmithlaw.com
                                                        *TERMINATED: 07/12/2024*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Mario K. Cerame**
                                                        Brignole, Bush & Lewis
                                                        73 Wadsworth St.
                                                        Hartford, CT 06106
                                                        860-527-9973
                                                        Fax: 860-527-5929
                                                        Email: mario@brignole.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Norman A. Pattis**
                                                        Pattis & Associates, LLC
                                                        383 Orange Street
                                                        1st Floor
                                                        New Haven, CT 06511
                                                        203-393-3017
                                                        Fax: 203-393-9745
                                                        Email: npattis@pattislaw.com
                                                        *TERMINATED: 07/12/2024*
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Alexander T. Taubes**
                                                        Alexander T. Taubes
                                                        470 James Street

Suite 007
New Haven, CT 06513
203-909-0048
Email: alextt@gmail.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Yale University**                                  represented by **Maria Laurato**
Carmody Torrance Sandak & Hennessey,
LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509
203-784-3157
Email: mlaurato@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick M. Noonan**
Carmody Torrance Sandak & Hennessey
LLP
Concept Park
741 Boston Post Road
Ste 306
Guilford, CT 06437
203-458-9168
Fax: 203-458-4424
Email: pnoonan@carmodylaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
Carmody Torrance Sendak & Hennessey,
LLP - WTBY
50 Leavenworth St., PO Box 1110
Waterbury, CT 06721-1110
203-573-1200
Email: gweller@carmodylaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Peter Salovey**                                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jonathon Halloway**                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Marvin Chun**                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joe Gordon**                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**David Post**                    represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark Solomon**                          represented by   **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ann Kuhlman**                           represented by   **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lynn Cooley**                           represented by   **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Paul Genecin**                          represented by   **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

Stephanie Spangler                     represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

Sarah Demers                           represented by    **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

Jane Doe                               represented by    **Brendan Gooley**
Carlton Fields
One State Street
Ste 1800
Hartford, CT 06103
860-392-5036
Email: bgooley@carltonfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James M. Sconzo**
Carlton Fields, P.C.
One State Street
Suite 1800
Hartford, CT 06103
860-392-5022

Fax: 860-392-5058
Email: jsconzo@carltonfields.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Carole Goldberg**                        represented by **Patrick M. Noonan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Giovanna T. Weller**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Maria Laurato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Unknown Persons**

| Date Filed | # | Docket Text |
|---|---|---|
| 12/13/2019 | 1 | COMPLAINT against All Defendants ( Filing fee $400 receipt number ACTDC-5590669.), filed by Saifullah Khan.(Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 | | Request for Clerk to issue summons as to All Defendants. (Pattis, Norman) (Entered: 12/13/2019) |
| 12/13/2019 | | Judge Alfred V. Covello added. (Walker, J.) (Entered: 12/13/2019) |
| 12/13/2019 | 2 | MOTION for Permission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name by Saifullah Khan.Responses due by 1/3/2020 (Pattis, Norman) Modified on 1/13/2020 (Gould, K.). (Entered: 12/13/2019) |
| 12/13/2019 | 3 | Order on Pretrial Deadlines: Amended Pleadings due by 2/11/2020. Discovery due by 6/13/2020. Dispositive Motions due by 7/18/2020. Signed by Clerk on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/13/2019 | 4 | ELECTRONIC FILING ORDER FOR COUNSEL - PLEASE ENSURE COMPLIANCE WITH COURTESY COPY REQUIREMENTS IN THIS ORDER. Signed by Judge Alfred V. Covello on 12/13/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 5 | NOTICE TO COUNSEL/SELF-REPRESENTED PARTIES : Counsel or self-represented parties initiating or removing this action are responsible for serving all parties with attached documents and copies of 2 MOTION for Permission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name filed by Saifullah Khan, 1 Complaint filed by Saifullah Khan, 4 Electronic Filing Order, and 3 Order on Pretrial Deadlines. Signed by Clerk on 12/16/2019.(Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 6 | ELECTRONIC SUMMONS ISSUED in accordance with Fed. R. Civ. P. 4 and LR 4 as to *Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University* with answer to complaint due within *21* days. Attorney *Norman A. Pattis* *The Pattis Law Firm, |

| | | |
|---|---|---|
| | | LLC* *383 Orange St., First Floor* *New Haven, CT 06511*. (Bozek, M.) (Entered: 12/16/2019) |
| 12/16/2019 | 7 | MOTION for Permission to Litigate Claims Against Jane Doe using a Pseudonym in Place of her Actual Name - EXHIBIT by Saifullah Khan re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name . (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Pattis, Norman) Modified on 12/18/2019 to change to motion event/relief (Bozek, M.). (Entered: 12/16/2019) |
| 12/18/2019 | 8 | WAIVER OF SERVICE Returned Executed as to Paul Genecin waiver sent on 12/18/2019, answer due 2/16/2020; David Post waiver sent on 12/18/2019, answer due 2/16/2020; Yale University waiver sent on 12/18/2019, answer due 2/16/2020; Sarah Demers waiver sent on 12/18/2019, answer due 2/16/2020; Joe Gordon waiver sent on 12/18/2019, answer due 2/16/2020; Peter Salovey waiver sent on 12/18/2019, answer due 2/16/2020; Ann Kuhlman waiver sent on 12/18/2019, answer due 2/16/2020; Stephanie Spangler waiver sent on 12/18/2019, answer due 2/16/2020; Carole Goldberg waiver sent on 12/18/2019, answer due 2/16/2020; Mark Solomon waiver sent on 12/18/2019, answer due 2/16/2020; Jonathon Halloway waiver sent on 12/18/2019, answer due 2/16/2020; Lynn Cooley waiver sent on 12/18/2019, answer due 2/16/2020; Marvin Chun waiver sent on 12/18/2019, answer due 2/16/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 12/18/2019) |
| 01/02/2020 | 9 | Memorandum in Support re 2 MOTION for Pemission to Litigate Against Jane Doe using a Pseudonym in Place of her Actual Name , 7 MOTION to Proceed in Fictitious Name filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Noonan, Patrick) (Entered: 01/02/2020) |
| 01/03/2020 | 10 | NOTICE of Appearance by Patrick M. Noonan on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University (Noonan, Patrick) (Entered: 01/03/2020) |
| 01/08/2020 | 11 | ORDER OF TRANSFER. Case reassigned to Judge Kari A. Dooley for all further proceedings.<br>Signed by Judge Alfred V. Covello on 1/8/2020.(Bozek, M.) (Entered: 01/09/2020) |
| 01/10/2020 | 12 | ORDER granting 7 Motion for Permission to Litigate Claims Against Jane Doe Using a Pseudonym in Place of Her Actual Name without prejudice. Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action. Signed by Judge Kari A. Dooley on 1/10/2020. (Cahill, Leslie) (Entered: 01/10/2020) |
| 01/24/2020 | 13 | WAIVER OF SERVICE Returned Executed as to Jane Doe waiver sent on 1/9/2020, answer due 3/9/2020 filed by Saifullah Khan. (Pattis, Norman) (Entered: 01/24/2020) |
| 01/24/2020 | 14 | NOTICE of Appearance by James M. Sconzo on behalf of Jane Doe (Sconzo, James) (Entered: 01/24/2020) |
| 01/24/2020 | 15 | NOTICE of Appearance by Brendan Gooley on behalf of Jane Doe (Gooley, Brendan) (Entered: 01/24/2020) |
| 02/03/2020 | 16 | REPORT of Rule 26(f) Planning Meeting. (Noonan, Patrick) (Entered: 02/03/2020) |

| 02/05/2020 | 17 | Order on Pretrial Deadlines. The Court has reviewed the Parties' 16 Rule 26(f) Report. It is Approved, Adopted, and So Ordered, except that the Parties' Joint Trial Memorandum shall be filed in accordance with the deadlines and procedures set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **February 24, 2020.** The Defendants shall move to join additional parties by **February 24, 2020** and shall respond to the complaint by **March 24, 2020.** Discovery shall be completed by **February 26, 2021.** Dispositive motions, if any (see Local Rule 56(c)), shall be filed by **March 30, 2021.** The Joint Trial Memorandum shall comport with this Court's standing order, which will be separately docketed. The date for filing the Joint Trial Memorandum required by this Court's standing order shall be set by the Court after the close of discovery.<br><br>A telephonic status conference is scheduled for **March 5, 2021 at 10:00 A.M.**<br><br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 |  | Set Deadlines/Hearings:<br>Motion to Amend Pleadings due by 2/24/2020.<br>Discovery due by 2/26/2021.<br>Dispositive Motions due by 3/30/2021.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley. Answer Deadlines Updated for All Defendants. Responsive pleading due 3/24/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 18 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Status Conference set for 3/5/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 02/05/2020) |
| 02/05/2020 | 19 | STANDING ORDER ON JOINT TRIAL MEMORANDUM attached.<br>Signed by Judge Kari A. Dooley on 2/5/2020. (Cahill, Leslie) (Entered: 02/05/2020) |
| 03/04/2020 | 20 | NOTICE of Appearance by Kevin Murray Smith on behalf of Saifullah Khan (Smith, Kevin) (Entered: 03/04/2020) |
| 03/18/2020 | 21 | Consent MOTION for Extension of Time until April 7, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 03/18/2020) |
| 03/18/2020 | 22 | ORDER granting 21 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 3/18/2020. (Cahill, Leslie) (Entered: 03/18/2020) |
| 03/18/2020 |  | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/7/2020 (Cahill, Leslie) (Entered: 03/18/2020) |
| 04/03/2020 | 23 | Second MOTION for Extension of Time until April 28, 2020 to Respond to Plaintiff's Complaint by Jane Doe. (Gooley, Brendan) (Entered: 04/03/2020) |
| 04/06/2020 | 24 | ORDER granting 23 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 4/6/2020. (Cahill, Leslie) (Entered: 04/06/2020) |
| 04/06/2020 |  | Reset Answer Deadlines for all Defendants: Responsive Pleading due 4/28/2020 (Cahill, Leslie) (Entered: 04/06/2020) |
| 04/24/2020 | 25 | ANSWER to 1 Complaint by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter |

|  |  | Salovey, Mark Solomon, Stephanie Spangler, Yale University.(Noonan, Patrick) (Entered: 04/24/2020) |
|---|---|---|
| 04/28/2020 | 26 | MOTION to Dismiss by Jane Doe.Responses due by 5/19/2020 (Sconzo, James) (Entered: 04/28/2020) |
| 04/28/2020 | 27 | Memorandum in Support re 26 MOTION to Dismiss filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Affidavit Declaration of Brendan Gooley)(Sconzo, James) (Entered: 04/28/2020) |
| 05/12/2020 | 28 | First MOTION for Extension of Time to File Response/Reply *Unopposed* as to 26 MOTION to Dismiss until June 2, 2020 by Saifullah Khan. (Pattis, Norman) (Entered: 05/12/2020) |
| 05/12/2020 | 29 | ORDER granting 28 Motion for Extension of Time to File Response/Reply. Plaintiff's response is due on or before 6/2/2020. Signed by Judge Kari A. Dooley on 5/12/2020. (Cahill, Leslie) (Entered: 05/12/2020) |
| 05/12/2020 | 30 | Reset Deadline as to 26 MOTION to Dismiss . Response due by 6/2/2020. (Gould, K.) (Entered: 05/13/2020) |
| 06/02/2020 | 31 | Memorandum in Opposition *To Jane Doe's* re 26 MOTION to Dismiss filed by Saifullah Khan. (Pattis, Norman) (Entered: 06/02/2020) |
| 06/11/2020 | 32 | MOTION for Extension of Time until June 23, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/11/2020) |
| 06/12/2020 | 33 | ORDER granting 32 Motion for Extension of Time. Defendant's reply brief is due on or before June 23, 2020. Signed by Judge Kari A. Dooley on 6/12/2020. (Cahill, Leslie) (Entered: 06/12/2020) |
| 06/22/2020 | 34 | MOTION for Extension of Time until June 30, 2020 to file a Reply Memorandum of Law in Further Support of Motion to Dismiss by Jane Doe. (Gooley, Brendan) (Entered: 06/22/2020) |
| 06/22/2020 | 35 | ORDER granting 34 Motion for Extension of Time. Defendant's reply brief is due on or before June 30, 2020. Signed by Judge Kari A. Dooley on 6/22/2020. (Cahill, Leslie) (Entered: 06/22/2020) |
| 06/30/2020 | 36 | REPLY to Response to 26 MOTION to Dismiss filed by Jane Doe. (Sconzo, James) (Entered: 06/30/2020) |
| 10/07/2020 | 37 | MOTION for Extension of Time until 11/06/20 Discovery by Marvin Chun, Lynn Cooley, Sarah Demers, Jane Doe, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 10/07/2020) |
| 10/08/2020 | 38 | ORDER granting on consent 37 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 10/8/2020. (Cahill, Leslie) (Entered: 10/08/2020) |
| 12/23/2020 | 39 | Joint MOTION for Extension of Time -- Modification of the Scheduling Order by Jane Doe. (Sconzo, James) (Entered: 12/23/2020) |
| 01/07/2021 | 40 | ORDER granting 26 Motion to Dismiss, for the reasons stated in the attached Memorandum of Decision. Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |

11/4/24, 12:12 PM

CT CMECF NextGen

| 01/07/2021 | 41 | ORDER. The parties shall appear for a telephonic scheduling conference to address their joint 39 motion to modify the Scheduling Order on 1/21/2021 at 10:00 A.M. Signed by Judge Kari A. Dooley on 1/7/2021. (Cahill, Leslie) (Entered: 01/07/2021) |
|---|---|---|
| 01/07/2021 | 42 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Scheduling Conference set for 1/21/2021 at 10:00 AM before Judge Kari A. Dooley. Conference Line: (888) 278-0296; Access Code: 80-77-899. (Cahill, Leslie) (Entered: 01/07/2021) |
| 01/14/2021 | 43 | NOTICE OF APPEAL as to 40 Order on Motion to Dismiss by Saifullah Khan. Filing fee $ 505, receipt number ACTDC-6328789. (Pattis, Norman) (Entered: 01/14/2021) |
| 01/15/2021 | 44 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 01/15/2021) |
| 01/21/2021 | 45 | Minute Entry for proceedings held before Judge Kari A. Dooley: Telephonic Scheduling Conference held on 1/21/2021. Total Time: 17 minutes(Court Reporter Tracy Gow.) (Gould, K.) (Entered: 01/22/2021) |
| 01/26/2021 | 46 | MOTION for Entry of Judgment under Rule 54(b) *in accordance with the Court's order in Dkt. 40* by Saifullah Khan. (Pattis, Norman) (Entered: 01/26/2021) |
| 02/05/2021 | 47 | ORDER granting 46 Motion for Entry of Judgment under Rule 54(b) and staying proceedings pending resolution of the Plaintiff's appeal. See attached Order. The Clerk of the Court is directed to enter a Judgment, pursuant to Rule 54(b), in favor of the Defendant Jane Doe. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/05/2021 | 48 | ORDER finding as moot 39 Motion for Extension of Time. Signed by Judge Kari A. Dooley on 2/5/2021. (Cahill, Leslie) (Entered: 02/05/2021) |
| 02/09/2021 | 49 | PARTIAL JUDGMENT entered in favor of Jane Doe against Saifullah Khan. For Appeal Forms please go to the following website: http://www.ctd.uscourts.gov/forms/all-forms/appeals_forms Signed by Clerk on 2/09/2021.(Gould, K.) (Entered: 02/09/2021) |
| 02/10/2021 | 50 | CLERK'S CERTIFICATE RE: INDEX AND RECORD ON APPEAL re: 43 Notice of Appeal. The attached docket sheet is hereby certified as the entire Index/Record on Appeal in this matter and electronically sent to the Court of Appeals, with the exception of any manually filed documents as noted below. Robin D. Tabora, Clerk. Documents manually filed not included in this transmission: none (Fanelle, N.) (Entered: 02/10/2021) |
| 02/16/2021 | 51 | ORDER. In light of the stay of the proceedings pending resolution of the Plaintiff's appeal, the telephonic status conference scheduled for March 5, 2021 at 10:00 A.M. is canceled. Signed by Judge Kari A. Dooley on 2/16/2021. (Cahill, Leslie) (Entered: 02/16/2021) |
| 09/01/2021 | 52 | Joint STATUS REPORT by Yale University. (Noonan, Patrick) (Entered: 09/01/2021) |
| 12/01/2021 | 53 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons. (Noonan, Patrick) (Entered: 12/01/2021) |

| 03/01/2022 | 54 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 03/01/2022) |
|---|---|---|
| 03/04/2022 | 55 | OPINION of USCA as to 43 Notice of Appeal filed by Saifullah Khan USCA Case Number 21-95. (Fanelle, N.) (Entered: 03/07/2022) |
| 03/11/2022 | 56 | Notice of Letter to Counsel, signed by Peter D. Keane, Assistant Clerk-Appellate of the State of Connecticut Supreme Appellate Court. (Freberg, B) (Entered: 03/11/2022) |
| 06/01/2022 | 57 | Joint STATUS REPORT by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Unknown Persons, Yale University. (Noonan, Patrick) (Entered: 06/01/2022) |
| 08/30/2022 | 58 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/30/2022) |
| 12/14/2022 | 59 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 12/14/2022) |
| 02/22/2023 | 60 | Joint STATUS REPORT by Saifullah Khan. (Smith, Kevin) (Entered: 02/22/2023) |
| 05/16/2023 | 61 | Joint STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 05/16/2023) |
| 08/04/2023 | 62 | STATUS REPORT by Saifullah Khan. (Pattis, Norman) (Entered: 08/04/2023) |
| 10/25/2023 | 63 | ORDER of USCA as to 43 Notice of Appeal filed by Saifullah Khan, USCA Case Number 21-95. (Fanelle, N.) (Entered: 10/31/2023) |
| 11/02/2023 | 64 | Joint STATUS REPORT by Jane Doe. (Gooley, Brendan) (Entered: 11/02/2023) |
| 11/15/2023 | 65 | MANDATE of USCA dated 11/15/2023, USDC Partial Judgment Affirmed in Part and Vacated in Part. Case is Remanded for further proceedings re: 43 Notice of Appeal filed by Saifullah Khan. (Attachments: # 1 Supporting Document)(Fanelle, N.) (Entered: 11/15/2023) |
| 11/16/2023 | 66 | ORDER. Per the parties' Status Report dated November 2, 2023 (ECF No. 64 ), the parties shall file an amended Rule 26(f) Report by December 1, 2023. Signed by Judge Kari A. Dooley on 11/16/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/16/2023 | | Set Deadlines: Joint Status Report due by 12/1/2023. (Alquesta, Steven) (Entered: 11/16/2023) |
| 11/29/2023 | 67 | Joint REPORT of Rule 26(f) Planning Meeting. (Sconzo, James) (Entered: 11/29/2023) |
| 12/04/2023 | 68 | Order on Pretrial Deadlines. The Court has reviewed 67 , the parties' Rule 26(f) Report, and the parties held a Rule 16(b) Conference on November 14, 2023. The Rule 26(f) Report is Approved, Adopted, and So Ordered, except as set forth below.<br><br>Pursuant to Local Rule 16(b), the Court orders as follows: The Plaintiff shall move to amend the pleadings or move to join additional parties by **December 31, 2023**. The Defendants shall move to join additional parties by **January 31, 2024**. All discovery shall be concluded by **April 15, 2025**. Dispositive motions, if any (see Local Rule 56(c)), shall be filed by **June 15, 2025**. The Court will set a date for filing a joint trial memorandum after the close of discovery. The joint trial memorandum shall comport with this Court's standing order, which will be separately docketed.<br><br>Defendant Jane Doe's time constraints notwithstanding, the discovery deadline in this case is not likely to be further extended, absent unforeseen and extraordinary circumstances. |

| | | |
|---|---|---|
| | | A telephonic status conference is scheduled for April 22, 2025 at 2:00 pm. A separate calendar shall be docketed. Signed by Judge Kari A. Dooley on 12/4/2023. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/04/2023 | | Set Deadlines/Hearings: Motion to Amend Pleadings due by 12/31/2023; Answer Deadline Updated for All Defendants. Responsive pleading due 1/31/2024; Discovery due by 4/15/2025; Dispositive Motions due by 6/15/2025; Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/04/2023) |
| 12/11/2023 | 69 | Amended REPORT of Rule 26(f) Planning Meeting. (Pattis, Norman) (Entered: 12/11/2023) |
| 12/11/2023 | 70 | Joint MOTION for Revision of the Rule 26(f) Report of Parties' Planning Meeting Order by Jane Doe. (Gooley, Brendan) (Entered: 12/11/2023) |
| 12/13/2023 | 71 | AMENDED SCHEDULING ORDER re 70 , Joint MOTION for Revision of the Rule 26(f) Report. Initial Disclosures shall be exchanged on **February 1, 2024**. To the extent that Plaintiff's written discovery requests seek material duplicative of the initial disclosures, Defendants may indicate as much in its responses and need not reproduce any such materials. Plaintiff shall be allowed until **February 8, 2024** to file motions to join additional parties and/or motions to amend the complaint. Defendants shall be allowed until **March 8, 2024** to file motions to join additional parties or to file a response to the operative complaint. Plaintiff's request for permission to notice 20 depositions is DENIED without prejudice. If, following written discovery, the Plaintiff is able to identify more than 10 individuals whose deposition he believes are appropriately noticed, he may renew his request. Defendants may renew any objection as well. All other deadlines previously set remain. Signed by Judge Kari A. Dooley on 12/13/2023. (Alquesta, Steven) Modified on 12/13/2023 (Gould, K.). (Entered: 12/13/2023) |
| 12/13/2023 | | Set Deadlines/Hearings: Amended Pleadings due by 2/8/2024; Answer Deadline Updated for All Defendants. Responsive pleading due 3/8/2024; Discovery due by 4/15/2025; Dispositive Motions due by 6/15/2025; Status Conference set for 4/22/2025 02:00 PM before Judge Kari A. Dooley. Telephonic Conference Line: 888-278-0296; Access Code: 80-77-899. (Alquesta, Steven) (Entered: 12/13/2023) |
| 12/20/2023 | 72 | NOTICE of Appearance by Giovanna T. Weller on behalf of Yale University (Weller, Giovanna) (Entered: 12/20/2023) |
| 12/27/2023 | 73 | MOTION to Seal Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |
| 12/27/2023 | 74 | SEALED MOTION Emergency Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 12/27/2023) |
| 12/27/2023 | 75 | Sealed Document: Memorandum of Law In Support of Emergency Motion for Judgment of Dismissal by Jane Doe re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal . (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J) (Gooley, Brendan) (Entered: 12/27/2023) |

| 12/28/2023 | 76 | ORDER re 74 Emergency Motion for Judgment of Dismissal. The Court will not take up the 74 motion to dismiss on an emergency basis. Plaintiff's opposition to the motion is due on or before January 17, 2024.<br>Signed by Judge Kari A. Dooley on 12/28/2023. (Alquesta, Steven) (Entered: 12/28/2023) |
|---|---|---|
| 01/16/2024 | 77 | Sealed Document: Mr. Khan's Objection to Emergency Motion for Judgment of Dismissal by Saifullah Khan . (Pattis, Norman) (Entered: 01/16/2024) |
| 01/30/2024 | 78 | MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe. (Gooley, Brendan) (Entered: 01/30/2024) |
| 01/30/2024 | 79 | Sealed Document: Reply in Further Support of Motion for Judgment of Dismissal by Jane Doe . (Attachments: # 1 Exhibit K (Sealed), # 2 Exhibit L (Sealed), # 3 Exhibit M (Sealed))(Gooley, Brendan) (Entered: 01/30/2024) |
| 03/04/2024 | 80 | MOTION to Seal Memorandum of Law in Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 81 | MOTION for Protective Order *(Redacted)* by Jane Doe.Responses due by 3/25/2024 (Attachments: # 1 Memorandum in Support Redacted, # 2 Exhibit A, # 3 Exhibit B) (Gooley, Brendan) (Entered: 03/04/2024) |
| 03/04/2024 | 82 | SEALED MOTION *for a* Protective Order by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Gooley, Brendan) (Entered: 03/04/2024) |
| 03/05/2024 | 83 | Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024 by Jane Doe. (Gooley, Brendan) (Entered: 03/05/2024) |
| 03/06/2024 | 84 | SCHEDULING ORDER. Oral argument on 74 Defendant Doe's Motion for Judgment of Dismissal shall be heard on March 18, 2024, at 10:00 AM. Plaintiff shall personally appear at oral argument. The Court will also address Defendant Doe's 83 Motion for Extension of Time. A calendar entry with further details will be separately docketed. Signed by Judge Kari A. Dooley on 3/6/2024. (Alquesta, S) (Entered: 03/06/2024) |
| 03/06/2024 | 85 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. Oral Argument on 74 Defendant Doe's Motion for Judgment of Dismissal set for March 18, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 03/06/2024) |
| 03/08/2024 | 86 | First MOTION to Amend/Correct 25 Answer to Complaint, *to Add Affirmative Defenses* by Yale University.Responses due by 3/29/2024 (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B)(Noonan, Patrick) (Entered: 03/08/2024) |
| 03/15/2024 | 87 | MOTION to Seal Proposed Sur-Reply and Exhibits by Jane Doe. (Gooley, Brendan) (Entered: 03/15/2024) |
| 03/15/2024 | 88 | SEALED MOTION Motion for Sur-Reply and Exhibits by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit N, # 3 Exhibit O, # 4 Exhibit P, # 5 Exhibit Q)(Gooley, Brendan) (Entered: 03/15/2024) |
| 03/15/2024 | 89 | MOTION to Vacate *Order Treating Jane Doe Pesudonyously* by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |
| 03/15/2024 | 90 | OBJECTION *to Jane Doe's Motion for a Protective Order* filed by Saifullah Khan. (Pattis, Norman) (Entered: 03/15/2024) |

| 03/18/2024 | 91 | Minute Entry. Proceedings held before Judge Kari A. Dooley: denying 74 Sealed Motion; Motion Hearing held on 3/18/2024 re 74 SEALED MOTION Emergency Motion for Judgment of Dismissal filed by Jane Doe. As ordered on the record, the Plaintiff shall not identify Jane Doe in any social media communication or elsewhere and he shall remove his posts that reference her identification. 38 minutes(Court Reporter Tracy Gow.) (Gould, K.) Modified docket text on 3/19/2024 (Pesta, J.). (Entered: 03/18/2024) |
|---|---|---|
| 03/18/2024 | 92 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for ruling on motions 82 SEALED MOTION *for a Protective Order*, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 81 MOTION for Protective Order *(Redacted).* Signed by Judge Kari A. Dooley on 3/18/2024. Motion referred to Magistrate Judge Maria E. Garcia. (Gould, K.) (Entered: 03/18/2024) |
| 03/18/2024 | 93 | ORDER GRANTING 73 Motion to Seal; granting 78 Motion to Seal; granting 80 Motion to Seal; granting 73 MOTION to Seal Emergency Motion for Judgment of Dismissal, 78 MOTION to Seal Reply in Further Support of Motion for Judgment of Dismissal, 80 MOTION to Seal Memorandum of Law in Support of Motion for Protective Order, 87 MOTION to Seal Proposed Sur-Reply and Exhibits ; granting 87 Motion to Seal. The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern. GRANTING 83 Consent MOTION for Extension of Time until 30 days after Decision on Jane Doe's Motion for Judgment of Dismissal or 60 days from current deadline of 3.8.2024, Defendant's shall respond to Plaintiff's complaint on or before **May 7, 2024.** Signed by Judge Kari A. Dooley on 3/18/2024. (Gould, K.) (Entered: 03/18/2024) |
| 03/26/2024 | 94 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on March 18, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 4/16/2024. Redacted Transcript Deadline set for 4/26/2024. Release of Transcript Restriction set for 6/24/2024. (Gow, T.) (Entered: 03/26/2024) |
| 03/29/2024 | 95 | MOTION to Seal Reply in Further Support of Motion for Protective Order by Jane Doe. (Gooley, Brendan) (Entered: 03/29/2024) |
| 03/29/2024 | 96 | SEALED MOTION Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 03/29/2024) |
| 04/01/2024 | 97 | MOTION for Extension of Time until October 15, 2024 Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/01/2024) |
| 04/01/2024 | 98 | NOTICE of Appearance by Alexander T. Taubes on behalf of Saifullah Khan (Taubes, Alexander) (Entered: 04/01/2024) |
| 04/01/2024 | 99 | ORDER Denying without prejudice 97 Motion for Extension of Time for failure to comply with Local Rule 7(b). Signed by Judge Kari A. Dooley on 4/1/2024. (Alquesta, S) (Entered: 04/01/2024) |

| 04/05/2024 | 100 | MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/05/2024 | 101 | MOTION to Seal Motion to Continue Anonymity by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 102 | Memorandum in Opposition re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 04/05/2024) |
| 04/05/2024 | 103 | SEALED MOTION TO CONTINUE ANONYMITY by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A, # 3 Exhibit B, # 4 Exhibit C, # 5 Exhibit D, # 6 Exhibit E, # 7 Exhibit F, # 8 Exhibit G, # 9 Exhibit H)(Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 104 | OBJECTION re 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously* filed by Jane Doe. (Gooley, Brendan) (Entered: 04/05/2024) |
| 04/05/2024 | 105 | MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions by Saifullah Khan. (Pattis, Norman) (Entered: 04/05/2024) |
| 04/11/2024 | 106 | ORDER granting 86 Motion to Amend/Correct. Absent objection, Defendant Yale Universitys motion to amend its answer to add affirmative defenses is granted. Defendant Yale University shall docket the amended answer attached as Exhibit B therein, ECF No. 86-3, as a new docket entry. Signed by Judge Kari A. Dooley on 4/11/2024. (Alquesta, S) (Entered: 04/11/2024) |
| 04/12/2024 | 107 | *AMENDED* ANSWER to 1 Complaint with Affirmative Defenses by Yale University. (Weller, Giovanna) (Entered: 04/12/2024) |
| 04/12/2024 | 108 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for rulings on motions including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 96 SEALED MOTION Reply in Further Support of Motion for a Protective Order, 81 MOTION for Protective Order *(Redacted)*, 95 MOTION to Seal Reply in Further Support of Motion for Protective Order. Signed by Judge Kari A. Dooley on 4/12/2024. Motions referred to Magistrate Judge Maria E. Garcia.(Gould, K.) (Entered: 04/12/2024) |
| 05/07/2024 | 109 | ANSWER to 1 Complaint with Affirmative Defenses by Jane Doe.(Gooley, Brendan) (Entered: 05/07/2024) |

11/4/24, 12:12 PM

| | | |
|---|---|---|
| 05/13/2024 | 110 | ORDER REFERRING CASE to Magistrate Judge Maria E. Garcia for case management and pretrial non dispositive matters including 88 SEALED MOTION Motion for Sur-Reply and Exhibits, 103 SEALED MOTION TO CONTINUE ANONYMITY, 82 SEALED MOTION *for a* Protective Order, 89 MOTION to Vacate *Order Treating Jane Doe Pesudonyously*, 100 MOTION for Extension of Time until 10/15/2024*(Motion to Modify Scheduling Order)* Complete discovery & depositions, 105 MOTION for Extension of Time until 10/15/2025*REVISED (Motion to Modify Scheduling Order)* Complete discovery & depositions, 96 SEALED MOTION Reply in Further Support of Motion for a Protective Order, 81 MOTION for Protective Order *(Redacted)*, 95 MOTION to Seal Reply in Further Support of Motion for Protective Order, 101 MOTION to Seal Motion to Continue Anonymity.<br>Signed by Judge Kari A. Dooley on 5/13/2024. Motions and case management referred to Magistrate Judge Maria E. Garcia.(Gould, K.) (Entered: 05/13/2024) |
| 05/14/2024 | 111 | ORDER re: 110 Referral Order and for Chamber's Copies.<br>The parties will provide two (2) tabbed binders with copies of all of the referred motions and responses, printed from CMecf, within seven (7) days.<br>Signed by Judge Maria E. Garcia on 5/14/24. (Esposito, A.) (Entered: 05/14/2024) |
| 06/11/2024 | 112 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. In-person Status Conference re: all pending motions set for **6/20/2024 at 11:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Lee, E) (Entered: 06/11/2024) |
| 06/14/2024 | 113 | MOTION to Seal Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |
| 06/14/2024 | 114 | SEALED MOTION for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/14/2024) |
| 06/18/2024 | 115 | ORDER finding as moot 88 Sealed Motion.<br>Jane Doe filed an Emergency Motion for Judgment of Dismissal under seal on December 27, 2023. *See* ECF No. 74 . On March 6, 2024once the motion was fully briefedJudge Dooley scheduled oral argument for March 18, 2024. *See* ECF No. 84. Three days before the hearing, Jane Doe filed a Motion to File a Sur-Reply, attaching exhibits under seal. While Judge Dooley did not rule on the motion itself, she and counsel discussed at length Plaintiff's social media posts, including those that were submitted as exhibits to the Sur-Reply. *See* ECF No. 94 at 5:425, 8:249:19, 14:419:5, 23:1325:20. Judge Dooley ultimately denied the motion on the grounds that Khan did not violate a court order, because no party had previously sought and obtained a protective order preventing public disclosure. *See id.* Because the topics raised in the Sur-Reply were discussed during the hearing and the Court denied the motion on independent grounds, the Court finds this motion to be MOOT.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/18/2024 | 116 | ORDER terminating 96 Sealed Motion.<br>Jane Doe's counsel moved to seal her Reply in Further Support of Motion for a Protective Order at ECF No. 95 but then filed the Reply as a Sealed Motion rather than filing the Reply under seal (the latter of which is permitted by Local Rule 5(e)4). Accordingly, the Court terminates the motion and construes it as a Reply.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |

| 06/18/2024 | 117 | ORDER granting 95 Motion to Seal Reply in Further Support of Motion for Protective Order by Jane Doe; granting 101 Motion to Seal Motion to Continue Anonymity by Jane Doe; and granting 113 Motion to Seal Motion for Sur-Reply in Further Support of Motion for a Protective Order; for the same reasons stated in Judge Dooley's previous ruling on motions to seal, at ECF No. 93 : "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered.<br>Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
|---|---|---|
| 06/18/2024 | 118 | ORDER granting 114 Sealed Motion for Sur-Reply in Further Support of Motion for a Protective Order by Jane Doe for good cause shown. *See* D. Conn. L. Civ. R. 7(d) ("No sur-replies may be filed without permission of the Court, which may, in its discretion, grant permission upon a showing of good cause.") Signed by Judge Maria E. Garcia on 6/18/2024. (Cabral, D) (Entered: 06/18/2024) |
| 06/19/2024 | 119 | RULING and ORDER denying 89 Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously and granting 103 Jane Doe's Motion to Continue Anonymity.<br>The parties will be prepared to address the remaining pending motions at oral argument on June 20, 2024.<br>Signed by Judge Maria E. Garcia on 6/19/2024. (Esposito, A.) (Entered: 06/19/2024) |
| 06/20/2024 | 120 | Minute Entry. Proceedings held before Judge Maria E. Garcia: taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion; taking under advisement 100 Motion for Extension of Time and taking under advisement 105 Motion for Extension of Time. In-person status conference and oral argument held on 6/20/2024 re Motions 81 , 82 , 100 , and 105 . 49 minutes (Court Reporter CourtSmart.) (Langello, N) (Entered: 06/20/2024) |
| 06/21/2024 | 121 | ORDER taking under advisement 81 Motion for Protective Order; taking under advisement 82 Sealed Motion for Protective Order; denying without prejudice 100 Motion for Extension of Time to October 15, 2024 ; denying without prejudice 105 Motion for Extension of Time to October 15, 2025 to complete discovery and depositions (Revised).<br><br>ORDER.<br>As stated on the record during oral argument on June 20, 2024, Plaintiff's Motions to Modify the Scheduling Order are denied without prejudice to refiling after the parties' meet and confer conferences. ECF Nos. 100, 105. Plaintiff is advised that any future request to modify the current scheduling order should include interim deadlines and comply with Local Rule 7. *See* D. Conn. L. Civ. R. 7(b)(1) ("All motions for extensions of time must be decided by a Judge and will not be granted except for good cause. The good cause standard requires a particularized showing that the time limitation in question cannot reasonably be met despite the diligence of the party seeking the extension.").<br><br>Defendant Jane Doe's Motions for Protective Order are taken under advisement. ECF Nos. 81, 82. The parties will meet and confer on the contours of a protective order and file a Joint Status Report with proposed language by June 27, 2024.<br><br>Signed by Judge Maria E. Garcia on 9/21/2024. (Esposito, A.) (Entered: 06/21/2024) |
| 06/24/2024 | 122 | MOTION to Seal Second Emergency Motion to Dismiss by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |

| | | |
|---|---|---|
| 06/24/2024 | 123 | SEALED MOTION Second Emergency Motion for Judgment of Dismissal by Jane Doe. (Attachments: # 1 Memorandum in Support, # 2 Exhibit A)Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/24/2024) |
| 06/25/2024 | 124 | ORDER re 123 Second Emergency Motion for Judgment of Dismissal filed by Jane Doe (Sealed). <br> Plaintiff's response is due by the close of business July 1, 2024. <br> Oral argument is scheduled for July 3, 2024 at 1:30 PM. Plaintiff shall be present at the hearing. <br> Signed by Judge Maria E. Garcia on 6/25/24. (Esposito, A.) (Entered: 06/25/2024) |
| 06/25/2024 | 125 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. <br> ORDER re: 123 Second Emergency Motion for Judgement of Dismissal by Jane Doe (Sealed). A hearing is scheduled for 7/3/2024 at 01:30 PM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. Plaintiff shall be present at the hearing. (Esposito, A.) (Entered: 06/25/2024) |
| 06/26/2024 | 126 | NOTICE of Appearance by Maria Laurato on behalf of Yale University (Laurato, Maria) (Entered: 06/26/2024) |
| 06/27/2024 | 127 | NOTICE of Appearance by Mario K. Cerame on behalf of Saifullah Khan *filing as additional counsel, particularly as concerns free speech interests* (Cerame, Mario) (Entered: 06/27/2024) |
| 06/27/2024 | 128 | Consent MOTION for Extension of Time until July 8, 2024 to Submit Joint Status Report by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/27/2024) |
| 06/28/2024 | 129 | ORDER granting 128 Consent Motion for Extension of Time until July 8, 2024 to Submit Joint Status Report. Signed by Judge Maria E. Garcia on 6/28/24. (Esposito, A.) (Entered: 06/28/2024) |
| 06/28/2024 | 130 | Emergency MOTION to Dismiss *Plaintiff's Complaint* by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University.Responses due by 7/19/2024 (Attachments: # 1 Memorandum in Support) (Noonan, Patrick) (Entered: 06/28/2024) |
| 06/28/2024 | 131 | MOTION for Extension of Time until ten days*to file an* Objection to Motion to Dismiss or Other Sanction 119 Order on Motion to Vacate,, Order on Sealed Motion, by Saifullah Khan. (Attachments: # 1 Exhibit correspondence with court, # 2 Exhibit correspondence with counsel)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 132 | MOTION for *Order to the clerk to grant* access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan. (Attachments: # 1 correspondence with court)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 133 | MOTION to Seal Objection to Plaintiff's Motion for Extension of Time by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 134 | NOTICE of Appearance by Giovanna T. Weller on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Weller, Giovanna) (Entered: 06/28/2024) |

| 06/28/2024 | 135 | NOTICE of Appearance by Maria Laurato on behalf of Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler (Laurato, Maria) (Entered: 06/28/2024) |
|---|---|---|
| 06/28/2024 | 136 | ORDER granting in part and denying in part 131 Motion for Extension of Time to respond to Defendant Jane Doe's Second Emergency Motion for Entry of Judgment of Dismissal. ECF No. 123 (filed June 24, 2024). Plaintiff's request for an additional ten days to file a response is denied. Good cause has not been shown given the issues set forth in the emergency motion and the Court's ability to hold an emergency hearing. Plaintiff is represented by four capable attorneys. The appearance yesterday by the fourth attorney does not establish good cause for a ten day extension. Accordingly, absent consent and good cause, this request for an additional ten days to respond to Doe's Second Emergency Motion for Entry of Judgment of Dismissal is denied.<br>The request for more time is granted in part. Plaintiff's response is due by 11:59 PM on Monday, July 1, 2024.<br>Signed by Judge Maria E. Garcia on 6/28/2024. (Cabral, D) (Entered: 06/28/2024) |
| 06/28/2024 | 137 | MOTION for Reconsideration re 136 Order on Motion for Extension of Time,,, *and to preserve the record as to relevant facts for later review* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 138 | OBJECTION re 133 MOTION to Seal Objection to Plaintiff's Motion for Extension of Time filed by Saifullah Khan. (Cerame, Mario) (Entered: 06/28/2024) |
| 06/28/2024 | 139 | MOTION to Seal Objection to Plaintiff's Motion for Reconsideration by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/28/2024 | 140 | Sealed Document: Objection to Plaintiff's Motion for Reconsideration by Jane Doe . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 06/28/2024) |
| 06/29/2024 | 141 | ORDER finding as moot 133 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Extension of Time in light of the Court's ruling [ECF No. 136] granting in part and denying in part Plaintiffs Motion for Extension of Time *before* Doe filed an objection.. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 142 | VACATED: ORDER granting 123 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) Modified on 6/29/2024 to indicated order was vacated (Ruocco, M.). (Entered: 06/29/2024) |
| 06/29/2024 | 143 | ORDER denying 137 Plaintiff's Motion for Reconsideration.<br><br>"The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Generally, "[t]he major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). |

Plaintiff presents no new evidence, arguments or caselaw on reconsideration. Rather, Attorney Cerame points out that although Plaintiff has four attorneys who have filed notices of appearance on his behalf, apparently only he, who filed a notice of appearance after the deadline for responding to Doe's Second Emergency Motion for Judgment of Dismissal had been set by the Court, is tasked with responding to that Motion. It has long been settled that the "fact that an attorney may have engaged co-counsel to assist him in the conduct of a case does not relieve that counsel of record of his duty to supervise all aspects of the litigation." *J.M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981) (Cabranes, J.) (citing *Maryland Metals, Inc. v. Harbaugh*, 33 Md. App. 570, 575-576, 365 A.2d 600, 603 (Ct. Spec. App.1976) ("In the practice of law, a lawyer is charged with the responsibility of knowing what is entered upon the dockets, from time to time, in the case in which he is counsel. It is his duty to follow the dockets so as to keep himself abreast of the happenings in his case.... Put in another more graphic way, the buck stops with the attorney's appearance as counsel of record."). An appearing attorney has a "responsibility to 'investigate and prepare every phase' of his client's case". *J.M. Cleminshaw Co.*, 93 F.R.D. 338 at 348 n.5, n.8 (citations omitted); *see also Ortiz v. Stambach*, No. 1:16-CV-00321 (EAW), 2022 WL 1746771, at *6 (W.D.N.Y. May 31, 2022) (rejecting counsel's "suggested argument that co-counsel was responsible for any expert disclosure failures" and reminding counsel that he was admitted to the bar and it was incumbent on him to ensure that his client's discovery obligations were satisfied).

Furthermore, the "courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). After consideration of Doe's objection, the Court finds that Attorney Cerame's argument that he had no access to the sealed motions disingenuous. Doe's counsel offered to provide Attorney Cerame with the sealed documents on June 27, 2024 at 4:02 PM and again on June 28, 2024 at 12:24 PM. *See* ECF No. 140-1 at 2, 4. Moreover, other counsel of record for Plaintiff had access to the sealed documents. Doe argues that "there is no basis for extending the briefing or hearing... because Plaintiff has seemingly not taken down the posts that identify Jane and created this exigency." ECF No. 140 at 1. The Court agrees.

Because Plaintiff failed to identify any ground sufficient to justify reconsideration, the Motion for Reconsideration is **DENIED**. Signed by Judge Maria E. Garcia on 6/29/24. (Esposito, A.) (Entered: 06/29/2024)

| 06/29/2024 | 144 | ORDER In light of the filing of Yale's Emergency Motion for Judgment of dismissal of the Plaintiff's Complaint (ECF No. 130) filed on June 28, 2024, to which Plaintiff is entitled to respond to, and the Court's preference to hold an evidentiary hearing on both Emergency Motions on the same day, the Court modifies the response deadlines and schedule as follows: Plaintiff's response to Doe's Second Emergency Motion for Dismissal (ECF No. 123) and Yale's Emergency Motion to Dismiss (ECF No. 130) is now July 5, 2024, Defendants may file a reply by July 9, 2024, and the evidentiary hearing on both Motions is rescheduled to July 11, 2024 at 10:00 am. A new calendar will issue, Plaintiff shall appear for the evidentiary hearing. Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |

11/4/24, 12:12 PM
CT CMECF NextGen

| 06/29/2024 | 145 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 7/3/24.* Evidentiary Hearing set for 7/16/2024 at 10:00 AM in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |
|---|---|---|
| 06/29/2024 | 146 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION. *RESET FROM 7/16/24* Evidentiary Hearing set for **7/11/2024 at 10:00 AM** in Courtroom Four, 141 Church Street, New Haven, CT before Judge Maria E. Garcia. (Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 147 | ORDER re: 146 July 11, 2024 Hearing. The parties will provide two chamber's copies of their motions and responsive pleadings, with tabs of the exhibits, by the close of business July 9, 2024. Signed by Judge Maria E. Garcia on 6/29/24.(Esposito, A.) (Entered: 06/29/2024) |
| 06/29/2024 | 148 | ORDER Vacating 142 Order on Sealed Motion, Order on Motion to Seal, Signed by Judge Maria E. Garcia on 6/29/24.(Ruocco, M.) (Entered: 06/29/2024) |
| 06/29/2024 | 149 | ORDER granting 122 Defendant Jane Doe's Motion to Seal Second Emergency Motion to Dismiss by Jane Doe (ECF No. 123 (SEALED)); granting 139 Defendant Jane Doe's Motion to Seal Objection to Plaintiff's Motion for Reconsideration (ECF No. 140 (SEALED)); for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 6/29/24. (Ruocco, M.) (Entered: 06/29/2024) |
| 07/01/2024 | 150 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on 06/20/24 before Judge Maria E. Garcia. Court Reporter: eScribers, LLC. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 7/22/2024. Redacted Transcript Deadline set for 8/1/2024. Release of Transcript Restriction set for 9/29/2024. (Gottlieb, J) (Entered: 07/01/2024) |
| 07/03/2024 | 151 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. Telephonic Status Conference set for 7/10/2024 at 10:00 AM before Judge Maria E. Garcia. The parties will call the conference line at: (888) 557-8511; Access Code: 3852222# (Esposito, A.) (Entered: 07/03/2024) |
| 07/03/2024 | 152 | OBJECTION re 119 Order on Motion to Vacate,, Order on Sealed Motion, *objection pursuant to Local Rule 72.2* filed by Saifullah Khan. (Cerame, Mario) (Entered: |

| | | 07/03/2024) |
|---|---|---|
| 07/04/2024 | 153 | OBJECTION as Per Entry 152 with Sealed Exhibits by Saifullah Khan. (Attachments: # 1 Exhibit, # 2 Exhibit)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.). (Entered: 07/04/2024) |
| 07/04/2024 | 154 | OBJECTION re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits, 152 Objection *Supplemental to Objection* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/04/2024) |
| 07/04/2024 | 155 | OBJECTION *to factual finding that counsel was "disingenuous," plausibly violating duty of candor to the tribunal* filed by Saifullah Khan. (Attachments: # 1 Exhibit Counsel's Inbox Showing Emails (and lack thereof) from Counsel Gooley)(Cerame, Mario) (Entered: 07/04/2024) |
| 07/05/2024 | 156 | MOTION for Extension of Time until five days Objections to Motions to Dismiss 144 Order,,, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint*, 146 Calendar Entry, 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal, 145 Calendar Entry, by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/05/2024) |
| 07/06/2024 | 157 | OBJECTION to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 by Saifullah Khan. (Attachments: # 1 Memorandum in Opposition to Motions to Dismiss)Motions referred to Maria E. Garcia(Cerame, Mario) Modified on 8/6/2024 to correct docket text. (Fanelle, N.) (Entered: 07/06/2024) |
| 07/08/2024 | 158 | RESPONSE re 155 Objection, *to Court's Finding that Plaintiff Acted Disingenuously* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 159 | Consent MOTION for Extension of Time until 7/12/2024 file language regarding protective order 121 Order on Motion for Protective Order,,,,,, Order on Sealed Motion,,,,,,, Order on Motion for Extension of Time,,,,,,,,,,, 129 Order on Motion for Extension of Time by Saifullah Khan. Motions referred to Maria E. Garcia(Taubes, Alexander) (Entered: 07/08/2024) |
| 07/08/2024 | 160 | OBJECTION *TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME AS TO YALE* filed by Jane Doe. (Gooley, Brendan) (Entered: 07/08/2024) |
| 07/08/2024 | 161 | MOTION in Limine *as described in ECF 157.1 at page 2* by Saifullah Khan.Responses due by 7/29/2024 Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 07/08/2024) |
| 07/08/2024 | 162 | ORDER. Defendant Doe shall respond to Plaintiff's 153 Objection to Magistrate Judge Garcia's order at ECF No. 119 and request for *de novo* review on or before July 24, 2024. Signed by Judge Kari A. Dooley on 7/8/2024. (Alquesta, S) (Entered: 07/08/2024) |
| 07/08/2024 | 163 | ORDER granting 159 Motion for Extension of Time until July 12, 2024 to file language regarding proposed protective order. Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |
| 07/08/2024 | 164 | ORDER denying 156 Motion for Extension of Time 156 for the reasons set forth in 136 Order on Motion for Extension of Time and 143 Order on Motion for Reconsideration. In addition to repeatedly failing to meet the good cause standard, the instant motion fails to comply with D. Conn. L. Rule 7(b)3. which requires that "[a]ll motions for extension of time shall be filed at least three (3) business days before thedeadline sought to be extended [...]". Signed by Judge Maria E. Garcia on 7/8/2024. (Garcia, Maria) (Entered: 07/08/2024) |

11/4/24, 12:12 PM

| 07/09/2024 | 165 | MOTION to Seal Reply, Response and Objection by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 07/09/2024) |
|---|---|---|
| 07/09/2024 | 166 | Sealed Document: Reply in Further Support of Second Emergency Motion for Judgment of Dismissal by Jane Doe re 157 SEALED MOTION Objection to Emergency Motions to Dismiss and Memorandum in Opposition, concerning ECF Nos. 123, 131 . (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 167 | OBJECTION *in part to motion to seal, specifically as concerns 161, motion in limine* filed by Saifullah Khan. (Cerame, Mario) (Entered: 07/09/2024) |
| 07/09/2024 | 168 | Sealed Document: Response to Plaintiff's Rule 72.2 Motion by Jane Doe re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits . (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 169 | Sealed Document: Objection to Plaintiff's Motion in Limine by Jane Doe re 161 MOTION in Limine *as described in ECF 157.1 at page 2* . (Gooley, Brendan) (Entered: 07/09/2024) |
| 07/09/2024 | 170 | ORDER granting 132 MOTION for Order to the clerk to grant access to any sealed documents in this case that are necessary to represent the Plaintiff Order by Saifullah Khan.<br>The clerk of the court will provide Attorney Mario Cerame with access to sealed documents. Signed by Judge Maria E. Garcia on 7/9/2024. (Esposito, A.) (Entered: 07/09/2024) |
| 07/09/2024 | 171 | REPLY to Response to 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/09/2024) |
| 07/09/2024 | 172 | OBJECTION re 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 07/09/2024) |
| 07/10/2024 | 173 | ORDER 151 re: June 10, 2024 Telephonic Status Conference.<br>As discussed, the hearing scheduled for July 11, 2024, on Defendant Doe's Second Emergency Motion to Dismiss, (ECF No. 123) and Defendant Yale's Emergency Motion to Dismiss Plaintiff's Complaint (ECF No. 130) is CANCELLED.<br>Judge Dooley will issue a calendar rescheduling the hearing in due course.<br>Signed by Judge Maria E. Garcia on 7/10/24. (Esposito, A.) (Entered: 07/10/2024) |
| 07/10/2024 | 174 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Status Conference held on 7/10/2024. Total Time: 7 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 07/10/2024) |
| 07/11/2024 | 175 | First MOTION for Kevin Murray Smith to Withdraw as Attorney by Saifullah Khan. Motions referred to Maria E. Garcia(Smith, Kevin) (Entered: 07/11/2024) |
| 07/11/2024 | 176 | MOTION for Norman A. Pattis to Withdraw as Attorney *Motion for Permission to Withdraw Appearance* by Saifullah Khan. Motions referred to Maria E. Garcia(Pattis, Norman) (Entered: 07/11/2024) |
| 07/12/2024 | 177 | ORDER granting 175 Motion to Withdraw as Attorney. Attorney Kevin Murray Smith terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |

| 07/12/2024 | 178 | ORDER granting 176 Motion to Withdraw as Attorney. Attorney Norman A. Pattis terminated. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
|---|---|---|
| 07/12/2024 | 179 | SCHEDULING ORDER. In light of Judge Garcia's order at ECF No. 173, Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 shall be heard on July 25, 2024, at 10:00 AM. Plaintiff shall appear personally at oral argument. A calendar entry with further details shall be separately docketed. Signed by Judge Kari A. Dooley on 7/12/2024. (Alquesta, S) (Entered: 07/12/2024) |
| 07/12/2024 | 180 | NOTICE OF E-FILED CALENDAR. THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE. ALL PERSONS ENTERING THE COURTHOUSE MUST PRESENT PHOTO IDENTIFICATION.Oral Argument on the defendants' emergency motions for judgment of dismissal at ECF Nos. 123 and 130 is set for July 25, 2024, at 10:00 AM in Courtroom Two, 915 Lafayette Blvd., Bridgeport, CT before Judge Kari A. Dooley. (Alquesta, S) (Entered: 07/12/2024) |
| 07/15/2024 | 181 | Joint STATUS REPORT *Regarding Proposed Protective Order* by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Gooley, Brendan) (Entered: 07/15/2024) |
| 07/17/2024 | 182 | ORDER granting 165 Defendant Jane Doe's MOTION to Seal Reply, Response and Objection. The Motion to Seal is granted as to her: (1) Reply in Further Support of her Second Emergency Motion for Judgment of Dismissal; (ECF No. 123 (SEALED)); (2) Response to Plaintiffs Rule 72.2 Objection; and (3) Objection to Plaintiffs Motion in Limine; for the same reasons stated in the Court's previous rulings on motions to seal, at ECF Nos. 93, 117, 149: "The Court finds a clear and compelling reason for sealing as the filings contain privileged and confidential information. The Court further finds that the proposed sealing is narrowly tailored to address this privacy concern." It is so ordered. Signed by Judge Maria E. Garcia on 7/17/24. (Esposito, A.) (Entered: 07/17/2024) |
| 07/24/2024 | 183 | RESPONSE re 153 SEALED MOTION 72.2 Objection as Per Entry 152 with Sealed Exhibits filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Weller, Giovanna) (Entered: 07/24/2024) |
| 07/24/2024 | 184 | NOTICE by Saifullah Khan re 179 Scheduling Order, 152 Objection *Notice of Supplemental Authority* (Attachments: # 1 Supplement Order in Doe v. Butler U., 1:22-cv-1828, ECF No. 102 (S.D. Ind. July 23, 2024))(Cerame, Mario) (Entered: 07/24/2024) |
| 07/25/2024 | 185 | ORDER. Plaintiff may reply to Defendants' 168 and 183 responses to Plaintiff's 153 Objection to Judge Garcia's 119 ruling on or before August 7, 2024. Signed by Judge Kari A. Dooley on 7/25/2024. (Alquesta, S) (Entered: 07/25/2024) |
| 07/25/2024 | 187 | Minute Entry. Proceedings held before Judge Kari A. Dooley: taking under advisement 123 Sealed Motion; taking under advisement 130 Motion to Dismiss; So Ordered 161 Motion in Limine; Motion Hearing held on 7/25/2024 re 123 SEALED MOTION Second Emergency Motion for Judgment of Dismissal filed by Jane Doe, 130 Emergency MOTION to Dismiss *Plaintiff's Complaint* filed by Sarah Demers, Peter Salovey, Mark Solomon, Carole Goldberg, Lynn Cooley, Jonathon Halloway, Ann Kuhlman, Yale University, David Post, Stephanie Spangler, Paul Genecin, Marvin Chun, Joe Gordon, 161 MOTION in Limine *as described in ECF 157.1 at page 2* filed by Saifullah Khan. Total Time: 1 hours and 34 minutes(Court Reporter Tracy Gow.) (Gould, K) (Entered: 08/02/2024) |

11/4/24, 12:12 PM

| 07/25/2024 | 188 | Marked Exhibit List from July 25, 2024 Motion Hearing (Gould, K) (Entered: 08/02/2024) |
|---|---|---|
| 07/30/2024 | 186 | EXHIBIT by Jane Doe. (Attachments: # 1 Exhibit Access Guidelines, # 2 Exhibit Email from Lillian Perry, # 3 Exhibit Corrected Transcript (Additional Redaction by Jane Doe) (Gooley, Brendan) (Entered: 07/30/2024) |
| 08/06/2024 | 189 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Telephonic Discovery Status Conference re: Defendants' Motion for Protective Order, [ECF Nos. 81, 82], and the parties' Proposed Protective Order, [ECF No. 181], set for 8/13/2024 at 10:30 AM before Judge Maria E. Garcia.<br>The parties will call: 203-684-6202; and enter the Conference ID: 439 176 102# when prompted.<br>(Esposito, A.) (Entered: 08/06/2024) |
| 08/07/2024 | 190 | RESPONSE re 185 Order, 154 Objection, 168 Sealed Document, 186 Exhibit, 183 Response, 152 Objection *reply to responses by Defendants* filed by Saifullah Khan. (Cerame, Mario) (Entered: 08/07/2024) |
| 08/13/2024 | 191 | ORDER re: 80 81 Defendant Jane Doe's Motion for Protective Order.<br>Based on the discussion during today's telephonic discovery status conference, the parties will confer and submit a Revised Proposed Protective Order by **August 19, 2024**.<br>Signed by Judge Maria E. Garcia on 8/13/2024. (Esposito, A.) (Entered: 08/13/2024) |
| 08/13/2024 | 192 | Minute Entry for proceedings held before Judge Maria E. Garcia: Telephonic Discovery Status Conference held on 8/13/2024. Total Time: 11 minutes (Court Reporter Courtsmart.) (Santos, S) (Entered: 08/13/2024) |
| 08/16/2024 | 193 | Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re Motion for a Protective Order by Jane Doe. Motions referred to Maria E. Garcia(Gooley, Brendan) (Entered: 08/16/2024) |
| 08/19/2024 | 194 | ORDER granting 193 Consent MOTION for Extension of Time until August 26, 2024 to Submit Revised Language re: Motion for a Protective Order 81 82 .<br>Signed by Judge Maria E. Garcia on 8/19/24. (Esposito, A.) (Entered: 08/19/2024) |
| 08/26/2024 | 195 | Joint STATUS REPORT by Jane Doe. (Attachments: # 1 Text of Proposed Order)(Gooley, Brendan) (Entered: 08/26/2024) |
| 08/28/2024 | 196 | ORDER re: 195 Joint Status Report Regarding Proposed Protective Order.<br>The Court reviewed the parties' Proposed Protective Order. The Court would like to thank the parties for working collaboratively to reach an agreement.<br>On or before September 5, 2024, the parties will accept the track changes and file the Protective Order with Exhibit 1, executed by Plaintiff, for entry by the Court.<br>Signed by Judge Maria E. Garcia on 8/28/24. (Esposito, A.) (Entered: 08/28/2024) |
| 09/05/2024 | 197 | RESPONSE re 196 Order, by Saifullah Khan *EXECUTED PROTECTIVE ORDER*. (Taubes, Alexander) (Entered: 09/05/2024) |
| 09/06/2024 | 198 | ORDER APPROVING and ADOPTING the Parties' Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Materials.<br>Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |
| 09/06/2024 | 199 | ORDER finding as moot 81 Motion for Protective Order; finding as moot 82 Sealed Motion for Protective Order in light of the parties' agreed to Protective Order to Restrict Plaintiff's Access to Non-Public Sensitive Information. ECF No. 198. Signed by Judge Maria E. Garcia on 9/6/2024. (Esposito, A.) (Entered: 09/06/2024) |

11/4/24, 12:12 PM
CT CMECF NextGen

| | | |
|---|---|---|
| 09/16/2024 | 200 | TRANSCRIPT of Proceedings: Type of Hearing: Motion Hearing. Held on July 25, 2024 before Judge Kari A. Dooley. Court Reporter: Tracy Gow. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 10/7/2024. Redacted Transcript Deadline set for 10/17/2024. Release of Transcript Restriction set for 12/15/2024. (Gow, T.) (Entered: 09/16/2024) |
| 10/08/2024 | 201 | Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* by Saifullah Khan.Responses due by 10/29/2024 (Attachments: # 1 Exhibit DHS Letter)Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/08/2024) |
| 10/08/2024 | 202 | ORDER re: 201 Plaintiff's Emergency MOTION for Stay of Order Restricting Speech. Defendants' response is due on or before **October 14, 2024.**<br><br>Signed by Judge Maria E. Garcia on 10/8/24. (Esposito, A.) (Entered: 10/08/2024) |
| 10/14/2024 | 203 | OBJECTION re 201 Emergency MOTION to Stay re 119 Order on Motion to Vacate,, Order on Sealed Motion, *limited stay of order to allow response to Department of Homeland Security* filed by Jane Doe. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Gooley, Brendan) (Entered: 10/14/2024) |
| 10/16/2024 | 204 | ORDER 201 denying without prejudice Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech.<br>"Plaintiff requests permission from this Court to deliver any necessary documents, without redaction, to the Department of Homeland Security, U.S. Citizenship and Immigration Services ("DHS"), as per the October 3, 2024 Letter from DHS." ECF No. 201 at 1. The DHS letter requests three documents: (1) a certificate of disposition in Plaintiff's criminal case; (2) the official transcript from the court in the criminal case; and (3) a copy of a protective order filed against Plaintiff in Dearborn, Indiana. *Id.* Plaintiff represents that "both documents contain Doe's name" but did not state which of the three documents he was referring to. *Id.* Defendant Doe responds that she cannot meaningfully respond because Plaintiff refused to provide copies of the documents he intends to submit to DHS, and that Plaintiff has not shown that it "is necessary for Plaintiff to disclose Jane's name in order to comply with the request issued by the U.S. Citizenship and Immigration Services." ECF No. 203 at 1, 4. On this record, Plaintiff's motion raises more questions than answers.<br>Accordingly, Plaintiff's Emergency Motion for Limited Stay of Order Restricting Speech is denied without prejudice on the current record. The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.<br>SO ORDERED. Signed by Judge Maria E. Garcia on 10/16/2024. (Esposito, A.) (Entered: 10/16/2024) |

| | | |
|---|---|---|
| 10/17/2024 | 205 | MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 206 | Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech (entry 205 erroneously not flagged as emergency motion)* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/17/2024) |
| 10/17/2024 | 207 | Sealed Document: Sealed Exhibits Pursuant to ECF No. 204, Attached to ECF No. 206 by Saifullah Khan re 204 Order on Motion to Stay,,,,,,, 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech ( Exhibit Letter from DHS. (Attachments: # 1 Exhibit Certificate of Disposition, # 2 Exhibit Document Concerning Protective Order, # 3 Exhibit 2.26.2018 Transcript, # 4 Exhibit 2.28.2018 Transcript, # 5 Exhibit 3.1.2018 Transcript, # 6 Exhibit 3.2.2018 Transcript, # 7 Exhibit 3.5.2018 Transcript, # 8 Exhibit 3.6.2018 Transcript, # 9 Exhibit 3.7.2018 Transcript)(Cerame, Mario) (Entered: 10/17/2024)* |
| 10/18/2024 | 208 | MOTION to Withdraw 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech || corrected emergency motion filed at ECF No. 206* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/18/2024) |
| 10/18/2024 | 209 | ORDER. Defendants will file a response to Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order by Sunday, October 20, 2024. ECF No. 206.<br><br>Defendants will articulate the harm to permit Plaintiff to produce unredacted copies of the Trial Transcripts that have already been produced to DHS in 2021. ECF No. 206 at 5. Their response will include proposed redactions to the Trial Transcripts. ECF Nos. 207-3 through 207-9. Defendants will also state their position on ECF Nos. 207-1 ("Destroyed Case File Letter") and 207-2 ("Mycourts.IN.gov") and whether they continue to maintain an objection.<br><br>Oral argument is scheduled for Monday, October 21, 2024 at 3:00 PM. Plaintiffs immigration counsel will attend the hearing. The Court will distribute the Zoom information to the parties via email.<br>Signed by Judge Maria E. Garcia on 10/18/24. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 210 | NOTICE OF E-FILED CALENDAR: THIS IS THE ONLY NOTICE COUNSEL/THE PARTIES WILL RECEIVE.<br>Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 is set for 10/21/2024 at 03:00 PM before Judge Maria E. Garcia.<br>The Court will distribute the Zoom information to the parties via email. (Esposito, A.) (Entered: 10/18/2024) |
| 10/18/2024 | 211 | ORDER withdrawing 205 Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order.<br>ORDER granting 208 Motion to Withdraw in light of a duplicate filing. ECF No. 206.<br>Signed by Judge Maria E. Garcia on 10/18/2024. (Esposito, A.) (Entered: 10/18/2024) |

| | | |
|---|---|---|
| 10/20/2024 | 212 | RESPONSE re 205 MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* filed by Jane Doe. (Attachments: # 1 Exhibit A)(Gooley, Brendan) (Entered: 10/20/2024) |
| 10/20/2024 | 213 | RESPONSE re 206 Emergency MOTION to Vacate 204 Order on Motion to Stay,,,,,,, 119 Order on Motion to Vacate,, Order on Sealed Motion, *Motion to Vacate Order Restricting Speech, or, in the alternative, for Limited Stay or Lift of Order Restricting Speech* ( filed by Marvin Chun, Lynn Cooley, Sarah Demers, Paul Genecin, Carole Goldberg, Joe Gordon, Jonathon Halloway, Ann Kuhlman, David Post, Peter Salovey, Mark Solomon, Stephanie Spangler, Yale University. (Laurato, Maria) (Entered: 10/20/2024) |
| 10/21/2024 | 214 | MOTION for *Inquiry Concerning Public Access to October 21, 2024 Proceedings* by Saifullah Khan. Motions referred to Maria E. Garcia(Cerame, Mario) (Entered: 10/21/2024) |
| 10/21/2024 | 215 | NOTICE regarding hearing via Zoom: The Hearing on Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 scheduled for 10/21/2024 at 3:00 p.m. will be conducted via Zoom.

Call-in and Public Access Number: 1 646 828 7666

Meeting ID: 161 220 9850

Meeting Password: 713585

*The Court will distribute the video link to the parties via email.*

Please note: **Members of the public are permitted to join this hearing by audio only using the public access number above. Video participation is permitted by the parties and counsel only.** This is in accordance with the remote access policies of the Judicial Conference of the United States, which governs the practices of the federal courts. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, screenshots, streaming, and rebroadcasting in any form, of court proceedings. Violation of these prohibitions may result in sanctions, including restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the court.

NOTICE OF E-FILED CALENDAR re: Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 . Motion Hearing set for **10/21/2024 at 3:00 PM** before Judge Maria E. Garcia. (Santos, S) (Entered: 10/21/2024) |
| 10/21/2024 | 216 | ORDER re: 206 Plaintiff's Emergency Motion to Vacate Order, Or In the Alternative, For Limited Stay or Lift of Order. This motion is before the Court to address an October 3, 2024, USCIS/DHS letter (ECF No. 201-1) requesting three categories of documents from Plaintiff. A hearing was held on October 21, 2024, and the parties had an opportunity to be heard. For the reasons that follow, the motion is denied as moot in part, granted in part, and denied in part as follows:

Finding as moot as to the State of Connecticut Superior Court "Destroyed Case File Letter", at ECF No. 207-1, and the "MyCourts.IN.gov" Indiana Protective Order, at ECF No. 207-2, in light of the fact that these documents make no reference to Jane Doe.

The motion is granted as follows: Plaintiff may, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), provide a copy of the Official Transcript in *State of* |

*Connecticut v. Khan,* No. NNH-CR15-0162194 (Conn. Super. Ct.), which the Court defines as the transcript that redacted Jane Doe's name pursuant to Conn. Gen. Stat. §54-86e, that has been publicly available at least as of July 25, 2024. *See* ECF No. 186, 200. As stated on the record, to the extent that Plaintiff disagrees with the application of Conn. Gen. Stat. § 54-86e to the transcripts in the criminal case, his recourse is with the Connecticut Superior Court. This Court will not disturb what the Superior Court deems to be the Official Transcript. *See* ECF. No. 200, July 25, 2024 Hrg Tr. at 18:11-14.

The motion is denied as follows: Plaintiff may not provide, in response to the October 3, 2024 letter from USCIS/DHS (ECF No. 201-1), the unredacted trial transcripts, at ECF Nos. 207-3, 207-4, 207-5, 207-6, 207-7, 207-8 and 207-9, as the Court does not deem them responsive to the USCIS/DHS letter request.

The Court's Orders regarding the use of Jane Doe's name (ECF Nos. 91, 119) remain in full force and effect, except that Plaintiff is authorized to submit the Official Transcript from Plaintiff's criminal trial to USCIS/DHS, as defined here, provided that he may not disseminate the transcript to anyone else. SO ORDERED.

Signed by Judge Maria E. Garcia on 10/21/2024. (Esposito, A.) (Entered: 10/21/2024)

| | | |
|---|---|---|
| 10/21/2024 | 217 | ORDER finding as moot 214 MOTION for Inquiry Concerning Public Access to October 21, 2024 Proceedings by Saifullah Khan. The Zoom log-in information was provided on the docket. Signed by Judge Maria E. Garcia on 10/21/24. (Esposito, A.) (Entered: 10/21/2024) |
| 10/21/2024 | 219 | Minute Entry for proceedings held before Judge Maria E. Garcia: Motion Hearing held via zoom on 10/21/2024 re: Plaintiff's Emergency Motion to Vacate Order, or, in the Alternative, for Limited Stay or Lift of Order 206 . Total Time: 37 minutes (Court Reporter Courtsmart.) (Santos, S) Modified text on 10/24/2024 (Santos, S). (Entered: 10/22/2024) |
| 10/22/2024 | 218 | Emergency MOTION for Writ of Mandamus *as filed in 2d Cir. CoA* by Saifullah Khan. (Attachments: # 1 Appendix, # 2 T-1080 Doe, # 3 T-1080 Yale)(Cerame, Mario) (Entered: 10/22/2024) |
| 10/24/2024 | 220 | TRANSCRIPT of Proceedings: Type of Hearing: Emergency Motion to Vacate. Held on 10/21/24 before Judge Maria E. Garcia. Court Reporter: Suzanne Benoit. **IMPORTANT NOTICE - REDACTION OF TRANSCRIPTS:** To remove personal identifier information from the transcript, a party must electronically file a Notice of Intent to Request Redaction with the Clerk's Office within seven (7) calendar days of this date. If no such Notice is filed, the court will assume redaction of personal identifiers is not necessary and the transcript will be made available through PACER without redaction 90 days from today's date. The transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. The policy governing the redaction of personal information is located on the court website at www.ctd.uscourts.gov. Redaction Request due 11/14/2024. Redacted Transcript Deadline set for 11/24/2024. Release of Transcript Restriction set for 1/22/2025. (Benoit, S.) (Entered: 10/24/2024) |
| 10/24/2024 | 221 | ORDER of USCA as to 43 Notice of Appeal filed by Saifullah Khan, USCA Case Number 24-2794. (Fanelle, N.) (Entered: 10/28/2024) |

PACER Service Center

| Transaction Receipt | | | |
|---|---|---|---|
| 11/04/2024 12:12:10 | | | |
| **PACER Login:** | carltonf | **Client Code:** | 97000-00001-1557 |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cv-01966-KAD |
| **Billable Pages:** | 27 | **Cost:** | 2.70 |

# Exhibit C

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | OCTOBER 20, 2024 |

**RESPONSE TO PLAINTIFF'S MOTION TO VACATE OR FOR LIMITED STAY**

Pursuant to the Court's Order (ECF 209), Defendant Jane Doe ("Jane") respectfully responds to Plaintiff's Motion To Vacate Or For A Stay (ECF 206 ("Plaintiff's Motion")).

**I.      PRELIMINARY STATEMENT**

On a purported emergency basis, Plaintiff seeks to be relieved from the Court's Order not to disclose Jane's name. The Court does not need to re-evaluate its valid Order and Plaintiff's attempt to overturn, via an emergency Motion, the Court's Order when that Order is before Judge Dooley pursuant to Plaintiff's Rule 72.2 Objection is improper. That has been litigated thoroughly. Plaintiff should not be allowed to circumvent the process for any reconsideration, especially in a manner where defendants are afforded two days to respond. Instead, the Court must evaluate the sincerity of the so-called emergency and, once again, how to ensure the protection of Jane from Plaintiff's refusal to abide by Court orders.

**II.     THE "EMERGENCY"**

Plaintiff has not been honest to the Court in this case. (*E.g.*, ECF 200 at 46:11–13.) The Court must, therefore, carefully evaluate the so-called emergency for Plaintiff's request.

In his December 13, 2019 Complaint in this matter, Plaintiff wrote:

- "Mr. Khan was born [in] [] 1993, in a refugee camp in Peshawar, Pakistan." (Cmplt. ¶ 18.)

- "Mr. Khan was born six months after his family fled Afghanistan." (Cmplt. ¶ 19.)

- "Mr. Khan and his family lived in a refugee camp and various places surrounding it in Pakistan for 16 years . . . .  The family fled to the United Arab Emirates." (Cmplt. ¶ 20.)

Plaintiff disclosed in discovery an email he wrote on October 2, 2023:  "[P]arents and I were refugees; I was born in a refugee camp, never lived in Afghanistan)." (SAIFKHAN_003919.)

Most importantly, in media interviews Plaintiff acknowledged that he lived and went to school for years in the United Arab Emirates before coming to the United States.  (*E.g.*, **Exhibit A**.)  Thus the claim that he would be deported to Afghanistan and executed is a sensational claim on the part of the Plaintiff that seems tenuous at best based on the facts.

Based on Plaintiff's own words, the Court must evaluate Plaintiff's argument that he will be deported to Afghanistan and killed there.  If Plaintiff's contention lacks credibility, this request is not an emergency.  But it does speak volumes about the Plaintiff's credibility.

## III.    THE HARM TO JANE

The harm to Jane from Plaintiff's request to produce the unredacted transcript stems from the combination of Plaintiff's desire to harm Jane and his willingness to violate this Court's Orders. This is the classic situation of giving Plaintiff an inch but Plaintiff taking a mile.  The Court must address this because of Plaintiff's repeated misconduct in this case.  Disclosure of Jane's name presents a real risk that she will be harmed.

Plaintiff has expressed a desire to harass Jane and has acted on that desire and has repeatedly shown disrespect for this Court and violated its Orders.  (*See, e.g.*, ECF 114 (containing an email from Plaintiff about harassing Jane and members of her family); ECF 123-1 (discussing Plaintiff's actions on social media violating this Court's Orders); ECF 200 at 46:11–13 ("The Court:  . . . .  You just said that I should take your client at his word.  Well, *your client sat in that*

*chair three months ago and was dishonest with me*." (emphasis added).)  Plaintiff can't be trusted.

Jane is justifiably concerned that Plaintiff's animus toward her and willingness to disregard Court Orders will result in him exceeding the scope of any Order this Court issues in a way that causes her harm.  Plaintiff has already done that.  (*E.g.*, ECF 123-1.)  Stunningly, he continues to maintain that his prior actions did not violate this Court's Orders.  (*E.g.*, ECF 200.)  As concerning, he maintains that this Court lacks the authority to sanction him for harassing Jane, (*e.g.*, Motion at 11 ("The Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name."); and he continues to challenge the Court's valid authority to enter an Order to regulate the conduct of the Parties.  Even though that issue has already been thoroughly litigated, Plaintiff again shows his disdain for the Court by mischaracterizing the Order as a "prior restraint" and "gag order."  The Order was neither.  It was a legitimate Order, first requested by Plaintiff, that has been necessary to address the misconduct of Plaintiff. Plaintiff knows this but his unrelenting false arguments show why Jane is concerned about giving Plaintiff an inch.   The prospective harm to Jane is serious.  Plaintiff's prior disclosures of Jane's name resulted in Jane's name and information about where she works being posted on a forum for extremists that has a swastika imbedded in its logo. (*See* ECF 103-7.)  Plaintiff asserts in his Motion that Jane's "name continues to be used on social media," but neglects to mention that, if that is the case, it is only so because Plaintiff put her name out there.  (Motion at 17; *see also, e.g.*, ECF 123-1 at 10 ("I'm doing my part.  Hopefully others contribute in their own way.").)  These facts establish why the Court's Orders are essential.

The Court should therefore approach Plaintiff's request with great skepticism.

## IV.   JANE'S PROPOSAL REGARDING THE TRANSCRIPT

Jane has tried to work out a reasonable proposal but Plaintiff refuses.  Jane has requested that at least her last name be redacted from any transcript submitted to USCIS.  These are the

redactions Jane seeks.  Jane understands that even a redacted transcript may permit some people to figure out her name, but she understands that for purposes of submitting the transcript to USCIS that risk is low as long as Plaintiff goes no farther with his use of the transcript.

If Plaintiff does as USCIS requests, and submits the official transcript, the redactions have already been made by the official court reporter.  Whether Plaintiff likes it or not, the official transcript does not include Jane's last name.  Plaintiff's unbecoming attacks on Jane's counsel do not change a thing and Plaintiff has presented no evidence that anyone "badger[ed]" any Court staff because no one did that.  Indeed, Plaintiff knows that the statute he cites to this Court supports the position that Jane's last name must be redacted.  (*See, e.g.*, ECF 7 at 7–8 (Plaintiff acknowledging that "[Jane's] identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial."); *see also, e.g.*, ECF 7 at 2 ("During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e.").)

Thus, Plaintiff may submit the official transcript to USCIS because it does not contain Jane's last name.  The Court should, however, remind Plaintiff and all his various legal counsel, in no uncertain terms, that Plaintiff remains under Orders not to directly or indirectly disclose Jane's name.

If the Court is persuaded by Plaintiff that USCIS is interested in the prior transcript, that contains Jane's full name, this Court's Order should include the following conditions:

- The Court should order Plaintiff's immigration counsel to submit the transcript and note in its Order that Plaintiff's immigration counsel is prohibited from providing the transcript to anyone else, including Plaintiff.  The Court should order the Plaintiff not to communicate with anyone about the transcript in any fashion.

- Plaintiff should stipulate that the Court's Order allowing his immigration counsel to submit the transcript does not grant him any relief from the Court's Orders regarding Jane's name.

- Plaintiff should stipulate that the Court's Order allowing his counsel to submit the transcript does not create a basis to revisit or invalidate the Court's Orders protecting Jane. *See, e.g.*, Motion at 17 (arguing that the Court should vacate its Orders protecting Jane in part because Jane's "name continues to be used on social media" due to Plaintiff's actions).

If Plaintiff's true motive is to comply with USCIS's Request, he should have no problem agreeing to these conditions. The only basis for objection would be if Plaintiff's true motive is to use USCIS's Request as a pretext to circumvent or seek to revisit the Court's Orders.

If Plaintiff objects to these conditions, Jane requests that the Court issue an Order allowing his counsel to produce the Corrected Transcript to USCIS but nowhere else.

## V.    THE DESTROYED CASE FILE LETTER (ECF 207-1)

This document does not contain Jane's name and Jane has no objection to its production.

## VI.    THE MYCOURTS.IN.GOV DOCUMENT (ECF 207-2)

This document does not contain Jane's name and Jane has no objection to its production.

## VII.    CONCLUSION

Plaintiff's conduct has required Jane and the Court to look with suspicion at anything Plaintiff says. He has declared this case a "war;" lied to the Court (*see, e.g.*, ECF 200 at 46:11–13); and shown disdain for the Court's Orders. Plaintiff cannot be trusted.

Jane has shown that Plaintiff already tried to harm her in this case (*see, e.g.*, ECF 114) and the Court must guard against that type of misconduct.

Jane proposes that the Court Order Plaintiff to produce the Corrected Transcript rather than the prior transcript or, in the alternative, if the Court is convinced that USCIS is interested in the prior transcript, that the Court issue the following Order to ensure Jane is protected:

> The Court's Orders regarding the use of Jane's name (ECF 91 & ECF 119) remain in full force and effect, except that Plaintiff's immigration attorney, Attorney Glenn L. Formica, is authorized to submit the original transcript from Plaintiff's criminal trial to USCIS provided that he may not disseminate the transcript to anyone else

in light of Plaintiff's stipulation that this Order does not grant Plaintiff any relief from the Court's Orders (ECF 91 & ECF 119) and Plaintiff's stipulation that this Order does not create a basis to revisit or invalidate the Court's Orders.

DEFENDANT JANE DOE,

By: _/s/ Brendan N. Gooley_
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT 06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
        bgooley@carltonfields.com

Her Attorneys

## <u>CERTIFICATION OF SERVICE</u>

This is to certify that on this 20th day of October 2024, a copy of the foregoing was filed

electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's

electronic filing system.


<u>/s/ Brendan N. Gooley</u>
Brendan N. Gooley

# Exhibit A



**Richard Hanania** ✔
@RichardHanania                                      ...

Imagine a young boy comes to America as an Afghan refugee. He finds his way to the UAE, where he attends high school. Somehow, against all odds, due to the miracle that is standardized testing being able to identify talent no matter where it is in the world, he gets into Yale. He can enroll and pursue his dream of becoming a neuroscientist.

# Exhibit D

## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

SAIFULLAH KHAN,                          :
      Plaintiff,                      :                    cv___19-1966_____
                            :
v.                                       :
                            :
YALE UNIVERSITY,                         :
PETER SALOVEY,                           :
JONATHON HALLOWAY,                       :
MARVIN CHUN, JOE GORDON,                 :
DAVID POST, MARK SOLOMON,                :
PAUL GENECIN,                            :
STEPHANIE SPANGLER,                      :
SARAH DEMERS, JANE DOE                   :
CAROLE GOLDBERG,                         :
UNKNOWN PERSONS,                         :
      Defendants.                     :                    DECEMBER 13, 2019

### MOTION FOR PERMISSION TO LITIGATE CLAIMS AGAINST JANE DOE USING A PSEUDONYM IN PLACE OF HER ACTUAL NAME

       The Plaintiff, Mr. Khan, brings the instant action before the Court for an abuse of his rights under Title IX, broken promises that resulted in a heinous breach of contract against him, and fabricated allegations of false conduct against the Plaintiff. Notwithstanding the heinous falsities that the Jane Doe Defendant brought against Mr. Khan, Mr. Khan hereby moves the Court to grant him permission to litigate his pendent state law claims against Jane Doe using a pseudonym in place of her actual name because he holds out hope that he may move on with his life and complete his undergraduate degree at Yale University – either by permission of Yale University (also a defendant in the instant action) or by virtue of injunctive relief from the Court. In that hope and despite the many egregious wrongs committed against him, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual

Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

### Relevant Facts

On Halloween, 2015, Mr. Khan and Jane Doe had consensual sexual relations. *See* **Compl. at ¶¶ 39-43**. The next morning, Jane Doe belatedly decided that having consensual sexual relations with Mr. Khan was a bad decision so she concocted a story for her friends, claiming that she had been raped; however, she told the Yale University Health Center worker who provided her with contraception that she had engaged in consensual, unprotected sex. *Id.* **at ¶ 45**. With the advice and counsel of the Defendants in this action, Jane Doe filed a formal complaint against Mr. Khan with the Yale University police department, which immediately began investigating Mr. Khan for rape. *Id.* **at ¶¶ 46-48**. The State of Connecticut subsequently charged Mr. Khan with sexual assault in the first degree. *Id.* **at ¶ 48**.

During Mr. Khan's trial, the identity of his accuser, Jane Doe, was kept from the public record by Conn. Gen. Stat. § 54-86e. After a two-week jury trial in early 2018, the jury quickly returned a verdict acquitting Mr. Khan of all charges against him. *Id.* **at ¶ 52**. Through the efforts of his defense counsel, Mr. Khan succeeded in having his UWC disciplinary hearing delayed until after his criminal trial. *Id.* **at ¶ 51**. Mr. Khan was subsequently readmitted to Yale University in the fall of 2018, but he was denied on-campus housing. *Id.* **at ¶ 57**. At this time, Yale University made no effort to move forward with his UWC disciplinary hearing, and Jane Doe had already graduated. *Id.* **at ¶¶ 57, 68**.

In November 2018, Yale University convened a UWC hearing on Jane Doe's complaint – the same one that had resulted in the criminal charges against Mr. Khan. ***Id. at ¶¶ 74***. Jane Doe testified at that hearing, peddling the same concocted falsities that she had levelled against Mr. Khan in the criminal trial. ***Id. at ¶¶ 74-81***. The only difference was that Mr. Khan could not cross-examine her or confront his accuser in any manner. ***Id. at ¶ 77***. Yale university ultimately decided to expel Mr. Khan. ***Id. at ¶ 80***.

On its website, Yale University publicizes a set of policies and procedures for UWC proceedings. The policies and procedures unequivocally pronounce "[t]he UWC and all members of the Yale community who are involved in a matter before the UWC are expected to maintain the confidentiality of its proceedings and the information obtained for those proceedings." *See* **Exhibit 1 – UWC Procedures, p. 3**. Yale University has elaborated on this provision through a formal policy statement made by its provost. ***Id. at 3***.

> The purpose of confidentiality is to encourage parties and witnesses to participate in UWC proceedings and share all the pertinent information they have to offer, which is essential to reaching a fair outcome. If parties or witnesses fear that their participation or testimony in a UWC proceeding could be revealed, then concerns about reputation, social tension, or retaliation may cause them to keep silent. Every member of the University community should recognize that breaches of confidentiality hurt the participants and have the potential to erode respect for the UWC process.

*See* **Exhibit 2 – Statement on Confidentiality of UWC Proceedings, p. 1**.

## ARGUMENT

Mr. Khan is no longer a member of the Yale University community due to his expulsion so the obligation to keep the UWC information confidential would not apply to him under ordinary circumstances. **Exhibit 1, p. 3.** However, if Mr. Khan rejoins the Yale University as he seeks to do via a negotiated return with Yale

University or an injunction from the Court, this provision would apply to him. Consequently, to preserve his interest in rejoining the Yale University community to complete his undergraduate education, Mr. Khan respectfully requests the Court to allow him to proceed in his defamation and tortious interference claims by naming Jane Doe under a pseudonym.

Fed. R. Civ. P. 10(1) mandates that "[t]he title of [a] complaint must name all the parties." "This requirement, though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d. Cir. 2008).[1] However, courts have "carved out a limited number of exceptions to the general requirement of disclosure...." *Id.* at 189 (quoting *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001). These exceptions have typically arisen in cases involving sensitive and intimate issues such as abortion decisions, e.g., *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678 (11th Cir. 2001), or cases involving minors, e.g., *Smith v. Edwards*, 175 F.3d 99 (2d. Cir. 1999).

In the *Sealed Plaintiff* case, the Second Circuit established ten non-exclusive factors, discussed in turn below, to determine whether the Court should grant a party's request to persuade under a pseudonym. *Id.* at 189-90. While these factors have traditionally been applied to parties seeking to protect their own identities by use of a pseudonym, these factors are also readily adaptable to a

---

[1] To the best of counsel's knowledge after research, this case is still sealed. Consequently, counsel has provided the Court with a copy of the Second Circuit's decision to save the Court any difficulty in locating it. *See* **Exhibit 3 – *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d. Cir. 2008)**.

request to allow Mr. Khan to proceed, at least initially until Jane Doe has a chance
to take a position, by naming her by a pseudonym.

The first factor weighs "whether the litigation involves matters that are
'highly sensitive and [of a] personal nature.'" *Id.* at 190 (quoting *M.M. v. Zavaras*,
139 F.3d 798, 803 (10th Cir. 1998). The instant case involves matters of a highly
sensitive and personal nature, both to Mr. Khan and Jane Doe. As stated above,
Jane Doe accused Mr. Khan of raping her. "[A]llegations of sexual harassment and
misconduct" raises issues and questions "that are of a highly sensitive and
personal nature." *A.B. v. C.D.*, 2018 WL 1935999, at *2. Therefore, the first factor
weighs in Mr. Khan's favor.

The second factor examines "whether identification poses a risk of
retaliatory physical or mental harm to the… party (seeking to proceed
anonymously] or even more critically, to innocent non-parties." *Sealed Plaintiff*, 537
F.3d at 190 (quoting *Zavaras*, 139 F.3d at 803). As stated above, Jane Doe was
protected by Conn. Gen. Stat. § 54-86e, which prevented the publication of her
name during Mr. Khan's criminal trial. Consequently, for the purposes of Mr.
Khan's UWC process, his conduct of his criminal trial did not violate the UWC
procedures. If Mr. Khan names Jane Doe in this action, he will suffer the risk of
retaliatory physical or mental harm, namely, the loss of any chance to successfully
negotiate his return to Yale University to complete his undergraduate studies and
the jeopardization of his opportunity to obtain injunctive relief from the Court to
allow him to complete his undergraduate studies. Therefore, Mr. Khan seeks to

respect the UWC confidentiality rules by seeking to proceed against Jane Doe pseudonymously. Thus, the second factor weighs in Mr. Khan's favor.

The third factor examines "whether identification presents other harms and the likely severity of those harms…, including whether 'the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.'" *Id.* at 190 (quoting *Zavaras*, 139 F.3d at 803). At first glance, the injury incurred by Mr. Khan has already occurred. However, Mr. Khan does face the significant likelihood of further antagonizing Yale University to the point of placing his chances of negotiating a return to Yale University to complete his undergraduate degree by naming Jane Doe in violation of the UWC hearing. Furthermore, if Mr. Khan does name Jane Doe, Yale University will undoubtedly use that fact against him to illustrate its version that Mr. Khan "breaks" Yale University polices in opposing Mr. Khan's request for injunctive relief. Consequently, the third factor weighs in favor of Mr. Khan.

Mr. Khan concedes that the fourth factor weighs against him in that he is not "particularly vulnerable to the possible harms of disclosure…, particularly in light of his age." *Id.* at 190.

The fifth factor weighs in favor of Mr. Khan: "whether the suit is challenging the actions of the government or that or private parties." *Id.* at 190. Normally, suits against private parties do not enjoy a stronger presumption of a need to protect a party's privacy because personal embarrassment is the only consideration for keeping them private. *A.B. v. C.D.*, 2018 WL 1935999, at *3. However, when a party sues the government and seeks to serve as "a significant check on abuse of

public power," "it is in the public interest that the price of access to the courts not be too high." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). "Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." *Id.* at 158 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). "The value of open proceedings disappears when there are no proceedings to be had." *Id.* at 158. The reasoning underlying this presumptive balancing factor is the power disparity between the government, the public at large, and potential plaintiffs. The same reasoning applies here. Yale University enjoys tremendous social power, and it can have a tremendous impact on a person's life as Mr. Khan can readily attest to. If Mr. Khan names Jane Doe, the potential for Yale to retaliate against him in negotiations about his potential readmission to Yale to complete his degree and to whip up public scorn against him would be similar to that of a government trying to accomplish the same goals against a plaintiff. Consequently, while Mr. Khan does not presumptively enjoy the benefit of this factor, he should be given its protections for the same reasons undergirding it.

The sixth and seventh factors also weigh in Mr. Khan's favor. The sixth factor weighs "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Sealed Plaintiff*, 537 F.3d at 190. The seventh factor examines "whether the [defendant]'s identity has thus far been kept confidential." *Id.* at 190. Jane Doe's identity has been kept confidential for more than three years now. Her

identity was kept confidential by Conn. Gen. Stat. § 54-86e in Mr. Khan's criminal trial. Yale University's UWC policies and procedures kept her identity confidential in Mr. Khan's UWC proceeding. If anyone has suffered prejudice in this concocted saga, it is Mr. Khan, who was publicly and privately pilloried on the basis of Jane Doe's false accusations without ever being allowed to name her as his accuser when defending himself. Every single proceeding that has involved Jane Doe and Mr. Khan to this point has kept Jane Doe's identity confidential to protect her from a similar public pillorying. Consequently, as Mr. Khan seeks to put his life back together by complying with rules that Jane Doe has gladly embraced to protect herself, it will not prejudice Jane Doe in the slightest to continue to protect her from public scrutiny. Therefore, both the sixth and seventh factors weigh in Mr. Khan's favor.

Similar to the sixth and seventh factors, the eighth and ninth factors are linked, and Mr. Khan concedes that both do not weigh in his favor. The eighth factor examines "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [the defendant's] identity." *Id.* at 190. The ninth factor addresses "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities." *Id.* at 190. Addressing the ninth factor first, Mr. Khan was acquitted in a highly publicized trial that was covered with no small vigor by the press from charging to verdict and that invoked widespread reaction at the height of the #MeToo movement. The media including the Yale Daily News insisted on publicizing and discussing the case long after the jury had delivered Mr. Khan's

acquittal. As soon as the instant action is filed, it will garner intense public scrutiny, which will widely publicize Jane Doe's name. Therefore, under no circumstances can Mr. Khan or counsel anticipate an atypically weak public interest in learning the parties' identities. Turning to the eighth factor, the public's interest will undoubtedly be aided tremendously if Mr. Khan is forced to disclose Jane Doe's identity. Both of these factors weigh against Mr. Khan.

The tenth and final factor examines "whether there are any alternative mechanisms for protecting Plaintiff's [interest in] confidentiality." *Id*. at 190. There are none. Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life. If he is forced to name Jane Doe, Mr. Khan will be forced to choose between Scylla and Charybdis. If he chooses to continue with his claims against Jane Doe for the wrongs that she has committed against him, Mr. Khan will lose any chance for a negotiated return to Yale University because Yale University will never forgive him for violating the UWC policies and procedures and he will incur significant prejudice when it comes to obtaining injunctive relief from the Court to allow him to finish his degree. If he chooses to discontinue his claims, Mr. Khan may or may not succeed in negotiating a return to Yale University to complete his degree. However, he will certainly forfeit forever the opportunity to seek legal redress for the wrongs Jane Doe has committed against him. Consequently, the tenth factor weighs in Mr. Khan's favor.

## **CONCLUSION**

Mr. Khan still holds out hope, albeit small hope, that he can piece his life back together by completing his degree at Yale University, either through a negotiated agreement with Yale University or by injunctive relief from the Court. At the same time, Jane Doe has destroyed Mr. Khan's life through her false accusations against him. Consequently, Mr. Khan seeks the Court's commission to pursue the vindication of his legal rights while complying with his obligations under Yale University's University-Wide Committee On Sexual Misconduct's (hereinafter, the "UWC") procedures on sexual misconduct, which require him to maintain the confidentiality of UWC proceedings and information obtained for those proceedings, including the name of his accuser.

Therefore, for the foregoing reasons, Mr. Khan respectfully requests that the Court grant his motion to proceed against Jane Doe by identifying her with a pseudonym.

The Plaintiff

BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120
383 Orange Street, First FL.
New Haven, CT  06511
Tel. 203-393-3017
Fax 203-393-9745
npattis@pattisandsmith.com

## **CERTIFICATION**

I hereby certify that on September 23, 2019 a copy of the foregoing was filed

electronically. Notice of this filing was sent by e-mail to all parties by operation of the

Court's electronic filing system. Parties may access this filing through the Court's system.


BY:

_____

NORMAN A. PATTIS
Pattis & Smith, LLC
Juris No. 13120

# Exhibit E

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
--------------------------------x
                                 :
SAIFULLAH KHAN,                  :
                 Plaintiff,      :      Civil No.
                                 :   3:19-CV-01966 (KAD)
            vs.                  :
                                 :    October 21, 2024
YALE UNIVERSITY, ET AL.,         :
                 Defendants.     :
                                 :
--------------------------------x
```

EMERGENCY MOTION TO VACATE ORDER

(Via Zoom Teleconference)

(Transcription from Electronic Recording)

Held Before:

THE HON. MARIA E. GARCIA
United States Magistrate Judge

Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT 06070
860.651.0258
www.falzaranocourtreporters.com

APPEARANCES (via Zoom):

    <u>For the Plaintiff:</u>

        BRIGNOLE, BUSH & LEWIS
        73 Wasdsorth Street
        Hartford, Connecticut 06106
        860-527-9973
        mario@brignole.com
            BY:  MARIO K. CERAME, ESQ.

        ALEXANDER T. TAUBES
        470 James Street – Suite 007
        New Haven, Connecticut 06513
        203-909-0048
        alextt@gmail.com


    <u>For the Defendant Jane Doe:</u>

        CARLTON FIELDS
        One State Street – Suite 1300
        Hartford, Connecticut 06103
        860-392-5036
        bgooley@cartonfields.com
            BY:  BRENDAN GOOLEY, ESQ.

        CARLTON FIELDS
        One State Street – Suite 1300
        Hartford, Connecticut 06103
        860-392-5022
        jsconzo@cartonfields.com
            BY:  JAMES M. SCONZO, ESQ.


    <u>For Defendant Yale University</u>:

        CARMONDY TORRENCE SANDAK & HENNESSEY LLP
        Concept Park
        741 Boston Post Road – Suite 306
        Guilford, Connecticut 06437
        203-458-9168
        pnoonan@carmodylaw.com
            BY:  PATRICK M. NOONAN, ESQ.

3

APPEARANCES (Continued):

        CARMONDY TORRENCE SANDAK & HENNESSEY LLP
        195 Church Street
        New Haven, Connecticut 06509
        203-784-3157
        mlaurato@carmodylaw.com
            BY:  MARIA LAURATO, ESQ.


    Also Present:

        GLENN L. FORMICA, ESQ.

        SAIFULLAH KHAN, Plaintiff

4

```
 1              (Proceedings commenced.)

 2

 3              THE COURT:  So we're here on the matter of Khan

 4   vs. Yale University, Et Al.  It's case 19-cv-1966.  It's

 5   assigned to Judge Dooley.  My name is Judge Garcia.  We're

 6   here on Plaintiff's emergency motion to vacate order or in

 7   the alternative for limited stay or lift of order.  It's

 8   document 206.

 9              If I could start with the appearances of

10   counsel.  Plaintiff can go first.

11              MR. CERAME:  Good afternoon, your Honor.  This

12   is Attorney Mario Cerame of Brignole, Bush & Lewis for Mr.

13   Khan, who is also attending this conference.

14              THE COURT:  Good afternoon, Attorney Cerame.

15   Good afternoon, Mr. Khan.

16              MR. TAUBES:  And also here, although Attorney

17   Cerame will be handling the motion, is Attorney Alexander

18   Taubes on behalf of the Plaintiff.

19              THE COURT:  Good afternoon, Attorney Taubes.

20              MR. CERAME:  I would note although he is not an

21   appearing counsel in this case, Attorney Formica is

22   present pursuant to the Court's order.

23              THE COURT:  Good afternoon, Attorney Formica.

24              MR. FORMICA:  Good afternoon, your Honor.

25              THE COURT:  I want to thank you for attending as
```

5

```
1   a friend of the Court.
2           MR. FORMICA:  No worries, your Honor.
3           MR. GOOLEY:  Good afternoon, your Honor,
4   Brendan Gooley of Carlton Fields on behalf of Defendant
5   Jane Doe, and with me is my colleague, Jim Sconzo.
6           THE COURT:  Good afternoon, Attorneys Gooley and
7   Sconzo.
8           MR. SCONZO:  Good afternoon.
9           MR. NOONAN:  Good afternoon, your Honor.  I
10  represent Yale University, Pat Noonan, and with me is
11  Maria Laurato.
12          MS. LAURATO:  Good afternoon, your Honor.
13          THE COURT:  Good afternoon to both of you.
14          All right.  Any other attorneys?  I'm going to
15  ask that if you are not speaking that you be muted so that
16  there's not interference which can sometimes happen, and
17  any persons who are not participating attorneys should
18  most certainly be muted.  Okay.
19          So to start off I wanted to thank everyone for
20  their briefing and I know there were some things filed
21  yesterday.  So I've reviewed everything that's been filed.
22  I also know that there was a motion that was filed I think
23  today involving public access to this proceeding and I'll
24  just note for the record that the Zoom link to this
25  proceeding is online and anybody who is willing to --
```

1 | wanting to participate is free and open to participate.

2 |       Did anyone have any issues with the Zoom link or

3 | anything to that effect?  Attorney Cerame, I know you

4 | filed the motion.  I want to make sure that you saw that

5 | the Zoom link was publicly made available.

6 |       MR. CERAME:  My recollection was that people who

7 | are -- at least the people who I had direct contact with,

8 | were directed to participate as observers by telephone.

9 | But that's neither here nor there, by audio is fine, and I

10 | appreciate the alacrity of the Court's attention to that

11 | issue sincerely.  Thank you.

12 |       THE COURT:  All right.  So Attorney Cerame, I'll

13 | turn it to you in terms of, you know, what if anything

14 | would you like to add in terms of what you filed.

15 |       I'd like to hear from Attorney Formica at some

16 | point in terms of kind of -- to the extent that he can

17 | provide the court an overview of kind of how does DHS

18 | maintain its records, what was provided to DHS back in

19 | 2021 because that's not clear from any of the filings.  So

20 | that's an area that I'm interested in hearing from

21 | Attorney Formica about.

22 |       MR. CERAME:  If that's what the court is

23 | concerned about I'd defer.  I'd want -- I mean I'm

24 | principally here to answer her Honor's question, but if

25 | your Honor has questions about that, Attorney Formica no

```
1   longer represents my client.
2             THE COURT:  Oh.
3             MR. CERAME:  I was recently informed.  And I
4   reviewed the documentation about this over the weekend and
5   I have had electronic communications with Attorney Formica
6   about this.  Perhaps -- I don't want to pretend to speak
7   for him or my client on this.  Some of the communications
8   are obviously privileged as to that.  But Attorney
9   Formica, is there anything you would like to clarify about
10  your relationship with Mr. Khan presently or address what
11  the court has to say?  I defer to your judgment, sir.
12            (Pause.)
13            THE COURT:  I don't know, Attorney Formica, if
14  you're speaking but if you are we can't hear you.
15            MR. FORMICA:  I apologize, your Honor.
16            THE COURT:  Okay.  That's all right.
17            MR. FORMICA:  Just a little bit of context
18  regarding my representation.  I was retained -- actually
19  my former law partner, Alissa Williams, was retained
20  almost 10 years ago to help with the initial asylum
21  filing.  After that time, you know, there was a long wait.
22  Mr. Khan pretty much handled his asylum hearing himself.
23  I wasn't present.  No one -- I don't believe if -- and I
24  say I don't believe only because I have other attorneys
25  that handle interviews for asylum cases down in New Jersey
```

1 | in my office, but I believe he self-represented and waived

2 | counsel for the interviews, so my engagement on the case

3 | has been extremely limited.

4 | I didn't formally withdraw after his self-rep at

5 | the interview merely because I -- it was anticipated that

6 | it would be approved and it would have delayed the

7 | process. USCIS is not the most nimble organization so --

8 | but effectively I have not represented Mr. Khan in years,

9 | so I don't have anything to say.

10 | I know that the only thing that I'd like to

11 | mention to the court as the court may know is under CFR 12

12 | -- I think it's 1208, all asylum matters are confidential

13 | and restricted. I think there may even be a criminal

14 | sanction for me discussing his asylum case, with

15 | exceptions of course and I haven't looked at this. I

16 | actually only found out about this hearing because of my

17 | own travel plans and some things on Saturday morning. So

18 | I haven't even had time to really look at anything.

19 | And then again last night by email Mr. Khan

20 | confirmed that I was no longer his attorney because I

21 | think it was important since I was sort of in the middle.

22 | So that's a long explanation to say I'm no

23 | longer his attorney and haven't been his attorney for

24 | years.

25 | THE COURT: Okay. That is helpful. So to the

1  extent that there is information that's going to be sent

2  to USCIS/DHS in response to their letter it's not going to

3  be sent from your office, Attorney Formica.

4         MR. FORMICA:  No, it's going to –

5         THE COURT:  And you'll have no involvement in

6  that.

7         MR. FORMICA:  I'm not going to be engaged in

8  that, your Honor, at this point.

9         THE COURT:  Okay.  All right.  And when you

10 mentioned that all asylum proceedings are confidential, do

11 you have any insight for me as to whether documentation

12 that's submitted to USCIS/DHS in connection with an asylum

13 application is confidential?  Is there like an electronic

14 record-keeping system or like are cases --

15        MR. FORMICA:  Your Honor, so I want to be

16 helpful to the court but I ask --

17        THE COURT:  And if you don't know, you don't

18 know and that's all right.

19        MR. FORMICA:  And the thing about Immigration

20 law is that if you're talking about density, the most

21 dense agency in the Government is USCIS.  I mean its

22 policy memos, its memorandums, you know, you get -- by the

23 time you get to the CFR you're on like layer 5.  So -- and

24 some of it can be specific to that office, you know, the

25 particular office may have it's own, quote, rules or

1  operating procedures in things, so speaking broadly I just

2  don't want to -- I don't want to say something as a

3  statement to the court that I can't point to and back up.

4         THE COURT:  Do you know there have been

5  representations made in the course of the motion that was

6  filed by Plaintiff's counsel that certain documents were

7  provided back I think in 2021 in connection with Mr.

8  Khan's asylum application?  Were you involved in the

9  submission of those documents in terms of the original

10  transcript and (indiscernible) disposition, other things

11  that were requested in the letter?

12         MR. FORMICA:  Your Honor, I know that I think

13  two things were submitted.  I don't know if my -- and I'm

14  not trying to evasive, I just don't know if those two

15  things we physically mailed.  It was literally just -- it

16  was things that would have had to been provided from Mr.

17  Khan and then been a mail currier for.  So unfortunately I

18  switched over practice management systems a couple of

19  years ago so I can't -- I mean I could look but I'm not

20  sure -- like I don't have a FedEx or something like, so I

21  don't know.

22         My guess is that it probably, and it's a guess,

23  maybe Mr. Khan can answer that, my guess is that Mr. Khan

24  took care of it because I was not -- when he went to his

25  first interview several years ago he said I'm all set,

1    thank you for your help.  I got this and I'll handle it.

2    So he was -- I was not representing him other than the

3    fact that they keep noticing me on follow-ups and when

4    they do we simply pass it on to him.

5              THE COURT:  Okay.  Thank you.  I don't think I

6    have any other questions for you, Attorney Formica, now

7    that I know what your limited involvement is in this

8    matter going forward.  Thank you.

9              MR. FORMICA:  Okay.

10             THE COURT:  I had some questions about this

11   request for the original transcript and kind of a

12   disagreement between the parties on what constitutes that

13   original transcript.

14             So Attorney Cerame, I know that when you were

15   before Judge Dooley you were reserving your rights as it

16   relates to Connecticut General Statute 54-86e (audio

17   breaking up) active pursuant to 54-86e -- are you there

18   (audio breaking up)?

19             MR. CERAME:  So your Honor, for about -- now her

20   Honor is moving, but for about 30 seconds your Honor was

21   frozen and sounded -- the audio was breaking up.  I don't

22   know if that was just me.

23             THE COURT:  Okay.  Can you hear me now?

24             MR. CERAME:  I can, your Honor.

25             THE COURT:  Can you hear me now?

1      MR. CERAME:  Yes.

2      THE COURT:  Okay.  So my question was in

3  relation to this concept of the original transcript.

4  There seems to be a disagreement between you and Jane

5  Doe's counsel on what constitutes the original transcript.

6  So what is your position on what is the original

7  transcript and why isn't it the one that was redacted

8  pursuant to 54-86e?

9      MR. CERAME:  Because I don't believe it was

10 redacted pursuant to that statute.

11     THE COURT:  What's your basis for that?  Because

12 that was the position taken by your predecessor, Attorney

13 Pattis, in the motion for (indiscernible) that was filed

14 early on in this case.

15     MR. CERAME:  I don't believe he had a copy of a

16 redacted transcript.  I certainly have never seen such a

17 document.  I have seen one page that was allegedly

18 relatively recently generated, but for -- it seems

19 according to -- my adversaries attempted to get a document

20 from the Superior Court recently, relatively recently, and

21 the document had Doe's full name unredacted when it was

22 generated.

23     They then went to -- my understanding from

24 representations, I don't know if this is true, but my

25 understanding relative to representations is then they

1  told the reporter that it should have been redacted and

2  the reporter apologized and generated an altered document.

3        It seems that until that date in July the

4  transcript was an unredacted transcript. Furthermore,

5  there's been no -- the court reporter is not a judge,

6  she's not somebody who can make a legal decision. The

7  proper remedy would have been to intervene in the criminal

8  case or file another proceeding or to go to a judge and

9  say, hey, there's been a mistake with the transcript so

10  that we could be heard too on that issue.

11        It seems to me on the face of it the statute at

12  issue does not apply to Doe, does not apply to this

13  transcript. My client was adjudicated to an acquittal.

14  The title, as I point out in my briefing here, pertains to

15  trials and post-conviction proceedings. This is neither.

16  He was acquitted.

17        So if I don't -- there has been no case law

18  generated, no statute practice book, no form of law that

19  suggests or indicates that this statute should apply to

20  the transcript aside from the ex parte communications that

21  were made by my adversaries where we were not allowed to

22  be heard.

23        THE COURT: If you were to go down to or if your

24  client were to go down to the courthouse, the Superior

25  Courthouse right now and seek a copy of the original

1  transcript, what would that transcript look like?

2          MR. CERAME:  Your Honor, I have tried to obtain

3  it.  There has been some difficulty in me, for whatever

4  reason, I have not been able to get this particular

5  reporter to respond to inquiry.  That has been going on

6  before this proceeding here I had attempted to, but for

7  whatever reason.  So I can't answer for certain, your

8  Honor, what document I would receive.  But I believe

9  strongly as a matter of law the document that should be

10 generated is the one that we submitted, my client

11 submitted back in 2021, the unredacted transcript, the

12 official transcript generated by the Superior Court.  I

13 have never seen a complete transcript that contains

14 redactions.

15          MR. FORMICA:  Excuse me, your Honor.

16          THE COURT:  Go ahead, Attorney Formica.

17          MR. FORMICA:  Your Honor, I apologize, does the

18 court need me on this call any further?

19          THE COURT:  No, you're excused unless you'd like

20 to stay.

21          MR. FORMICA:  No.  Thank you, your Honor.

22          THE COURT:  Thank you.

23          MR. FORMICA:  Thank you all.

24          MR. CERAME:  Thank you, Attorney Formica.

25          THE COURT:  I thought you were going to have

1  an answer to my question about the original transcript,

2  but --

3          MR. CERAME:  I'm sorry I don't have that answer,

4  Judge.  If you want to --

5          THE COURT:  Well, it would seem to me that based

6  on your motion where there's such a desire to comply with

7  what DHS is requiring that an understanding of what is the

8  original transcript today or what does the court consider

9  that the original transcript today, regardless of whatever

10 objections you may have as to how that original transcript

11 ended up being what it is, is what should be produced

12 because that is what DHS is requiring.  And if you had

13 issues with whatever redactions the court reporter, the

14 court system may have done or your view of the application

15 of 54-86e, then there's a process in the state court I'm

16 sure to address that.

17          But the request is for the original transcript

18 so my question is what is the original transcript today

19 because that's what the request is.

20          MR. CERAME:  Our position unquestionably is the

21 only complete transcript that we have ever seen, the

22 unredacted transcript.  I don't understand how this -- my

23 adversaries are making a claim based on an ex parte

24 proceeding to which we're not a part of.  They are making

25 a question based on the judgment of a reporter, not on the

1   basis of any case law, on the text of statute, on the —-

2   it's clear, Judge, the only transcript if the official

3   one, the unredacted.

4           THE COURT:  Attorney Pattis, your predecessor,

5   make very specific representations about the fact that

6   54-86e applies to the proceedings involving Mr. Khan and

7   that Jane Doe's identity was kept from the public record.

8   And so if that didn't happen for whatever reason and the

9   transcript contained her name and then it was later

10  identified that that was a mistake, and I think Judge

11  Dooley talked about this in her -- in the argument that

12  she had where you were present, Attorney Cerame, then

13  that's just what it is.

14          And so we don't have the benefit of knowing what

15  the original transcript is today because you're saying you

16  haven't been able to get it.  I'm going to -- is there

17  anything else you would like to say on the original

18  transcript question?

19          MR. CERAME:  Yes.  Unquestionably the statue

20  applied during the trial, Judge.

21          THE COURT:  Those representations were made

22  after Mr. Khan was acquitted.

23          MR. CERAME:  I'm not aware of these

24  representations and I would like to review them closely in

25  context.

 1          THE COURT:  They're in document 2 of this case.
 2   It's Mr. Khan's motion for permission to litigate claims
 3   against Jane Doe, and it was actually cited by Attorney
 4   Weller in the oral argument before Judge Dooley as a way
 5   of her noting for the court that this argument about the
 6   applicability of the Connecticut General Statute is not
 7   new but something that's part of the court record in this
 8   case.
 9          MR. CERAME:  Judge, I have --
10          THE COURT:  That's how I got to it because it
11   was cited by Attorney Weller in the hearing before Judge
12   Dooley where you were present.
13          MR. CERAME:  Judge, that's no case law
14   supporting that position.  There's no statute.  The text
15   of the statute, (indiscernible) in the chapter that
16   applies to convictions and (indiscernible crosstalk) to
17   trial --
18          THE COURT:  I mean this is the title of the
19   whole statutory scheme, right?  It's not the title of this
20   particular statute.
21          MR. CERAME:  Judge, I've also worked in post-
22   conviction.  I worked in criminal law too, and I have
23   never had -- hold on.  My client may be attempting to tap
24   me on the shoulder.
25          (Pause.)

1       THE COURT:  I want to turn it to Attorney Gooley

2  and get an understand of the -- or whoever is going to be

3  speaking for Jane Doe.  Is there an understanding from the

4  Defendants' perspective about what is the original

5  transcript today?  Whether you agree with the designations

6  or not.  Like if you want down to the Superior Court and

7  requested the original transcript, what would that

8  transcript look like?

9       MR. GOOLEY:  Thank you, your Honor.  And our

10  understanding is that the official transcript, which is

11  what the request asks for, is the corrected transcript.

12  Again my understanding is the whole point of correcting

13  the transcript of having the official court reporter

14  correcting the transcript is that if anybody goes down and

15  orders it they were going to get the correct transcript.

16  It just doesn't make sense to me that anyone would go and

17  order a transcript and get something that was a prior

18  version.

19       And I think it's a very simple issue.  Your

20  Honor hit the nail on the head.  The request asks for the

21  official transcript.  The official transcript as we sit

22  here today is the corrected transcript.  I understand that

23  they have arguments about that, but those are their

24  arguments.  It doesn't change the fact that this is the

25  official transcript.

19

1         More importantly, Judge, I want to take this

2   issue piece by piece just a little bit because it is

3   concerning to us on several levels.  The thesis of their

4   argument, if you will, is that this is such a severe

5   matter of life and death that you can't play games with

6   USCIS and therefore that they have to submit the prior

7   version of the transcript even though that's not what the

8   request asked for, the official version of the transcript.

9         The problem with that argument is that it's

10  undermined by their own actions, the action they're

11  anticipated in making.  They are insistent on not

12  submitting what is literally the official transcript.

13  They're willing to gamble that USCIS is either not going

14  to figure out that the transcript has been corrected or if

15  it does that it's not going to fault the Plaintiff for

16  that.

17        The problem with that argument or that position

18  is that fundamentally it undermines their entire request

19  for emergency relief granting from your Honor's order

20  which exists for a very good cause, and it's only one of

21  several things, Judge, that is now very concerning.  This

22  has heightened our suspicion.

23        Your Honor probably noted as I did that in their

24  emergency filing they repeatedly made claims about

25  Plaintiff has been advised by his retained Immigration

1  counsel to submit the same documents he submitted in 2021.

2  It was an advice of counsel defense that counsel was

3  advising them that you have to submit the prior version of

4  the transcript even though it's not what it asked for.  We

5  then get here to this hearing today and we all to our

6  surprise learn that Attorney Formica hasn't apparently

7  advised the client, the Plaintiff, in years.

8         So where did this advice of counsel argument

9  come from?  It seems to us, Judge, and apologizes if our

10 suspicion is heightened, but it's heightened for good

11 reason because of the misconduct in this case that we've

12 dealt with to date.  It's very suspicious to us that

13 Plaintiff is willing to gamble with USCIS with everything

14 except Jane's name.  He's willing to gamble to provide the

15 wrong transcript.  He's willing to gamble to provide

16 incomplete documents about the Indiana protection order.

17 He proposes, you saw, submitting one page of documents.

18 We FOIA'd the Indiana protection documents.  We got 14

19 pages of documents including the order itself, the

20 application.  He's not going to submit that apparently

21 according to his own statements, yet he wants the court to

22 believe that it's a matter of life and death for him to

23 not be able to redact Jane's name.  It's a fundamentally

24 inconsistent position.

25         If there was any truth to the position that this

1  was as serious as they're claiming and it warrants

2  immediate emergency relief from your Honor's order, they

3  would not be gambling with the other discovery requests

4  and arguing about what is or is not the correct transcript

5  and submitting one document, one page of documents instead

6  of 14 from the Indiana protection order.  Instead they

7  would be submitting everything and saying that's what we

8  have to do to make sure we comply with the order.

9        And lastly, Judge, I would remiss if I didn't

10  point out the request from the USCIS itself says, and I

11  quote, if you are not able to provide any of these

12  documents please provide a statement explaining the

13  reasons why you were not able to do so.

14        Mr. Khan could easily submit the corrected

15  transcript which does not contain Jane's last name.  It's

16  the official transcript.  And if he feels it's necessary,

17  he can write that the court has enjoined the use of Jane's

18  name because she's entitled to anonymity in this action,

19  and he can write that a court reporter has determined that

20  a Connecticut statute requires the redaction of Jane's

21  name and explain it to USCIS this way.

22        The idea that USCIS is going to somehow default

23  him for following the court reporter's instructions and

24  being candid with USCIS and producing the official

25  transcript and complying with this court's order to not

1  disclose the name is just baseless, Judge.  And we haven't

2  even gotten into the other issue yet which is is it

3  credible that he would actually be deported to

4  Afghanistan.  I know we briefed that, I'm not going to

5  rehash that here, your Honor, because I think that's a

6  secondary issue frankly.  But in a long-winded way, and I

7  apologize for being long-winded, that's out position.

8          And I'm happy to try and address any questions

9  the court has.

10          THE COURT:  My question to you, Attorney Gooley

11  is -- and you've referenced this is one of your

12  submissions, is referring the court back to document 186

13  which has the exhibits related to Plaintiff's Rule 72.2

14  objection, and it's the documentation related to the

15  correction of the transcript, of the criminal transcript.

16          And so there's in that -- and I'll give you time

17  to page to that because you may not have it directly in

18  front of you.

19          MR. GOOLEY:  I'm actually looking at it right

20  now, your Honor.  Thank you.

21          THE COURT:  Okay.  You're quicker than I am

22  then.

23          So in the corrected or in the documents that are

24  submitted in this exhibit there's one page of transcript,

25  page 47, that's included.  And so I guess is it just that

23

1  that one page was provided as an example of the

2  corrections to the transcript and that the entire

3  transcript has redactions in this way or, you know, why is

4  it that we just had this one page?

5         MR. GOOLEY:  It was provided as an example.  My

6  understanding is that the court reporter concluded that

7  54-86e applied and therefore redacted the transcript of

8  Jane's last name, admittedly not her first name, rather

9  than submit, you know, everything to the court.  I felt

10 that, you know, prove my point submitting that one page

11 and the cover page that says corrected transcript.

12        While we're here, Judge, I did just want to say

13 in response to the other argument you will see that we

14 also submitted the frequently asked questions from the

15 Connecticut Judicial website which the court can take

16 judicial notice of, which has a very clear interpretation

17 of the 54-86e statute which is it applies to cases

18 involving alleged sexual assault.  There's no exception on

19 there for a not guilty finding but again, Judge, it

20 doesn't change the fact that there's a corrected

21 transcript and that's the official transcript now.

22        THE COURT:  You're referring to document 186-1,

23 right?

24        MR. GOOLEY:  Yes.  Yes, your Honor.

25        THE COURT:  Okay.  I don't have additional

```
1   questions for you, Attorney Gooley.

2           Attorney Cerame, is there anything you'd like to

3   respond to or anything additional you'd like be to

4   consider?

5           (Pause.)

6           THE COURT:  I'm sorry, can you hear me?

7           ATTORNEY:  You're on mute, Attorney Cerame.

8           MR. CERAME:  I apologize.  Thank you.

9           The Court indicated that my client may not

10  disclose those names directly or indirectly.  And even if

11  her name were redacted throughout the document I have

12  never seen, and it's certainly not in my possession.

13          Nonetheless, her identity would be readily

14  discernible based on the amount of biographical, even

15  biological data about her.  So I don't -- there are things

16  about her, Doe's, things that she did at school, what Doe

17  looks like.  There are a number of very particular details

18  across 1,800 pages that will allow someone to identify

19  Doe.

20          Attorney Gooley mentioned, questioned the

21  veracity of my client's concern.  My client's uncle was

22  put to death by the Taliban because his -- my client's

23  uncle, advocated that women should receive an education.

24          My client's fear is very real.  I will not

25  belabor the point but I find it deeply upsetting what
```

```
 1   Attorney Gooley has suggested here and my client

 2   (indiscernible).

 3          Attorney Formica came in and he did not say that

 4   he did not advice my client unlike what Attorney Gooley

 5   said, he did not say affirmatively I didn't tell him not

 6   to submit the same document.  I believe in fact, my client

 7   can correct me, but this seems to be the content of a

 8   communication with a purpose of legal advice, that he

 9   received it from another person in Attorney Formica's

10   office, not from Attorney Formica himself.  As Attorney

11   Formica indicated there are a number of attorneys who work

12   underneath him and that this issue of submit the same

13   document was something that I don't believe Attorney

14   Formica told him personally, directly.  I believe it was a

15   different attorney in that office.

16          THE COURT:  Attorney Formica wasn't even sure

17   what documents had been submitted --

18          MR. CERAME:  That's correct.

19          THE COURT:  -- previously, either though his

20   office or if it was directly by Mr. Khan.  He just had

21   absolutely no information about that.

22          MR. CERAME:  But that doesn't mean that my

23   client didn't ask someone in the office about should we

24   submit it this way, what should I give.  He didn't submit

25   it personally, no.  He didn't have much recollection of
```

1 it, but that doesn't mean that's not how my client had

2 that understanding. And as I said, Attorney Formica may

3 not know it jot for jot every conversation of every

4 attorney in his office of what they had with my client.

5       This issue of the transcript is a bit misleading

6 because it's not just about Doe's name. Nonetheless, the

7 court is crediting -- if the court -- I'm not sure what my

8 client -- what we're supposed to do if the court says you

9 must submit a redacted transcript. We don't have that.

10 We don't have one. We've never received one. We are

11 supposed to submit the official transcript and certainly

12 on --

13       THE COURT: Well, the fact that you don't have

14 it doesn't mean you couldn't have gotten it, right? I

15 mean this letter has -- I think it was dated October 3rd,

16 you know, between the time that your client got the letter

17 and today. I don't know what efforts have been made to

18 get the original transcript, the one that is considered

19 the original transcript today.

20       MR. CERAME: In 2021 undoubtedly the official

21 transcript was the one we have in our possession. That

22 was the official transcript. If there is a difference

23 between the document we submit now and the document that

24 we have already submitted, even minor differences can

25 affect someone's credibility.

```
 1            A delay in this case may be tantamount to
 2   denial.  My client is, if there is a delay, and Attorney
 3   Formica did indicate and this is very -- there's a strong
 4   reputation in DHS for this, that small things can result
 5   in unusual delays.  My client's been unnecessarily delayed
 6   already for years without hearing from the Department of
 7   Homeland Security.
 8            Another delay could -- there's going to be
 9   another administration regardless, there's going to be
10   another administration and that could result in my client
11   losing his ability to have asylum.  That's a real fear he
12   has.
13            THE COURT:  Can you detail for me what efforts
14   have been made between the time that the DHS letter was
15   received and now to obtain a copy of the official
16   transcript from the court?
17            MR. CERAME:  Judge, we have a request pending
18   but I --
19            THE COURT:  Was there a request made?
20            MR. CERAME:  I'd have to go and look.
21            THE COURT:  Well --
22            MR. CERAME:  I believe -- we relied on this
23   being the official transcript.  This is the transcript we
24   have.  We don't even know that Attorney Gooley submitted a
25   single page.  I don't know that there's a full -- there's
```

1   a full document there to be had.  So --

2        THE COURT:  This issue came up before Judge

3   Dooley in July about what is the official transcript.  You

4   were there, Attorney Cerame, and this was discussed at

5   length between her and I -- I mean the transcript here in

6   front of me and I'm just going to -- and she made a

7   comment, she made a comment.  I mean if I now have a

8   transcript that should never have been created because of

9   the Connecticut General Statutes, I'm certainly not going

10  to enter that transcript into evidence.

11       So the issue around this transcript and what is

12  the official transcript is something that's been at least

13  known to you, Attorney Cerame, since July.  So my question

14  is knowing the importance of getting the official

15  transcript to DHS since this letter was received in early

16  October, what's been done to try to get that transcript?

17       MR. CERAME:  I believe we have the official

18  transcript, Judge.  That's what -- and I had tried to

19  obtain it through the Superior Court previously.  I also

20  have a lot of -- and as I said, Judge, even if we submit

21  such a redacted transcript, first off, that is a change

22  from what the transcript -- the document we submitted

23  before and that puts my client's interests in jeopardy.

24  So that's not a sufficient remedy to submit

25  (indiscernible).

1          THE COURT:  That's your view.

2          MR. CERAME:  Submit an altered document.  I

3   don't know that DHS will be satisfied by an altered

4   document.  I quite doubt it.  It could create, it seems

5   likely to, a small difference may create a delay.

6          THE COURT:  This all seems very speculative

7   because when DHS is requesting an official document I

8   would suspect they want what is the official document, and

9   that's whatever is available in the court right now if you

10  were to go and request it.  And sitting here right now I

11  don't know what that is.

12         MR. CERAME:  I know —

13         THE COURT:  But whatever that is is what should

14  be submitted.

15         MR. CERAME:  The document we have in our

16  possession certainly was an official document.  There's no

17  like -- there's no statute that says it's no longer

18  official, Judge.  And the court still hasn't construed the

19  statute.  Nobody has ruled on this, the meaning of the

20  statute and that it applies in this case.

21         Furthermore, I have to point out my client's

22  constitutional interest here.  There's a very heavy

23  presumption and the court doesn't seem to be engaging in

24  that now --

25         THE COURT:  I am not, I am not in a position

1  where I am going to review my order that is squarely

2  before Judge Dooley, the objection to my order, and she'll

3  either hold a hearing or issue a decision on that.  But my

4  order stands.  I'm not changing it and I'm not vacating

5  it.

6          Okay.  Is there anything else anybody would like

7  to say on this issue?

8          MR. CERAME:  I'm deeply concerned if the court

9  orders us to submit an altered document.  I believe that

10 puts my client's interests in jeopardy and puts his life

11 in jeopardy.

12         MR. GOOLEY:  Judge, just very briefly, the fact

13 that they're willing to gamble by submitting what is not

14 currently the official transcript goes against everything

15 they're saying, that this is an emergency, that the life's

16 at stake, all of those things.  And it establishes there's

17 no emergency here and there's no need for vacating or

18 limiting your Honor's order and there's good cause not to

19 do it in light of what has already happened in terms of

20 the misconduct in this case.

21         MR. CERAME:  What if we were to submit both in

22 order to make sure that we submitted the right one?

23 Because I believe we're supposed to submit the unredacted

24 transcript, the official transcript, the document we

25 submitted on the 21st in -- the document we submitted in

1  2021.

2      Attorney Gooley says we're gambling here.  I

3  believe Attorney Gooley is gambling cheaply with my

4  client's interests, including his life interest.

5      THE COURT:  Who is -- because there was some

6  representations made or -- who is going to be submitting

7  these documents on behalf of Mr. Khan in response to the

8  letter?

9      MR. CERAME:  We had planned that my client

10 because we're, you know, we don't know exactly what our

11 deadlines are going to be here.  What the deadline

12 (indiscernible crosstalk).

13     THE COURT:  So you're not going to, so you're --

14 he doesn't have another Immigration lawyer who is going to

15 be submitting these documents on his behalf?

16     MR. CERAME:  Not to my knowledge.

17     THE COURT:  Okay.  And you or your office,

18 Attorney Cerame, or Attorney Taubes' office is not going

19 to be submitting these documents on his behalf?

20     MR. CERAME:  Not to my -- I will not be.  I

21 can't speak for Attorney Taubes.

22     THE COURT:  So he'll be communicating directly

23 with DHS in response to the letter.

24     MR. CERAME:  That's my understanding, Judge,

25 yes.

```
 1              THE COURT:  Okay.

 2              MR. CERAME:  Just a moment.  I have a

 3   communication from my client.

 4              THE COURT:  Sure.

 5              (Pause.)

 6              MR. CERAME:  Right.  My client noted that he is

 7   pro se on that.

 8              THE COURT:  Okay.  All right.

 9              Is there anything else anybody would like to

10   say?  All right.  Thank you.  We'll stand in recess.

11              (Proceedings adjourned.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                          CERTIFICATE

2

3                I hereby certify that the foregoing 32

4    pages are a complete and accurate transcription to the

5    best of my ability of the Emergency Motion to Vacate Order

6    in re:  SAIFULLAH KHAN vs. YALE UNIVERSITY, ET AL., Civil

7    No. 3:19-CV-01966 (KAD), held before The Hon. Maria E.

8    Garcia, United States Magistrate Judge, via Zoom

9    teleconference on October 21, 2024.

10

      *Suzanne Benoit*

11   _____

12   Suzanne Benoit, Transcriber          Date:  10/24/2024

13

14

15

16

17

18

19

20

21

22

23

# Exhibit F

# To Be Filed Under Seal

# Exhibit G

# To Be Filed Under Seal

# Exhibit H

# To Be Filed Under Seal

# Exhibit I

# To Be Filed Under Seal

# Exhibit J

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____
SAIFULLAH KHAN,                    )
                    Plaintiff,    ) No: 3:19-cv-1966-KAD
                                   )
        v.                         ) March 18, 2024
YALE UNIVERSITY, ET AL.,           )
                    Defendants.    ) 9:57 a.m.
_____    )
                           Brien McMahon Federal Building
                           915 Lafayette Boulevard
                           Bridgeport, CT 06604


                    MOTION HEARING


B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.


Courtroom Deputy:               Official Court Reporter:
Kristen Gould, Esq.             Tracy L. Gow, RPR

                Chambers: 203.579.5522

2

```
 1    A P P E A R A N C E S:
      For the Plaintiff:
 2         NORMAN A. PATTIS, ESQ.
           Pattis & Associates, LLC
 3         383 Orange Street, First Floor
           New Haven, CT 06511
 4         203-393-3017
           Email: npattis@pattislaw.com
 5
      For Defendant Yale University:
 6         GIOVANNA T. WELLER, ESQ.
           Carmody, Torrance, Sendak & Hennessey, LLP
 7         50 Leavenworth Street
           P.O. Box 1110
 8         Waterbury, CT 06721-1110
           203-573-1200
 9         Email: gweller@carmodylaw.com

10    For Defendant Jane Doe:
           BRENDAN GOOLEY, ESQ.
11         JAMES M. SCONZO, ESQ.
           Carlton Fields
12         One State Street
           Suite 1800
13         Hartford, CT 06103
           860-392-5036
14         Email: bgooley@carltonfields.com
                  jsconzo@carltonfields.com
15
      Also Present:
16         SAIFULLAH KHAN, Plaintiff

17

18

19

20

21

22

23

24

25
```

1            (Call to Order, 9:57 a.m.)

2            THE COURT:  All right.  Good morning, everybody.  We

3    are here on the matter of *Khan v. Yale University, et al.*

4            Counsel, please identify yourselves for the record.

5            MR. PATTIS:  Norm Pattis, on behalf of Mr. Khan,

6    Judge.

7            THE COURT:  Good morning, Mr. Pattis.  It's been a

8    while.

9            MR. PATTIS:  Good morning, Judge.  Good to see you.

10           Yeah, I know.  I was just saying to my colleagues

11   that I hadn't been in this building since before the

12   pandemic.

13           THE COURT:  It's --

14           MR. PATTIS:  And I've missed it.  So it's good to be

15   back.

16           THE COURT:  Welcome back, Mr. Khan.

17           MR. GOOLEY:  Your Honor, Brendan Gooley, on behalf

18   of Defendant Jane Doe.  With me is Attorney Jim Sconzo; and

19   Attorney Giovanna Weller, who represents Yale.

20           MR. SCONZO:  Good morning, Judge.

21           MS. WELLER:  Good morning, Your Honor.

22           THE COURT:  All right.  I had scheduled oral

23   argument on Jane Doe's Motion to Dismiss that is premised

24   largely on Mr. Khan's disclosing of her identity on social

25   media and some activity that flowed from that.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 144 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/28/24   Page 4 of 26

4

1          Since then, I think other -- the issues that are

2    probably implicated a little bit in the Motion to Dismiss

3    have been the subject of a additional motions, which we are

4    not taking up today, and that is Jane Doe's motion for a

5    protective order, restricting and limiting Mr. Khan's access

6    to and use of certain information, as well as a motion by Mr.

7    Khan to remove the pseudonym of Jane Doe, largely because the

8    reasons he had sought the pseudonym at the beginning was out

9    of respect or concern for Yale's Title IX procedure, which is

10   no longer a concern.

11          We're not going to resolve those issues today, and I

12   think I'm going to ask -- first of all, they're still being

13   briefed.  And once they are fully briefed, or maybe even

14   before they're fully briefed, I'm going to ask that all of

15   those issues be taken up by one of our magistrate judges, who

16   will in due course.

17          Turning back to the Motion to Dismiss.  I think some

18   procedural background is helpful.  As I indicated, Mr. Khan

19   had filed, initially, the request for a pseudonym for Jane

20   Doe at a time when he indicated he was still perhaps

21   interested in pursuing and returning to Yale to get his

22   degree.  And out of recognition of their Title IX procedures

23   and the confidentiality of those procedures, he sought a

24   pseudonym for Jane Doe.

25          He analyzed the factors, the Second Circuit factors,

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 145 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/28/24   Page 5 of 26

5

1    from "In re: Sealed Plaintiff" sort of through his lens,

2    through his eyes, and how those factors impacted his

3    interest.

4         Ordinarily, when a pseudonym is being contemplated,

5    it's through the interest for the person for whom the

6    pseudonym is going to be used.  And, so, Yale chimed in on

7    the motion for a pseudonym, and agreed, but sort of did it

8    through the eyes of Jane Doe as the accuser in the Title IX

9    proceedings.

10        And I granted the motion and ordered that all

11   pleadings and references to Jane Doe would use that

12   appellation throughout the litigation.

13        That was the only order I had entered.  Jane Doe had

14   not appeared at that time.  There was no request for a

15   protective order in terms of the use of her name, and I

16   certainly didn't *sua sponte* issue a prior restraint with

17   respect to anybody as to Jane Doe's identity.

18        So, with that background, I don't think -- and you

19   can tell me why I'm wrong -- I don't think that there would

20   be a basis at this juncture to dismiss the claims that Mr.

21   Khan brings for violating the Court's order; and if I've

22   missed something or there's an order there that did what I --

23   created a situation where he would be precluded from doing

24   what he has since done, then, by all means, share that with

25   me.  But I don't see that on this docket.

6

1           That said, I do have some concerns.  Attorney

2    Sconzo.

3           MR. SCONZO:  Thank you, Your Honor.  Good morning.

4           I hear what Your Honor says, but the consequence of

5    that would be that any litigant, then, could obtain such an

6    order and basically go worldwide and disseminate the name of

7    the person for whom they seek anonymity in this court.  So

8    there'd be no reason for the order, so to speak.

9           And I would say this, too, that before --

10          THE COURT:  But the protection that it affords is in

11   the confines of the litigation and public access to the

12   docket and who can look at the docket and know who the

13   players are.

14          I have not found a single case that says an

15   anonymity order serves as a prior restraint.  I just haven't

16   found it, Attorney Sconzo.

17          MR. SCONZO:  I would say this, Judge.  Well, I think

18   that's how the parties in this district have always viewed

19   this -- and, in fact, before what Mr. Khan did, Attorney

20   Pattis and I had been speaking candidly with each other, and

21   he had said, Jim, you know, we're going to move to remove

22   that order; and I said, in effect, Sure, you know, do what

23   you need to do, we'll respond to it.

24          So I think, in candor, even Attorney Pattis would

25   have to concede that nobody envisioned once this order

1    attached, that a litigant could take an end-run and

2    disseminate a name for whom they sought anonymity in this

3    case.

4            So, I do understand what Your Honor is saying, and I

5    do understand that you did not make an order against prior

6    restraint.  But the disclosure of the name in this case came

7    after Mr. Khan sought anonymity of the name and the

8    disclosures, as we've shown, Your Honor, all related to

9    litigation.  It's not as though he wrote some poem with her

10   name in it.  His disclosures are all defined by this

11   litigation and directed to this litigation.

12           So it seems to me, if there's no sanction for this,

13   then any litigant who obtains such an order will just ignore

14   it and go and say, Well, I didn't file a pleading so I can

15   use that name wherever I want.

16           MR. PATTIS:  May I address the Court, Judge?

17           THE COURT:  You may.

18           MR. PATTIS:  This is going to be a long piece of

19   litigation, and I think that our candor toward you and

20   respect to one another matters, because this is our first

21   time before you.

22           Everything Attorney Sconzo said is true.  I have

23   represented Mr. Khan since 2015, since he was first arrested,

24   I represented him in the 2018 trial and we've presented him

25   through the various appellate proceedings.  It is I who

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 148 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/28/24   Page 8 of 26

8

1    drafted the complaint.  It is I who sought the protective

2    order on his behalf.  And it was our understanding at that

3    time that we would be governed by Yale process, as it were,

4    which was to keep anonymity of the complainant.  And,

5    frankly, it was the Supreme Court's decision that sort of --

6    and it's conclusion about the application of the honor code

7    to her -- to Jane Doe, that tipped the balance.

8           It was my expectation that we were going to file

9    something with this Court.  In listening to you, I'm

10   thinking, Jeez, I'm not half as good a lawyer as I thought

11   because that was a defense that wasn't raised, but it's

12   because it was an issue I didn't --

13          THE COURT:  Slow down.

14          MR. PATTIS:  It was a defense I didn't raise because

15   it's an issue I didn't see.  I saw it as Attorney Sconzo did,

16   and I did provide him notice that we would be seeking relief

17   from the order.

18          So I appreciate the Defense, and I appreciate the

19   concern about prior restraints, but I was operating as though

20   the order applied where it may not have, and I wanted you to

21   hear that from me.

22          THE COURT:  Okay.  Thank you.

23          I'll circle-back to where I was.  What I have seen

24   does give me concern about what's going on here, and some of

25   the things that Mr. Khan has done that give me pause.

1    Because some of the tenor and tone of the posts feel less

2    like his plan is to have his rights vindicated as it is to

3    exact retribution, and that is not the purpose of the use of

4    our courts or litigation generally.

5          When he has posted about the litigation and talking

6    about attending depositions, there is a sense of an intent to

7    intimidate.  There is a sense of an intent to harass.  The

8    idea of sort of mobilizing the Internet -- I mean, this is

9    borderline doxing, and it's very concerning.

10         The flipside of this -- I know that we have -- Mr.

11   Khan has an interest, if I'm reading these attachments

12   correctly, in challenging the structure of Title IX

13   proceedings generally, separate and distinct from this

14   litigation.

15         And I guess I would ask Attorney Sconzo or Attorney

16   Gooley, the motion for protective order that you filed, that

17   sort of seeks to achieve essentially what you're arguing

18   should have been or already was in place.  Is that a fair

19   statement?

20         MR. SCONZO:  Well, partly, Your Honor.  I think that

21   motion did not address the dissemination of the name, but

22   that motion addressed the dissemination of disclosures made

23   in discovery.  So the name issue still, I think, remains the

24   largest concern.

25         THE COURT:  And that issue is teed up with

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 150 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 10 of 26

10

1    plaintiff's motion.  You would agree with that, I assume?

2              MR. SCONZO:  I would agree with that.  I would also

3    agree with, we have a lot more to say on that.

4              THE COURT:  Okay.  Attorney Pattis, what is your

5    client's plan?

6              MR. PATTIS:  When I have talked to Mr. Sconzo, to

7    alert him we'd be filing a motion, it was my belief that we

8    would be filing a motion, and I was awaiting some instruction

9    from Mr. Khan.  And I have permission to discuss this with

10   you.

11             His disclosure surprised me, and I think the word I

12   used in one of my pleadings was "flummoxed," and led to

13   discussions between he and I about whether the

14   attorney-client relationship would continue, because my view

15   is that orders of the court are orders of court, and I

16   construed it strictly, and in ways that perhaps the Court

17   doesn't think are necessarily justified on the pleadings.

18   But that's how I saw it.

19             He, and for good reason, regards himself as the

20   victim in this case, not Jane Doe.  They had a consensual

21   experience, a jury vetted it, and Mr. Khan has been deprived

22   of the promise that Yale made him for a bright future in the

23   country of his adoption by using a procedure that might best

24   be described as a "kangaroo court," and encouraging and

25   enabling a young woman to come forth and lie about him to the

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 151 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 11 of 26

11

1    world, and now she seeks the protection for the consequences

2    of her action.

3          Now, the Court may say that his purpose is revenge

4    and revenge is inappropriate.  Accountability is not.  And to

5    the degree that he will seek punitive damages, those are to

6    punish and deter, and deterrence is a uniquely personal

7    function.

8          So I think he wants her to feel what he felt.  What

9    it was to have every publication that reports on things like

10   that, like Time Magazine reported him to be a rapist, when,

11   in fact, what he did was engaged in what one headline writer

12   called "messy sex."  And sex, typically, when it's consensual

13   among people above a certain age, may be messy, but it's not

14   a crime.

15         And, so, for reasons of her own, and for reasons of

16   a highly-mobilized political group, Mr. Khan was held out to

17   be a criminal and had to fight for his liberty, and he won.

18   And when he went back to Yale, the anger was mobilized and

19   they forced him to the street, and he's lost the promise.  I

20   remind you, he was recruited from a refugee camp in

21   Pakistan -- or Afghanistan, rather -- and came to the United

22   States, educated at Yale's expense.  He does want

23   retribution.  His future was stolen from him.

24         Now, having said that, I'm in a tough spot on the

25   "prior restraint" issue because I don't think this does come

12

1   close to doxing, and I know a lot about that from the Alex

2   Jones case in the state court, where there is a new theory in

3   the defamation cases called "stochastic terrorism," which is,

4   in an interconnected digital universe, a defamatory remark

5   placed in the right context will inflame the online world.

6        You know, I don't see that Mr. Khan is responsible

7   for the interest the public has taken in this case.  The

8   interest the public has taken in this case goes to the very

9   injury or the harm he's suffered.  In the eyes of many, he's

10  a rapist because she said he was, and it's never been shown.

11       So I hear what you're saying, Judge.  What we've

12  come to court -- Mr. Khan has recently had jaw surgery.  He's

13  able to speak.  It's a little difficult.  I told him to

14  expect a rebuke from the Court and to be put -- that he would

15  be placed on notice that further misuse of court material

16  would not be tolerated and would come with consequences.

17       I hear the Court saying that it may not be prepared

18  to drop that hammer yet.  But I think his intentions are to

19  fully and fairly --

20       THE COURT:  Still thinking about it.

21       MR. PATTIS:  Well, I hear you.

22       But, I mean, I think that his intentions -- finally,

23  to answer your question -- are to fully and fairly litigate

24  this case and bring it to a jury.  I've explained to him that

25  any other questions about his compliance with court orders

13

1   could cost him my representation of him, because it'll raise

2   questions about my credibility.

3         And, candidly, there was discovery mishap in the

4   Jones case that in state court had cost me a suspension that

5   is still being litigated in the appellate courts.  I'm

6   uniquely sensitive to these issues, and Mr. Khan knows it.

7         So his intentions are to obey your orders, but to

8   fight hard to vindicate his claims.

9         MR. SCONZO:  Judge, may I be heard just briefly.

10        THE COURT:  Of course.

11        MR. SCONZO:  I see an merging notion in this case

12  that Mr. Khan was vindicated.  Mr. Khan was found "not

13  guilty" in a criminal standard, in a criminal court.  Nothing

14  has been decided in a civil context, and I want to make that

15  clear.  Mr. Khan was dismissed from Yale on a standard far

16  different than a criminal process for rape, and he has not

17  proven that my client lied, and I need to put a stop to this

18  notion I see building momentum that he's been vindicated.

19        He's not be vindicated of anything, Judge.  The only

20  charge he's been absolved of by a jury is that the State did

21  not prove beyond a reasonable doubt that he raped my client.

22  That is it.  The rest is yet to be determined.

23        THE COURT:  All right.  I agree.  And I think that

24  that puts a finer point on the concerns that I have.  I mean,

25  obviously, Mr. Pattis, I'm sure you're going to have a

14

1    conversation with your client about his own exposure as he

2    publicly accuses, outside the confines of a courtroom, when

3    he publicly accusing her of a false accusation.

4         What I don't want -- because Mr. Sconzo is correct.

5    This case is going to be decided on the basis of the

6    allegations, presumably to a jury who will have to make a

7    determination not beyond a reasonable doubt, but by a

8    preponderance of the evidence whether or not it was a false

9    accusation.

10        And we will get the case there.  We had a few starts

11   and stops as it bounced around various appellate courts.  It

12   found its way back.  But what I don't want, I don't want the

13   case litigated on X or on Youtube or on TikTok.  That just

14   can't happen.  That starts to infect the entire process, and

15   if I -- and I think I do have a legitimate concern that that

16   might be on Mr. Khan's list of things to do, in terms of

17   having his viewpoint out there in the world repeated to the

18   Jane Doe's detriment, at a time when nothing has been

19   decided.  That's what I'm concerned about.

20        MR. PATTIS:  So, Judge, I understand the Court's

21   concerns.  And this was a subject of litigation, on the basis

22   of a special public interest appeal to the Connecticut

23   Supreme Court in the case of *State of Connecticut v. Fotis*

24   *Dulos,* and I would ask you to consider looking at the briefs

25   there.  That was a case involving the serious death of a

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 155 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 15 of 26

15

1    mother of five children.  I believe his co-defendant,

2    Michelle Troconis, just had a verdict.

3         I represented Mr. Dulos, who wanted an aggressive

4    presentation of his defense and questions about it raised in

5    the press, given the extraordinary interest the press had

6    taken in the case, so we did so.  The State moved for a gag

7    order, and the Court issued one.  We got the Connecticut

8    Supreme Court to grant a special public interest appeal,

9    because it was our understanding that the prohibition against

10   potentially prejudicial pretrial publicity was limited to

11   those circumstances in which it was likely to not have an

12   influence on the jury, and that remarks distant in time by a

13   nontrial -- by a nonlawyer were protected speech, and that

14   what the Court had engaged in the Dulos case was a gag order.

15        We never got a decision on that case because Mr.

16   Dulos committed suicide.  But it is a -- given the way that

17   the waves are breaking in here today, that's an issue that

18   might well come before this Court.  And it may be, that as

19   the Court considers its own comfort level with the conduct of

20   litigants here and what is to come next, that the Court may

21   request briefing on that issue.  It would be an easy enough

22   thing, for me certainly, to re-tool the Dulos brief, because

23   I think there are legitimate issues in there.

24        You know, there is an inherent authority for courts

25   to regulate the conduct of trial participants.  We saw that

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 156 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 16 of 26

16

1    in another public-interest appeal I handled involving

2    Mr. Jones' speech about trial counsel in the Sandy Hook case

3    on his broadcast.  The Court did issue a decision in that

4    case.  We took *certiori* to the United States Supreme Court on

5    that, and it was denied.

6          All of which to say, I think that the extra-judicial

7    statements of non -- of non-counsel trial participants are

8    protected speech unless it can be shown that they're

9    imminently likely to cause prejudice to the jury.  And we're

10   so far out, I don't think he should be kept -- he should be

11   ordered to not speak about the case.  And if he seeks to try

12   it on X or Youtube, the normal rules with respect to

13   defamation and so forth would apply.

14         I'm not sure that the Court has authority to bar

15   commentary about a case prior to his coming to trial.  The

16   case isn't even scheduled for trial yet, as near as I can

17   tell.

18         So it I think there are issues here that the Court's

19   going to potentially have to grapple with, and I recite these

20   other cases only because a lot of time and effort went into

21   briefing them and it might provide the Court with something

22   to think about.

23         THE COURT:  Attorney Sconzo.

24         Thank you, Attorney Pattis.

25         MR. SCONZO:  I respect what Attorney Pattis is

1   saying, but I think he's jumping the gun here.  We were

2   motivated by what we saw -- and I think Your Honor commented

3   on this a few moments ago -- what we saw was retaliatory

4   action.  The comments were, in our opinion -- and we set the

5   sequence up in your briefing.  They started with -- it's a

6   retaliatory sequence of events starting with e-mails directly

7   to my client that were found harassing, after he had sought

8   to hide her name.

9          So it's not that we have taken the position in our

10  motion that he can't speak about the case.  We haven't even

11  got there yet.  What we have said is he's used her name

12  publicly after telling the Court that he wouldn't do that,

13  and the Court entering an order to that effect, and then

14  harassing my client and using her name publicly, telling the

15  world "a gift is going to come," and sure enough he does

16  this.

17         So it's not quite as Attorney Pattis is portraying.

18  I don't think we're there yet.  We're in the immediacy of

19  this harassing, vile conduct that does need to be addressed,

20  Your Honor, and we'd be happy to brief it further.  But the

21  conduct is vile and out-of-bounds, and I've been doing this a

22  long time, Your Honor.

23         MR. PATTIS:  Judge, I have too, and "vile" doesn't

24  even come close to it.  This isn't even close to vile or

25  harassing.  If somebody brings a suit against me and I

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 158 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 18 of 26

18

1    comment on them, "I can't wait to see you in court," and I

2    pose their name online, that's vile?  That's harassing?

3           I mean, that's too tender, by far, for a regime

4    governed by First Amendment protections.

5           MR. SCONZO:  It's vile, Your Honor, when he knows

6    full well the platform he's using to do this, the setup that

7    he's using, and then what has happened.  And we showed Your

8    Honor what has happened -- "the Nazis have taken this," "the

9    fringe element has taken this," that's exactly what he

10   intended and he's gotten his intention.

11          MR. PATTIS:  And this is the brave new world of

12   stochastic terrorism.  And, you know, I don't know that the

13   First Amendment -- I mean, I'm reasonably confident that

14   nobody contemplated social media, and I'm reasonably

15   confident that our times have become unhinged.

16          You know, I've recently tried a case, Judge, for six

17   months in D.C., involving the Proud Boys.  And what I saw in

18   the courtroom didn't correspond to what appeared online from

19   both the right and the left.  And, so, I recognize that

20   social media has created this inflammatory tinderbox, where

21   any spark can light a fire.  But I don't think that the

22   person who lights the spark is intentionally -- or, is

23   responsible for the fire, absence a showing of intent to do

24   so.  And merely asserting that he must have had that intent

25   because it occurred is *post hoc ergo propter hoc*.

1      THE COURT:  Well, I think there's certainly language

2  that your client shows from which a reasonable inference

3  could be drawn that he was looking to set the spark or he was

4  looking to visit upon her something similar to what has been

5  visited upon her.

6      MR. PATTIS:  I don't know that anything has.  I

7  mean, you know, I endured the Sandy Hook defaults trial for

8  Alex Jones, and they brought in an expert on digital imprint

9  and stochastic terrorism, and then they brought on the family

10  to talk about the contact that was made in that.  Because

11  there was a default entry, causation was established.  And so

12  it was assumed that when a drop -- when a pebble was dropped

13  in an ocean, every ripple was the responsibility of Mr.

14  Jones.  The plaintiffs never had to prove that.  And the

15  plaintiff -- or the defendant in this instance never even

16  tried.

17      THE COURT:  Well, I'm not -- I'm not going to

18  dismiss the case.  I think that, consistent with the parties'

19  earlier understanding, with the issues now I think adequately

20  joined between the motion to remove the pseudonym and the

21  motion for the protective order, what the parties' conduct

22  looks like going forward is teed up.

23      I am going to direct -- I suppose you can take an

24  immediate appeal to the Second Circuit if you'd like,

25  Attorney Pattis, but I am going to direct Mr. Khan not to at

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 160 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 20 of 26

20

1    least use Jane Doe's real name in his social media

2    communications until such time as all of those motions are

3    adjudicated by the Court.

4         And, Mr. Pattis, I would ask you to ask your client

5    whether he has any concern about following that order.

6         MR. PATTIS:  May I have a moment, please?

7         THE COURT:  Yes.

8         (Conferring.)

9         MR. PATTIS:  Judge, I had a chance to speak to Mr.

10   Khan, and he said, What is it exactly that the Court is

11   saying?  And I said I understand it to say the following:

12   That unless and until there is a ruling on a series of

13   motions related to the anonymity order, that he is not to use

14   Jane Doe's name in any social media posting or publish --

15   publications to the world; and what's more -- I went a little

16   further than what I thought I heard the Court say, and that

17   he should take down any that he has control over right now.

18        He -- and he understands that, and he would like to

19   address you himself, Judge.

20        THE COURT:  Okay.

21        MR. KHAN:  Good morning, Your Honor.

22        THE COURT:  Good morning.

23        MR. KHAN:  Apologies for the mask.  I am at risk for

24   infection.

25        THE COURT:  No apology necessary.

1        MR. KHAN:  Your Honor, I have never harassed Jane

2   Doe, the various characterization.  Although I'm not privy to

3   what Attorney Sconzo has been saying because of the sealed

4   nature of the motions, my intention has never, as you said,

5   with the tenor of my posts, has never been to intimidate or

6   harass anyone.  It's merely to conduct a robust discovery.

7        And my interpretation of what the Second Circuit

8   said in Footnote 1, Brief 3, and what the Supreme Court said

9   in Footnote 39, and on those two bases I -- yes, I completely

10  apologize.  I jumped the gun, I misunderstood, and I

11  profusely apologize, and I will completely abide by any

12  punishment or order that the Court gives me.

13       As my mom used to say, the English equivalent is "no

14  good deed goes unpunished" -- simply, abiding by the Yale

15  confidentiality policy.  I should have just sued her under

16  the name originally and fought this back then.  I'm sorry for

17  this.

18       I -- in 2015 until 2018, at the Superior Court with

19  Judge Blue and Judge Fischer, I complied with all of the

20  laws; at the Yale Title IX policy, I complied with all of the

21  laws; and in the various bouncing around from District, to

22  Second, to Supreme, I've complied with all of the laws of

23  Your Honor, including the requests of Attorney Sconzo --

24  including, yes, when -- there have been three contacts

25  between me and Jane Doe:

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 162 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/20/24   Page 22 of 26

22

1          One, I had my attorney request settlement discussion

2    from Attorney Sconzo, and they did it by phone -- they had no

3    appetite.  I don't consider that harassment.

4          The second was -- I looked it up.  I thought that,

5    while attorneys are not allowed to contact opposing clients,

6    it didn't -- it said that it's okay for clients to do so, as

7    long as it's respectful.  I carbon-copied Attorney Sconzo on

8    that e-mail.  When I was told by Attorney Sconzo to never

9    contact her again, I obliged.  I have not done so.

10          And the third time was I got -- the situation again

11    changed over the years.  I e-mailed Attorney Sconzo directly.

12    He considers that harassment again.  In none of those things

13    have I been intending to harass or intimidate anyone.

14          And, so, if Your Honor would like to, for lack of a

15    better word, put a gag order on me, I will completely oblige.

16    I will do exactly as you say.

17          MR. PATTIS:  Objection.  We're not going to -- we're

18    not completely oblige to any gag orders, Mr. Khan.  Speak to

19    me before you offer to comply with gag orders to the Court.

20          MR. KHAN:  I'm saying, if Your Honor -- I don't know

21    the laws here, I'm still not a citizen yet, but I will seek

22    whatever judicial -- I will always comply with the law.

23          I come from a lawless country, and I have tremendous

24    respect for this court, and I'm just seeking justice for the

25    pain that the client caused me -- and Yale.  It'll take me

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 163 of 360
Case 3:19-cv-01966-KAD   Document 94   Filed 03/26/24   Page 23 of 26

23

1   nine more years, I don't care.  I'm sorry for --

2          THE COURT:  It's all right.

3          MR. KHAN:  Thank you.

4          THE COURT:  All right.  I think that -- well, let me

5   ask, Attorney Weller:  Does Yale have anything to add to this

6   landscape?

7          MS. WELLER:  I'm sorry, Your Honor.  Can you repeat

8   the question?

9          THE COURT:  Did Yale have anything they wanted to

10  add to this landscape?

11         MS. WELLER:  No, Your Honor, not at this time.

12         THE COURT:  All right.  Thank you.

13         I think that the motion for protective order is

14  broad enough in its contours that I think, in terms of Mr.

15  Khan's access to and use of discovery in this case, which

16  obviously will include Jane Doe's true name, and the motion

17  regarding removing the pseudonym, when fully briefed will, I

18  think, allow for a complete vetting of all of the issues that

19  have been decided -- or discussed, or sort of identified here

20  this morning.

21         Until those motions are adjudicated, I'm going to

22  direct that Mr. Khan sort of abide by the status quo that was

23  the parties' understanding as to the impact of the pseudonym

24  order, which means, Mr. Khan, I'm going to direct you not to

25  publicly identify her again on social media or elsewhere

1   until those rulings are issued.

2           In large respect, Attorney Sconzo, Attorney Gooley,

3   as you know, once something is on the Internet, it's very

4   difficult to scrub.  It's probably impossible to scrub.  So

5   there's nothing I can do about that *vis-a-vis* Mr. Khan or

6   otherwise, frankly.

7           Was there anything -- I'm not sure that there's

8   anything else we can do.  I am going to deny the Motion to

9   Dismiss for the reasons I've already indicated.

10          Anything else we can do with respect to Mr. Khan,

11  Attorney Pattis?

12          MR. PATTIS:  Not today, Judge.

13          THE COURT:  Thank you.

14          Attorney Sconzo.

15          MR. SCONZO:  Just one thing on the last point, Your

16  Honor, and I think Attorney Pattis was prepared to do this.

17  Could Your Honor at least order that Mr. Khan take down what

18  he's posted?  I understand you can't order that people who

19  repost take theirs down, but you certainly could direct Mr.

20  Khan to take down his posts.

21          THE COURT:  Yeah, I don't -- I don't under -- I

22  don't pretend to have a full understanding of Mr. Khan's

23  social media presence.  Are we talking about a Facebook page,

24  a Twitter -- an X account?  Where -- is there a particular

25  situs that Mr. Khan generally posts to?  What's your

25

1     understanding, Mr. Sconzo?

2          MR. SCONZO:  My understanding is -- and I'm not that

3     savy with this stuff, but my understanding is it's on X.

4          THE COURT:  Okay.

5          MR. SCONZO:  And that's what I'm directing my

6     comments toward.

7          THE COURT:  Attorney Pattis, is there any objection

8     to her name being removed until such time as those motions

9     are adjudicated?

10          (Conferring.)

11          MR. PATTIS:  Judge, Mr. Khan is willing to take down

12     any posting her name on X or any other account under which he

13     has the ability to do so.

14          What?

15          (Conferring.)

16          MR. PATTIS:  He is willing to do so because of

17     respect for your orders, but he won't do so at Mr. Sconzo's

18     direction.  He would do so if that is the order of the

19     Court.

20          THE COURT:  Then that is the order of the Court.

21          All right.  Anything else we can do, from Jane Doe's

22     perspective?

23          MR. SCONZO:  No.  Thank you very much, Your Honor.

24          THE COURT:  All right.  Thank you for coming in,

25     Counsel.

1          MR. PATTIS:  Thank you, Judge.

2             (Proceedings conclude, 10:35 a.m.)

3

4                    C E R T I F I C A T E

5                RE: *Khan v. Yale, et al.*
                 Civil No. 3:19-cv-1966-KAD
6
                    Motion Hearing
7                   March 18, 2024

8

9      I, Tracy L. Gow, RPR, Official Court Reporter for the

10  United States District Court, District of Connecticut, do

11  hereby certify that the foregoing pages, 1 through 26, are a

12  true and accurate transcription of my shorthand notes taken

13  in the aforementioned matter to the best of my skill and

14  ability.

15

16                 /s/  TRACY L. GOW
                   Official Court Reporter
17                 U.S. District Court
                   915 Lafayette Boulevard, Room 216
18                 Bridgeport, Connecticut 06604
                   (203) 910-0323
19

20

21

22

23

24

25

# Exhibit K

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


_____
SAIFULLAH KHAN,                   )
               Plaintiff,         ) No: 3:19-cv-01966-KAD
                                  )
       v.                         ) July 25, 2024
YALE UNIVERSITY, ET AL.,          )
               Defendants.        ) 10:00 a.m.
_____   )
                                  Brien McMahon Federal Building
                                  915 Lafayette Boulevard
                                  Bridgeport, CT 06604



                        MOTION HEARING



B E F O R E:
        THE HONORABLE KARI A. DOOLEY, U.S.D.J.
```

```
Courtroom Deputy:                 Official Court Reporter:
Kristen Gould, Esq.               Tracy L. Gow, RPR

                  Chambers: 203.579.5522
```

2

```
 1   A P P E A R A N C E S:

 2   For the Plaintiff:
          MARIO K. CERAME, ESQ.
 3        Brignole, Bush & Lewis
          73 Wadsworth Street
 4        Hartford, CT 06106
          860-527-9973
 5        Email: mario@brignole.com

 6   For Yale University Defendants:
          PATRICK M. NOONAN, ESQ.
 7        Carmody Torrance Sandak & Hennessey LLP
          741 Boston Post Road, Suite 306
 8        Guilford, CT 06437
          203-458-9168
 9        Email: pnoonan@carmodylaw.com

10        GIOVANNA T. WELLER, ESQ.
          Carmody Torrance Sandak & Hennessey, LLP
11        50 Leavenworth Street
          P.O. Box 1110
12        Waterbury, CT 06721-1110
          203-573-1200
13        Email: gweller@carmodylaw.com

14   For Defendant Jane Doe:
          BRENDAN GOOLEY, ESQ.
15        Carlton Fields
          One State Street, Suite 1800
16        Hartford, CT 06103
          860-392-5036
17        Email: bgooley@carltonfields.com

18   Also present:
          SAIFULLLAH KHAN, Plaintiff
19        STEVEN ALQUESTA, ESQ., Law Clerk

20

21

22

23

24

25
```

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 170 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 3 of 70

3

1                    (Call to Order, 10:00 a.m.)

2          THE COURT:  All right.  We are here on the matter of

3     *Khan v. Yale University, et al.*, for argument on pending

4     motions to dismiss.

5          Counsel, please identify yourselves for the record.

6          MR CERAME:  Good morning, Your Honor.  This is Mario

7     Cerame from Brignole, Bush & Lewis, for Mr. Khan, who is

8     sitting next to me at counsel's table.

9          THE COURT:  Good morning.  Good morning, Mr. Khan.

10         MR. GOOLEY:  Good morning, Your Honor.  Brendan

11    Gooley, Carlton Fields, on behalf of Defendant Jane Doe.

12         MS. WELLER:  Good morning.

13         MR. NOONAN:  I'm Pat Noonan, and I represent Yale

14    University.  And with me is Giovanna Weller.

15         MS. WELLER:  Good morning, Your Honor.

16         THE COURT:  Good morning.  Good morning, everybody.

17         Okay.  Let me just make some preliminary

18    observations.  We are scheduled today for oral argument on

19    two motions to dismiss, one filed by Defendant Jane Doe and

20    one filed by the Yale University Defendants.  Each seeks

21    dismissal as a sanction for Plaintiff's purported violation

22    of Judge Garcia's anonymity order issued in response to

23    Defendant Jane Doe's motion to continue her anonymity and

24    Plaintiff's motion to remove the anonymity.  Plaintiff,

25    obviously, has opposed both motions.

1          Preliminarily, Mr. Khan filed a notice of

2     supplemental authority yesterday, in which he references

3     today's oral argument in connection with his objection to

4     Judge Garcia's order.  I did not schedule oral argument, and

5     I do not intend to hear argument today, as to Plaintiff's

6     objection to Judge Garcia's order.

7          Today's hearing is limited to the two motions to

8     dismiss that were filed, and I -- there's certainly some

9     areas where the objection to the order and the propriety of

10    Mr. Khan's conduct in the face of that order may overlap to a

11    certain extent, but really I see these as distinct issues.

12    We don't live in sort of a "self help" society, and when

13    faced with a court order we have options.

14          If we disagree with that order, we can seek

15    reconsideration, we can appeal it, any number of things to

16    challenge it but one of the things we can't do is ignore it

17    on the theory that it is somehow legally incorrect.

18          So it was not -- I was not going to hear argument as

19    to the propriety of that order in connection with the Motion

20    to Dismiss.  Today's hearing was really about an examination

21    of Mr. Khan's conduct in the face of that order and whether

22    or not that conduct warrants sanction from the Court.

23          Obviously, the sanction the Defendants seek is

24    dismissal, or whether some other lesser sanction, or whether

25    no sanction.  I mean, those are really the issues that I need

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 172 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 5 of 70

5

1    to decide today.  What I am not going to decide today is the

2    propriety of that order, in the first instance, because

3    that's sort of besides the point.

4            Attorney Cerame, do you wish to be --

5            Am I saying it right?

6            MR CERAME:  Cerame.  It's little more nasally, Your

7    Honor.

8            THE COURT:  All right.  Cerame.

9            MR CERAME:  I just -- the reason I did that was just

10   out of completeness.  There seemed to be a number -- there

11   was this issue, also the 72.2 was pending, and I wasn't sure

12   exactly where Her Honor wanted to go, so I had filed it just

13   in case this was something that was going to come up.

14           Absolutely understand where Her Honor is coming from

15   and the direction for today's hearing, and I'm absolutely

16   prepared for that.

17           THE COURT:  Okay.  All right.  Excellent.

18           By the end of the day, if I haven't asked, remind

19   me.  I don't have -- I have not had a large number of

20   occasions to undertake objections to magistrate judge

21   rulings.  On those occasions that I have been asked to do

22   that, I've simply taken them on the papers.  If the parties

23   think that they want additional argument on a separate date

24   on those issues, let me know, but it would be my intention,

25   absent such a request, to simply take up those issues on the

1    papers.

2            So...

3            MR CERAME:  Sorry.  As a housekeeping matter, Your

4    Honor, how would you like us to articulate that?  Do you want

5    us to call chambers?  Mutually?  Do you want us to send --

6    file a motion?  I'm just not familiar with Your Honor's

7    chambers' practice.

8            THE COURT:  I would say before you leave today stand

9    up and say, "Judge, I want oral argument on my objection."

10           MR CERAME:  Certainly, Your Honor.

11           THE COURT:  Okay?

12           All right.  Now, it is not my intention to limit

13   anybody in terms of what they may want to advance by way of

14   argument in terms of the pending motions to dismiss.  Both

15   Defendants have invoked this Court's inherent authority to

16   sanction a party, as well as Rule 41 and it's provisions

17   regarding the violation of a court order.

18           And as I said, I'm not going to limit any argument

19   that either party wishes to make in connection with those

20   motions.  But there are some specific concerns I have

21   regarding Mr. Khan's conduct that I think need to be

22   addressed in some fashion during the arguments, so I thought

23   I'd share those upfront before turning it over to counsel for

24   whatever arguments they wish to make.

25           My initial view of the motions is that the motions

1    to dismiss, the motion for sanctions, are not about the First

2    Amendment.  They're not about whether Mr. Khan has the right

3    or the ability to reach out to the world on social media or

4    otherwise.  To me, I look at this conduct -- and his now, I

5    would say, pattern of conduct or repeated conduct -- and I

6    think this is about a party who is misusing and arguably

7    abusing and manipulating our civil justice system to his own

8    ends and to advance an agenda that has nothing to do with

9    this civil litigation or the vindication of the claims that

10   are contained in the operative complaint.

11           Mr. Khan is not a disgruntled defendant who's been

12   hauled into federal court against his will.  He's the

13   Plaintiff.  He walked through the courthouse doors, and he

14   set in motion the wheels of our civil justice system by

15   filing a complaint.  He has availed himself of the court

16   process, the very process he now derides/thwarts, in an

17   effort to garner support for an agenda that has nothing to do

18   with this litigation.

19           I don't have a judgment about that agenda or those

20   goals or what it is Mr. Khan might be attempting to achieve

21   outside the confines of the civil litigation.  Those are his

22   decisions.

23           What I do have an objection to is that he's using,

24   or appears to be using, this litigation, this Court, our

25   civil justice system, as the springboard to advancing this

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 175 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 8 of 70

8

1   social media agenda or his cause in the contexts of discourse

2   about Title IX and, it appears, an interest in retribution

3   for the wrongs he claims to have suffered at the hands of

4   Jane Doe and others.

5          This conduct does not present as the Plaintiff

6   seeking a factual and legal adjudication of his claims as

7   would be determined by a jury following an established civil

8   procedure for his claims.  What appears on the record is that

9   Mr. Khan seeks to harass and intimidate others and to

10  influence the world at large regarding the allegations in

11  this case, which, I will add, he repeatedly mischaracterizes.

12  And I can only assume that this is as an inappropriate

13  effort, perhaps, to influence the jury pool.

14         When we were last convened, I expressed significant

15  concern regarding Mr. Khan's motives.  I referred to his

16  social media postings as "borderline doxing."  I questioned

17  whether he was trying to try this case on social media.  "No,

18  no," he proclaimed, "Not me."  And yet, here we are again.

19         Mr. Khan treats this litigation like an inconvenient

20  sideshow.  But it's a necessary sideshow, because it still

21  provides him the platform for him to continue to advance this

22  other nonlitigation-related agenda.

23         And that is not okay.  Why should I sit back and

24  allow the Plaintiff to invoke and then abuse the civil

25  justice system to his own ends?  And for the purposes of

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 176 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 9 of 70

9

1    harassment and intimidation?  That is not the purpose for

2    which we have a civil justice system.

3          Whether it's my inherent authority, whether it's

4    Rule 41, whether we can even agree to disagree as to whether

5    the conduct at issue violated the letter or spirit of Judge

6    Garcia's order, how do I permit this to continue?  I would

7    like nothing more -- I mean, the amount of money and time and

8    effort that has been spent in the last three or four months

9    litigating Mr. Khan's conduct outside the confines of this

10   litigation is ridiculous.  It's ridiculous.

11         And if everybody would just focus their attention on

12   discovery, completing discovery, getting the case to trial,

13   well, then we'd be in a very different place than where we

14   are.  But my sense is that that's not Mr. Khan's agenda.

15         Dismissal of these claims as a sanction is the most

16   severe sanction that I could mete out, and I haven't decided

17   what to do about this situation.  I just know it has to end

18   one way or another -- whether by court order; by the end of

19   the litigation, which we know is what the Defendants are

20   asking.  I don't know what the right answer here is.  But I

21   know it has to stop.  And there will be competing arguments,

22   factual and legal, as to what Mr. Khan is or is not trying to

23   do.

24         But I think at this juncture, based on everything

25   that's been submitted, Mr. Khan's utter disdain and hostility

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 177 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 10 of 70

10

1    towards at the very least Jane Doe, and probably to a lesser
2    extent the Yale Defendants, is manifest.

3         And we just don't use our civil justice system to
4    exact revenge.  It's just not what it's there for.  If I
5    could convene a jury tomorrow to adjudicate these claims, I
6    would do it.

7         So, those are my overarching concerns.  They are in
8    some respects related and in other respects unrelated to the
9    specific legal issues that have been raised in the motions to
10   dismiss.  And I won't belabor the points.

11        I will turn it over to counsel for arguments.  I
12   don't know whether the Defendants have had a discussion about
13   who is going to proceed in what order.  It would be my
14   practice to have the Movant argue first, obviously then I'll
15   hear from Plaintiff Mr. Khan, and we'll take it one issue-one
16   motion at a time.

17        MR CERAME:  There is a pending motion *in limine,*
18   *Judge,* and we discussed this with Judge Garcia in the status
19   conference.  We asked that certain exhibits -- a certain
20   exhibit be included for the Court.  And it was decided by
21   Attorney Weller and then myself, that we wouldn't -- I
22   wouldn't push that issue between her and would bring that in
23   front of the Court.

24        I said -- I brought this up to Judge Garcia.  I
25   said, This seems like a housekeeping issue.  We have these --

1    this exhibit we've marked it as Exhibit 1.  We also have an

2    Exhibit 2.  I've apprised opposing counsel what they are,

3    they know what they are, they're mentioned in our memoranda.

4            So I want to submit these exhibits, or at least

5    resolve in some way, have them marked for at least

6    identification purposes.  The motion *in limine*, I just

7    wanted -- you know, I think that that's an issue that we

8    should address.

9            THE COURT:  What was the docket number on the motion

10   *in limine*?

11           MR CERAME:  I don't recall off the top of my head,

12   Your Honor.  Let me just grab it real quick.

13           MR. GOOLEY:  Judge, I believe it's ECF-161.  And our

14   response --

15           MR CERAME:  That's correct.

16           MR. GOOLEY:  And I believe our response is ECF-169.

17   I believe.

18           THE COURT:  All right.  I don't have either of those

19   with me.

20           Can I get those, Attorney Alquesta?

21           And what is the -- walk me through it.  I don't have

22   those in front of me.

23           MR CERAME:  Sure, Judge.  So, these are transcripts.

24   We're asking the Court to take judicial notice.  We filed a

25   motion *in limine*, because I anticipated, you know, ahead of

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 179 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 12 of 70

12

1    time -- I have a copy of the motion *in limine* if the Court

2    wants it.

3          THE COURT:  Please.

4          MR CERAME:  May I approach?

5          THE COURT:  Yes.

6          MR CERAME:  Thank you, Madam Deputy (handing).

7          COURTROOM DEPUTY:  (Handing.)

8          MR CERAME:  We believe that Ms. --

9          THE COURT:  Give me a second.

10         MR CERAME:  Sure.  Take your time, Judge.

11       (Pause.)

12         THE COURT:  And this is a transcript from the

13   criminal proceedings?

14         MR CERAME:  Yes, Your Honor, and as well as the

15   Exhibit 2.  And we have prepared that in response to one of

16   the objections, and that's a much shorter version of relevant

17   information in the transcript.

18         THE COURT:  But what does it go to that I have to

19   decide on these motions to dismiss?  This goes to -- this is

20   your First Amendment argument; isn't it?

21         MR CERAME:  In part, Your Honor, and it is relevant,

22   I believe, to that.

23         THE COURT:  But I'm not deciding that issue in

24   connection with the Motion to Dismiss.  The question is his

25   conduct in the face of the order, not whether the order was

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 180 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 13 of 70

13

1    itself --

2         MR CERAME:  My recollection, Your Honor, is that

3    part of the issue here is that the Court has -- there are

4    claims that Ms. Khan -- Ms. -- the defendant --

5         THE COURT:  Jane Doe.

6         MR CERAME:  The Defendant, Doe, has been hurt in

7    some way by the disclosure of facts.  These facts, remember,

8    are matters of public record.  This is -- this goes to --

9         THE COURT:  So, it goes to whether or not the

10   sanction is appropriate?

11        MR CERAME:  To the degree to which someone is

12   harmed.  It seems the court's taking that into consideration

13   from what the Court has said today, the degree to which Mr.

14   Khan's trying to advance some kind of agenda.  And I believe

15   that this, that Ms. Doe is not an anonymous person, is

16   relevant to that.

17        THE COURT:  Even though the question of whether the

18   Court allowed him to disclose her name is really not an

19   issue.  The Court told him not to do that.

20        MR CERAME:  That's right, and he's not being

21   punished for disclosing her name.  He's being punished for

22   other people disclosing her name, a name that is public.

23   He's being punished for statements that's aren't about her --

24   her, and that have nothing to do -- she's not an anonymous

25   person.  So it's -- it is relevant, in as much as the Court's

Case: 24-2794   11/04/2024   DktEntry: 16.1   Page 181 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 14 of 70

14

1    looking the degree to which Ms. Doe is harmed by my client's

2    statements.

3            And, also, the Court is talking about my client's

4    agenda.  And I believe that the public nature of these

5    documents, which are admissible under the Rules of Evidence,

6    as far as I can tell, are relevant as to that.

7            I would note, my adversary has cited no rule of

8    evidence in their objection.

9            THE COURT:  Well, the real question is whether it's

10   relevant to what I have to decide here, and I'm not sure that

11   it is.  But is the issue that -- well, I guess let me ask:

12           Is the concern that I will accept this exhibit

13   unsealed, or is it that I shouldn't be taking exhibits at

14   all?

15           MR. GOOLEY:  Both, Judge.  And if you'll bear with

16   me for a second, I think I may be able to short-change this a

17   little bit.  This exhibit was already filed with the Court,

18   under seal.  It's on your docket.  Your Honor has it for

19   whatever purposes Your Honor believes it is relevant to.

20           The fact that the Plaintiff is trying to submit this

21   in open court is, as you just insinuated, an attempt to

22   unmask Jane Doe, because I will tell you exactly what they

23   are doing.  They are trying to submit an exhibit that has

24   Jane Doe's real name, so that they can then say, "Aha, Jane

25   Doe's name is finally out there in a public record and,

1  therefore, the anonymity orders are null and void, it's on

2  the docket.

3       This is a -- this proves everything Your Honor just

4  said, which is, instead of moving this case forward, instead

5  of focusing on the issues that we have to focus on, like

6  discovery, they are focusing on a vendetta against Jane Doe.

7  And, even worse, they don't respect this Court's orders on

8  anonymity, because they're, again, trying to circumvent them

9  by putting a document, that isn't even relevant to what we're

10  here to talk about today, in the public record because it has

11  Jane's name.

12       And it gets worse than that, Judge.  There's two

13  exhibits here.  One is all of three pages, and it contains

14  Jane Doe's real name.  Exhibit 1 is 180 -- 190-or-so pages of

15  the entire transcript from that day where Jane's name

16  appeared in the record.

17       As Your Honor can imagine, given the sensitive

18  nature of this case, that transcript contains a litany of

19  sensitive information that has nothing to do -- not only

20  about what we're talking about today, but about their

21  argument -- their, quote/unquote, "First Amendment" argument.

22  That's another attempt to exact retribution on Jane Doe, this

23  time directly through the Court's process, by submitting

24  sensitive information when it's not relevant to the issue at

25  hand.

1          And, Judge, here's the icing on the cake.  Let me

2     just -- and just bear with me for one more second.  For four

3     years the Plaintiff represented that Jane Doe's name was

4     confidential during the criminal trial, pursuant to

5     Connecticut General Statute 56 -- 54-86e I believe it is.

6     Your Honor saw that.  I'm not going to bear on that.

7          Then, all of a sudden, they switch positions after

8     they got in trouble for, or were facing serious trouble, for

9     disclosing the name, and they said, "Ah, First Amendment

10    argument, it's actually not confidential so you can't

11    sanction us."

12         That's a meritless argument, as Your Honor already

13    said.  This is not a First Amendment issue.  The issue here

14    is whether he violated the order and what the sanction should

15    be, that's it, because the Court has inherent authority to

16    sanction a litigant before it for violating a court order --

17    full stop; no ifs, ands or buts.

18         Regardless, Judge, out of an abundance of caution,

19    we investigated this issue over the past couple of weeks to

20    see whether this is, in fact, a public document.  Among other

21    things, we went on the judicial website of the State of

22    Connecticut, and we found access guidelines that clearly say

23    that a victim's identity in sexual assault cases are closed

24    except to the accused and are confidential pursuant to

25    54-86e.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 184 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 17 of 70

17

1          Then I called the court reporter, to see what was

2     going on with this transcript, in light of their shift in

3     position.  The court reporter got back to me --

4          MR CERAME:  I'm sorry.  What was that word?

5          MR. GOOLEY:  The court reporter?  Excuse me?

6          MR. CERAME:  According to their -- I heard -- what

7     position?

8          MR. GOOLEY:  Their -- I don't know.  What did I --

9          MS. WELLER:  "Shift."

10          MR. GOOLEY:  The shift -- thank you.  Shift.  Shift.

11          MR. CERAME:  In position.

12          MR. GOOLEY:  Shift in position.  Yes.  Shift in

13     position.

14          Thank you.

15          The court reporter got back to me and said, Yep, the

16     name is confidential; by a mistake it was included in the

17     transcript; we have submitted a corrected transcript; we've

18     notified everybody the transcript is corrected; the name is

19     now gone.

20          The short of it, Judge, is that Attorney Pattis,

21     when he represented that the name was confidential throughout

22     the criminal trial, was correct the entire time.  Putting

23     aside the fact that this is irrelevant, it's a reprehensible

24     attack on Jane, the factual underpinning is incorrect, the

25     name is confidential pursuant to Connecticut statute.

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 185 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 18 of 70

18

1          I have the corrected transcript.  I have the e-mail

2    from the court reporter saying that.  I have the access

3    guidelines from the court.

4          With that said, none of this is still relevant.  We

5    shouldn't even be talking about it.  This is another attempt

6    to deflect from the bad conduct.

7          THE COURT:  All right.  I'm not sure you would have

8    had an opportunity to know about all of that, Mr. Cerame.

9    Does that --

10          MR CERAME:  Your Honor -- I'm sorry.

11          THE COURT:  Does that change your offer?  I mean, if

12    I now have a transcript that should never have been created

13    because of Connecticut General Statutes, I'm certainly not

14    going to enter that transcript into evidence.

15          MR CERAME:  So, Your Honor, I would like to say,

16    first off, I disagree.  This is all news to me.  And Attorney

17    Gooley, for the record, has never returned -- given me the

18    courtesy of returning my phone calls.  Not since I have

19    entered this case.  I have left a number of messages.

20          So, it would have been appreciated if I could have

21    had some time to think about this issue.  I suppose, inasmuch

22    as I can understand the Court may be strongly inclined to

23    seal this record, I would reserve the right to oppose that at

24    a later date.  But I would at least submit these for

25    identification purposes today.

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 186 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 19 of 70

19

1          I'm not prepared to engage in my adversary's

2    substantive arguments, some of which include factual

3    representations of which I am not certain of.  So I would

4    ask, for today, to have these simply marked for

5    identification purposes.  And if the Court wishes to seal

6    them, for today I will not oppose, but I reserve the right to

7    move to unseal them at a later date

8          THE COURT:  Well, if I already have them under seal

9    somewhere else on the docket, I'm not sure I -- if they're

10   only marked for identification, I'm not going to look at them

11   in deciding -- I mean, they're either in or they're out.

12         So, if I already have them on the docket, then it

13   would seem to me that whatever argument you wish to make from

14   them can be made.

15         MR CERAME:  Just a moment.

16         (Confers with client.)

17         MR CERAME:  So, I don't know that my adversary has

18   represented the law correctly, so I -- and I do believe these

19   are relevant.  I would like to preserve this issue, because

20   I'm not sure what else is on the docket.  I didn't have

21   access to the full docket for quite some time.  The record

22   was sealed to me for some time, and I couldn't access all the

23   documents I wished.

24         As the Court may know, it was only just before the

25   Court put in the scheduling order that I received access to a

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 187 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 20 of 70

20

1   number of sealed documents.

2        So I would ask, nonetheless, simply for

3   identification purposes and for the purposes of appeal,

4   because I'm not sure what else is in the record, that these

5   be put in the record for identification purposes so that I

6   can preserve the issue.

7        MS. WELLER:  Your Honor, may I be heard briefly?

8        THE COURT:  Yes.

9        MS. WELLER:  Attorney Cerame said that this is the

10  first he's hearing of Connecticut General Statute 54-86e and

11  he is surprised and would appreciate the courtesy of having

12  that information brought to him.  And I would posit that that

13  is utterly disingenuous.

14       At least, Yale's reply to the Plaintiff's objection

15  to our motions to dismiss talk about that statute.  I cite to

16  that statute.  I provide in a footnote the full content of

17  that statute, along with Attorney Pattis's multiple

18  representations to this Court in his motion to seal-- to

19  proceed against Jane Doe pseudonymously, where Attorney

20  Pattis represented that that statute was in play and,

21  therefore, her name was protected and confidential.

22       So, it's not a surprise --

23       THE COURT:  I will indicate that I interpreted

24  Attorney Cerame's statement as him not previously being made

25  aware that, in fact, it was discovered that this transcript

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 188 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 21 of 70

21

1    should never have been produced with her name, not

2    necessarily that the statute may have afforded her anonymity.

3            Did I get that right, Counsel?

4            MR CERAME:  That's correct, Your Honor.  And some of

5    the legal arguments that were raised, particularly -- I

6    believe that this -- that statute is supposed to apply to

7    post-conviction proceedings.  That's my recollection from

8    being in criminal law and doing post-conviction work, but,

9    you know, I don't want to address that today.  I'm happy to

10   address that on another day.  That might be something

11   relative to a motion to unseal.  I don't know what documents

12   they obtained or didn't obtain.  I haven't seen this yet.

13           THE COURT:  I just haven't even figured out what I'm

14   being ask to decide here.  The documents you want to argue

15   from are already on the docket; yes?

16           MR CERAME:  I don't know where they are located on

17   the docket.

18           THE COURT:  Well, that's kind of not my problem.

19           MR CERAME:  I don't know that they are.  I'm saying

20   that I don't know that they are.

21           THE COURT:  Let me ask:  Attorney Gooley, where are

22   they on the docket?

23           Do you know where they are on the docket?

24           MR. GOOLEY:  153, Judge.  Sealed Motion 72.2

25   objection as per entry 152 with sealed exhibits, Attachments

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 189 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 22 of 70

22

1    Exhibit 1 and Exhibit 2.

2            My understanding is this is Exhibit 1 and this is

3    Exhibit 2.

4            MR CERAME:  No, that's not true, and I told him

5    otherwise.  This Exhibit 1 is nowhere in the record.  I

6    specifically did not include it before because I didn't -- I

7    wanted to avoid a squabble about it before I put it in front

8    of the Court.

9            THE COURT:  I don't think anybody's trying to avoid

10   squabbles in this case.  Let's make that clear.

11           MS. WELLER:  Well, Your Honor, may I just clear that

12   up?  I think I understand what Attorney Cerame -- I don't

13   want to make it -- Cerame?

14           THE COURT:  Cerame.

15           MS. WELLER:  -- is saying.  So, Judge Garcia

16   requested a chambers copy of all the motions that were going

17   to appear before Her Honor when we were set to proceed before

18   her.

19           Because my office is two blocks from the federal

20   courthouse in New Haven, I reached out to all counsel and

21   said, Listen, you don't have to scramble to come to New

22   Haven, I'll put the notebook together that has the motions

23   that Her Honor wants, and I'll just submit it -- as just a

24   professional courtesy for all parties.

25           In my conversation with opposing counsel, we talked

1    about this exhibit and I said that I'm not going -- it's not

2    my inclination to include that exhibit in this notebook as

3    part of the chambers copies because it was submitted under

4    seal; and if I were to put it in this notebook, I would only

5    want to do it in a redacted form because my concern is, once

6    you give something to court, even a chambers copy, it could

7    become part of the public record.

8             And I told him -- my example was, like in FLSA

9    cases, when you want the Court to look at a settlement

10   agreement, that several courts have said once you do that the

11   agreement is not confidential.

12            So I said, I'm not going to put that exhibit in

13   unless we redact the information and I don't believe the

14   Court needs that exhibit.  But if you want to submit it under

15   seal, or you want to do something to supplement my notebook,

16   go ahead, I'm fine with that.

17            And we agreed that that's how we would proceed.

18   That's all that conversation was about.

19            MR CERAME:  Your Honor, the document that Attorney

20   Weller -- her representation is correct.  The document that

21   was referenced by my other adversary is what I'm proposing to

22   be Exhibit 2.  I'm happy to not include that if the Court is

23   so disinclined because it's already sealed and part of the

24   record.

25            Exhibit 1 is nowhere in the record that I'm aware

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 191 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 24 of 70

24

1   of.  I would like it marked for identification purposes.  My

2   recollection of black letter is I can mark the flagpole for

3   identification purposes.  That's all I want, Judge.

4         THE COURT:  Well, I don't know what useful purpose

5   is served by marking it for identification purposes only.  It

6   is not part of the record.  If you want me to look at it, I

7   don't understand your objection to me accepting it under seal

8   until all of these other issues and arguments can be

9   resolved.

10        MR CERAME:  I'm not objecting to you receiving it

11  under seal.  I'm just reserving the right to oppose that

12  later on, or to move to unseal it later on.  I just don't

13  want it to be -- to have that construed as a waiver later

14  on.

15        THE COURT:  Okay.

16        MR CERAME:  But I have no objection right now to the

17  Court taking it under seal at all.  I expected that.  So I

18  have no objection to that.  I just don't want to waive a

19  right later on to move to unseal it later on, if that is

20  appropriate.

21        THE COURT:  Okay.  Is there any objection to that,

22  Attorney Gooley?  Issues of relevance aside.

23        MR. GOOLEY:  Judge, I don't have an objection to it

24  being under seal with the Court.  My understanding is that it

25  is or was.  But, regardless, if that's the case, that's fine

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 192 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 25 of 70

25

1   with me.  As long as it's fine with my co-defendants here.

2          MS. WELLER:  Relevance aside, we have no

3   objection.

4          THE COURT:  Okay.  So, this is Defense Exhibit --

5          MR CERAME:  Plaintiff's, Your Honor.

6          THE COURT:  Plaintiff's -- sorry.  Plaintiff's

7   Exhibit?

8          MR CERAME:  Plaintiff's 1.

9          THE COURT:  Plaintiff's 1.

10          MR CERAME:  If the Court would like, I can submit it

11   as an electronic.  I have a hard copy here.  It's a rather

12   copious document.

13          THE COURT:  I will defer to my Courtroom Deputy in

14   terms of the easiest way to receive the exhibit.  I think

15   probably the hard copy --

16          MR. CERAME:  Sure.

17          THE COURT -- and then it can be placed under seal

18   and marked.

19          MR CERAME:  May I, Your Honor?

20          THE COURT:  Yes.

21          (The Court confers with Courtroom Deputy.)

22          THE COURT:  Sealed Exhibit 1, full.

23          MR CERAME:  (Handing.)

24          COURTROOM DEPUTY:  Okay.

25          MR CERAME:  I heard the Court say, "full."  I just

Case: 24-2794 11/04/2024 DktEntry: 16.1 Page 193 of 360
Case 3:19-cv-01966-KAD Document 200 Filed 09/16/24 Page 26 of 70

26

1   wanted to clarify.  My understanding is it's for

2   identification.

3           THE COURT:  Well, if you want me to look at it, it

4   can't be for identification.

5           MR CERAME:  Ah.  Okay.  All right.  Very well.

6           THE COURT:  I assume you want me to look at it.

7           MR CERAME:  It may become relevant during oral

8   argument.  I anticipate it may.

9           THE COURT:  We may agree to disagree on that.

10          MR CERAME:  Very well, Judge.

11          THE COURT:  Okay.

12          MR CERAME:  Thank you for taking the time with the

13  housekeeping matter.

14          THE COURT:  All right.  Back to where -- I don't

15  know if counsel have had a discussion about who will be

16  proceeding first.  But, Movant, the floor is yours.

17          MR. GOOLEY:  Thank you, Judge.  Let me start by

18  saying that we agree with all of your introductory remarks.

19  We share your concern.  To Your Honor's question -- I think I

20  said this previously, but just so we have a clear record.

21          This is in no way, shape or form a First Amendment

22  issue.  The only issue before the Court is a court order was

23  issued.  There was a violation of that order.  That's it.

24  The Court has inherent authority, and, in fact, our

25  adversarial system requires -- and the efficient operation of

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 194 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 27 of 70

27

1   our adversarial system requires the Court to take action to

2   ensure that its orders are enforced, to ensure the orderly

3   administration of justice.

4           At the risk of stating the obvious, Your Honor also

5   said it, this is not the first time we are here.  We are

6   here, yet again, after the Court gave Plaintiff a very stern

7   warning after Judge Garcia explicitly told him, in writing,

8   any violation of this order can be the subject of dismissal.

9           I'm not going to repeat all of my arguments in my

10  brief.  I know Your Honor's read those.  But I did want to

11  bring a few points, at least a few preliminary points, to

12  Your Honor's attention, including  -- and then I'm sure I'll

13  be wanting to respond to whatever points opposing counsel has

14  made.

15          But Your Honor said, and we agree, this has to stop.

16  It's not going to stop short of dismissal.  We have been down

17  this road before.

18          THE COURT:  What makes you think it's going to stop

19  even if I dismiss the case?

20          MR. GOOLEY:  It may not, Judge.  But then it won't

21  be abuse of the judicial system.

22          THE COURT:  That I agree with.

23          MR. GOOLEY:  Which is the problem the Court has,

24  right.  And, so, the Court's problem is resolved.  Let us

25  deal with whatever may come after, but the Court's problem is

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 195 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 28 of 70

28

1    an abuse of the judicial process.  That would stop if the

2    case stops.

3         And I believe there's two important points there.

4    First and foremost, I will say that that transcript that Your

5    Honor was just handed is relevant for one purpose, and it is

6    the purpose I just described:  Mr. Khan is attempting to put

7    in extensive sensitive material that is totally irrelevant to

8    what we're here to talk about today and anything that's going

9    on in this proceeding at the present date.

10        Your Honor can look through that and see all of the

11   sensitive information in there.  It's a further act of

12   retribution.  And the reason I raise that is because it's

13   very important to why dismissal is warranted.

14        This Court, if it has to adjudicate this case, is

15   necessarily going to have to take up, at least at the summary

16   judgement stage, sensitive facts.  It's going to publish

17   those facts in a written decision if it doesn't dismiss this

18   case.  Now that Jane's name is on social media and out there,

19   all of those sensitive facts are easily associated with Jane.

20        And that's the fundamental problem.  If the Court

21   doesn't dismiss this case, the Court's action in just

22   adjudicating this case moving forward will compound the harm

23   to Jane.  So, that's point one.

24        Point two is, I think, a more important point.  And

25   bear with me, because this one requires a little bit of

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 196 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 29 of 70

29

1    factual background.  But we've repeatedly been here about

2    concerning posts by the Plaintiff.  Your Honor's concerned

3    about, Is this going the stop if I don't dismiss the case?

4         Your Honor may or may not know this, but the

5    Plaintiff has also sued an attorney and a litany of amici

6    organizations who filed an amicus brief when this case was

7    before the Connecticut Supreme Court.  He doesn't like what

8    they wrote about him.  That case is pending.

9         He sat for an interview in that case, and he

10   referred to his, I guess, plan, or his conduct in that case

11   as "war."

12        MR CERAME:  Judge, this is facts not in evidence.

13   I'm going to object.  Counsel is testifying at this point.

14        MR. GOOLEY:  It's oral argument, Judge.

15        THE COURT:  It is.  But I think if I'm going to be

16   -- I mean, I can easily convert this to an evidentiary

17   hearing.

18        MR CERAME:  My recollection was this is what it was.

19   That it was for an evidentiary hearing.

20        MR. GOOLEY:  Judge, can I short-change this, maybe?

21        THE COURT:  Yeah.  Let me just hear what everybody

22   has to say, and if I decide that I need to see the evidence

23   or are there briefs that can I look at, are there -- whatever

24   it is counsel's relying upon.  We'll just sort of take it one

25   issue at a time.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 197 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 30 of 70

30

1      MR CERAME:  All right, Your Honor.  All right.

2   Thank you.

3      MR. GOOLEY:  So, Judge.  He has this case.  He gave

4   this interview.  He referred to what he's engaging in as

5   "war."  Last night, knowing that he was coming to this court

6   today to face possible dismissal of his claims for his posts

7   on X, he reposted that article with the caption "war," W-A-R,

8   all capitals, exclamation point.  That's how he views this

9   litigation.  That's how he views litigation generally.  He

10   thinks he's at war.

11      This is -- the bottom line, when you have someone

12   who views it that way, he's not going to stop unless the case

13   is dismissed.  And Plaintiff's counsel just made a big deal

14   about asking the Court to accept some evidence.  I have the

15   printout of the article, and, more importantly, I have the

16   printout of the Plaintiff's post.  I ask Your Honor to give

17   me the same courtesy that Plaintiff had, and I ask to

18   approach and submit that to Court because that is relevant to

19   what we're here to talk about today, which is, Is a sanction

20   of dismissal warranted based on his own statements?

21      THE COURT:  All right.  Have you shared those with

22   Attorney Cerame?

23      MR. GOOLEY:  Let me give them to him right now.

24      MR CERAME:  I'm unaware of these before the hearing,

25   Judge.  I'm not objecting, but -- because I was not aware of

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 198 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 31 of 70

31

1    these.  I was supposed to be made aware of these.  All

2    evidence was supposed to be submitted ahead of time.  That

3    was what Judge Garcia ordered.  We were supposed to submit it

4    ahead of time.  And Counsel didn't make it -- this is an

5    ambush.

6              MR. GOOLEY:  Posted last night, Judge.

7              THE COURT:  There's only so much you can do about

8    that if your client is busy late into the evening before the

9    hearing.

10             MR CERAME:  Is my client's conduct yesterday evening

11   the subject of today's order?  Because I'm not aware it was.

12   I thought it was something -- I thought the motions at issue

13   were about previous posts.  This is adding it on.  I'm noting

14   my objection for the record.  I understand the Court may

15   overrule it.

16             THE COURT:  Yeah, I'm going overrule the objection.

17   To the extent that there's reason to schedule another day to

18   give everybody an opportunity to fully and fairly flush up

19   the record -- or flush out the record, I'm happy to do that.

20             But as of right now, I need to get a handle on what

21   your client is doing and what he intends to do and what my

22   appropriate response to that is.

23             So, I'm going overrule the objection.  We'll mark

24   these as Defendant Doe --

25             MR. GOOLEY:  1 and 2, Judge?

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 199 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 32 of 70

32

1          THE COURT:  Let's start at 500.  I don't want numbers

2     overlapping, so we'll do Defendant's 500 and 501.

3          MR. GOOLEY:  Thank you, Judge.  May I approach?

4          THE COURT:  Yes.

5          MR. GOOLEY:  (Handing.)

6          MR. GOOLEY:  And, Judge, just to kind of conclude my

7     argument here.  I'm sure I'll have a lot more to say in

8     response to Plaintiff's arguments.  But just two points on

9     that.  This is a public post by the Plaintiff.  The Court can

10    look at it.  The Court can take judicial notice of it.  The

11    Court doesn't need to rely on what I submitted.  But, more

12    importantly, this is extra.  It's icing on the cake.

13         Sanction of Dismissal was warranted before that post

14    was ever made.  Even if the Court completely disregards that

15    post, it is warranted for all the reasons I've said here

16    today, all the reasons said in my brief.

17         With that, I'm -- as I said, I'm sure I'll want to

18    respond to some of Plaintiff's point, but I will not repeat

19    everything in my brief.  Thank you for your time, Judge.

20         THE COURT:  Thank you.  Attorney Weller or Attorney

21    Noonan.  I'm not...

22         MR. NOONAN:  Good morning, Your Honor.

23         THE COURT:  Good morning.

24         MR. NOONAN:  Your Honor, I've had enough experience

25    with you to understand a couple of things.  One, you've

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 200 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 33 of 70

33

1    already read everything carefully.  Two, you're going to

2    re-read things and you're going to make an appropriate

3    judicial decision.

4              So I don't have any intention of repeating what's in

5    the briefs.  I do want to -- and I agree with Attorney Gooley

6    that I agree with your remarks.  And it's clear that there's

7    a significant problem here with this Plaintiff's conduct, and

8    it does affect the integrity of this court and the judicial

9    process.

10             But the thing I really want to hone-in on is your

11   remark that his posts appear designed to influence the jury

12   pool.  There's no question about that.  And if you don't

13   dismiss the case, it's not only going to cause more damage to

14   both Defendants, but also run the risk that the jury pool is

15   tainted.  And I think dismissal is the only sanction that can

16   be imposed here.

17             And I'd like to allow Attorney Weller to add a few

18   points, if you don't mind.

19             THE COURT:  I don't mind.

20             MR. NOONAN:  Thank you, Your Honor.

21             THE COURT:  Certainly.

22             MS. WELLER:  Thank you, Your Honor.  So, I agree

23   with what Attorney Noonan and Attorney Gooley have said, and

24   I'll be brief.  Dismissal of a case, it is a harsh sanction,

25   and Yale did not come to its request lightly.

Case: 24-2794   11/04/2024   DktEntry: 16.1   Page 201 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 34 of 70

34

1          But it's not too harsh in this case, because nothing

2     else, I believe, will stop the Plaintiff from continuing the

3     behavior that he has already exhibited repeatedly.  He does

4     not come to this courthouse feeling constrained by the Court

5     order, by the processes in place, by the rules that we all

6     have to abide by.  And if his case is allowed to continue,

7     we'll be back here, spending more time and more argument on

8     the Plaintiff's conduct and not on the issues of the case.

9          Attorney Noonan talked about infecting the jury

10    pool, and I just want to say that that goes to the heart of

11    the right to a fair trial, and that is as important in a

12    civil case as it is in a criminal case.

13         Courts have dismissed claims under either the

14    inherent authority or Rule 41 for far less egregious conduct

15    than what the Plaintiff has shown.  And if the Court doesn't

16    dismiss this, then what do we do going forward?  I keep

17    asking myself that.  How does the Court protect Jane Doe's

18    interests?  How do the Court's rules get enforced?  How does

19    Yale protect its interests?

20         And I'll wrap it up by saying that your Court --

21    Your Honor acknowledged that Yale has an interest in this.

22    And absolutely.  And even Plaintiff's counsel recognized

23    Yale's important and substantial interest in protecting the

24    confidentiality of its -- of the individuals who come through

25    its proceedings.

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 202 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 35 of 70

35

1     Attorney Cerame said in his opposition:  "As Yale

2   correctly points out, a number of courts have recognized the

3   important public interest in protecting identities of sexual

4   assault victims to ensure that other victims would not be

5   deterred from reporting similar crimes."

6     He conceded that Yale has a substantial interest --

7   also in his brief.

8     Those interests are important.  Yale is here

9   standing not only for itself, but in the shoes of those

10  public interests, so that future students can come forward

11  and not see this and say, "I have no protection.  Rules don't

12  matter.  Orders don't matter.  Your policy doesn't matter."

13     And that's really important, and that can't be lost

14  in all of the conversations about this exhibit or that.  That

15  can't be lost.  And, so, the sanction, while harsh, is

16  warranted here.

17     THE COURT:  Thank you.

18     MS. WELLER:  Thank you.

19     THE COURT:  Mr. Cerame.

20     MR CERAME:  All right, Your Honor.  First there's an

21  issue of form of the motions.  So, they are trying to seek

22  redress or punishment for my client using two -- the Court's

23  inherent authority and Rule 41(b).  There's no case where

24  41(b) has been applied, that I could find, to a court order

25  that applied out of court.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 203 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 36 of 70

36

1      I have a docket entry from yesterday from Judge Shea

2  in an appropriate use for invocation of Rule 41(b), if I

3  could direct the Court's attention to it.  May I approach?

4          THE COURT:  You may.

5          MR CERAME:  (Handing.)

6          THE COURT:  Does counsel have it?

7          MR. GOOLEY:  We do, Judge.

8          COURTROOM DEPUTY:  (Handing.)

9          MR CERAME:  As I also direct -- as also pointed out

10  in our brief on this, Rule 41(b) is about issues -- court

11  orders that are applied in court.  We have a slew of cases

12  where it's about in-court orders, orders that are enforced in

13  court.  There are none that I could find that concern

14  out-of-court conduct.

15          THE COURT:  I'm not sure I'm following what you mean

16  by that, "out-of-court conduct."

17          MR CERAME:  An injunction, Your Honor, to something

18  -- one might order the court -- one might order someone, as

19  Judge Shea does here.  Let me direct the Court's attention to

20  the last three sentences of this order here.

21          "It appears Plaintiff has also failed to comply with

22  the Court's order.  File a copy of ECF number 697 in the

23  bankruptcy case by July 16, 2024."

24          That's an in-court order.  It doesn't have anything

25  to do with what someone has to do outside of court in the

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 204 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 37 of 70

37

1    public.  It's not injunctive relief.  It's not about stopping

2    blasting.  It's not about stopping speech.

3                 THE COURT:  So, when you say an "in-court order"

4    you're talking about a directive to file something or not

5    file something?  Conduct having to do with the process by

6    which the litigation --

7                 Can I just tell your client that I don't need him

8    agreeing with me or otherwise communicating with me in any

9    way, shape or form while I'm trying to --

10                MR CERAME:  I don't see him if he's nodding.  One

11   second, Your Honor.

12                THE COURT:  He just -- he needs to keep it under

13   check.

14                MR CERAME:  Oh, okay.  He's just nodding to himself,

15   Judge.  He's not trying to communicate to Her Honor.  With

16   all sincerity, I believe my client.  I don't believe he's

17   trying to communicate to Her Honor at all.

18                THE COURT:  That's important, because you and I will

19   have a conversation.

20                MR. CERAME:  Yes.

21                THE COURT:  I don't need side communication from

22   your client, for what it's worth.

23                Go ahead.

24                MR CERAME:  Okay.  So, Her Honor I think had it

25   right, though.  When it's about essentially managing the

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 205 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 38 of 70

38

1  court's docket, this case has -- for failure to prosecute

2  diligently, for example.  That's what Rule 41(b) is about.

3  It's not about injunctive relief when someone violates an

4  injunction, especially a speech injunction.  I can't find any

5  case --

6          THE COURT:  It doesn't say that.  It just simply

7  says "violates a court order."

8          MR CERAME:  That's correct, Your Honor.

9          THE COURT:  That can be as broad as -- it could have

10  a broad reading.  It could have a narrow reading.  It could

11  be violating a court order that's injunctive in nature.  It

12  could be violating a court order that you update your address

13  per the local rules.  I mean...

14          MR CERAME:  I'm noting for Her Honor that there are

15  no cases that I could find anywhere, in any circuit, in any

16  district court, where it's enforced to -- it's used to

17  enforce a gag order.  I haven't -- I couldn't find any.  In

18  fact, the only cases I could find anywhere were about these

19  procedural rights.

20          Now, maybe I didn't do enough -- good enough of

21  research to find the rule where somebody says in an appellate

22  court case this is only for procedural rights or these are

23  only for in-court orders.  That's possible.  But my

24  adversaries don't point out any cases contrary-wise, where

25  it's used to regulate an out-of-court order, like a gag order

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 206 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 39 of 70

39

1    or like an order restraining speech.

2         So, you're right, Your Honor, on the order, on the

3    face of it, Rule 41(b) says "court order," which could be

4    read as any kind of order.  I have never seen it used that

5    way, and I suspect there's a reason for that.

6         So, my understanding and what I'm proposing to the

7    Court, is, based on what I see out there, it's really only

8    supposed to be used for court orders relative to managing the

9    docket.

10        THE COURT:  So, if I -- if I understand your

11   argument, if I would to determine that your client's conduct,

12   in fact, violated Judge Garcia's order, Rule 41 would not be

13   an appropriate mechanism by which to seek sanction for that

14   conduct.

15        MR CERAME:  Her Honor has hit it -- yes.

16        THE COURT:  Okay.  Just so I understand.  Go ahead.

17        MR CERAME:  So, that's relative to 41.  I also

18   haven't seen it used *vis-a-vis* -- I'm sorry.  Let me take

19   that back.

20        I haven't seen inherent authority used in the same

21   way.  What you see are contempt motions, civil or criminal

22   contempt.  And it seems to me that my adversaries are

23   circumventing the higher standards for contempt proceedings

24   by trying to proceed under both of these mechanisms, neither

25   of which have they cited any cases where it applies to an

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 207 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 40 of 70

40

1    order restricting speech outside of court.

2           So, that is a -- I don't think that that is an

3    appropriate use of these mechanisms.  I don't think these

4    mechanisms are designed for this.  That's a principal piece.

5    *Ab initio*.  This isn't the mechanism by which the Court can

6    use to enforce an order restricting speech.

7           THE COURT:  What do I do if I -- and this is a

8    little bit off the beaten path in terms of what is framed in

9    the motions.

10          MR CERAME:  Yes.

11          THE COURT:  I don't think there's any question that

12   I do have some inherent authority.

13          MR CERAME:  There's no question, Judge.

14          THE COURT:  Okay.  So, if I am left with a -- really

15   a firm conviction that your client is misusing our civil

16   justice system to advance an agenda that has nothing to do

17   with the purpose for which we have a civil justice system,

18   doesn't that fall within my inherent authority to do

19   something about that?

20          MR CERAME:  It seems to me that that is -- you're

21   looking -- this is actually a kind of a contempt.  The Court

22   is looking to hold him in contempt, either civilly -- civil

23   contempt or criminal contempt, one or the other.

24          If it's a punishment for his conduct, it's criminal

25   contempt.  If it's to coerce him, if the remedy is

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 208 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 41 of 70

41

1    coercive -- i.e., fining him a $1,000 for each alleged --

2    each violation, then that's -- but that wasn't briefed by my

3    adversaries.  I'm not ready to argue that.

4         THE COURT:  I'm not sure I agree with you.  I think

5    that I have an avenue or authority, separate and distinct

6    from my contempt powers, to deal with what I consider to be

7    problematic behavior by your client in the context of this

8    civil litigation.

9         MR. CERAME:  I would note that it's context outside

10   of court.  That is speech-related outside of court.  I

11   haven't seen my adversaries', nor could I find a case where

12   inherent authority was used in that way, to sanction someone

13   for out-of-court speech.

14        Certainly for people saying things in-court

15   inappropriately, counsel making inappropriate arguments and

16   so on, it has been used in that way.  But I haven't seen it,

17   nor do my adversaries present such a case, where inherent

18   authority is used in that way.  So I recognize where Her

19   Honor is coming from.

20        I believe that the appropriate mechanism, if it was

21   to be explored, would be either civil or criminal contempt.

22   That's how these orders are classically enforced.

23        THE COURT:  What would you suggest as perhaps middle

24   ground within my inherent authority, short of dismissal, to

25   make this stop?

42

1          MR CERAME:  My adversaries -- if the Court is going

2     down this way -- this vein.  First, I want to talk -- I do

3     want to talk about how I don't believe the order was

4     violated.  But as to that, my adversaries have only asked for

5     dismissal.  That's the only remedy they have sought.  I'm not

6     going to propose to them --

7          THE COURT:  -- lesser sanctions.

8          MR CERAME:  I don't think that -- because I don't

9     think the Court -- I don't think the Court is supposed to use

10    this mechanism to sanction the speech.  So I'm leery of

11    implied waiver here by making an argument saying, Well, I

12    think the Court could do this.

13         If the Court's going to dismiss, then the Court's

14    going to dismiss.  I don't know that -- I'm not aware of a

15    lesser sanction under the inherent authority doctrine for

16    speech that is appropriate.  I can't think of one.  I don't

17    think the inherent authority is appropriate in this context,

18    regardless.

19         Nonetheless, I hope I answered Her Honor's question.

20         THE COURT:  You did.

21         MR CERAME:  Because it's a good one.

22         Okay.  So that was the first piece, whether the form

23    of the motion, the -- whether the mechanism of enforcement

24    was appropriate.

25         And whether my client actually violated the order.

1   So, this gets to the, you know, there's the burden that it

2   gets very different in contempt proceedings, either civil or

3   criminal, where -- and we point this out in our brief --

4   there's nowhere where my client expressly stated Doe's name.

5          In the issues that they have cited in their briefs,

6   in terms of the X posts, he doesn't say Doe's name.  He

7   doesn't ask someone objectively to say Doe's name.

8   Objectively, he seems to comply with the order.

9          The inherent authority doctrine burred in there is

10  it has to be obviously violating the order, there's no

11  question about it.

12         THE COURT:  Is there any question of what he wanted

13  those people to do?  Is there any reasonable inference that

14  can be drawn other than he wanted at least some of these

15  people, one quite specifically, to do exactly what Judge

16  Garcia told him he couldn't do?  And by doing that, is he not

17  acting indirectly?

18         MR CERAME:  So, Your Honor, to answer Her Honor's

19  question, is there a reason to believe, is there a logical

20  reason to believe my client was doing something otherwise?  I

21  don't believe his intent is relevant. I believe his objective

22  conduct is relevant.  And if you take his words as written,

23  no, they're not.

24         He's criticizing the court.  He's criticizing

25  systems.  He's expressing that he's upset.  He's allowed to

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 211 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 44 of 70

44

1    do that.  That's not a violation of the order.  The order

2    doesn't say, you're not allowed to say you're upset with the

3    Court.  The order says you're not allowed to reveal Jane

4    Doe's name directly or indirectly.  If they had, say, --

5              THE COURT:  If he says something to somebody that

6    results in that person revealing her identity, is that not

7    indirect disclosure?

8              MR. CERAME:  Your Honor --

9              THE COURT:  I mean, his language -- I can't

10   indirectly or directly tell anybody what to do.  I mean, he's

11   misunderstanding what "directly" and "indirectly" means.

12   "Directly" is he can't get on X and say "Jane Doe is person"

13   and disclose her.  "Indirectly" means he can't do anything

14   that results in somebody else doing exactly that, which is

15   precisely what happened here.

16             MR CERAME:  I believe he's not allowed to encourage

17   someone or ask someone.  If he does something, like he opens

18   up a thread about cooking and someone reveals Jane Doe's

19   name, I don't think that that's a violation of the order, if

20   he never solicited from someone.  And I don't agree with Your

21   Honor's --

22             THE COURT:  "Perhaps you all will contribute your

23   own" --

24             MR CERAME:  Stand up and do the right thing.  It's

25   like the 90's movie -- the 90's film, Do The Right Thing.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 212 of 360
Case 3:19-cv-01966-KAD Document 200 Filed 09/18/24 Page 45 of 70

45

1  That seems to me to be what -- I mean, having known my client

2  for a relatively short period of time --

3       THE COURT:  Is this not hubris?  I mean, is there

4  any question about what your client was trying to get these

5  people to do?  Any question at all?

6       MR CERAME:  Yes, Your Honor.  And, A -- number one,

7  we don't know -- Her Honor made a supposition about the

8  intent of the author -- not my client, the author who did

9  reveal Ms. Doe's name.  You said that he did it because of

10  what my client said, that my client did so in response

11  -- that this gentleman did so in response to my client.

12       We don't know that that's true.  That gentleman

13  isn't here.  There's no evidence from him.  He hasn't

14  submitted an affidavit either way.  That's a guess as to his

15  subjective state of mind, and there's no evidence of that.

16       He may have done so because he --

17       THE COURT:  Well, I have your client --

18       MR CERAME:  -- because he supports my client.

19       THE COURT:  I know what your client said to him.  I

20  know that your client tagged him.  I know what your client

21  said to him when he tagged him.  And I know that shortly

22  thereafter this gentleman then outed Jane Doe.

23       You don't have to be "Carnac the Magnificent" to

24  connect these dots, Counsel.

25       MR CERAME:  Judge, I think there's a reasonable --

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 213 of 360
Case 3:19-cv-01966-KAD Document 200 Filed 09/16/24 Page 46 of 70

46

1    there's a strong -- there's a reason to believe you should

2    take my client at his word, objectively.  We look at the

3    words "objectively."  The Court asked whether there was a

4    reason to believe.  I believe --

5            (Hits microphone.)

6            MR. CERAME:  Oh.  I am so sorry.  I am really sorry.

7    I know that hurts.  My Italian hands.  I'm sorry.

8            I've lost my train.  Objectively -- I'm sorry.  I

9    feel now like I'm going back and forth with Your Her Honor,

10   and I'm going in circles.

11           THE COURT:  That's okay.  You just said that I

12   should take your client at his word.  Well, your client sat

13   in that chair three months ago and was dishonest with me.

14           MR CERAME:  Your Honor, I wasn't here for that

15   proceeding.  I don't remember what Her Honor is referring to.

16   And when I say, "take him at his word" the language

17   objectively doesn't violate the order.  That's what I'm --

18   look at the language there.  It doesn't appear to violate the

19   order.  It doesn't solicit someone.  It doesn't -- the Court

20   is making a supposition that someone did so because they felt

21   he was -- they believed -- they understood him to be

22   soliciting from them that he -- to post.  If there was

23   another -- seems like there's a missing piece of information

24   to make the logical leap.

25           I can understand why there might be smoke, but I

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 214 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 47 of 70

47

1    don't think that there is sufficient evidence there to get to

2    the standard for inherent authority, which is --

3            THE COURT:  Let me ask you this, Counsel.

4            MR CERAME:  Yes.

5            THE COURT:  And you have -- if you decline to

6    answer, I have absolutely no issue with that.  You should

7    feel free to decline.

8            MR CERAME:  Very well, Your Honor.

9            THE COURT:  But if your client, after Judge Garcia's

10   order issued, had called you up and said "This is my plan."

11   Wouldn't you have counseled him not to go through with that

12   plan in light of the order that Judge Garcia issued?

13           MR CERAME:  So I'm going to talk about other cases

14   where I've had people engage in speech that could get them in

15   trouble.  I'm not going to talk about my client.

16           THE COURT:  All right.

17           MR. CERAME:  But even those kinds of circumstances I

18   tell the individual, Look, you have to weigh exposure.  You

19   may end up with a fight.  Even if you're right on the law,

20   you may end up with a fight.

21           Sometimes even good judges -- I would say, and I

22   mean -- I absolutely mean no disrespect.  I'm only speaking

23   candidly because Your Honor asked -- but sometimes good

24   judges make mistakes, and you have to weigh that risk, and

25   are you ready for that?

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 215 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 48 of 70

48

1          Those are the kinds of things that I say to the

2     client, because I work for my client.  I know there's this

3     approach about client control.  I believe that my client has

4     sovereignty, and I work under my client.

5          So, in those kinds of situations --  I'm not even

6     thinking about this.  I'm thinking about another case right

7     now.   I'd advise him, Look, you're a grown-up, you know the

8     risks, this is the issue, even if you're right you might

9     lose.

10         So, those are the kinds of things I would advise my

11    client, though, in those kinds of circumstances.

12         In this particular case, I don't believe there's --

13    I don't believe the inherent authority standard is met

14    because clear, plain violation -- also, I don't know that a

15    lesser sanction couldn't work if there -- in a contempt

16    proceeding, which we are not in, if a coercive contempt

17    proceeding would be sufficient.  There's no evidence that a

18    coercive contempt proceeding wouldn't be sufficient to

19    correct what Her Honor's concerns are.

20         And that is a reason why neither of these two

21    remedies or neither of these two mechanisms by which my

22    adversaries are seeking redress, the Court can rule in their

23    favor, I don't think.

24         We haven't seen -- there's no evidence that

25    something lesser couldn't work.  There's no evidence.  So,

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 216 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 49 of 70

49

1      let me just check my notes.

2            And I appreciate Your Honor's questions because I

3      feel like whatever I have to say is way less important than

4      whatever Her Honor's questions are for me.

5            (Pause.)

6            MR CERAME:  There were a number of representations

7      by my adversary -- and by the Court, too -- as to my client's

8      intent to affect the jury pool.  I don't know that there's

9      evidence that that would be the case, given that there was

10     already a criminal trial that occurred in this case and that

11     there are public documents out there already that identify

12     Doe.

13           Doe's identity, as this proceeding is all about, is

14     already quite public.  So I don't know that there's evidence

15     that this is going to taint -- even if my client did violate

16     the order, which I don't believe -- I very strongly believe

17     he did not do under the objective evidence -- there's no

18     evidence that this is going to taint the jury pool.  If we

19     look back five, six, seven years now, I think, that this has

20     been going on.

21           So I don't see any evidence produced by them that

22     this is actually affecting the jury pool in some way that it

23     has already not been affected.

24           One moment.

25           (Conferring.)

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 217 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 50 of 70

50

1          MR CERAME:  You know, I did make a point that I

2     don't think my client's intent here matters.  My client --

3     you know, my client's intent may be to express that he's

4     upset.  The Court notes that he derides, and the Court infers

5     that he thwarts the purposes of this justice system, in the

6     Court's opinion.  But, you know, the Court says that he

7     appears to be using the justice system to advance a certain

8     agenda or cause.  This happens every day.  I'm not saying

9     that I agree with the Court, but that is frequently the case.

10          My adversary brought up some litigation involving

11     some public interest group that defamed my client in filings,

12     and they certainly had an -- were using the judicial system

13     to advance a number of agendas.  And that's not

14     impermissible.  The Court doesn't -- I'm not aware that

15     that's something that the Court disallows ever.  I have

16     engaged in public interest litigation myself.

17          THE COURT:  Let me just be clear.  There is no

18     question that there could be any number of purposes for which

19     civil litigation is pursued.  And I -- if I wasn't clear

20     previously, if your client has a cause, an interest, whatever

21     it might be -- I think there's been discourse about Title IX

22     in the proceedings and sort of on a nationwide level.

23          I don't -- to the extent that those are additional

24     or collateral interests that are pursued, I'm not criticizing

25     that, and I agree with you that there are any number of

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 218 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 51 of 70

51

1    reasons why civil litigation unfolds in any case.

2           My concern is that the purposes for which we have a

3    civil justice system -- the fair adjudication of parties'

4    claims, the convening of a jury to make factual findings, the

5    legal determination as to the validity of a person's

6    claims -- it doesn't seem to me that those interests are what

7    your client is actually pursuing.

8           He has begun the civil justice problem -- process,

9    excuse me.  He is the Plaintiff.  He has invoked the very

10   machinery that is now being, arguably, misused to advance

11   this other agenda.

12          And that's the disconnect for me.  Not that there

13   might be another agenda, but that the process itself is being

14   abused or misused for that purpose.

15          MR CERAME:  In response I would say, I don't believe

16   that there's abuse here.  Secondarily, I'm not going to

17   reveal the content of communications.  But serious

18   adjudication -- I wouldn't be involved here, with all candor

19   to the Court, if this wasn't a serious intent to get to the

20   merits.

21          THE COURT:  Let me ask this, just sort of as an

22   aside but relatedly -- and I'll hear from both sides:

23          Where are the parties in terms of discovery?  What

24   has happened, what hasn't happened, what's left to happen?

25          MR CERAME:  So, I have only attended one discovery

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 219 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 52 of 70

52

1    meet-and-confer.  But my understanding, and I'm concerned and

2    frustrated, is that we have produced some discovery, but my

3    adversaries have not produced any discovery, whatsoever.  And

4    that's a point of contention.

5          I am not really, Your Honor, with all candor, I'm

6    not really informed enough to get into a detailed discussion

7    of that.  There's another attorney who we collaborate with,

8    who really -- he should be the one to address the Court on

9    this issue.  So I'm only giving Her Honor really a very

10   limited view.

11         THE COURT:  Okay.  Have, for example, you know,

12   "view from 10,000 feet," have fact depositions been noticed?

13         MR CERAME:  I don't believe so at all.

14         (Conferring.)

15         MR CERAME:  I don't believe so, Your Honor.  And I

16   know that, for my client's side, is a deep frustration, so --

17   and I can't say why.  I don't -- one moment.

18         (Conferring.)

19         MS. WELLER:  Your Honor, may I be heard?

20         THE COURT:  Yes.  Give me one second.

21         MS. WELLER:  Sure.

22         THE COURT:  Go ahead.

23         MR CERAME:  Is everybody set?  I'm ready to go.

24         THE COURT:  I'm going to hear from Attorney Weller

25   in a moment.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 220 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 53 of 70

53

1          MR CERAME:  Oh, oh, oh.  So, as to that, you know,

2     if the Court wants to hear from Attorney Weller, I really

3     have a limited understanding as to that.  I know some

4     discovery should have happened, but it seems that none has.

5          THE COURT:  Okay.

6          All right.  Attorney Weller.

7          MS. WELLER:  Thank you, Your Honor.  Attorney Cerame

8     is wrong in saying that there's been no discovery exchanged.

9     Back in 2020, the Plaintiff served Yale and the individual

10    Yale defendants with written discovery.  Yale responded,

11    objected, produced documents.

12         Then, in 2024, the Plaintiff served Yale with

13    another set of written discoveries for which we objected

14    because they were untimely under the Court's scheduling

15    order, they were duplicative, and other various reasons.

16         Attorney Alex Taubes is representing the Plaintiff,

17    and he is taking the lead on discovery.  We had a

18    meet-and-confer about two weeks ago to see if there was any

19    middle ground, so that we could produce additional written

20    discovery that the Plaintiff deems essential or if we have

21    to -- he would have to bring the objections to the Court.

22         And we approached it in good faith.  And we decided

23    that Attorney Taubes would -- the plan was Attorney Taubes

24    would confer with his client, and they would come up with a

25    proposed ESI list of custodians and search terms and a date

Case: 24-2794 11/04/2024 DktEntry: 16.1 Page 221 of 360
Case 3:19-cv-01966-KAD Document 200 Filed 09/18/24 Page 54 of 70

54

1    range, and then we would respond and see if we could come to

2    some middle ground, some conclusion.

3           Unfortunately, on Monday we received the Plaintiff's

4    ESI proposal, and it contains a list of 384 proposed

5    custodians and over 560 search terms, all in the disjunctive,

6    for a 12-year period.  And some of those search terms include

7    things such as "OJ Simpson," "Nazi," "Johnny Depp," "Kevin

8    Spacey," "Harvey Weinstein," "Louie CK."  He then lists words

9    like "Rum and Coke," "beer," "guilty."

10          Other search terms are "all the Justices of the

11   Connecticut Supreme Court" --

12          THE COURT:  Well, suffice it to say that Judge

13   Garcia will be making her way through this discovery dispute.

14   I am going to tell you right now, I am very unlikely to move

15   this scheduling order if I don't dismiss this case.  So,

16   prioritize at this point.

17          MS. WELLER:  Yeah, so we just don't know what to do

18   with that.  And even Your Honor is a search term that was on

19   this list.  So it is, we think --

20          THE COURT:  Really?

21          MR CERAME:  Your Honor, I don't know.

22          MS. WELLER:  Yes.

23          MR. CERAME:  I didn't participate -- but I can --

24   Your Honor, I don't know that that's inappropriate.

25          MS. WELLER:  Your Honor, I brought with me a copy.

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 222 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 55 of 70

55

1   I'm happy -- and I redacted --

2        THE COURT:  I don't need it.

3        MS. WELLER:  But Your Honor is on this list among

4   the -- but also the three of the circuit court judges from

5   the Second Circuit.  So, you are in good company in that

6   regard.

7        THE COURT:  Thank you.

8        Attorney -- I'm sorry.

9        MS. WELLER:  So that's where we are with discovery.

10  And I think as it ties to this, how it's relevant, is because

11  it shows that the Plaintiff is not interested in pursuing a

12  case in a normal set where there's a list of custodians, it's

13  tied, you can kind of come to a conclusion.

14       380-plus custodians?  I mean, it just is another

15  example that if this case isn't dismissed we're going to be

16  right back here on -- arguing the conduct with respect to

17  discovery.  So, that's where we are with discovery.

18       I'd like to address one other point quickly that

19  co-counsel -- that you had discussed with Attorney Cerame,

20  and that has to do with Rule 41 not allowing --

21       MR. CERAME:  Your Honor --

22       THE COURT:  I'm going to give you an opportunity to

23  respond to all of his arguments.

24       MS. WELLER:  Okay.

25       THE COURT:  This was just sort of a tangent on the

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 223 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 56 of 70

56

1    state of discovery.

2         MS. WELLER:  Okay.

3         MR CERAME:  I was just going to say I'm not prepared

4    to discuss discovery in substance.  I hope that the Court

5    doesn't consider that as part of her order.  I'm not prepared

6    today -- I didn't anticipate this being an issue that would

7    be substantively discussed in detail today.  So, I apologize

8    for that.

9         THE COURT:  No, that's okay.  I had hoped Attorney

10   Taubes would be here.  But be that as it may, I don't have to

11   have these answers in order to decide the issues before me.

12        MR CERAME:  Very well.

13        We were just on the point -- to circle-back -- Her

14   Honor said that there are a great number of reasons why

15   litigation may open up, the courts -- the way we got diverted

16   or went to the tangent was because the Court was concerned

17   whether there's serious intent to adjudicate the case on its

18   merits.

19        And, Judge, I wouldn't be here if I didn't think

20   that was the case.  I just came into the case.  I'm "Mario

21   certain."  I know that's not evidence for the Court, but I

22   know that that is the case.

23        The Court said at the start of her concerns that

24   this is speech that doesn't involve the case, and I think

25   that's true.  The speech that was engaged in on X doesn't

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 224 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 57 of 70

57

1    involve the case.  It's -- and now I'm getting to the "free

2    speech" piece -- it's not about the case.  He's talking about

3    something else.  If he's talking about George Bush or talking

4    about Trump or he's talking about Biden, none of that stuff

5    has anything to do with the case.  Whatever he says on

6    Twitter, if it's not something that violates the court order

7    objectively, then it has nothing to do with the case and it's

8    not appropriate to discuss it even.  It's protected speech,

9    anything that isn't violating the court order.

10           Lastly, the Court -- my adversary correctly points

11   in the court certainly correctly suggests violating an

12   illegal court order is still contempt of court.  No question.

13   But it's contempt of court.  I haven't seen those cases

14   used in the "supervisory powers" context ever.  I've only

15   seen contempt proceedings *vis-a-vis* the cases that my

16   adversary cites.

17           I suppose it's possible that I've missed a case out

18   there.  But when it come to out-of-court speech, someone

19   being punished for out-of-court speech, I've only ever seen

20   contempt proceedings, criminal or civil.  We saw this -- we

21   all saw this relatively recently too.  It comes to mind,

22   pretty serious, high-profile cases where a civil remedy was

23   used to coerce someone into -- former president -- as to

24   out-of-court speech, to punish him or to coerce him -- to

25   coerce him into following the Court's orders.

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 225 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 58 of 70

58

1      So that's as to that -- of course, the Court --

2  violating an illegal court order is still contempt of court.

3  It's contempt of court, though.  And that's not the

4  proceeding we have here today.

5      If there are any other questions.

6      THE COURT:  I don't think so.

7      MR CERAME:  Let me just make one check and make sure

8  I didn't miss something in my notes.  I appreciate the

9  Court's patience.

10     (Pause.)

11     MR CERAME:  The Court noted doxing.  I'm not sure --

12  I didn't see any doxing in the speech engaged in by my

13  client, and I'm not sure doxing is illegal, either.  I'm not

14  saying it is a polite thing to do.  I believe it might -- and

15  this is still -- there's a relatively new law in Connecticut

16  concerning this, electronic stalking, but that hasn't been

17  tested against "free speech" concerns.  And I don't think

18  that -- that he doxed anyone here.  There's no evidence he

19  revealed someone's address, asked someone else to reveal

20  someone's address.

21     The Court described my client's speech as

22  ridiculous.

23     THE COURT:  As what?

24     MR CERAME:  Ridiculous.

25     THE COURT:  No, I didn't.  I said that we are

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 226 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 59 of 70

59

1    spending a lot of time and money litigating your client's

2    out-of-court conduct on issues having nothing to do with this

3    litigation, which is ridiculous.

4            MR CERAME:  I, I -- Ah.  So, the Court is taking

5    issue with the litigation on my client's conduct?

6            THE COURT:  The Court is taking issue with the fact

7    that his conduct outside of this litigation is impacting this

8    litigation; that this litigation is being, arguably, used and

9    misused to advance an agenda that has nothing to do with the

10   fair adjudication of his claims.

11           MR CERAME:  All right.  I would say I agree, to the

12   extent my adversaries are challenging my client's conduct out

13   of court, because I do not see my client objectively

14   violating the orders.  But I respect that Her Honor may

15   disagree with that.

16           We do use the judicial process as an alternative to

17   revenge.  We use it -- it is an interest.

18           THE COURT:  That's the goal, anyway.

19           MR CERAME:  Right.  We have a retributive interest

20   in criminal cases; right?  That's one of the fundamental

21   reasons why we have criminal cases.  And it's a similar thing

22   when you see punitive damages in a case, to punish the

23   wrongdoer for their intentional misconduct, which my client

24   is seeking to do here.

25           THE COURT:  But punish her by putting her through

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 227 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 60 of 70

60

1   the process?  Or punish her by seeking a fair adjudication of

2   the claims?  The process itself is not designed to be

3   punitive.

4           MR CERAME:  Your Honor, I agree that misusing the

5   process, abuse of process, is a valid claim.  And I don't

6   think my client is using it in this way.  I believe my

7   adversaries are using the process in this way.  I don't

8   believe this is a meritorious motion that they have filed.  I

9   believe they're objectively not, in terms of the form of the

10  relief they're seeking.  They're avoiding contempt

11  proceedings.  They know that's the law.  You pointed this out

12  to them.

13          This is -- that's --it's very difficult for me to

14  respect someone using Rule 41 in this way.  It's very

15  difficult for me to respect someone not citing any authority,

16  using supervised -- using inherent authority powers to punish

17  somebody for out-of-court speech.  There's no authority using

18  that.  So, it's hard for me to see these claims as something

19  that is on-point.

20          So I recognize what Her Honor is saying.  I don't --

21  I think that argument swings both ways, however, in the

22  context of this case.

23          If there are no further questions from the Court.

24          THE COURT:  I don't believe so.  Thank you.

25          MS. WELLER:  Your Honor, I'll be brief.  I want to

1   address whether Rule 41 can be used to dismiss the case in

2   the context of the violation of this Court's order.  Rule

3   41(b) allows a district court to dismiss a cases for a

4   party's failure to abide by court orders.

5          It doesn't say this type of court order but not that

6   type of court order.  It doesn't.  It says "for violation of

7   a court order."  And we certainly have here a court order

8   from Judge Garcia.

9          And the reason why there may not be cases out there

10  where it's been invoked to violate a court order, like this,

11  is because litigants probably don't do what Mr. Khan has

12  done, and what he has done repeatedly.  And if they have come

13  close to it, and they were told just three months before,

14  "This conduct is concerning, Don't do this again, you know,

15  Here are my concerns," they certainly don't do it again.

16         And that's what we have here.  But Rule 41(b) is

17  available to this Court, as is the Court's inherent

18  authority.

19         Now, Attorney Cerame says that motive is irrelevant.

20  But motive goes to the heart of the court's inherent

21  authority analysis.   Jane Doe cited, in her brief at page

22  13, a case from Your Honor.  I'm going to mangle the name.  I

23  don't mean to, but it's *Vijayanagar*.  Let me spell that

24  V-I-J-A-Y-A-N-A-G-A-R *v. Krishna*.  It's a 2020 decision.

25         And Your Honor quotes:  "A court may sanction a

62

1   litigant pursuant to its inherent authority if there's clear

2   evidence that the conduct was, one, entirely without color;

3   and, two, motivated by an improper purpose."

4          That's the party's intent.  That's why -- why Mr.

5   Khan is doing what he is doing is so important to this issue.

6   So, to say that his motive is irrelevant completely misses

7   the mark on the Court's inherent authority.

8          Finally, I will say that if -- it's surprising to me

9   that Mr. Khan still doesn't see that he has violated this

10  order after all of this.  But even if his conduct in what he

11  said to his Twitter followers was not in direct violation --

12  we say it was -- but even if it wasn't, the fact that the

13  Plaintiff has kept those tweets identifying Jane Doe and a

14  high school photo of her, or some photo of her, on his

15  Twitter account for now going on 36 pages, after we filed the

16  motions, after all of this, that, in itself, is, I believe, a

17  violation of the Court order.

18         So I have nothing further, unless Your Honor has a

19  question for the Yale defendants.

20         THE COURT:  I don't.  Thank you.

21         MS. WELLER:  Thank you.

22         THE COURT:  Attorney Noonan.

23         MR. NOONAN:  Thank you, Your Honor.  Two points that

24  I think are important from Mr. Cerame's argument.  One, he

25  claims that there are no cases under Rule 41(b) where a

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 230 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 63 of 70

63

1    lawsuit was dismissed because of, as he put it, violation of

2    a gag order.  Well, there's a good reason for that.  It's

3    extremely rare for litigants to violate court orders.  It's

4    even rarer to have them violate it on a repeated basis.

5            As Your Honor knows, we didn't seek dismissal

6    initially, because we would agree that one violation wouldn't

7    be sufficient for dismissal.  But what they've done is

8    sufficient for dismissal.

9            The other thing I'd like to comment on his --

10   Mr. Cerame's -- repeated claim that there has been no

11   violation here by his client.  That's startling.  And it's

12   further proof that this conduct will not stop.  Not only did

13   the Plaintiff not get the message from Your Honor, his

14   lawyers now don't get the message.  They both think that what

15   he's done is perfectly okay.

16           It's not.  The only way to address this is

17   dismissal.  Thank you, Your Honor.

18           THE COURT:  Thank you.

19           Attorney Gooley.

20           MR. GOOLEY:  Thank you, Judge.  I agree with

21   everything that was just said by my co-defendants and I'll be

22   very brief, which is, I think there's an assumption on the

23   other side that the only possible purpose we're pursuing here

24   is punishment.  Certainly, we do believe the Plaintiff

25   deserves to be punished for his actions, but that's not the

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 231 of 360
Case 3:19-cv-01966-KAD Document 200 Filed 09/18/24 Page 64 of 70

64

 1    only reason we're here today.

 2          We're here today, in significant part, because we're

 3    asking the Court to protect Jane.  And what I mean by that is

 4    basically what I said earlier.  If the Court -- if the case

 5    isn't dismissed, eventually there will be, through a ruling

 6    from the Court, some information about Jane that is publicly

 7    accessible, except now, because of his misconduct, that

 8    information will be associated with Jane's name or at least

 9    easily associated with Jane's name by social media users in

10    -- despite the Court's anonymity order.

11          So, it's not just a punishment perspective.  It's

12    not just a "we don't meet the criminal contempt standard

13    here."  It is also an extension of the Court's efforts to

14    protect Jane, despite the Plaintiff's misconduct.

15          So...

16          THE COURT:  Thank you.

17          MR CERAME:  Judge, can I clarify a point and concede

18    a point to Attorney Weller, please?

19          THE COURT:  Sure.

20          MR CERAME:  So I did -- I appreciate Attorney

21    Weller's statement about the prong one and prong two of the

22    inherent authority.  She's absolutely right, prong two does

23    go to intent.  But prong one -- my point would be that prong

24    one, about whether it was entirely without color, that's not

25    about intent.

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 232 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/16/24  Page 65 of 70

65

 1           So, and that's my argument.  Attorney Weller -- I

 2     appreciate the clarification from her.  She's absolutely

 3     right on that piece, prong two is absolutely about intent.

 4     Prong one is not.  So, I did misspeak as to that.  I did

 5     speak overly broadly in my argument.  I apologize to the

 6     Court.

 7           THE COURT:  All right.  Anything further from the

 8     Defendants?

 9           MR. NOONAN:  No, Your Honor.

10           MR. GOOLEY:  No, Judge.

11           THE COURT:  Okay.  All right.  Well, as Attorney

12     Noonan pointed out, as is my wont, I am going to reserve on

13     all of the issues that are presented in these motions.  I do

14     want to review everything that's been submitted, re-read the

15     cases that have been relied upon, and I will have a

16     decision -- hopefully, in short order.

17           Let me ask -- as I indicated earlier, it was my

18     intention to take up the Plaintiff's objection to Judge

19     Garcia's ruling on the papers.  Is there a request that I

20     hear oral argument on that?

21           To be perfectly candid, while I have read everything

22     that's come in, I haven't really sat down and fully digested

23     everything that's come in.  What I would normally do is,

24     having had the opportunity to do that, I would then decide

25     for myself whether I have questions and whether I think oral

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 233 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 66 of 70

66

1    argument would be helpful.  But absent same, I would take the

2    issues raised in the objection on the papers.

3          Is there any objection to me proceeding in that

4    fashion, from the Plaintiff's perspective?

5          MR CERAME:  Your Honor, I'm strongly inclined to

6    request oral argument, but I do respect Your Honor's

7    discretion on this entirely.  If Her Honor believes that

8    she's -- all the arguments are there and she doesn't need any

9    amplification with oral argument, I respect that.  I believe

10   we've preserved all the issues relative to appeal.  I don't

11   think I need to add anything else.

12         So, if oral argument would genuinely not help Her

13   Honor, then, no, that's -- I understand Her Honor's position

14   on that.  I respect Her Honor's discretion.

15         THE COURT:  Okay.

16         Attorney Gooley or Attorney Noonan?

17         MR. NOONAN:  We agree, Your Honor.

18         MR. GOOLEY:  However Your Honor wants to proceed.

19         THE COURT:  Okay.  Then once I do a deep dive on the

20   objection and the supporting paperwork, if I think I would

21   benefit from having some oral argument, we'll get everybody

22   on the phone for purposes of scheduling that.  If I think

23   that it's all sufficiently briefed, then I'll just take it on

24   the papers.

25         Anything else we can do this morning, from the

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 234 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/18/24   Page 67 of 70

67

1    Plaintiff's perspective?

2            (Conferring.)

3            MR CERAME:  No, Your Honor.  We're set.

4            I understand.  I understand.

5            We're all set, Your Honor.

6            THE COURT:  Okay.  Thank you.

7            For the Defense.

8            MR. NOONAN:  No, Your Honor.  Thank you, Your

9    Honor.

10           MS. WELLER:  Actually, I do have one housekeeping

11   matter.  On the Rule 72.2 objection, Your Honor issued an

12   order directing the Defendant Jane Doe to file any response

13   by yesterday.  I filed a response yesterday on behalf of Yale

14   and noted in a footnote that although Yale wasn't directed

15   to, I felt compelled.  And given the deadline, I didn't think

16   it could wait until today.

17           So I didn't mean any disrespect by filing something,

18   but I thought it was important.

19           THE COURT:  That was probably an oversight on my

20   part.  That order, obviously, was directed to the protection

21   of Jane Doe.  I should have recognized that Yale would have

22   had an interest in the outcome of that objection.

23           So, that was probably an oversight on my part.  I

24   did see that you filed an opposition, and I was going to

25   consider everything from all parties when deciding

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 235 of 360
Case 3:19-cv-01966-KAD  Document 200  Filed 09/18/24  Page 68 of 70

68

1   Plaintiff's objection to the order.

2          MS. WELLER:  Thank you, Your Honor.

3          MR CERAME:  If I could ask, through the Court.  If

4   counsel needs additional time to respond to the issue, we

5   would consent, if for some reason she was rushed or hurried

6   in some way to --

7          THE COURT:  Say that again.

8          MR CERAME:  I just wanted to add -- make sure, ask

9   my opposing counsel, through the Court, if she needed

10  additional time.  She sounded like she felt rushed and did

11  something in a hurried manner.  If she wanted to take time to

12  write a more thorough objection, I wasn't going to object to

13  that.

14         THE COURT:  Are you satisfied with your opposition?

15         MS. WELLER:  I very much appreciate what counsel is

16  doing.  I think we'll stand on our position, but thank you.

17         THE COURT:  Okay.

18         MR. CERAME:  Very well, Your Honor.

19         THE COURT:  All right.  And I can't remember whether

20  or not the scheduling order included the opportunity for

21  Plaintiff to reply to the response to the objection.  If it

22  did, obviously that's in place.  If it didn't -- I don't know

23  whether that was your intention.

24         MR CERAME:  I do intend to do so.  My energies have

25  been focused considerably over the last month, and I will --

Case: 24-2794, 11/04/2024, DktEntry: 16.1, Page 236 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 69 of 70

69

1    we will file some kind of response.

2         THE COURT:  Okay.  Why don't we do 14 days from

3    yesterday.

4         MR CERAME:  Very well, Your Honor.

5         THE COURT:  All right.  Anything else we can do this

6    morning?

7         MR CERAME:  Nothing occurs to me, Your Honor.

8         MR. GOOLEY:  Not from Jane, Judge.  Thank you.

9         MR. NOONAN:  No, Your Honor.  Thank you.

10        THE COURT:  All right.  Thank you, Counsel.  We're

11   in recess.

12             (Proceedings conclude, 11:34 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Case: 24-2794  11/04/2024  DktEntry: 16.1  Page 237 of 360
Case 3:19-cv-01966-KAD   Document 200   Filed 09/16/24   Page 70 of 70

70

```
 1                    C E R T I F I C A T E

 2          RE: Khan v. Yale University, et al.
               Civil No. 3:19-cv-1966-KAD
 3
                      Motion Hearing
 4                    July 25, 2024

 5

 6       I, Tracy L. Gow, RPR, Official Court Reporter for the

 7  United States District Court, District of Connecticut, do

 8  hereby certify that the foregoing pages, 1 through 69, are a

 9  true and accurate transcription of my shorthand notes taken

10  in the aforementioned matter to the best of my skill and

11  ability.

12

13                         /s/  TRACY L. GOW
                           Official Court Reporter
14                         U.S. District Court
                           915 Lafayette Boulevard, Room 216
15                         Bridgeport, Connecticut 06604
                           (203) 910-0323
16

17

18

19

20

21

22

23

24

25
```

# Exhibit L

# To Be Filed Under Seal

# Exhibit M

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Saifullah Khan,<br><br>     Plaintiff,<br><br>v.<br><br>Yale University, Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Jane Doe, Carole Goldberg, Unknown Persons;<br><br>     Defendants. | Civil No. 3:19-cv-01966-KAD<br><br><br><br>JUNE 19, 2024 |

**RULING AND ORDER**

## I.   INTRODUCTION

In 2015, Plaintiff Saifullah Khan ("Plaintiff" or "Khan") and Defendant Jane Doe ("Jane Doe") matriculated at Defendant Yale University ("Yale"). They went to the same Halloween party, went to a student orchestra performance together, returned to Trumbull College where they both lived, and woke up in her room. *See* Compl. (ECF No. 1) ¶¶ 39, 41–43. Shortly after, Jane Doe filed a Title IX complaint against Khan, alleging he raped her. *See id.* ¶¶ 46, 48. Khan was immediately suspended, criminally charged with four counts of assault, acquitted, and readmitted pending the disciplinary hearing. *See id.* ¶¶ 47–52, 58. In October 2018, Yale suspended Khan again for unrelated issues. *See id.* ¶¶ 60–64. The following month, Yale's University-Wide Committee on Sexual Misconduct ("UWC") held a disciplinary hearing concerning Jane Doe's allegations and then voted to expel him. *See id.* ¶¶ 74–80.

Khan now sues Yale, 12 Yale employees, unknown journalists, and Jane Doe for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., for breach of due

1

process concerning the disciplinary hearing, and various breach of contract and tort claims stemming from his expulsion. [1]  Khan also asserts two counts specific to Jane Doe: defamation and tortious interference with a business relationship.  When he filed this lawsuit, Khan moved to proceed against Jane Doe using a pseudonym and Yale filed a memorandum in support.  District Judge Kari A. Dooley granted the motion.

The parties are embroiled in a key dispute: whether Jane Doe should enjoy continued anonymity as this case proceeds in litigation.  Judge Dooley has referred several pending motions to me, two of which directly conflict and are the subject of this order: (1) Khan's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) ("Plaintiff's Motion to Vacate"); and (2) Jane Doe's Motion to Continue Anonymity (ECF No. 103) ("Doe's Anonymity Motion").  These motions are ripe for a ruling.  For the following reasons, I **DENY** Plaintiff's Motion to Vacate and **GRANT** Doe's Anonymity Motion.

## II.   BACKGROUND

Given the comprehensive factual recitations from *Khan I* through *Khan IV*, *infra* at 4, I presume familiarity with the facts of this case and summarize only the procedure, facts, and evidence relevant to the pending motions.

### A.   <u>Khan Moves to Litigate Against Jane Doe under a Pseudonym</u>

When Khan filed this lawsuit on December 13, 2019, he also moved for permission to litigate against Jane Doe using a pseudonym.  *See* Pl.'s Mot. Pseudonym (ECF No. 2); Exs. to Pl.'s Mot. Pseudonym (ECF No. 7).  As Khan explained, Yale's UWC procedures require confidentiality of individuals and proceedings, and he wanted to maintain Jane Doe's anonymity

---

[1] Defendants Peter Salovey, Jonathon Halloway, Marvin Chun, Joe Gordon, David Post, Mark Solomon, Ann Kuhlman, Lynn Cooley, Paul Genecin, Stephanie Spangler, Sarah Demers, Carole Goldberg, and Unknown Persons have not briefed the motions before this Court.

to comply with these procedures for one reason: "Mr. Khan's sole interest in confidentiality is to preserve the hope of some sort of negotiated or enjoined solution in the instant case where he can complete his undergraduate degree and get on with his life." *Id.* at 9. Although Khan applied the Second Circuit's ten-factor test for determining whether a pseudonym is appropriate—as established in *Sealed Plaintiff v. Sealed* Defendant, 537 F.3d 185 (2d Cir. 2008)—he focused on why Jane Doe's anonymity would be beneficial to him, not her.[2]

In addition to Khan, Yale filed a memorandum explaining why Jane Doe's anonymity satisfied the ten factors in *Sealed Plaintiff*. *See* Yale Mem. Pseudonym (ECF No. 9). Yale explained why Jane Doe's anonymity was necessary to protect her. In brief, Yale lodged five main arguments: (1) as Plaintiff contended, the litigation involves highly sensitive and personal matters; (2) anonymity is an important safeguard to protect Jane Doe, a rape survivor, from likely reputational harms and media attention; (3) no party will suffer prejudice because Plaintiff knows her identity; (4) her identity has thus far been kept confidential; (5) public interest weighs in favor of protecting sexual assault survivors; (6) and, because it's in the public interest to conceal her identity, the public has an atypically weak interest in knowing her identity. *See id.*

On January 10, 2020, Judge Dooley granted Plaintiff's Motion. Judge Dooley reasoned:

> Based upon consideration of the inherently sensitive and personal nature of the issues raised in this litigation, the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality, the risk of harm and the absence of prejudice to the litigants, the lack of an alternative procedure for maintaining Jane Doe's confidentiality, and other relevant factors, *see Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189-90 (2d Cir. 2008), the Court grants the motion to proceed by way of a pseudonym. The motion is granted without prejudice insofar as Jane Doe has not yet appeared in this action.

Text Order (ECF No. 12). The case has proceeded under a pseudonym since this ruling.

---

[2] I will address the ten-factor test later in this ruling.

**B.**     **Judge Dooley's Dismissal of Claims Against Jane Doe and the Subsequent
Appeals Process.**

On April 28, 2020, Jane Doe moved to dismiss the claims against her, arguing she enjoys

absolute immunity from suit arising from her testimony at the disciplinary hearing, because it was

a quasi-judicial proceeding.  Judge Dooley granted her motion, and Khan appealed.  *See Khan v.

Yale Univ.*, 511 F. Supp. 3d 213 (D. Conn. 2021) (*Khan I*).

The Second Circuit certified the issue, among others, to the Connecticut Supreme Court on

March 4, 2022.  *See Khan v. Yale Univ.*, 27 F.4th 805 (2d Cir. 2022) (*Khan II*).  On June 27, 2023,

the Connecticut Supreme Court ruled that Yale's disciplinary hearing procedure did not constitute

a quasi-judicial hearing because it lacks procedural safeguards.  The Supreme Court concluded

Jane Doe does not enjoy absolute immunity or (at least at the pleading stage) qualified immunity.

*See Khan v. Yale Univ.*, 347 Conn. 1 (2023) (*Khan III*) (denying absolute immunity).  On October

25, 2023, the Second Circuit reversed in part Judge Dooley's decision and remanded the case for

further proceedings consistent with the decision.  *Khan v. Yale Univ.*, 85 F.4th 86 (2d Cir. 2023)

(*Khan IV*) (reversing in part and remanding for further proceedings).

**C.**     **Motion for Judgment of Dismissal and Hearing**

On December 27, 2023, Jane Doe moved for a judgment of dismissal as a sanction for

Plaintiff publicly disclosing her identity and directly communicating with her about settlement.

*See* Mot. Seal Emergency Mot. J. Dismissal (ECF No. 73) at 1.  The substance of these

communications have been filed under seal pursuant to a court order.  *See* Hr'g Tr. (ECF No. 94).

Judge Dooley held a hearing on March 18, 2024.  The topics discussed included Khan's

posts on X, his direct contact with Jane Doe, and the standard for awarding sanctions. Jane Doe's

counsel described Plaintiff's actions as a "retaliatory sequence of events starting with e-mails

directly to [his] client that were found harassing, after he had sought to hide her name" and "using

her name publicly, telling the world 'a gift is going to come,' and sure enough he does this." *Id.* at 17:5–16. He also stated Nazis and "the fringe element" took interest in Plaintiff's posts. *See id.* at 18:5–10. Plaintiff's counsel conceded that he interpreted the anonymity restriction as applying to public posts, *see id.* at 8:14–21, Plaintiff's public disclosure of Jane Doe's identity "surprised" and "flummoxed" him, *id.* at 10:6–18, that his client wants accountability and for "her to feel what he felt," *id.* at 11:4–14, that Plaintiff wants to "fully and fairly litigate this case" before a jury, *id.* at 12:22–24, and that failure to comply with court orders could result in counsel's withdrawal, *see id.* at 12:24–13:2.

Judge Dooley expressed concern for Khan's social media tactics, stating "there is a sense of an intent to intimidate" and "[t]here is a sense of an intent to harass" in Khan's public posts about the litigation and depositions. *Id.* at 9:1–9. Judge Dooley reflected, "The idea of sort of mobilizing the Internet – I mean, this is borderline doxing, and it's very concerning." *Id.* She also explained that she did not want "the case litigated on X or on Youtube or on TikTok," clarifying, "I think I do have a legitimate concern that that might be on Mr. Khan's list of things to do, in terms of having his viewpoint out there in the world repeated to the Jane Doe's detriment, at a time when nothing has been decided." *Id.* at 14:12–19. Despite her reservations, Judge Dooley clarified that she had never issued a protective order preventing Khan from publicly using Jane Doe's identity, and so technically Khan did not violate a court order. *See id.* at 5:10–25.

Judge Dooley denied the motion but ordered Khan to refrain from publicly revealing Jane Doe's name until the pending motions are decided and to remove the posts publicly identifying her. *See id.* at 23:13–25:19. Regarding the pending motions, Judge Dooley reflected: "[C]onsistent with the parties' earlier understanding, with the issues now I think adequately joined

between the motion to remove the pseudonym and the motion for the protective order, what the parties' conduct looks like going forward is teed up." *Id.* at 19:18–23.

## III.   DISCUSSION

The two motions at issue seek opposing relief: Plaintiff seeks to vacate Jane Doe's anonymity, and Jane Doe seeks to maintain it.  Plaintiff filed his motion three days before Judge Dooley's hearing.  *See* Pl.'s Mot. Vacate.  Both Yale and Jane Doe object to the motion.  *See* Yale's Opp'n (ECF No. 102); Doe's Opp'n (ECF No. 104).  Jane Doe filed her respective motion on April 5, 2024, after the hearing.  *See* Doe's Anonymity Mot.  To date, Plaintiff has not responded.

### A.   Jane Doe's Continued Anonymity Is Warranted.

Rule 10(a) of the Federal Rules of Civil Procedure requires the complaint's title to name all parties.  *See* Fed. R. Civ. P. 10(a).  While identifying the parties is an important component to ensuring the public's access to the courts, special circumstances sometimes warrant an exception. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).  Courts within the Second Circuit must use the non-exhaustive ten-factor balancing test adopted by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*:

(1) "whether the litigation involves matters that are highly sensitive and [of a] personal nature;"

(2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties;"

(3) "whether identification presents other harms and the likely severity of those harms;"

(4) "whether the plaintiff is particularly vulnerable to the possible harms of disclosure;"

(5) "whether the suit is challenging the actions of the government or that of private parties;"

(6) "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;"

(7) "whether the plaintiff's identity has thus far been kept confidential;"

(8) "whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity;"

(9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities;" and

(10) "whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 190 (internal quotation marks and citations removed). The purpose of this test is to "weigh[] the plaintiff's need for anonymity against countervailing interests in full disclosure," *id.* at 189, including "public interest in disclosure and prejudice to defendants," *id.* at 193.

Judge Dooley evaluated these ten factors in her initial order. *See* Text Order (citing *Sealed Plaintiff*). She specifically noted the "sensitive and personal nature of the issues" (factor one), the risk of harm (factors two through four) and the absence of prejudice to the parties (factor six), and the lack of alternative procedures (factor ten), among the other relevant factors.[3] *Id.*

With the exception of factor seven (7),[4] none of the facts relevant to the factors considered by Judge Dooley have changed. As Yale points out, the subject matter still involves Jane Doe's

---

[3] I construe Judge Dooley's order to mean that she considered all *Sealed Plaintiff* factors but found these six factors the most compelling and—because the ten *Sealed Plaintiff* factors are non-exhaustive—considered other arguments raised by the parties that do not neatly fit into the ten-factor test.

[4] Factor 7 requires the Court to consider whether the identity of the person seeking anonymity has thus far been kept confidential. *See Sealed Plaintiff*, 537 F.3d at 190. As set forth in Jane Doe's Motion for Judgment of Dismissal and discussed during the hearing, Plaintiff—without Jane Doe's consent—disclosed Jane Doe's identity on social media. The Court has since ordered Plaintiff to remove his posts referencing Jane Doe's identity pending the outcome of these motions. The Court gives no weight to this factor given that Plaintiff's disclosure of Jane Doe's identity without consent from Jane Doe, at a minimum, undermines the spirit of the anonymity order in

alleged sexual assault, there has been no reduction of potential risk if Jane Doe's name is revealed, Plaintiff still does not argue he will be prejudiced if Jane Doe continues to proceed under a pseudonym, and no viable alternative to her confidentiality has been established since Judge Dooley's ruling.

Instead, Plaintiff argues there is no longer a need for Jane Doe's anonymity because he does not want to return to Yale anymore, the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g et seq., does not cover Yale's investigation records, and the Connecticut Supreme Court's decision caused him to conclude Jane Doe is not entitled to anonymity because she is no longer a student. For several reasons, these arguments are unpersuasive.

<u>First</u>, it is of no moment that Plaintiff no longer wants to re-enroll at Yale. The *Sealed Plaintiff* standard focuses on the needs of the person seeking anonymity and balances <u>those needs</u> against the interests of the other parties and the public. *See Sealed Plaintiff*, 537 F.3d at 189 ("We agree that the interests of both the public and the opposing party should be considered when determining whether to grant an application to proceed under a pseudonym."). In other words, Plaintiff's future plans, which are unrelated to Jane Doe, are irrelevant for the purposes of the *Sealed Plaintiff* factors. The only factor specifically related to the opponent is the sixth: whether the non-movant might be prejudiced by the anonymity. *See id.* at 190. Because Khan knows Jane Doe's identity, he will not be prejudiced by continued anonymity. *See Doe v. Smith*, No. 1:19-

---

place, and even came as a surprise to Plaintiff's attorney who was "flummoxed" and offered that he thinks Plaintiff wants "her to feel what he felt," including "[w]hat it was to have every publication that reports on things like [allegations of college campus sexual assault]." Hr'g Tr. at 10:11–14, 11:8–10. Giving weight to this factor in light of Plaintiff's potentially vindictive disclosure of Jane Doe's identity would unfairly reward Plaintiff for efforts to litigate this case on social media and inflict harm on Jane Doe outside of the judicial process.

CV-1121 (GLS/DJS), 2019 WL 6337305, at *2 (N.D.N.Y. Nov. 27, 2019) ("Defendant knows Plaintiff[']s identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff[']s identity publicly."). Plaintiff's desired outcome for this litigation does not equate to whether he will be prejudiced by her anonymity. Accordingly, this argument does not persuade me.

Second, Plaintiff argues that FERPA—which, in relevant part, requires universities to keep educational records confidential—does not apply to a university's investigation into potential criminal conduct. *See* Mot. Vacate at 5–6. As an initial matter, Judge Dooley did not find that FERPA required Jane Doe's anonymity. Rather, she determined that one of the factors warranting anonymity was "the parties' acknowledgment of the Defendant Yale University's applicable policies concerning confidentiality." Text Order (ECF No. 12). To the extent Plaintiff regrets conceding that Yale's confidentiality policy applies to these facts, he cannot un-ring that bell.

In any event, the First Circuit addressed Plaintiff's very argument in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022). There, the plaintiff—a male MIT student who was expelled after being accused of sexually assaulting a female student and then sued the university for breach of contract and other state claims—sought to litigate under a pseudonym. *See id.* at 64–65. As a matter of first impression, the First Circuit established its own version of the *Sealed Plaintiff* test and concluded the district court erred in denying him pseudonymity.[5] MIT

---

[5] The First Circuit concluded the multi-factor tests, like the *Sealed Plaintiff* test, "do not establish a clear standard" and chose instead to use "the easily understood 'totality of the circumstances' standard, *see id.* at 69–70, outlining four paradigms in which pseudonymity is generally appropriate: (1) if the "would-be Doe" fears "coming out of the shadows will cause him unusually severe harm (either physical or psychological); (2) if "identifying the would-be Doe would harm 'innocent non-parties;'" (3) if identification could create a "chilling effect on future litigants who may be similarly situated;" or (4) if the lawsuit is "bound up with a prior proceeding confidential by law." *Id.* at 71–73.

argued that FERPA (and Title IX) only constrain the university during its own proceedings and that a student waives his right to confidentiality by filing a lawsuit. *See id.* at 75. While the First Circuit acknowledged that FERPA and Title IX do not impose "a gag order on individual participants," it nonetheless concluded MIT "misses the mark." *Id.* The First Circuit opined that "courts cannot ignore the background confidentiality regime in assessing the circumstances relevant to a request for pseudonymity." *Id.* at 76. It explained that there is little basis to "lift the veil of pseudonymity" in a collateral attack, reasoning: "The public has an abiding interest in ensuring that the values underpinning the confidentiality protections imposed by FERPA and Title IX are not subverted by collateral attacks in federal court." *Id.*

To be sure, the facts are slightly different here insofar as Khan's identity is public and it is he (not a university) that seeks to reveal the identity of Jane Doe, who has been brought into this litigation against her will as a Defendant. Because she has not brought this case on her own volition, the public has an even greater interest to maintain her anonymity during this collateral attack in federal court. *See id.* Indeed, the risk of a "chilling effect" would certainly increase if there was some blanket rule that university students who complain about sexual assault could be publicly named by the accused in a collateral attack. *See Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021) ("[I]n general, 'the public ... has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'") (citing *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006)).

Third, Jane Doe graduated before this case was filed and so her status as an alumna is not a new or changed fact. *See* Yale's Opp'n at 2. Yale posits that Khan knew this when he first sought to litigate against her through a pseudonym in December 2019, and Khan has not filed an opposition to dispute this fact. *See id.* In his Motion to Vacate, Khan argues that the Connecticut

Supreme Court acknowledged her graduation forecloses Yale's ability to discipline her for failing to testify truthfully, and so the "obligation to treat her pseudonymously arising under university regulations evaporated when her status as a student expired." This appears to be a more creative version of his FERPA argument. For the same reasons I did not find the FERPA argument warrants vacating the pseudonym order, I do not find Plaintiff's third argument compelling.

Accordingly, I conclude that Jane Doe's anonymity should be continued.

**B.  An Order Prohibiting Public Disclosure of Jane Doe's Identity Is Warranted.**

Having decided that Jane Doe may continue to proceed under a pseudonym, I must now evaluate the scope of that decision. *See* Hr'g Tr. at 19:18–23. Jane Doe requests that the following order be issued: "Plaintiff shall not identify Jane Doe in any social media communication or elsewhere. Plaintiff's claims will be dismissed with prejudice if he identifies Jane." Doe's Anonymity Mot. at 30. While Plaintiff has moved to vacate Jane Doe's anonymity, he did not object to this request. Because I do not have authority to involuntarily dismiss an action, *see* 28 U.S.C. § 636(b)(1)(A), I will limit my ruling to the first sentence and will leave issues of dismissal to Judge Dooley.

I conclude that Jane Doe is entitled to an order restricting Khan (and his counsel) from publicly identifying her. But I do so with the acknowledgment that the relevant facts and procedural posture concerning Jane Doe's anonymity are unique. At first blush, her anonymity request does not appear to fit neatly within a specific legal framework.

**1.  *A Rule 26(c) Protective Order is Not Applicable*.**

I begin with Federal Rule of Civil Procedure 26(c), which governs protective orders. *See* Doe's Anonymity Mot. At 11–15. Under Rule 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "Courts in this circuit have noted that, '[f]or purposes of a

11

protective order, good cause is established when a party is able to show that a clearly defined, specific and serious injury will occur in the absence of such an order.'" *Qube Films Ltd. v. Padell*, No. 13–CV–8405 (AJN), 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015) (quoting *McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 (RPP), 2012 WL 13933, at *1 (S.D.N.Y. Jan. 4, 2012) (internal quotation marks removed)).

Certainly, the principles of Rule 26 apply insofar as the disclosure of Jane Doe's identity would cause her more than "annoyance, embarrassment, oppression, or undue burden," as I have explained above. But Plaintiff knew Jane Doe's identity before litigation. In this vein, Rule 26 does not apply insofar as her identity is not information learned through a document, responses to discovery requests or interrogatories, depositions, or otherwise. *See Bridge CAT Scan Assocs. v. Technicare Corp.*, 710 F.2d 940, 944–45 (2d Cir. 1983) ("Rule 26, however, which is entitled 'General Provisions Governing Discovery,' is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on discovery in order to prevent injury, harassment, or abuse of the court's processes.").

In requesting an order prohibiting Plaintiff from publicly disclosing her identity, Jane Doe cites case law involving discovery. *See* Doe's Anonymity Mot. at 11–15. Take *Doe v. Baram*, No. 20 CIV. 9522 (ER), 2021 WL 3423595, at *3 (S.D.N.Y. Aug. 5, 2021), and *Doe on behalf of Doe No. 1 v. Nygard*, No. 20 CIV 6501 (ER), 2020 WL 4890427, at *3 (S.D.N.Y. Aug. 20, 2020), two related lawsuits involving plaintiffs who were sex trafficked and sexually assaulted as minors and whose identities were not known to the accused defendants. These plaintiffs sought protective orders that required the defendants to keep their identities confidential from the public in exchange for their identities. *See Baram*, 2021 WL 3423595, at *3; *Nygard*, 2020 WL 4890427, at *3.

12

Because the defendants did not know their accusers' identities, the court's issuance of a protective order functioned as a discovery management tool under Rule 26. *See Baram*, 2021 WL 3423595, at *3. So too did *Plaintiffs #1–21 v. County of Suffolk*, 138 F. Supp. 3d 264 (E.D.N.Y. 2015), *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000), and the *Strike 3* and *Malibu Media* cases involve protecting a party's identity for discovery purposes. *See* Doe's Anonymity Mot. at 13–15. These cases therefore do not apply here.

## 2. *Based on record before Court Jane Doe's Request is Not a Prior Restraint.*

Having concluded that a Rule 26 protective order does not apply, I'd like to address potential concerns involving whether an order limiting a litigant's right to publicly disclose the identity of an individual—who has been granted anonymity in court—would serve as a "prior restraint." "A prior restraint is a governmental order or action 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Perry v. McDonald*, 280 F.3d 159, 171 (2d Cir. 2001) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). The Second Circuit in *In Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2d Cir. 1988), explained why a court's order preventing parties from speaking with the press did not violate the press's First Amendment rights. While the facts are of course different, its reasoning applies:

> The most offensive aspect of a prior restraint is the censorship involved by forbidding the dissemination of information already known to the press and therefore public. A prior restraint deprives the public of specific news because it prevents publication. Although the restraining order in this case limits the flow of information readily available to the news agencies—and for that reason might have an effect similar to that of a prior restraint—the fact that the order is not directed at the news agencies and that they therefore cannot be haled into court for violating its terms deflates what would otherwise be a serious concern regarding judicial censorship of the press.

*Id.* at 608. The Second Circuit concluded "there is a fundamental difference between a gag order challenged by the individual gagged and one challenged by a third party; an order objected to by

the former is properly characterized as a prior restraint, one opposed solely by the latter is not." *Id.*

As with the parties in *In Application of Dow Jones & Co.*, Plaintiff did not object. While it is true Plaintiff moved to vacate Jane Doe's anonymity, it is also true that his motion is denied. Given this denial, he has not pointed me to specific legal authority or facts explaining why he should be given carte blanche to publicly disclose her identity outside of the litigation. Quite the opposite. During the hearing, Khan offered to comply with an order preventing such disclosure before his counsel objected. *See* Hr'g Tr. at 22:14–19 (Pattis: "Objection. We're not going to – we're not completely oblige to any gag orders, Mr. Khan. Speak to me before you offer to comply with gag orders to the Court."). While Plaintiff's counsel preserved his objection to future "gag orders," I construe Khan's testimony along with counsel's failure to oppose Jane Doe's argument to mean that Plaintiff concedes there is no legal justification supporting his desire to identify Jane Doe outside this litigation when the court has ruled she may litigate anonymously. In other words, this circumstance is similar to *In Application of Dow Jones* insofar as the parties do not object to such a court order, and therefore it is not a "prior restraint." 842 F.2d at 608.

As Judge Dooley explained during the hearing, Plaintiff's disclosure of Jane Doe's risks this case being litigated on X, TikTok, Facebook, or social media generally. *See* Hr'g Tr. at 14:4–19. I have reviewed all briefing and evidence filed under seal relating to Khan's public disclosure of Jane Doe's identity. I have also reviewed the hearing held before Judge Dooley on March 18, 2024 and her concerns about the how Khan's public disclosure of Jane Doe's identity has the potential to impact this case. I have reviewed  Defendant Jane Doe's sur-reply filed under seal, Sur-Reply (ECF No.  114), which attaches exhibits evincing Plaintiff's intent to use the media and internet to, at best, embarrass Jane Doe publicly. In light of the record before the Court, and for

the same reasons that compel the continued anonymity of Jane Doe, I find that without an Order preventing Plaintiff, directly or indirectly, from publicly disclosing Jane Doe's identity the anonymity order would be gutted and there is a reasonable likelihood this case could be litigated on social media.

## IV.    CONCLUSION

For the above reasons, I **DENY** Plaintiff's Motion to Vacate [the Court's] Order Treating Jane Doe Pseudonymously (ECF No. 89) and **GRANT** Jane Doe's Motion to Continue Anonymity (ECF No. 103).  I further **ORDER** that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.  Plaintiff is advised that any release or deliberate disclosure of Jane Doe's identity in violation of this Court's Order is sanctionable by the Court, including but not limited to dismissal.  Should either party find this beneficial, they may file a proposed order prohibiting public disclosure of Jane Doe's identity for my consideration.  Prior to filing, they must schedule a meet and confer with counsel to develop agreed-upon language.  If the parties agree, they may jointly file a Proposed Order.  If counsel does not agree, the parties are instructed to jointly call chambers notifying me of the dispute, upon which I will schedule a discovery status conference.

This is not a recommended ruling. This is a pretrial ruling and order that is reviewable under the "clearly erroneous" standard of review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(a); and Rule 72.2 of the Local Rules for U.S. Magistrate Judges. As such, it is an order of the court.

It is so ordered.

_____/s/ Maria E. Garcia_____
Hon. Maria E. Garcia
United States Magistrate Judge

# Exhibit N

# To Be Filed Under Seal

# Exhibit O

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KHAN                                    :

v.                                      :    3:19-cv-1966 (KAD)

YALE UNIVERSITY et al.                  :    JULY 3, 2024

**LOCAL RULE 72.2 OBJECTION AND REQUEST FOR DE NOVO REVIEW BY**
**DISTRICT COURT OF MAGISTRATE JUDGE ORDER AT CM/ECF NO. 119**

On June 19, 2024, Judge Garcia issued a ruling and order concerning speech rights and pseudonymity. Specifically, Judge Garcia ordered, among other things, Jane Doe's request for pseudonymity was a request for anonymity; Jane Doe was entitled to such pseudonymity; Jane Doe's continued pseudonymity is warranted; the request for pseudonymity in this case is not a discovery issue governed by FRCP 26; the Plaintiff may not identify Doe by name and that restriction on the Plaintiff's speech is not a prior restraint.

In accordance with Local Rule 72.2, the Plaintiff objects and requests de novo review by the District Court. The Plaintiff objects to each finding and judgment in the memorandum except that FRCP 26 does not apply, including each of those matters specifically identified above as well as any other matters in the Order at CM/ECF Entry 119.

Even if Doe may proceed under a *pseudonym*, that is in the caption of the case, the Order constitutes an illegal *prior restraint*. How the case is captioned is separate from whether the Court can enjoin or punish the Plaintiff under the circumstances for his protected speech. The Order cannot be squared with Supreme Court precedent and current legal doctrine.

## I. BACKGROUND

The Plaintiff revealed Doe's identity, citing as his reason a footnote in the

Second Circuit opinion in this case:

> While Doe's real name is known to the parties, Khan moved to pursue this civil
> action against her pseudonymously to avoid violating the privacy requirement of
> Yale's Sexual Misconduct Policy. That policy does not bind the federal courts,
> which generally require a complaint to "name all the parties." . . . . This court
> has, however, recognized judicial discretion to depart from Rule 10(a) when a
> party's interest in anonymity outweighs "both the public interest in disclosure
> and any prejudice" to the adverse party. . . . Because no party complains that the
> district court failed to balance these interests here or otherwise abused its
> discretion, **we do not pursue the matter further** and simply refer to defendant as
> "Jane Doe" in this opinion. . . .

*Khan v. Yale Univ.*, 27 F.4th 805, 809n.1 (2d Cir. 2022), *certified question* answered,

347 Conn. 1, 295 A.3d 855 (2023)(emphasis added; citations omitted).  He also cited

reliance on Footnote 39 of the Connecticut Supreme Court opinion in this case.

*Khan v. Yale Univ.*, 347 Conn. 1, 53n.39, 295 A.3d 855, 887 (2023)

On June 19, 2024, Judge Garcia issued an order:

> I further ORDER that Plaintiff directly or indirectly (including
> through his counsel) is prohibited from publicly disclosing or revealing
> Jane Doe's identity, including but not limited to on any social media
> platform. Plaintiff is advised that any release or deliberate disclosure
> of Jane Doe's identity in violation of this Court's Order is sanctionable
> by the Court, including but not limited to dismissal. Should either
> party find this beneficial, they may file a proposed order prohibiting
> public disclosure of Jane Doe's identity for my consideration. Prior to
> filing, they must schedule a meet and confer with counsel to develop
> agreed-upon language. If the parties agree, they may jointly file a
> Proposed Order. If counsel does not agree, the parties are instructed to
> jointly call chambers notifying me of the dispute, upon which I will
> schedule a discovery status conference.

The Order is a prior restraint.

## II. THE ORDER IS <u>PLAINLY</u> A PRIOR RESTRAINT ON ITS FACE

Judge Garcia claims at 13–14 that the Order is not a prior restraint.  The

order is plainly a prior restraint on its face:

> A "prior restraint" on speech is a law, regulation or judicial order that
> suppresses speech—or provides for its suppression at the discretion of
> government officials—on the basis of the speech's content and in advance
> of its actual expression.

*United States v. Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005).  In the present case,

the Order prohibits "publicly disclosing or revealing Jane Doe's identity . . . ."  Order

at 15.  Prohibiting public disclosure is suppressing communication.  By any logical

measure, this order suppresses speech on the basis of its content.

## III.   THE ORDER CANNOT BE SQUARED WITH *COX* OR *FLORIDA STAR*

*Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) has been settled law for

almost a half-century.  The Supreme Court concluded in *Cox* that "the States may

not impose sanctions on the publication of truthful information contained in official

court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive

the incident.  *Id.* at 471.  The incident occurred in Georgia, and at the time,

publishing or broadcasting the name or identity of a rape victim constituted a

misdemeanor in Georgia.  *Id.* at 471–72.

The victim's name appeared in indictments.  *Id.* at 472.  The indictments

were public records available for inspection.  *Id.* at 472–73.  A reporter learned the

victim's identity through these public records and broadcast a report that named

the victim.  *Id.* at 473–74.  The report was repeated the following day.  *Id.* at 474.

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name. *Id.* at 474–75. Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive." *Id.* at 475. The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern. *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489. Nonetheless, the Court concluded that a state **may not** "**impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection." *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record. *See* T 2/26/18 at 35. Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started. Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

Furthermore, Doe's position cannot be reconciled with itself. In this case, Doe maintains she is a victim of sexual assault by the Plaintiff. Attorney Sconzo made this argument forcefully at the March 26, 2014 hearing. See T 3/18/24 at 13–14. Let's assume for the moment, **strictly for the sake of the argument,** that is the case. The Court cannot impose sanctions on the Plaintiff for disclosing this

4

(ostensibly) true fact that is already available to the public in the public record:

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and hear what transpired can report it with impunity. There is no special prerequisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it . . . .

*Cox* at 492–93.  The Plaintiff participated in proceedings, and he can testify about them.  This includes identifying Doe, by name, as she did in open court.

In the alternative, assuming for the sake of the argument that Doe is **not** a victim of sex assault by the Plaintiff, as the Plaintiff claims in this litigation, then she has no right to privacy for making false allegations against the Plaintiff.  If her accusation is false, the Plaintiff has every right to publish the truth, including identifying Doe, in order to salvage his reputation:  that Doe lied about him, and to identify Doe's name.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded on *Cox*.  In *Florida Star*, Florida had a law that made it illegal to print, publish, or broadcast the name of a victim of a sexual offense. *Id.* at 526.  The Florida Star published the name of *B.J.F.* in a police blotter by mistake.  *Id.* at 527.  This was in violation of the Florida Star's own policy of not publishing the name of sex assault victims.  *Id.* at 528.  B.J.F. filed suit sounding in negligence.  *Id*.  The trial court directed a verdict as to negligence *per se* in favor of B.J.F.  *Id.* at 529.

The Supreme Court held that punishing the publication was unconstitutional.  "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its

release." *Id.* at 535.  The "source" of the release in this case is the Connecticut Superior Court, not the Plaintiff.  See T 2/26/18 at 35.  "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served." *Florida Star* at 535.

Note that this all is separate from how *this Court* elects to caption the case. *See Florida Star* at n1. This Court can caption the case however it wishes to.  But the Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, has accused the Plaintiff of sexual assault.  That is in the public record.  Accordingly, it is beyond the power of this Court to punish the Plaintiff for publishing that fact, with her true name.

6

## IV.    JANE DOE WANTS PSEUDONYMITY; SHE IS NOT ANONYMOUS

In the order, Judge Garcia frequently elides pseudonymity with anonymity. That is a mistake and part of why reliance on *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008) is misplaced.

Anonymity is when a speaker's identity is not known.  **Doe is not anonymous, and has never been anonymous.**  Doe did not send an anonymous tip.  Doe did not commence a lawsuit under a pseudonym.  Doe testified under oath at the criminal trial, and used her full name in open court.  *See* T 2/26/18 at 35. Doe's name is in transcripts that anyone can obtain from the Connecticut judicial branch.  *Id.*  Doe's name has been published online by a journalist.  However protected by FERPA, Doe did not speak *anonymously* in the school proceedings:  FERPA kept her name *confidential*, but the Plaintiff knew her name and her name was known during that process.  He obtained knowledge of her identity lawfully.  In this case, allowing Doe to proceed with a pseudonym does not make her anonymous, no matter what Judge Garcia supposes.  Doe has never been anonymous and Doe is not anonymous now.  It is error to elide these two principles as they are factually and legally distinct.

An **anonymous plaintiff** may, prior to revealing their identity, ask for permission to proceed under a pseudonym. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008). Or a pseudonym may be necessary for the plaintiff to make out a complaint against unknown individuals, **where the identity of an anonymous defendant is not known** and that identity is sought through litigation. *See Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001).  In such a case where a defendant is a Doe, the plaintiff does so for

7

logistics; not to preserve anonymity, but to defeat it. In both cases, the public is not aware of the identity of the anonymous party at the start of a lawsuit.

Undersigned can find no case where the specific identity of a defendant was a matter of public record before a suit and where a party was lawfully punished for disseminating that information.

Now, as to some defendants in defamation suits, there is a fundamental right to anonymously criticize government officials. Thus, the judicial process sometimes can protect that kind of anonymity. *See id.* There is no fundamental right to defame a private individual, however. This case does not involve an anonymous party criticizing the government or any attempt to uncover the identity of an anonymous defendant through the judicial process.

In accordance with *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185 (2d Cir. 2008), a **plaintiff** may attempt to proceed under a pseudonym to protect their identity. That is a situation where the identity of the party seeking the pseudonym is not known to the public before the lawsuit commences, and this was also the case in *Doe v. Massachusetts Institute of Technology*, 46 F.4th 61 (1st Cir. 2022) as well as *Doe v. Baram*, No. 20-cv-9522 (S.D.N.Y. Aug. 5, 2021)(2021 WL 3423595) and *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006). The public knowledge about the parties before litigation is different in those cases from the present case. Those Does are anonymous. This Doe is not.

In Connecticut, there are also situations where a *court* in opinions or in captions will use a pseudonym or initials for a victim. But there are no cases where a party—not an attorneys, but a party—is sanctioned or criminalized for identifying

individuals by name in public where the speaker knew that name before the litigation started.

If Doe's identity emerged in the discovery process, this case would be different. A court has power over the discovery process. A court can compel attorneys and parties to keep certain information confidential when it is obtained through the discovery process. This is codified in FRCP 26(c). But FRCP 26(c) does not apply to the present case. *See* Order at 12–13.

Protecting the identity of individuals from publication is also recognized as part of the criminal process, to protect against an "imminent threat to the participation of witnesses, trial participants, and staff in [a] criminal matter" or to protect "an ongoing investigation or the identity of witnesses in such a proceeding." *United States v. Trump*, 88 F.4th 990, 1016 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190 (D.C. Cir. Jan. 23, 2024)(2024 WL 252746). This is obviously not a criminal case with the compelling interest of an ongoing criminal investigation nor does publishing Doe's name present an imminent threat to the *participation* of any witnesses. "A presumption of openness pervades federal dockets." *Alston v. Sharpe*, District of Connecticut, 3:13-cv-1 at *1 (Oct. 22, 2015)(2015 WL 6395937). To the extent the Court does not want the facts of the case reported or discussed publicly, the Court must identify a compelling interest. History indicates that there is no compelling interest in preventing the dissemination of truthful information already in a public court record. *See Florida Star v. B.J.F.*, *supra*, 491 U.S. 524; *Cox Broadcasting Corp. v. Cohn*, *supra*, 420 U.S. 469.

9

Undersigned is unable to find a case with an order like Judge Garcia's.  In this case, the Plaintiff has always known Doe's identity.  Her identity has been published publicly, and her identity is a matter of public record.  Undersigned has not been able to find a case where the name of a **defendant**, **whose identity is known** and a **matter of public record** is lawfully protected by a gag order.  Judge Garcia has created a new procedural right out of whole cloth, and improperly employs this new right to infringe on the Plaintiff's freedom of speech.

## V.  NO EQUITY JURISDICTION :  VAIN OR FUTILE THING

Setting aside the First Amendment for a moment, the Court lacks equity jurisdiction to effect the injunction against the Plaintiff.  It is a well-established, ancient principle that "equity will not do or require the doing of a useless, vain, or futile thing." 27A Am.Jur.2d 629, Equity § 91 (2008)[1].  According to Judge Garcia, the interest in the injunction enjoining the Plaintiff's speech is in preserving Doe's anonymity.  **But Doe is already not anonymous.**  Either the purpose of the order is

---

[1] *See* 30A C.J.S. Equity §16 ("A court sitting in equity will not do, or require the doing of, a vain or useless thing; it will not use its authority to accomplish a useless purpose"); *see also All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 905 (11th Cir. 2000)("the law does not require the performance of vain or useless things"); *Realty Income Tr. v. Eckerd*, 564 F.2d 447, 458 (D.C. Cir. 1977) ("equity should not require the doing of a vain or useless thing" [internal quotation marks omitted]); *Bd. of Sup'rs of Louisiana State Univ. v. Fleming*, 265 F.2d 736, 738 (5th Cir. 1959)("[t]he law does not require the doing of a vain and useless thing"); *United States v. Russell*, 241 F.2d 879, 882 (1st Cir. 1957)(same); *Sch. Bd. of City of Charlottesville, Va. v. Allen*, 240 F.2d 59, 64 (4th Cir. 1956)("equity does not require the doing of a vain thing"); *Mitchell v. Chambers Const. Co.*, 214 F.2d 515, 517 (10th Cir. 1954)("[e]quity will not do a useless or vain thing"); *Szynkowicz v. Szynkowicz*, 140 Conn. App. 525, 536, 59 A.3d 1194 (2013)("equity will not grant a decree that is ineffectual"); *c.f. O & G Indus., Inc. v. Plan. & Zoning Comm'n of Town of Beacon Falls*, 232 Conn. 419, 429, 655 A.2d 1121 (1995)("The law does not require the doing of a useless thing").

to a vain or useless end—or the underlying purpose is actually something else.  For example, the purpose may be to chill or prevent the Plaintiff from expressing his views about the proceedings, or Yale, or the suit, or the Court.  To such an unspoken end, the order may not be feckless.  But the order cannot preserve Doe's anonymity.

Doe was not anonymous when the suit commenced. There is no equity jurisdiction to enjoin the Plaintiff from publicly identifying Doe if the interest is in preserving Doe's anonymity because Doe is not anonymous and equity will not do a vain or useless thing. There is no way to put the toothpaste back in that tube.  The cat is out of the bag.

## VI.    JUDGE GARCIA IMPROPERLY PRESUMES HARM WITHOUT A FACTUAL PREDICATE TO FIND HARM

To find a compelling interest requires evidence be adduced.  Here, there was no competent evidence adduced by Doe or expert testimony or anyone that Doe might suffer harm from the disclosure (order at 8); that other individuals might be chilled from coming forward (order at 10), or what the Plaintiff desires, (order at 8); or that Doe's future plans will be harmed by the disclosure. See *Doe v. Pub. Citizen*, 749 F.3d 246, 274 (4th Cir. 2014) ("courts consistently have rejected anonymity requests to prevent speculative and unsubstantiated claims of harm to a company's reputational or economic interests . . . .); *see also id.* at 270.

## VII.    CONCERNING FORFEITURE OR WAIVER

Undersigned notes that he is working under difficult circumstances.

**Undersigned still does not have access to substantial portions of the docket**—any

sealed portions are wholly inaccessible to undersigned. *See* ECF No. 132 (still pending). Undersigned was retained less than a week ago for free speech issues. Undersigned is operating under unusually pressured circumstances, as detailed in the motion for extension of time at ECF No. 131 which was denied. *See also* Motion to Set Aside Final Extension Order, *Pryor v. Brignole*, Connecticut Appellate Court AC44253[2] (explaining context). Failure to identify issues should not be regarded as forfeiture or waiver but a product of exceptionally difficult and unfair circumstances.

**CONCLUSION**

For the foregoing reasons, the Court should sustain the objection to the Order by Judge Garcia, CM/ECF No. 119.

Respectfully submitted,

SAIFULLAH KHAN

JULY 3, 2024
/s/ *Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

---

[2] *Available at*
https://appellateinquiry.jud.ct.gov/DocumentDisplayer.aspx?AppId=2&DocId=gMjW%2fzUjBIoWyeKEsY7DvA%3d%3d.

12

**CERTIFICATION**

I hereby certify that on July 3, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ _____

Mario Cerame

# Exhibit P

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JULY 30, 2024 |

**EXHIBITS RELATED TO PLAINTIFF'S RULE 72.2 OBJECTION**

Defendant Jane Doe respectfully submits the following Exhibits related to Plaintiff's Rule

72.2 Objection: (1) Access Guidelines; (2) Email from Lillian Perry, Official Court Reporter II,

Judicial District of New Haven; and (3) Corrected Transcript, with additional redaction by Jane

Doe.


DEFENDANT JANE DOE,


By: /s/ Brendan N. Gooley
James M. Sconzo (ct04571)
Brendan N. Gooley (ct30584)
CARLTON FIELDS, P.A.
One State Street, Suite 1800
Hartford, CT  06103
Tel.: 860-392-5000
Fax: 860-392-5058
Email: jsconzo@carltonfields.com
bgooley@carltonfields.com

Her Attorneys

**<u>CERTIFICATION OF SERVICE</u>**

This is to certify that on this 30th day of July 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.

                                          <u>/s/ Brendan N. Gooley</u>
                                          Brendan N. Gooley

https://www.jud.ct.gov/faq/courtrec2.html



Open, unless sealed by the court order.

**Sexual assault files**

Open, with identity of victim masked.

**Victim's Identity in Sexual Assault and Risk of Injury Cases**

Comment: Closed, except to the accused. The name and address of the victim are confidential (C.G.S. 54-86e). Restrictions on disclosure of other identifying information about such victim is to be determined by the court and can be redacted only upon order of the court, except that such information shall be available to the accused. Reference in a sexual assault file to the name and address of the victim shall be redacted from any copies provided to the public.

| From: | Perry, Lillian |
|---|---|
| To: | mlaurato@carmodylaw.com |
| Cc: | Gooley, Brendan N.; Sweetland, Kelli |
| Date: | Wednesday, July 17, 2024 11:34:46 AM |
| **Importance:** | High |

**EXTERNAL SENDER: This Message is from outside the organization.**

Good morning, Maria

Would you please discard the transcript I delivered on Monday and use this copy in its place; an invoice will not be submitted as I indicated previously.    I have removed the last name of the victim per CGS 54-86e on page 47 which was stated on the record.  I have also included Attorney Gooley and the Office of the Chief State's Attorney  so they have in their possession the corrected transcript and would request any previously delivered transcript also be discarded.

As the Office Court Reporter for the Judicial District of New Haven, I am appreciative that this was brought to my attention and, along with my administration's guidance, we are able to rectify it.

Thank you very kindly, Lilly

**Lillian Perry**
**Official Court Reporter II**
**Judicial District of New Haven**
**235 Church Street – Seventh Floor**
**(203) 503-6825**

**From:** Perry, Lillian
**Sent:** Monday, July 15, 2024 4:06 PM
**To:** mlaurato@carmodylaw.com
**Subject:**

Hi   As promised.  Invoice to follow.

Thank you, Lilly

**Lillian Perry**
**Official Court Reporter II**
**Judicial District of New Haven**
**235 Church Street – Seventh Floor**
**(203) 503-6825**

NO: NNH CR15 0162194          :   SUPERIOR COURT

STATE OF CONNECTICUT          :   JUDICIAL DISTRICT
                                      OF NEW HAVEN

v.                            :   AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN                :   FEBRUARY 26, 2018


**CORRECTED**


BEFORE THE HONORABLE BRIAN T. FISCHER, JUDGE and JURY



A P P E A R A N C E S :


   Representing the State

      ATTORNEY MICHAEL PEPPER
      SENIOR ASSISTANT STATE'S ATTORNEY
      235 Church Street
      New Haven, Connecticut 06510


   Representing the Defendant

      PATTIS AND SMITH LAW FIRM
      ATTORNEY NORMAN PATTIS
      ATTORNEY DANIEL ERWIN
      383 Orange Street
      New Haven, Connecticut 06510


Recorded and Transcribed By
Mary Lou Coppola
Court Recording Monitor
235 Church Street
New Haven, Connecticut 06510

```
 1          Jane        [NAME OMMITTED] ,

 2       Having been duly sworn, was examined and testified as

 3  follows:

 4               THE COURT:  And you could have a seat, ma'am.

 5          Just pull that chair up and that microphone you could

 6          pull it down and that'll amplify your voice, but

 7          please try to keep your voice up the best you can.

 8          With that, I'll look to the State of Connecticut.

 9               ATTY. PEPPER:  Thank you.

10  DIRECT EXAMINATION BY ATTY. PEPPER:

11     Q   Jane       how old are you?

12     A   I'm 24 years old

13     Q   Do you live in Connecticut?

14     A   I don't.

15     Q   Did you at one time?

16     A   I lived here during college.

17     Q   And where was college?

18     A   College was Yale University.

19     Q   When did you start Yale and when did you leave Yale?

20     A   I started Yale in 2012 and I graduated in 2016.

21     Q   Okay.  And what kind of degree?

22     A   I double majored in Slavic literature and Biology.

23     Q   And are you working out of state now?

24     A   I am.

25     Q   Okay.  When -- When you came to Yale how old were

26  you?

27     A   I was 18.
```

```
NO: NNH CR15 0162194        :   SUPERIOR COURT

STATE OF CONNECTICUT        :   JUDICIAL DISTRICT
                                   OF NEW HAVEN

v.                          :   AT NEW HAVEN, CONNECTICUT

SAIFULLAH KHAN              :   FEBRUARY 26, 2018
```

C E R T I F I C A T I O N

   I hereby certify that the foregoing pages are a true and
correct transcription of the audio recording of the above-
referenced case, heard in Superior Court, Judicial District
of New Haven, at New Haven, Connecticut, before the Honorable
Brian T. Fischer, Judge, on the 26th day of February, 2018.


   Dated this 21st day of March, 2018, in New Haven, Connecticut.


*Lillian M. Perry, OCR 7/17/2024*

_____
Mary Lou Coppola
Court Recording Monitor

# Exhibit Q

 **U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

| DATE: 10/03/2024 |
| FILE NO. A 208484528 |
| FORM NO. I-589 |

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.
3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.
4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024.**

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

USCIS, Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102
Fax # 973-848-3101
NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72
(REV. 10/05)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH
YOUR RESPONSE**



**U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

| DATE: 10/03/2024 |
| FILE NO. A 208484528 |
| FORM NO. I-589 |

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.
3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.
4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024**.

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

> USCIS, Newark Asylum Office
> Gateway 3
> 100 Mulberry Street, Suite 199
> Newark, NJ 07102
> Fax # 973-848-3101
> NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72
(REV. 10/05)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH YOUR RESPONSE**

# Exhibit R

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

KHAN                                                          :

v.                                                              :    3:19-cv-1966  (KAD)(MEG)

YALE UNIVERSITY et al.                          :    OCTOBER 8, 2024

**EMERGENCY MOTION FOR LIMITED STAY OF**
**ORDER RESTRICTING SPEECH**

Plaintiff seeks an emergency limited stay of the order for him to in no way

communicate, directly or indirectly, the identity of Doe.  *See* ECF No. 119. Plaintiff

requests permission from this Court to deliver any necessary documents, without

redaction, to the Department of Homeland Security, U.S. Citizenship and

Immigration Services ("DHS"), as per the October 3, 2024 Letter from DHS.  *See*

attached Letter.  Doe does **not** consent.  Plaintiff has also attempted to reach

counsel for Yale and has not received a response yet.

Under the circumstances, Plaintiff seeks immediate **emergency** review as the

documents must be supplied to and in the possession of DHS by October 24, 2024.

Specifically, Plaintiff points out that responding to the letter as to items 1

and 2 would violate the present order from this Court:

1. . . . Please submit a certificate of disposition regarding your case in criminal
   court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn,
   Indiana that you were able to check online.  Please provide documentation of
   this protection order.

Both documents contain Doe's name.  Plaintiff does not intend to submit any other

documents containing Doe's name aside from responses to these two requests.

**Plaintiff faces execution if deported.**  This is literally a Matter of Life and

Death for Plaintiff.  Plaintiff believes therefore it is of utmost importance that he comply fully with the request from DHS, that he do everything possible avoid even the shadow of a possibility of any administrative mishap to the extent he is able to. Plaintiff could be killed if he does not.

Plaintiff notes that his last communication with DHS occurred three years ago, on November 2, 2021.  At that time, an interview was taken.  At that time, Plaintiff submitted the same documents requested here. Plaintiff was supposed to receive a decision within 45 days.  He still has not, because of these documents.

Plaintiff believes that any alternative to submitting the documents imperils his Life.  On the basis of his past experiences with DHS, including but not limited to the facts above, Plaintiff is understandably afraid of Kafka-esque administrative failures. He believes a delay or administrative error caused by redactions or explanations could get him killed.  Plaintiff *has already submitted these documents* to DHS, elevating and legitimizing his concerns about administrative mishaps that could cost him his life.

Plaintiff's fears are exacerbated by political discourse in the coming election cycle concerning deportations of individuals *accused* of crimes, nevermind acquittals.

Plaintiff is rationally afraid for his life under the circumstances, and accordingly requests a limited stay or lifting of the Order of this Court silencing him; *see* ECF no. 119; strictly for the purposes of responding to the request from DHS as described above.

As to constitutionality, Plaintiff has already argued extensively in other

2

filings why the present order is illegal.  Such arguments do not necessitate or occasion repetition here.

This Court may alter an injunctive order when there is a change in circumstances.  This clear and present danger to the Plaintiff's Life constitutes such a change in circumstances.

Plaintiff must have these documents in the possession of DHS by Thursday, October 24, 2024.  Under the circumstances, Plaintiff respectfully requests that the Court render judgment by Monday, October 21, 2024, if not before then, so that he has adequate time to comply with the request by DHS, and, if necessary, seek emergency stay.

**CONCLUSION**

For the foregoing reasons, the Court grant the limited stay or limited lift of the order, and that such judgment be rendered by October 21, 2024.

Respectfully submitted,

SAIFULLAH KHAN

October 8, 2024

/s/ *Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

3

## **CERTIFICATION**

I hereby certify that on OCTOBER 8, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ _____
Mario Cerame

 **U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

DATE: 10/03/2024
FILE NO. A 208484528
FORM NO. I-589

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.
3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.
4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024.**

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

USCIS, Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102
Fax # 973-848-3101
NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72
(REV. 10/05)

**PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH YOUR RESPONSE**

 **U.S. Citizenship and Immigration Services**

**Department of Homeland Security**
Newark Asylum Office
Gateway 3
100 Mulberry Street, Suite 199
Newark, NJ 07102

NAME AND ADDRESS OF APPLICANT
SAIFULLAH KHAN
17 COURT ST
NEW HAVEN, CT 06511

| DATE: 10/03/2024 |
| FILE NO. A 208484528 |
| FORM NO.  I-589 |

Please submit the following additional documentary evidence:

1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict.  Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online.  Please provide documentation of this protection order.
3. If you are not able to provide any of these documents, please provide a statement explaining the reasons why you were not able to do so.
4. Any other evidence you would like to be considered as part of your claim.

**Be advised that in your efforts to obtain the above-requested documentation, you do not have to inform anyone that you have filed an asylum application. Your asylum application is a confidential matter which should not be disclosed to anyone unless you choose to do so.**

Thank you for your prompt attention to this matter. Please be advised that you must supply the above reasonably available evidence within **21 days** of the date listed above, meaning it is **due on or before, October 24, 2024**.

If you have any questions, please contact **Officer Seluga** at (973) 848-3100, and reference **ZNK#435**.

> USCIS, Newark Asylum Office
> Gateway 3
> 100 Mulberry Street, Suite 199
> Newark, NJ  07102
> Fax # 973-848-3101
> NewarkAsylumOfficeMailbox@uscis.dhs.gov

Cc:
ROCHELLE CHARNIN
FORMICA PC
195 CHURCH STREET, FLR 11
NEW HAVEN, CT 06510

Form I-72          **PLEASE RETURN THIS LETTER AND ALL ATTACHMENTS WITH**
(REV. 10/05)                              **YOUR RESPONSE**

# Exhibit S

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | OCTOBER 14, 2024 |

**OBJECTION TO PLAINTIFF'S MOTION FOR LIMITED STAY**

Defendant Jane Doe ("Jane") respectfully objects to Plaintiff's Motion For a Limited Stay (ECF 201 ("Plaintiff's Motion")) of the orders protecting her name.

**I.     PRELIMINARY STATEMENT**

The record in this case demonstrates that Plaintiff cannot be trusted with Jane's name and that he does not respect Court Orders or his discovery obligations.  Plaintiff exclaimed that this case is his "war," and because of that the Court must take extra caution to evaluate anything Plaintiff submits to the Court, particularly when it concerns Jane.  (*See, e.g.*, ECF 200 at 46:11–13 ("The Court:  . . . .  You just said that I should take your client at his word.  Well, *your client sat in that chair three months ago and was dishonest with me*." (emphasis added).)

It is not necessary for Plaintiff to disclose Jane's name in order to comply with the request issued by U.S. Citizenship and Immigration Services ("USCIS").  Counsel for Jane contacted counsel for Plaintiff, explained how Plaintiff could respond to the USCIS Request without revealing Jane's name, and asked Plaintiff to agree to do so.  (*See* **Exhibit A**.)  Plaintiff refused and called this Court's Orders protecting Jane's name "patently illegal."  (**Exhibit B**; **Exhibit C**.)

Plaintiff also refused to provide Jane with the documents he plans to submit to USCIS. Plaintiff refused to do that even though Plaintiff long ago should have disclosed to Jane in

discovery his full immigration file and all documents and information about the other women and men who have accused him of sexual misconduct.  Jane cannot fully assess what Plaintiff is arguing about in his Motion because Plaintiff has not complied with his discovery obligations, as well as Jane's request that he provide the documents at issue in his Motion.

The Court should not consider Plaintiff's Motion given that Plaintiff will not provide Jane with the documents at issue.  Regardless, the Court should deny Plaintiff's Motion because there is no need for Plaintiff to disclose Jane's name, because Plaintiff cannot be trusted with any disclosure of Jane's name, and because Plaintiff's failure to comply with his discovery obligations and provide the documents at issue leaves Jane unable to properly respond to Plaintiff's arguments.

## II.    PLAINTIFF'S MISCONDUCT IN THIS CASE

Plaintiff's request to disseminate Jane's name must be considered in the context of Plaintiff's misconduct in this case, particularly his misconduct with respect to Jane's name.  The Court is well aware of that misconduct.  (*E.g.*, ECF 75, ECF 123-1; ECF 200.)  Jane will not rehash that misconduct here, but it is important to note that Plaintiff continues to maintain that this Court's most recent Order prohibiting him from "directly or indirectly" revealing Jane's name allowed him to make a series of posts encouraging others to post Jane's name.  (*See, e.g.*, ECF 119; ECF 200.)

The bottom line is that Plaintiff's misconduct in this case demonstrates that:

- (1)  Plaintiff is intent on harassing Jane and misusing this Court's process to do so.  (*See, e.g.*, ECF 75; ECF 114 (containing statements by Plaintiff about harassing Jane).)

- (2)  Plaintiff disregards Orders of this Court and then argues that he "misunderstood" the Orders.  (*See, e.g.*, ECF 94 at 21:9–11; ECF 123-1; ECF 200 at 46.)

## III.   THE REQUEST FROM USCIS

Against that backdrop, the Court should view Plaintiff's Motion with a high degree of skepticism.  The USCIS's Request does not require the disclosure of Jane's name.  USCIS has

requested (1) the "official transcript" from Plaintiff's criminal trial, (2) "a certificate of disposition regarding" the criminal case, and (3) "documentation" related to "a protection order filed against [Plaintiff] in Dearborn, Indiana." (USCIS Request.)

- The "official transcript" from Plaintiff's criminal trial does *not* contain Jane's full name. The Court will recall that a prior version of the transcript may have mistakenly contained Jane's full name, but the Official Court Reporter corrected the transcript such that the official transcript does not include her full name. (*See* ECF 186 (showing that the Official Court Reporter corrected the transcript and that the Corrected Transcript does not contain Jane's name other than her first name); *see also* ECF 200.) The USCIS Request does not prohibit Plaintiff from redacting Jane's first (or last) name. Plaintiff should submit the corrected transcript and redact Jane's first name.

- The portion of the "official transcript" from the criminal trial in which the jury returns its verdict is "a certificate of disposition regarding" the criminal case. That portion of the transcript does not include either Jane's first or last name. Plaintiff can thus comply with this request without disclosing Jane's name. Indeed, Plaintiff can comply with this request without producing any additional documents whatsoever because he will be submitting the entire corrected transcript. Plaintiff has indicated that he is planning to respond to this request with a document other than the portion of the "official transcript" in which the jury reads its verdict, which will be a needless disclosure of Jane's name.

- The "protection order filed against [Plaintiff] in Dearborn, Indiana" was filed by a non-party who claimed that Plaintiff sexually assaulted him. That documentation should not include Jane's name. Jane had no involvement in that matter. It is therefore curious why Plaintiff appears to claim in his Motion that this Request requires the disclosure of Jane's name. (*See* Motion at 1 (seemingly asserting that documents responsive to both of USCIS's document requests contain Jane's name).) (As noted below, Plaintiff's counsel has since noted that he is unsure whether these documents contain Jane's name.) USCIS has only asked for "documentation of th[e] protection order," which seems to allow Plaintiff some discretion in terms of what to produce. Plaintiff should not need to disclose Jane's name to respond to this request because Jane's name should not be in the applicable documents.

## IV.    PLAINTIFF'S MOTION AND A BRIEF SUMMARY REGARDING DISCOVERY

Plaintiff's Motion makes sensational claims about the purported importance of Plaintiff's response to USCIS's Request. (Motion.) Plaintiff has prevented Jane from properly responding to those claims, however, because he has not produced the immigration documents and documents about the other people who accused him of sexual misconduct, including the individual who filed

the Protection Order in Indiana.  Without those documents, which Plaintiff did not object to

producing but has still not produced, Jane cannot thoroughly respond to Plaintiff's Motion.

Plaintiff has been under an obligation to produce this information for many months and the Court

should not consider his Motion unless and until Plaintiff complies with his discovery obligations.

In January 2024, Jane requested that Plaintiff produce:

> All documents and communications, other than communications with your
> attorneys, concerning all allegations, statements, and assertions that you engaged
> in sexual misconduct. . . .  This Request also includes authorizations sufficient to
> obtain all documents requested in this Request.

(**Exhibit D**.)  Plaintiff did not object to that Request (or any of Jane's other Requests).  He therefore

should have produced all documents and communications concerning all allegations that he

engaged in sexual misconduct many months ago.  Among other things, Plaintiff did not produce

the documentation related to the "protection order filed against [him] in Dearborn, Indiana."

In addition to asking for these documents in discovery, which Plaintiff did not object to,

Jane asked Plaintiff immediately after he filed his Motion to provide her with the documents from

the Indiana Protection Order that Plaintiff plans to submit to USCIS.  (Exhibit A.)  Plaintiff refused.

(Exhibit C ("As to the Indiana documents, we will not provide you with a copy [of] these

documents.  More specifically, we will not provide you with a copy of *any* of the documents at

issue.  These documents are not discoverable. . . ." (emphasis in original)).)

Jane cannot respond to why her name may be relevant to that matter because Plaintiff will

not produce the documents.  This Court should not entertain Plaintiff's Motion unless and until

Jane's counsel has an opportunity to analyze these documents and file an additional brief.

Plaintiff's refusal to produce the documents is concerning because the documents may

contain sensitive information about Jane other than just her name if, as Plaintiff's Motion suggests,

they contain her name.  Given Plaintiff's history, this raises a serious question regarding whether the real goal of Plaintiff's Motion may be to reveal sensitive information in conjunction with Jane's name.  Jane cannot evaluate that issue because Plaintiff will not produce the documents.

Even more concerning, the USCIS Request indicates that Plaintiff "testified" at USCIS regarding another allegation of sexual misconduct against him, and Plaintiff has not produced that testimony to Jane.  The non-disclosure of Plaintiff's testimony to USCIS about another allegation of sexual misconduct is particularly troublesome because that information is also responsive to another request Jane issued and Plaintiff did not object to seeking relevant immigration records:

> [A]ll documents and communications, other than communications with your attorneys, concerning your immigration status since October 31, 2015, including but not limited to all documents and communications submitted to and received from immigration officials, as well as authorizations sufficient to obtain these documents and communications.

(Exhibit D.)  In his response to that Request, Plaintiff referred Jane to eleven documents, which were largely non-substantive (*e.g.*, there were automated emails acknowledging receipt of certain things Plaintiff apparently submitted or non-substantive status updates—they were certainly not a transcript or recording of testimony Plaintiff gave to USCIS).  Plaintiff also wrote: "Please provide an authorization sufficient to obtain further documents you require."  (**Exhibit E**.)

Jane sent Plaintiff an authorization for immigration records over two months ago, but Plaintiff did not sign it despite saying he would.  (**Exhibit F**.)  During a recent meet and confer, counsel for Plaintiff indicated that Plaintiff had instead obtained records from immigration officials and that Plaintiff was planning to produce those.  Plaintiff has not done so.  Jane therefore does not have documents relevant to the claims in Plaintiff's Motion (and this case more generally).

Plaintiff's failure to provide relevant immigration records and documents regarding the Indiana Protection Order that he now claims require the disclosure of Jane's name, leaves Jane

unable to properly respond to the claims that Plaintiff makes to try to convince this Court to allow him to release Jane's name in contravention of the Court's Orders, which were entered to protect Jane from further publication of her name by Plaintiff.

## V.    EFFORTS TO RESOLVE THIS DISPUTE

On October 9, 2024, counsel for Jane attempted to resolve the Parties' dispute regarding the USCIS Request by sending the email attached as Exhibit A, which detailed her position as set forth above and proposed a solution that counsel believed would be amenable to Jane and would thus spare the Court additional time in addressing this issue.  In response, counsel for Plaintiff sent the email attached as Exhibit B.  Plaintiff's counsel then sent the letter attached as Exhibit C.

As Plaintiff's counsel's email and letter show, Plaintiff refuses to accept that the corrected transcript is the official version of the transcript from the criminal trial and intends to submit the prior version of the transcript.  (Exhibit B; Exhibit C.)  Plaintiff's position is extremely concerning and suggests that Plaintiff's goals may be less about complying with USCIS's request, which expressly calls for the "official transcript," and more about disseminating Jane's name.  Indeed, Plaintiff's arguments about the alleged consequences of not complying directly with the Request from USCIS are incompatible with his intent to submit a document that is *not* the "official transcript from the [C]ourt."  (*Compare, e.g.*, Exhibit C (claiming that "the most minor variations are routinely used to justify denials" and "review is infamously strict on the smallest details" and stating:  "What is critical to us is to comply with the directive from DHS in every possible way."), *with, e.g.*, Exhibit C ("[T]he document you call 'corrected' is an unlawfully redacted transcript. . . ."); *see also* ECF 186 (showing that the Official Court Reporter corrected the transcript).)

Plaintiff also plans to obtain a certified "disposition document" from the criminal court in lieu of submitting the portion of the transcript reflecting the jury's verdict as the certificate of

disposition.  (Exhibit C.)  Plaintiff is unsure whether that document will contain Jane's name. (Exhibit C.)  Given that Plaintiff plans to request a "disposition document," however, Plaintiff should request that the "disposition document" not include Jane's name so that this is a non-issue. To the extent that that is not possible for some reason, Plaintiff should submit the portion of the certified, corrected transcript, which does not include Jane's name, or just redact Jane's name.

Plaintiff's counsel indicated that he will inquire as to whether the Indiana documents contain Jane's name.  (Exhibit C.)  As noted above, Jane believes they do not, but Jane cannot evaluate this issue because Plaintiff will not provide the documents despite Jane's requests. (Exhibit C "[W]e will not provide you with a copy of *any* of the documents at issue.")

## VI.    CONCLUSION

The Court should not consider Plaintiff's Motion in light of Plaintiff's refusal to give Jane the documents at issue, which Jane should have had long ago.  In the event that the Court is inclined to rule on Plaintiff's Motion, the Court should deny the Motion because Plaintiff can respond to the USCIS Request without disclosing Jane's name and should do so in light of his history of misconduct disclosing Jane's name and because Plaintiff has denied Jane the right to fully respond to his Motion by failing to meet discovery obligations.  If this Court allows Plaintiff to disclose Jane's name in any format, his past conduct reveals that he will exceed the scope of the Court's Order and disseminate Jane's name in ways the Court never intended to permit and, if he is caught, he will claim he "misunderstood" the Court's Order or that it allowed him to do things it did not. (*See, e.g.*, ECF ECF 94 at 21:9–11; ECF 123-1; ECF 200 at 46:11–13.)

The Court should therefore deny Plaintiff's Motion.

DEFENDANT JANE DOE,

By: */s/ Brendan N. Gooley*
    James M. Sconzo (ct04571)
    Brendan N. Gooley (ct30584)
    CARLTON FIELDS, P.A.
    One State Street, Suite 1800
    Hartford, CT  06103
    Tel.: 860-392-5000
    Fax: 860-392-5058
    Email: jsconzo@carltonfields.com
           bgooley@carltonfields.com

    Her Attorneys

## CERTIFICATION OF SERVICE

This is to certify that on this 14th day of October 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system.


/s/ Brendan N. Gooley
Brendan N. Gooley

# EXHIBIT A

**From:** Gooley, Brendan N.
**To:** "Mario Cerame"; Alex Taubes
**Cc:** Sconzo, James M.
**Subject:** Khan
**Date:** Wednesday, October 9, 2024 5:39:13 PM

---

Hi Mario and Alex:

We are formulating a response to Plaintiff's Motion for a Limited Stay (ECF 201).  We have a few thoughts/questions we were hoping you could weigh in on:

1.  We understand the official transcript from the criminal case to be the corrected transcript, which only contains Jane's first name.  Does Mr. Khan agree that the corrected transcript is now the official transcript and is he planning to submit the corrected transcript?  If so, is he willing to redact Jane's first name?  We expect that we will be able to agree to Mr. Khan's request regarding the transcript if Mr. Khan is planning to submit the corrected transcript and redact Jane's first name and Mr. Khan recognizes that any stay is limited to allowing him to provide the redacted, corrected transcript to USCIS and that he is still prohibited from disseminating Jane's name in any other way.  If that is not the case, please let us know so that we can appropriately frame our objection to this request.

2.  We understand the portion of the official transcript from the criminal case in which the jury returns its verdict to be a certificate of disposition regarding the criminal case.  Is Mr. Khan willing to submit that portion of the transcript as the certificate of disposition?  If so, we expect we can agree to that because Jane's name is not in that potion of the transcript.  If not, please let us know why Mr. Khan believes the transcript in which the jury returns its verdict is not a certificate of disposition and please send us the document that Mr. Khan plans to submit as the certificate of disposition so that we can evaluate it and see whether we can propose a possible solution, such as redaction.

3.  We understand the Indiana Protection Order to be related to the non-party male that made allegations against Mr. Khan in 2018.  We therefore do not believe that the Indiana Protection Order relates to Jane, that her name will not appear in documents related to that matter, and that Mr. Khan may have made a mistake in asserting that Jane's name is in these documents.  If it is the case that Jane's name does not appear in these documents, we believe this is a non-issue.  If Jane's name appears in the documents Mr. Khan plans to produce, please send them to us so that we can analyze them and see whether we can propose a possible solution, such as redaction.

Best,

Brendan



**Brendan N. Gooley**

Attorney at Law

One State Street
Suite 1800
Hartford, Connecticut 06103
Direct: 860.392.5036 | Fax: 860.392.5058

BGooley@carltonfields.com | www.carltonfields.com
bio | vcard

**Carlton Fields is ISO 27001:2022 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

# EXHIBIT B

| | |
|---|---|
| **From:** | Mario Cerame |
| **To:** | Gooley, Brendan N. |
| **Cc:** | Sconzo, James M.; Giovanna Tiberii Weller; Alex Taubes |
| **Subject:** | In reponse to your questions concerning the DHS Letter |
| **Date:** | Thursday, October 10, 2024 10:46:09 AM |

---

**EXTERNAL SENDER: This Message is from outside the organization.**

---

Attorney Gooley,

1. **No, we do not understand that to be the case without a ruling from a judge. We made this clear in prior filings.** We think what Doe's (and Yale's) counsel did in obtaining the document was at least improper, if not a violation of the CTRPC.

   We believe Doe and Yale, in that process, once again, specifically and intentionally avoided elementary due process rights of my client in obtaining that document. We were not heard on the issue, had no notice of the issue, and no officer of the court issued a judgment from which we could take appeal. No, we do not recognize your claim on the transcript as valid, and you have declined to present any case law or statutory law contra our position as articulated in filings.

   What is critical to me, and my client of course, is to comply with the directive from DHS in every possible way, without asking for any exceptions or exemptions that will create further delay or possible administrative mishap and imperil my client's life and liberty.

   Furthermore, the attempt to use this issue as a vehicle to legitimize the misuse of process as concerns the transcript is not understood as good faith litigation. I not willing to imperil my client's life for your convenience.

   I note again, as stated in the motion, we already submitted the unredacted version to DHS in 2021.

2. A "disposition" is both a procedural posture, and a shorthand for a particular document used internally by the court. We would provide a "certified disposition." That is, we would get a certified copy of the court's disposition document.

   There may be a process to obtain a more formal "certificate" issued from a clerk of court, but I have never seen such and it would be unusual and not something I would ordinarily seek for any purpose. I don't think there is such a process, but it is possible. In practice, we would always use a certified disposition for anything like this, because that is what is always used for things like this.

   Although I have not yet seen the document at issue, I don't believe Doe's name would appear. It is possible it appears. It should not appear, in the usual course of business for the

court, but it is possible—e.g. if there was a huge issue or motion practice about Doe, and there was a filing that uses her name in the title, her name may appear as recording the disposition and such of such a motion.

Who indicated to you a certificate of disposition was a portion of a transcript?  It is possible I am mistaken, and I welcome correction from someone who practices criminal law in this area.  I spoke with a colleague about this today, to verify if my perception was wrong, and he shared my belief.  I don't think you practice criminal law in state court (Attorney Weller's husband is very well versed in this area of the law, otoh) but I welcome correction if I am mistaken.

3.   I do not know whether Doe's name features in the Indiana documents.  I will inquire and if it does not, I will let you know so that, perhaps, we can at least narrow the issues somewhat in accordance with FRCP 1.

We will vigorously oppose request for redaction because we believe, based on logic and reason, such imperils my client's life, as we indicate in our emergency motion.

Yours sincerely,

Mario Cerame
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
Phone: (860) 527-9973
Fax: (860) 527-5929



**From:** Gooley, Brendan N. [mailto:BGooley@carltonfields.com]
**Sent:** Wednesday, October 09, 2024 5:39 PM
**To:** Mario Cerame; Alex Taubes
**Cc:** Sconzo, James M.
**Subject:** Khan

Hi Mario and Alex:

We are formulating a response to Plaintiff's Motion for a Limited Stay (ECF 201).  We have a few thoughts/questions we were hoping you could weigh in on:

1.  We understand the official transcript from the criminal case to be the corrected transcript, which only contains Jane's first name.  Does Mr. Khan agree that the corrected transcript is now the official transcript and is he planning to submit the corrected transcript?  If so, is he willing to redact Jane's first name?  We expect that we will be able to agree to Mr. Khan's request regarding the transcript if Mr. Khan is planning to submit the corrected transcript and redact Jane's first name and Mr. Khan recognizes that any stay is limited to allowing him to provide the redacted, corrected transcript to USCIS and that he is still prohibited from disseminating Jane's name in any other way.  If that is not the case, please let us know so that we can appropriately frame our objection to this request.

2.  We understand the portion of the official transcript from the criminal case in which the jury returns its verdict to be a certificate of disposition regarding the criminal case.  Is Mr. Khan willing to submit that portion of the transcript as the certificate of disposition?  If so, we expect we can agree to that because Jane's name is not in that potion of the transcript.  If not, please let us know why Mr. Khan believes the transcript in which the jury returns its verdict is not a certificate of disposition and please send us the document that Mr. Khan plans to submit as the certificate of disposition so that we can evaluate it and see whether we can propose a possible solution, such as redaction.

3.  We understand the Indiana Protection Order to be related to the non-party male that made allegations against Mr. Khan in 2018.  We therefore do not believe that the Indiana Protection Order relates to Jane, that her name will not appear in documents related to that matter, and that Mr. Khan may have made a mistake in asserting that Jane's name is in these documents.  If it is the case that Jane's name does not appear in these documents, we believe this is a non-issue.  If Jane's name appears in the documents Mr. Khan plans to produce, please send them to us so that we can analyze them and see whether we can propose a possible solution, such as redaction.

Best,

Brendan



**Brendan N. Gooley**
Attorney at Law

One State Street
Suite 1800
Hartford, Connecticut 06103
Direct: 860.392.5036 | Fax: 860.392.5058

BGooley@carltonfields.com | www.carltonfields.com
bio | vcard

**Carlton Fields is ISO 27001:2022 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.*

This transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-527-9973, and immediately delete this message and all of its attachments.

# EXHIBIT C

# BRIGNOLE, BUSH AND LEWIS

### ATTORNEYS AND COUNSELLORS AT LAW

TIMOTHY BRIGNOLE*
DAVID W. BUSH
JOHN C. LEWIS III

———————

KEVIN F. BRIGNOLE.
MARIO CERAME

*National Certification
as Civil Trial Attorney

73 WADSWORTH STREET
HARTFORD, CONNECTICUT 06106
(860) 527-9973
FAX (860) 527-5929
attorneys@brignole.com

GRANBY OFFICE:
261 SALMON BROOK STREET
GRANBY, CONNECTICUT 06035
(860) 653-5222

October 10, 2024

**BY FIRST CLASS AND ELECTRONIC MAIL**
Brendan Gooley, Esq.
One State Street
Suite 1800, Hartford, Connecticut 06103
BGooley@carltonfields.com

**Re: Formal Response to October 10, 2024 Email**

Dear Attorney Gooley,

Given the gravity of the circumstances, I believed I needed to formally respond to
your October 10, 2024 email, a copy of which is attached. Some of what is expressed
here was already stated in a short email this morning. Some of the information here
was not previously stated.

In case you aren't aware, in this immigration context, the most minor variations are
routinely used to justify denials. My client has the burden here, and review is
infamously strict on the smallest details—things ordinary people would consider
insignificant.

As to the "official transcript" issue, we do not share your understanding. Unless a
judge says otherwise, the document you call "corrected" is an unlawfully redacted
transcript. The official transcript is what was provided to us by the Superior Court on
prior occasions without ex parte badgering and browbeating a court reporter. The
documents to be submitted to DHS are the same documents exactly as we have
already submitted them.

As I stated in our email, based on our understanding of what counsel to Doe and Yale
did, it appears that once again, Doe and Yale both intentionally avoided elementary
due process rights of my client in obtaining this unlawfully redacted transcript. We

Formal Response to October 19, 2024 Email
October 10, 2024, page 2 of 3

were not heard on the issue, had no notice of the issue, and no officer of the court issued a judgment from which we could take appeal.

You have declined to present any case law or statutory law contra our position as articulated in filings. You *have* cited a statute, but we have in turn explained how that statute does not make Doe a victim after a judgment of acquittal, and you have adduced no judicial authority contrariwise.

What is critical to us is to comply with the directive from DHS in every possible way, without asking for any exceptions or exemptions that will create further delay or possible administrative mishap, endangering my client's life and liberty. Furthermore, the attempt to use this issue as a vehicle to legitimize the misuse of process as concerns the unlawfully redacted transcript is not understood as good faith litigation. I am not willing to imperil my client's life for your convenience.

I note again, as stated in the motion, we already submitted the actual official transcript and all these documents to DHS in 2021.

As to a certificate of disposition, I do not know where your understanding comes from. I welcome correction. A "disposition" is both a procedural posture, and a document used internally by the court. We are providing DHS a "certified disposition," a certified copy of the court's internal document. It a public document.

As to the Indiana documents, we will not provide you with a copy with these documents. More specifically, we will not provide you with a copy of *any* of the documents at issue. These documents are not discoverable. This is a confidential matter and according to the DHS letter, my client did not need to inform *anyone* about this matter. My client has voluntarily done so in deference and respect for the court's order, notwithstanding that this order is a patently illegal order.

We have alerted the court that submitting these public documents to DHS would be violative of the gag order. Our obligation ends there. We believe your client has sufficient notice to fully litigate the issue. If you disagree, you can seek an order from the court.

Yours sincerely

Mario Cerame

Formal Response to October 19, 2024 Email
October 10, 2024, page 3 of 3

Cc:
Attorney Giovanna Weller, Esq.
GWeller@carmodylaw.com

James Sconzo, Esq.
JSconzo@carltonfields.com

Attorney Alex Taubes, Esq.
alextt@gmail.com

Enclosure (1)

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | JANUARY 30, 2024 |

## DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF

Pursuant to Fed. R. Civ. P. 33 and 34, Defendant Jane Doe requests that Plaintiff answer the following Interrogatories under oath and respond to the following Requests for Production.

## INSTRUCTIONS AND DEFINITIONS

1.    In answering these Interrogatories and Requests for Production, please furnish all information available to you, including information in the possession of your attorneys, their investigators, any person acting on your behalf, and/or any of your agents.

2.  If you cannot answer any Interrogatory or any part of these Interrogatories in full after exercising due diligence to secure the information requested, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

3.  If you cannot produce any part of the requested documents after exercising due diligence to secure the documents, so state and produce the remainder of documents.

4.  If you cannot answer any Interrogatory or provide any documents because they have been destroyed, lost, deleted, etc., or for any other reason, please so state.

5.  If you claim that any document or portion thereof is privileged, please make the claim expressly and provide a privilege log in accordance with Rule 26(b)(5) and Local Rule 26(e).

6.  These Interrogatories and Requests for Production are to be considered continuing in

7.     Identify all individuals who you believe may be witnesses in this case and/or who witnessed and/or have knowledge concerning this case or the facts underlying it and for each such individual briefly describe the knowledge and/or information each such individual has.

**ANSWER:**

8.     Please identify all account(s) and/or webpage(s) with any social networking websites, including but not limited to Facebook, Twitter, Instagram, Snapchat, LinkedIn, Tumblr, Reddit, or any other webpage(s), app(s), website(s), and or blog(s) (collectively "social networking websites") that you have used or had in your name or have been used on your behalf since October 31, 2010 and, for each social networking website identified, please identify all usernames that have been associated with each such account or webpage since that time.

**ANSWER:**

9.     Please identify each expert witness you may call at trial and briefly describe the subject matter on which each such expert witness may testify, the substance of the facts and opinions on which each such expert witness may testify, and a summary of the grounds for each opinion each such expert witness may testify about.

**ANSWER:**

10.     Please identify all individuals that, to your knowledge, have alleged, stated, and/or otherwise asserted that you engaged in sexual misconduct with them and please identify all documents and communications, other than communications with your attorneys, regarding all such allegations, statements, and/or assertions of sexual misconduct against you.

**ANSWER:**

9.      All documents provided to each expert witness you may call at trial.

**RESPONSE:**

10.     All documents and communications, other than communications with your attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

11.     Please produce all versions of your résumé since October 31, 2010, all job applications you have completed since October 31, 2010, and all other documents and communications, other than communications with your attorneys, concerning your efforts to obtain employment and earn income (such as bids on contracts, efforts to form companies, etc.).

**RESPONSE:**

12.     Please produce copies of all local, state, and federal tax returns and IRS form W-2s and 1099s for the years 2010 to the present, as well as a fully signed and executed IRS Form 4506.

**RESPONSE:**

13.     For each employer, entity, or individual you have worked for and/or obtained income from since October 31, 2010, please produce your personnel file, job description, documents and communications concerning the beginning and end of your employment or relationship with the company or individual, documents and communications concerning your compensation and benefits, performance evaluations and documents and communications concerning your performance, documents and communications concerning any complaints by or against you, documents and communications concerning any investigations or discipline concerning you, as well as authorizations to obtain these documents and communications from each employer and/or individual or entity that you have worked for since October 31, 2010.

**RESPONSE:**

14.     Please produce paystubs and all other documents and communications, other than communications with your attorneys, concerning your pay, income, earnings, and benefits from all work and employment you have had since October 31, 2010, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

15.     Please produce all documents and communications, other than communications with your attorneys, concerning your immigration status since October 31, 2015, including but not limited to all documents and communications submitted to and received from immigration officials, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

# EXHIBIT E

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SAIFULLAH KHAN | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:19-cv-01966-KAD |
| | : | |
| V. | : | |
| | : | |
| YALE UNIVERSITY, ET AL., | : | |
| Defendants. | : | MAY 20, 2024 |

## RESPONSES TO DEFENDANT JANE DOE'S FIRST SET OF DISCOVERY REQUESTS TO PLAINTIFF

Pursuant to the Federal Rules of Procedure and the Local Rules of this Court, the Plaintiff, Saifullah Khan, hereby responds to the Defendant's discovery requests. In responding to these requests, the plaintiff responds with the qualification that he is responding to the best of his knowledge, belief, and memory, after a reasonable investigation, and that his investigation is ongoing through the process of discovery in this matter. To the extent that the plaintiff is unable to provide, for example, a witness's address or phone number, their name is included. To the extent that their address or phone number or another detail is learned it will be disclosed. Discovery is ongoing. Accordingly, the plaintiff reserves the right to amend, revise, correct, modify, supplement or clarify all of the responses provided herein, upon discovering additional information, up through the close of discovery.

### REQUESTS FOR PRODUCTION

1.    All documents and communications relied on in answering any Interrogatories in this action, preparing Plaintiff's Initial Disclosures, and/or preparing any Damages Analysis.

### RESPONSE:

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

limited to counseling and/or support groups for alcohol and/or drug use), therapy, psychiatric treatment, or other mental health treatment or medical consultations related to placement on any kind of medication for any type of emotional distress, stress, anxiety, depression, or any other mental or emotional illness since October 31, 2010.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

Please see enclosed authorizations; copies in the plaintiff's possession are also enclosed in Volume I of the production (SAIFKHAN_000001-SAIFKHAN_004113); See in particular, e.g., SAIFKHAN_001606, 003945, 003877, 3868. (psychological evaluations).


8.      All posts, status updates, tags (including but not limited to location tags and "check ins") as well as all documents and communications concerning this case or the facts underlying it, including but not limited to your claimed damages and any efforts to mitigate your damages, on any social networking websites, including but not limited to Facebook, Twitter, Instagram, Snapchat, LinkedIn, Tumblr, Reddit, (as defined above) since October 31, 2010.

**RESPONSE:**

Please see complete export of Twitter account enclosed with production.


9.      All documents provided to each expert witness you may call at trial.

**RESPONSE:**

To be provided in accordance with the Court's scheduling orders and Rule 26 disclosures.


10.      All documents and communications, other than communications with your

attorneys, concerning all allegations, statements, and assertions that you engaged in sexual misconduct, including but not limited to all allegations, statements, and assertions identified in response to Interrogatory 10 identified above.  This Request also includes authorizations sufficient to obtain all documents requested in this Request.

**RESPONSE:**

Please see documents produced at SAIFKHAN_000001-SAIFKHAN_010363; to the extent that this request seeks documents that are protected by the attorney-client privilege and work product protection/privilege, please see the privilege log being simultaneously produced herewith.

11.    Please produce all versions of your résumé since October 31, 2010, all job applications you have completed since October 31, 2010, and all other documents and communications, other than communications with your attorneys, concerning your efforts to obtain employment and earn income (such as bids on contracts, efforts to form companies, etc.).

**RESPONSE:**

Not applicable.

12.    Please produce copies of all local, state, and federal tax returns and IRS form W-2s and 1099s for the years 2010 to the present, as well as a fully signed and executed IRS Form 4506.

**RESPONSE:**

To be provided; authorizations enclosed.

13.     For each employer, entity, or individual you have worked for and/or obtained income from since October 31, 2010, please produce your personnel file, job description, documents and communications concerning the beginning and end of your employment or relationship with the company or individual, documents and communications concerning your compensation and benefits, performance evaluations and documents and communications concerning your performance, documents and communications concerning any complaints by or against you, documents and communications concerning any investigations or discipline concerning you, as well as authorizations to obtain these documents and communications from each employer and/or individual or entity that you have worked for since October 31, 2010.

**RESPONSE:**

Not applicable.


14.     Please produce paystubs and all other documents and communications, other than communications with your attorneys, concerning your pay, income, earnings, and benefits from all work and employment you have had since October 31, 2010, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

Not applicable. Authorizations to request information from the IRS are being provided.


15.     Please produce all documents and communications, other than communications with your attorneys, concerning your immigration status since October 31, 2015, including but not limited to all documents and communications submitted to and received from immigration officials, as well as authorizations sufficient to obtain these documents and communications.

**RESPONSE:**

See, e.g., SAIFKHAN_003953, 003952, 003950, 003947, 003948, 003893, 003867, 003481, 003480, 003478, 003472. Please provide an authorization sufficient to obtain any further documents you require.

16.    To the extent not already requested by Jane's other Requests for Production, please produce all other documents and communications you may use to support your claims in this case, including but not limited to your liability and damages claims.

**RESPONSE:**

Provided (SAIFKHAN_000001-SAIFKHAN_010363); additional documents will be produced as discovered.

17.    To the extent not already requested by Jane's other Requests for Production, please produce all other documents and communications, other than communications with your attorneys, concerning the events alleged in your Complaint and/or the facts underlying this case.

**RESPONSE:**

Provided (SAIFKHAN_000001-SAIFKHAN_010363); additional documents will be produced as discovered.

PLAINTIFF SAIFULLAH KHAN,

By: */s/ Alexander T. Taubes*
       Alexander T. Taubes (ct30100)
       LAW OFFICES OF
       ALEXANDER T. TAUBES, PLLC
       470 James St., Ste 007
       New Haven, CT  06513

7

# EXHIBIT F

# **Authorization For Release of Immigration Records**

TO:    U.S. Citizenship and Immigration Services;
           Department of Homeland Security;
           Immigration and Customs Enforcement;
           U.S. Customs and Border Protection

       This is to authorize you to furnish **CARLTON FIELDS P.A.P.C.**, Attorneys at Law, or their representative, including but not limited to Brendan Gooley, with any and all information and copies of records which they may request regarding Saifullah Khan and his immigration status, including but not limited to all documents concerning historical status, applications for status and any supporting documentation, and communications with Mr. Khan or anyone acting on his behalf, including but not limited to decisions on applications for status.  **A photostatic copy of this authorization shall be considered as effective and valid as the original.**

_____

           Saifullah Khan

_____

           Date

# Exhibit T

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| KHAN | : |
| v. | :   3:19-cv-1966  (KAD)(MAG) |
| YALE UNIVERSITY et al. | :   OCTOBER 17, 2024 |

**EMERGENCY MOTON TO VACATE ORDER, OR,**
**IN THE ALTERNATIVE, FOR LIMITED STAY OR LIFT OF ORDER**

On October 16, 2024, this Court denied without prejudice Plaintiff's motion for limited stay or lift of the order restricting speech. *See* ECF No. 204. Among other things, the Court ordered that any renewed motion should provide case law and analyses in support of Plaintiff's request.  The Court furthermore ordered that Plaintiff should address arguments by Doe in her responsive pleading.  *See* ECF No. 203.  This motion endeavors to respond to that Order.

Given the mortal danger posed to Plaintiff, and the exceptionally tight deadline for compliance with DHS, Plaintiff has erred on the side of being more complete to the extent possible under the circumstances.  In his initial motion, Plaintiff incorporated by reference arguments previously raised as to constitutionality.  See ECF No. 201 at 2–3.  Plaintiff understands from ECF No. 204 that this was inadequate briefing, and corrects that here.

Given the ongoing harm caused by the Order Restricting Speech, including that Plaintiff must now defend his presumptively protected speech as lawful, Plaintiff also seeks a vacatur of the order restricting speech.  The legal analyses as to both forms of relief sought are substantially the same.

For the following reasons, the vacatur should be granted.  In the alternative,

the order restricting speech at ECF No. 119 should be temporarily stayed or lifted in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

## I. OPERATIVE FACTS

### A. Procedural Facts Underlying the Motion

In summer, 2016—eight years ago—Plaintiff applied for asylum. Plaintiff formerly lived in a refugee camp before coming to the U.S. Plaintiff faces likely execution if he is deported to his native country of Afghanistan.

On June 19, 2024, this Court entered an order restricting Plaintiff's speech. See ECF No. 119. Specifically, this Court ordered that:

> I further ORDER that Plaintiff directly or indirectly (including through his counsel) is prohibited from publicly disclosing or revealing Jane Doe's identity, including but not limited to on any social media platform.

The Court's order restricting speech is **permanent**. Even if Plaintiff voluntarily dismissed this case pursuant to FRCP 41(a)(1), even if the case were adjudicated to judgment on the merits, the order restricting speech would still be in effect.

On or about October 7, 2024, Plaintiff received a letter from DHS, dated October 3, 2024, that is the genesis of the present motion. The letter directs the Plaintiff as follows:

> Please submit the following additional documentary evidence.
>
> 1. You testified that you were arrested in Connecticut in 2015 and that a criminal trial resulted in a Not Guilty Verdict. Please submit a certificate of disposition regarding your case in criminal court and the official transcript from the court.
>
> 2. You testified that you had a protection order filed against you in Dearborn, Indiana that you were able to check online. Please provide documentation of this protection order.

2

Response to these requests will violate the order of this Court restricting Plaintiff's speech by disclosing Doe's identity directly or indirectly.

On November 2, 2021, Plaintiff was interviewed by DHS, one of a number of such interviews that has occurred over the years. At that time, Plaintiff submitted these same three documents identified above to DHS. Plaintiff was supposed to receive a decision concerning the interview within 45 days of that interview. He did not receive a decision. Instead, almost three years later, he received the DHS letter, requesting that he submit the same documents again.

On October 8, 2024, Plaintiff filed an Emergency Motion for Limited Stay of Order Restricting Speech. See ECF No. 201. .

On October 16, 2024, this Court denied the motion without prejudice:

> The Court cannot speculate as to the contents of the documents at issue. Any renewal of the motion should attach the documents it seeks to submit to DHS under seal, provide the standard the court should apply, including caselaw supporting the request for the limited stay, address why it is necessary to disclose Jane Doe's full name and/or first name, and address the other arguments raised by Jane Doe in her responsive pleading.

Undersigned did not have access to the disposition or the protective order until yesterday because he is not Plaintiff's immigration attorney.

**B. Documents at Issue**

Only the official transcript identifies Doe by name. Neither the certified disposition nor the document concerning the protective order identify Doe.

The transcript identifies Doe by name more than 500 times, consists of some ~1800 pages, and contains biographical information about Doe that would indirectly reveal her identity. There is no dispute that the unredacted transcript had been

publicly available as the only available official transcript for years.

## C. Fraught Nature of Immigration Proceedings

1. <u>The High Stakes Nature of Proceedings Before the Agency</u>

The alien has the burden of proof. *See Rasool v. I.N.S.*, 758 F. Supp. 188, 190–92 (S.D.N.Y. 1991). Asylum is discretionary. Although the similar-proceeding of withholding of deportation is mandatory, the remedy is more narrow and requires a higher showing by the alien. *See id.* at 191–92. The alien generally must adduce more than mere testimony, with objective, corroborating evidence. *See id.* "Even a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).

Denial of asylum is reviewed with deference to the agency—either substantial evidence or abuse of discretion, depending. *Melendez v. U.S. Dep't of Just.*, 926 F.2d 211, 216 (2d Cir. 1991). "Under the substantial evidence standard, the evidence must not only support, but must also compel, a contrary conclusion for reversal to be proper." *Nikpay v. Barr*, 838 F. App'x 30, 32 (5th Cir. 2020). Even if there is a mistake, an unfavorable judgment by DHS on law or the facts is unlikely to be overturned. *See, e.g.*, *Singh v. Garland*, 6 F.4th 418, 427 (2d Cir. 2021)(discussing messy situation and uncertainty in review where there are some mistakes by agency yet also some valid reasons). All the pressure in a case is front-loaded into proceedings before the agency.

*Nikpay v. Barr*, *supra,* 838 F. App'x 30 serves as a cautionary tale. Nikpay

4

testified to prior physical abuse he suffered from the Taliban, and threats against his life. But because "Nikpay was not hospitalized nor did [an] incident [where he was bound] result in permanent injury," the reviewing Court upheld the denial of asylum. Nikpay was of the Hazara ethnicity. "[A]lthough Nikpay adduce[d] evidence indicating that the Taliban has targeted Hazaras in the past, Nikpay d[id] not show that the Taliban has a pattern or practice of persecuting Hazaras." *Id.* at 34. The case shows that even where there is evidence of peril to life these Asylum cases are difficult and high risk.

      2.  <u>Reliance on Advice of Counsel</u>

Plaintiff believes that his best course of legal action is to rely on advice of immigration counsel and submit the requested documents as he submitted them in 2021. Not modified versions—the same documents. Plaintiff has provided as exhibits the documents in exactly the format he intends to submit to DHS.

      3.  <u>Mortal Danger Posed by Non-Compliance with DHS Request</u>

The disclosure in this case is necessary to comply with the request of DHS. If Plaintiff does not comply he may be deported, where he faces execution.

A number of cases show that indeed, Afghanistan has been a dangerous place for refugees and asylum seekers for a long time. *See, e.g.*, *Ullah v. Garland*, 72 F.4th 597, 599 (4th Cir.), modified on reh'g, 95 F.4th 151 (4th Cir. 2023),(highlighting serious dangers posed by Taliban in chasing down individuals); *Nikpay v. Barr*, *supra,* 838 Fed.Appx. 30 (discussed above); *Israil v. Att'y Gen. United States*, 693 F. App'x 99, 103 (3d Cir. 2017)(family not safe from Taliban in retaliation for leaving Afhganistan); *Islam v. Lynch*, 624 F. App'x 500, 502 (9th Cir.

2015)(alien's rational belief that Taliban would hunt down and kill him); *Sharifi v. Holder*, 550 Fed.Appx. 526 (2013) (country dangerous for opponents to Taliban); *Oryakhil v. Mukasey*, 528 F.3d 993 (2008)(chaotic and violent conditions in country, inability of police to protect civilians, significant danger posed by the Taliban); *Noori v. Attorney General of U.S.*, 193 Fed.Appx. 181 (2006)(evidence that alien would be tortured due to Pashtun ethnicity, among other reasons; Plaintiff is also Pashtun); *Ahmadshah v. Ashcroft*, 396 F.3d 917 (8th Cir. 2005)(pattern of violence against Christian converts); *Amanullah v. Cobb*, 862 F.2d 362 (1988)(risk to life for participating in anti-government activities); *Najaf-Ali v. Meese*, 653 F.Supp. 833 (1987)(asylum seeker legitimately feared for life for herself and child).  The Plaintiff's fear is rational.

## II. THE COURT SHOULD VACATE THE ORDER RESTRICTING SPEECH AS UNCONSTITUTIONAL

### A. Relevant Legal Standard

"The term prior restraint is used to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766 (1993) (internal quotation marks and citation omitted).  The burden is on Doe to show the speech restriction is lawful.

> A judicial order forbidding certain communications when issued in advance of the time that such communications are to occur is generally regarded as a prior restraint . . . and is **the most serious** and **the least tolerable** infringement on First Amendment rights . . . . **Any prior restraint on expression comes to [a court] with a heavy presumption against its constitutional validity . . . and carries a heavy burden of showing justification** . . . .

*John Doe, Inc. v. Mukasey*, 549 F.3d 861, 871 (2d Cir. 2008), *as modified* (Mar. 26,

2009)(emphasis added)(citations and internal quotation marks omitted).  The

prohibition on prior restraints is so ancient that it predates the republic.  *See*

William Blackstone, Commentaries 4:151[1] (liberty of the press consists in laying no

previous restraints upon publications)(1769).  This cornerstone of free speech has

been reaffirmed time and time again by the Supreme Court[2]—and even popular

culture[3].

        The standard of review applied to prior restraints is the same as for content-

based restrictions in the First Amendment context:

> [T]his presumption of invalidity can be overcome if the restriction passes a
> strict test. . . .  Under the strict-scrutiny test, a content-based restriction
> may be upheld if the restriction serves a compelling governmental
> interest, is *necessary* to serve the asserted [compelling] interest . . . is
> precisely tailored to serve that interest, and is the least restrictive means
> readily available for that purpose. . . .

*Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005)(citations

omitted; internal quotation marks omitted; emphasis retained); see also *In re*

*Sealing & Non-Disclosure of Pen/Trap/2703(d) Ords.*, 562 F. Supp. 2d 876, 880

(S.D. Tex. 2008) ("Judicial gag orders impinge upon freedom of speech and press

---

[1] *Available at* https://avalon.law.yale.edu/18th_century/blackstone_bk4ch11.asp.

[2] See, e.g., Neb. Press Ass'n v. Stuart, 427 U.S. 539, 559, 96 S.Ct. 2791 (1976)("[I]t is
. . . clear that the barriers to prior restraint remain high unless we are to abandon
what the Court has said for nearly a quarter of our national existence and implied
throughout all of it."); see also *The Pentagon Papers Case*, 403 U.S. 713, 714, 91
S.Ct. 2140 (1971) (per curiam).

[3] *See, e.g.,* The Big Lebowski (PolyGram Filmed Entertainment & Working Title
Films 1998) ("For your information, the Supreme Court has roundly rejected prior
restraint") *clip available at* https://www.youtube.com/watch?v=tE_pxDxQRq4 (last
accessed October 16, 2024).

under the First Amendment, and must pass muster under well-established constitutional case law.").

Because the restriction on Plaintiff's speech is presumptively invalid, the very heavy burden is on Doe to show the speech restriction at issue in this instance is lawful.

### B. What Law to Apply to the Motion

The Court has crafted an order that is *sui generis*. Undersigned can locate no case law concerning gag orders in this context. Undersigned is unable to find a case like the present, in civil or criminal law, where a defendant whose identity is *known prior to litigation* is able to obtain a gag order restraining a plaintiff or prosecutor from revealing the defendant's identity.

None of the contexts where gag orders otherwise appear apply here. This is not information obtained through discovery, so the law concerning protective orders does not apply[4]. The Court did not treat the order as a preliminary injunction—there were no findings or balancing of the equities as to that effect—so the law concerning preliminary injunctions does not apply. There was no judgment after a trial on the merits, so the law concerning a permanent injunction does not apply. There is no allegation that the documents at issue were obtained illegally[5]. This is

---

[4] *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S. Ct. 2199, 2206–07, (1984) ("It does not necessarily follow, however, that a litigant has an unrestrained right to disseminate information that has been **obtained through pretrial discovery**" [emphasis added]).

[5] *Compare with In re Zyprexa Litig.*, No. 07-CV-0504 (E.D.N.Y. Mar. 1, 2007)(2007 WL 669797), *and aff'd sub nom.* Eli Lilly & Co. v. Gottstein, 617 F.3d 186 (2d Cir.

not a criminal case, and there is no ongoing criminal prosecution to provide a compelling interest, so the law concerning pretrial publicity in the criminal law context does not apply. This is not an instance where a public figure plaintiff seeks to unmask the identity of actually unknown speakers, so the legal doctrine exemplified in the seminal *Dendrite International, Inc. v. Doe No. 3*, 342 N.J. Super. 134, 775 A.2d 756 (App. Div. 2001) does not apply. This is not a contempt proceeding, so the law concerning civil or criminal contempt does not apply. None of the federal rules provide authority to provide any party with pseudonym. None of the federal rules provide a mechanism to enjoin a plaintiff from identifying a defendant.

There is no law on point to provide for the order the Court has entered, let alone any law to consider how such an order may be modified or when it may be vacated.

The Court should, however, apply the usual standard for prior restraints. The restriction on Plaintiff's speech is presumptively invalid. The party seeking to justify the restraint—Doe—bears the very heavy burden to show the speech restriction at issue here is lawful and satisfies the unusually searching scrutiny applied to prior restraints.

At the time the Court enjoined speech, there is no evidence in the record that the Court, Plaintiff, or any Defendant contemplated that the order could pose a danger to Plaintiff's life, or interfere with a directive from DHS in a confidential

---

2010) ("The injunction is justified not by reference to the content of the covered documents, but rather by their **unlawful acquisition**." [emphasis added] ).

proceeding.  Plaintiff had not heard from DHS in three years and had already submitted the documents at issue to DHS.  Accordingly, at the time when the anonymity was litigated, he had no reason to believe this could be an issue.  The Court should therefore revisit its order considering this unforeseen change in circumstances.

## C. No Compelling Interest Shown

Neither Doe, nor Yale, nor this Court, nor the District Court, have **ever** articulated a compelling interest in support of the gag order.  History indicates that there is no compelling interest in preventing the dissemination of truthful information that was already in a public court record.  Accordingly, the order restrict speech is unconstitutional and should be vacated.

## D. The Order Cannot be Squared With *Cox* or *Florida Star*

The order threatens Plaintiff, prepublication, with punishment for his protected speech.  This order is unconstitutional under both *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) and *Florida Star v. B.J.F.*, 491 U.S. 524 (1989).  *Cox* has been settled law for almost a half-century.  The Supreme Court concluded in *Cox* that "the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection." *Id.* at 495.

In *Cox*, a seventeen year-old girl was the victim of rape and did not survive the incident.  *Id.* at 471.  The incident occurred in Georgia, and at the time, publishing or broadcasting the name or identity of a rape victim constituted a misdemeanor in Georgia.  *Id.* at 471–72.

The victim's name appeared in indictments.  *Id.* at 472.  The indictments

10

were public records available for inspection.  *Id.* at 472–73.  A reporter learned the victim's identity through these public records and broadcast a report that named the victim.  *Id.* at 473–74.  The report was repeated the following day.  *Id.* at 474.

The victim's father commenced a lawsuit and the Georgia Supreme Court concluded that the father had a valid lawsuit for invasion of privacy based on the broadcasting of the victim's name.  *Id.* at 474–75.  Specifically, the Georgia Supreme Court concluded the reporter "invaded [the father's] privacy with wilful or negligent disregard for the fact that reasonable men would find the invasion highly offensive."  *Id.* at 475.  The Georgia Supreme Court relied on the criminal statute as a declaration that the victim's name was not a matter of public concern.  *Id.* at 475.

The United States Supreme Court recognized "impressive credentials for a right of privacy . . . ." *Id.* at 489.  Nonetheless, the Court concluded that a state **may not "impose sanctions** on the accurate publication of the name of a rape victim obtained from public records—more specifically, from judicial records which are maintained in connection with a public prosecution and which themselves are open to public inspection."  *Id.* at 495 (emphasis added).

First of all, like the name in *Cox*, Doe's true name is a true fact in a public, criminal court record.  *See* T 2/26/18 at 35.  Furthermore, the Plaintiff obtained knowledge of Doe's identity lawfully and before this case started.  Accordingly, the First Amendment places any sanctions for stating the true fact of Doe's name beyond the power of the Court.

> What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. . . . Those who see and

> hear what transpired can report it with impunity. There is no special
> prerequisite of the judiciary which enables it, as distinguished from other
> institutions of democratic government, to suppress, edit, or censor events
> which transpire in proceedings before it . . . .

*Cox* at 492–93.  The Plaintiff participated in proceedings, and he can speak and

communicate about those proceedings.  He can submit a transcript of those

proceedings where that transcript has been the official transcript of the Superior

Court.  This includes identifying Doe, by name, as Doe herself did in open court.

This case is based on falsities about Plaintiff.  There is no right to privacy for

making false allegations against Plaintiff.  If Doe's accusation is false, Plaintiff has

every right to publish the truth, including identifying Doe, in order to salvage his

reputation:  that Doe lied about him, and to identify Doe's name, especially using

documents that are in the public record.

In *Florida Star v. B.J.F.*, 491 U.S. 524 (1989), the Supreme Court expanded

on *Cox*.  In *Florida Star*, Florida had a law that made it illegal to print, publish, or

broadcast the name of a victim of a sexual offense. *Id.* at 526.  The Florida Star

published the name of *B.J.F.* in a police blotter by mistake.  *Id.* at 527.  This was in

violation of the Florida Star's own policy of not publishing the name of sex assault

victims.  *Id.* at 528.  B.J.F. filed suit sounding in negligence.  *Id*.  The trial court

directed a verdict as to negligence *per se* in favor of B.J.F.  *Id.* at 529.

The Supreme Court held that punishing the publication was

unconstitutional.  "[W]here the government has made certain information publicly

available, it is highly anomalous to sanction persons other than the source of its

release." *Id.* at 535.  The "source" of the release in this case is the Connecticut

Superior Court, not the Plaintiff.  See T 2/26/18 at 35.  "By placing the information in the public domain on official court records, the State must be presumed to have concluded that the public interest was thereby being served."  *Florida Star* at 535.

The Court does not have the *power* to *sanction* the Plaintiff for stating Doe's true name, where the name is already a public record.

> "[T]he government retains ample means of safeguarding significant interests upon which publication may impinge, including protecting a rape victim's anonymity. To the extent sensitive information rests in private hands, the government may under some circumstances forbid its nonconsensual acquisition, thereby bringing outside of the Daily Mail principle the publication of any information so acquired. To the extent sensitive information is in the government's custody, it has even greater power to forestall or mitigate the injury caused by its release. The government may classify certain information, establish and enforce procedures ensuring its redacted release, and extend a damages remedy against the government or its officials where the government's mishandling of sensitive information leads to its dissemination. Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts.

In this case, the information at issue is not entrusted to the government. It is in the public domain. *See* T 2/26/18 at 35.

In this case, it is undisputed that Doe, with her true name, accused the Plaintiff of sexual assault.  That is in the public record.  The information in the transcript had been publicly available for years, and this order restricts the dissemination of that protected speech.  This order restricts Plaintiff's lawful speech, threatening him with sanctions for such protected speech.  Accordingly, the order restricting speech is unconstitutional and should be vacated.

### E.  The General Statutes § 54-86e Claim is Meritless

Doe essentially claims *Cox* and *Florida Star* do not apply because the official

transcript should be redacted pursuant to Connecticut General Statutes §52-86e, and thus Doe's identity should not be public.  Doe points to the fact that counsel for Doe and Yale convinced a court reporter—not a judge—to redact a page of a transcript. The claim is meritless.

This statute falls under Chapter 961 of the General Statutes.  Chapter 961 is entitled "Trial and Proceedings After Conviction." General Statutes §52-86e provides, in relevant part:

> The name and address of the victim of a sexual assault under [various enumerated crimes] and such other identifying information pertaining to such victim as determined by the court, shall be confidential and shall be disclosed only upon order of the Superior Court, except that (1) such information shall be available to the accused in the same manner and time as such information is available to persons accused of other criminal offenses, and (2) if a protective order is issued in a prosecution under any of said sections, the name and address of the victim, in addition to the information contained in and concerning the issuance of such order, shall be entered in the registry of protective orders pursuant to section 51-5c.

There is no dispute that the criminal proceeding at issue resulted in an acquittal. *See* Certificate of Disposition at 2.

Chapter 961 concerns "Trial and Proceedings After Conviction." The trial is over, and there was no conviction.  Undersigned can find no authority in statute or case law or section of the Connecticut Practice Book that stands for the proposition that §52-86e applies after an acquittal.  General Statutes §52-86e does not apply to the official transcript.

Doe submits an exhibit at ECF No. 186 with a partial redaction of the criminal transcript on a single page.  Doe also submits an email from a court reporter asking that a prior copy of the transcript be destroyed.  The exhibits

undermine Doe's claim.

First, it is plain that **at least** until July 17, 2024, Doe's name was publicly available in the transcript from the Superior Court. Regardless of whether that was an error as Doe claims—which it was not—the identity had been publicly available in the official transcript available from the Superior Court for six years' prior.

Second, no doubt the reporter is a very good person and good at her job. An Official Court Reporter II, however, is probably not an attorney, and is certainly not a judge. Doe submits no authority that §54-86e applies after an acquittal.

Third, because Doe elects not to include the full email discussion, it is also not clear whether the reporter was informed that the case resulted in an acquittal. It is not clear whether that would affect her opinion on the transcript.

Fourth, it is clear that Doe demanded the Court Reporter change the transcript by dodging due process. There was no chance for the Plaintiff to be heard on the issue of the applicability of §52-86e. This was by design—there was no attempt to bring this issue to Plaintiff's attention. This was a planned ambush.

Just because counsel for Doe can cajole a lone Court Reporter into altering a transcript does not mean it should have been so or that the alteration was lawful. The Court should not reward such extrajudicial badgering of court staff. Is the Plaintiff's remedy to in turn explain to the court reporter why she was wrong? The reporter should be being subject to an email tug-of-war between counsel? No.

Doe *could* have intervened and filed a motion in the criminal case. But that would have required due process for the Plaintiff. It would have required allowing the Plaintiff to be heard and to raise sound points of law, like that the chapter

15

where §52-86e appears only concerns trials and post-conviction proceedings—not post-acquittals.

Fifth, the Court Reporter's statement is furthermore inadmissible hearsay. It is also not a legal opinion from which this Court may take judicial notice. The document is not self-authenticating, so neither the Plaintiff nor the Court can verify the authenticity of the document based on the submission alone. The statement was not created in the ordinary course of business. It was created due to an exceptional incident.

The jury of his peers acquitted Plaintiff. Doe never brought a civil suit alleging she was a victim of sexual assault. There are no findings of fact before any court indicating that Doe is a victim of sexual assault by Plaintiff. The false allegations are a major basis for the present lawsuit. Plaintiff has a right to speak about the harm to his reputation caused by Defendants, including by confronting the false accusations against him and their source. The Court does not have the power to censure him for that, as the order provides, and therefore the order is unconstitutional and should be vacated.

## F. The Order is Underinclusive

It is not clear what compelling interest is used to justify the order. Plaintiff is reticent to engage in a strawman analysis as to what he imagines the interest may be. Nonetheless, assuming the interest concerns Doe's identity, the order is grossly underinclusive.

"[U]nderinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or

viewpoint. . . In a textbook illustration of that principle, [the Supreme Court] invalidated a city's ban on ritual animal sacrifices because the city failed to regulate vast swaths of conduct that similarly diminished its asserted interests in public health and animal welfare." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 543–547, 113 S.Ct. 2217 (1993).   Underinclusiveness can also reveal that a law does not actually advance a compelling interest. *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 448–49, 135 S. Ct. 1656 (2015)(citations and internal quotation marks omitted).

The order is plainly underinclusive.  Doe's identity has been public for years before the order.  Plaintiff already submitted the documents at issue in 2021.  These disclosures cannot be prevented by an order of this Court.  Furthermore, there are other public sources that identify Doe—including the publicly available transcript. If the issue concerning Doe's identity were truly a compelling interest, this Court would, for example, enjoin the Superior Court from disclosing Doe's identity through the official transcript. Doe's name continues to be used on social media by a number of individuals.  If the interest were compelling, the Court would enjoin *anyone* from mentioning her name—not just Plaintiff.  This suggests that the actual interest in the order concerns Plaintiff and Plaintiff's viewpoint rather than a genuine compelling interest.

### G.  The Order is Vague

The Plaintiff believed the order only prohibited speech that identified Doe, directly or indirectly.  The Plaintiff believed that no other speech was prohibited. The Court's order that Plaintiff should produce those documents that disclose Doe's

name undermines this supposition. Plaintiff *stipulated* that responding to the letter from DHS would disclose Doe's identity and violate the order. There is no fact question on that point.

The only rational reason to review the documents for the purposes of the request to lift the order would be because the order prohibits something more than just disclosing Doe's identity, directly or indirectly. There was no question of fact that responding to the DHS letter would violate the order by disclosing Doe's identity. Although the order apparently applies to facts beyond disclosures of Doe's identity, the order does not provide adequate notice to a reasonable person as to what else is prohibited. The order is therefore vague.

## III. IN THE ALTERNATIVE, THE COURT SHOULD GRANT REQUEST FOR LIMITED STAY OR LIFTING THE ORDER

As detailed above, the Court should vacate the order restraining speech as unconstitutional on its face. A fortiori, the Court should grant the limited stay or lift of the order so that Plaintiff can engage in his constitutionally protected speech in response to the DHS Letter and in furtherance of his interest in protecting his life. In particular, under *Cox* and *Florida Star*, this Court cannot punish Plaintiff for disclosing Doe's identity through documents that had been part of the public record for years.

## IV. WHY THE DISCLOSURE IS NECESSARY

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address why it is necessary to disclose Jane Doe's full name and/or first name . . . ." DHS has directed Plaintiff to provide the "official transcript." Not a

redacted transcript.  Not a transcript with an asterisk next to it.  Not a transcript that an adversary claims is adequate.  Not a transcript that an Article III judge says is adequate.  The official transcript.

That official transcript contains Doe's first name hundreds of times, and her last name a handful of times as well.  Because complying with the DHS request requires the official transcript, it requires transmitting this information to DHS.

Plaintiff has explained that these immigration proceedings are high stakes affairs.  Plaintiff has pointed out that "[e]ven a minor inconsistency can support an adverse credibility finding." *Herrera-Alcala v. Garland, supra*, 39 F.4th 233, 246 (4th Cir. 2022); *see also* 8 U.S.C. §1158(b)(1)(B)(iii) (noting consistency as a factor in credibility determinations); 8 C.F.R. § 208.16 and 8 C.F.R. § 208.14 (outlining procedures).  Plaintiff has pointed out that errors in by the agency may not be reviewable because of the deferential standard of review. Plaintiff has pointed out that if he is deported, he faces **execution** by the Taliban in Afghanistan.  Plaintiff has identified other cases such that his fears are not unique.

In order to best protect his life, Plaintiff must fully comply with the request by DHS without exception, being consistent with his actions in 2021 when he submitted the same documents.  This means providing DHS with the official transcript, which in turn means disclosing Doe's full name as contained in that official transcript.

## V.  OTHER CLAIMS BY DOE

In the October 16, 2024 Order, the Court ordered, among other things, that Plaintiff should "address the other arguments raised by Jane Doe in her responsive

pleading." However irrelevant some of these claims by Doe may be, in this section, Plaintiff endeavors to comply.

### A.  Plaintiff's Alleged Misconduct and Inadequate Briefing by Doe

Doe alleges prior misconduct. The issue concerning dismissal is still before the District Court. There is no judgment on those issues.

Doe apparently raises the claims of misconduct to ask the Court to punish Plaintiff. If the Court seeks to punish Plaintiff for violating a court order, that involves the doctrine of criminal contempt. "Civil contempt differs from criminal contempt in that it seeks only to coerc[e] the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011)(internal quotation marks omitted).

"In modern times, procedures in criminal contempt cases have come to mirror those used in ordinary criminal cases." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 808 (1987). This requires among other things, that the Court appoint "a disinterested prosecutor." *Id.* at 808. "[D]efendants in criminal contempt proceedings must be presumed innocent, proved guilty beyond a reasonable doubt, and accorded the right to refuse to testify against themselves . . . must be advised of charges, have a reasonable opportunity to respond to them, and be permitted the assistance of counsel and the right to call witnesses . . . must be given a public trial before an unbiased judge . . . and must be afforded a jury trial for serious contempts . . . ." *Id.* at 798–99; *see also* Fed. R. Crim. Proc. 42. Doe's briefing is inadequate to invoke criminal contempt proceedings. It's just mud-slinging, divorced and unattached to a legal standard or doctrine.

### B.  Documents at Issue

First of all, this is not a discovery motion.  Doe sought—and obtained—a remedy ordinarily reserved for a Rule 37 Motion to Compel.  Such a motion normally would be premature at this point.  Discovery is ongoing.  For example, **Doe still has not produced a single document in discovery.**  Doe's claims in this section amount to "discovery for me but not for thee."  They were not good-faith arguments. They were legerdemain, and they worked.

Plaintiff acquiesced not because it was procedurally just, but because he cannot afford a misfire as his life is actually at risk.  Discovery issues should have been handled according to the FRCP and Local Rules governing discovery—not on an ad hoc basis as was done on this motion. The interest at stake underlying Plaintiff's demurrer on the informal motion to compel by Doe is the same reason Plaintiff must submit the unredacted official transcript to DHS.  The stakes are too high.

Plaintiff conceded that disclosure would violate the order. Undersigned did not have the documents at issue and mistakenly believed that two documents would violate the Court order.   As explained above, undersigned is not Plaintiff's immigration attorney and undersigned did not need to review the documents to concede the disclosure.  If the order restricting speech only prohibits Plaintiff from disclosing Doe's identity, it should have been enough to concede compliance with the DHS request violates the order.  No further factual analysis is necessary—if that is truly what the order prohibits.

### C.  Attorney Gooley's legal advice to Plaintiff is unethical, uninformed,

**unintelligent, unsupported, and unwanted**

On Pages 6–7 in particular, but smatteringly throughout, Attorney Gooley proffers his legal advice to Plaintiff as concerns the official transcript. None of his conduct here was understood to be made in good faith.

In this case, Plaintiff has been advised by his retained immigration counsel to submit the same documents he submitted in 2021. **No one** should interfere with that representation.

Attorney Gooley claimed on page one of Doe's objection that he "explained how Plaintiff could respond to the USCIS Request without revealing Jane's name, and asked Plaintiff to agree to do so."

First, contrary to what Attorney Gooley represents, Attorney Gooley never conferred with Plaintiff's immigration attorney about this issue. Undersigned is not an immigration lawyer and specifically not Plaintiff's immigration lawyer.

Second, Attorney Gooley provides no case law, no evidence, no expert testimony, no law review article, no regulation, no statute, no authority whatsoever that his proposition would satisfy DHS.

Third, Plaintiff does not have, nor has he ever seen, nor does he believe there exists, nor does he believe it is lawful for the Superior Court reporter's office to provide, a version of the transcript that redacts Doe's name throughout. This issue is already discussed fully above.

Fourth, *even if there were* such an altered version of the official transcript in Plaintiff's possession or control, Plaintiff would *still* violate the order by submitting such an improperly redacted transcript to DHS. The order mandates that Plaintiff

cannot reveal Doe's identity directly *or indirectly*, including through counsel.  Even an improperly redacted transcript will indirectly reveal Doe's identity.  There is an enormous amount of biographical—and even *biological*—information about Doe in the transcript, spread across hundreds of thousands of words.  *See, e.g.*, T 2/26/18 at 36–38, 40, 41, 50.  Doe's name is used more than 500 times in the official transcript across some 1800 pages, and information in the transcript context to such redactions will make it possible to identify Doe.

Fifth, Doe knows that her name was used hundreds of times at trial.  She knows that in context, even a transcript that redacts her name will indirectly reveal her identity.  Doe's counsel similarly knows that mere redactions are inadequate to obscure Doe's identity in the official transcript.  The redactions argument was a bad-faith argument, in part to harass Plaintiff and in part to circumvent the discovery process and obtain desired documents out-of-order, an impromptu motion to compel without the showings and procedures required under Local Rule 37.  The strategy worked because Plaintiff's life is actually at risk, and Doe has yet to produce a document herself.

Sixth, DHS is not a party to this action.  Attorney Gooley does not attest to having conferred with the agency or anyone else as to standards, practice, or institutional culture around these issues.  DHS may be of a very different mind than Attorney Gooley about whether modified documents are adequate, or whether DHS must as a matter of law accept such documents, where there are no court orders from a court of competent jurisdiction concerning the adequacy of the transcript, or whether an improperly redacted transcript can serve as a substitute

for an actual official transcript.

Seventh, Attorney Gooley owes no duty of loyalty to Plaintiff, and his armchair-immigration-lawyering is grossly improper and violates the spirit if not the letter of the CTRPC prohibiting legal advice to an adverse party.

Undersigned is not an immigration lawyer and will not interfere with the needs of that representation. Neither should Attorney Gooley be doling out legal advice to Plaintiff about how Plaintiff should handle his immigration case, especially when the case presents one of mortal peril.

**Plaintiff's life is at risk**. Attorney Gooley's legal advice to Plaintiff about how Plaintiff should conduct his immigration case is unethical, uninformed, unintelligent, unsupported, and unwanted.

## VI.  REVIEW

The Court previously misstated the standard of review for orders in this context. Rule 72.2 provides, in relevant part (emphasis added):

> In matters determined by the Magistrate Judge for the Court, such as under Rule 72.1(C)(2) or (4), supra, the reviewing Judge on timely objection shall set aside any order found to be clearly erroneous **or contrary to law** . . . .

In ECF No. 119 at page 15, this Court previously omitted the phrase, "or contrary to law" in setting forth the standard of review. This omission left only the "clear error" review applied to factual determinations and is silent on the standard of review of for determination of legal issues. Plaintiff points out that such an order may also be reviewed if it is contrary to law.

## VII. EXIGENCY

The nature of the proceedings here are exigent as they implicate Plaintiff's life and liberty under a tight time frame.  Plaintiff respectfully requests the Court render judgment by Monday, October 21, 2024, so that he may file for emergency review or mandamus if necessary and still comply with the DHS letter.

## VIII.  CONCLUSION

For the foregoing reasons, the vacatur should be granted.  In the alternative, the order restricting speech at ECF No. 119 should be temporarily stayed or lifted in part to allow Plaintiff to fully respond to the DHS Letter dated October 3, 2024.

Respectfully submitted,

SAIFULLAH KHAN

OCTOBER 17, 2024

*/s/ Mario Cerame ct30125*
Mario Cerame
Brignole, Bush & Lewis LLC
73 Wadsworth Street
Hartford, Connecticut 06106
T: 860.527.9973
F: 860.527.5929
E: mario@brignole.com

HIS ATTORNEYS

## <u>CERTIFICATION</u>

I hereby certify that on OCTOBER 17, 2024, a copy of the foregoing was filed electronically or served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

I furthermore certify that a copy of every sealed exhibit to this motion was delivered electronically by other means, to wit, Microsoft Share Folder, to counsel of record for each Defendant.

/s/ _____

Mario Cerame

# Exhibit U

| | |
|---|---|
| **From:** | Mario Cerame |
| **To:** | Gooley, Brendan N. |
| **Cc:** | gweller@carmodylaw.com; Alex Taubes |
| **Subject:** | RE: Khan |
| **Date:** | Wednesday, October 30, 2024 9:17:27 AM |
| **Attachments:** | image004.png |
| | image001.png |

---

**EXTERNAL SENDER: This Message is from outside the organization.**

---

Attorney Gooley,

As to your first question, I shall endeavor to answer your questions as best as I can. I will also attempt to clarify with my client, who is not in town at the moment.

As to your second question, I believe my client did submit some documents, but I know that he did not submit any transcripts at all.

I note that if he did submit documents in violation of the order, it seems to me that answering this second question would implicate the Fifth Amendment right against self incrimination, due to exposure to criminal contempt. My client has not invoked those Fifth Amendment rights as of yet, however.

We are not satisfied with the situation, but my client is making the best of a terrible situation. He believes, and I agree, that the magistrate judge's order is not only contrary to law, but a submission pursuant to that order could permanently prejudice his application or create another extraordinary delay that is tantamount to denial. We have already explained the basis for this reasonable belief in prior briefings.

As to your third question, he was not given an extension of time, to the best of my knowledge.

As to your fourth question, if you have further questions, you should contact me immediately. You should continue to so communicate in writing.

Being that I am dealing with a legal emergency concerning a DNR order, however, and have multiple court appearances, I may not immediately be available. If I do not respond to an email within an hour, you should also apprise me by text message at ███████ . Due to an IT issue, I do not have remote access to my work email at this time. I live near the office, however, and if the issue is urgent, I will physically go to the office, given the extraordinary exigency of the circumstances.


Yours sincerely,

Mario Cerame

Mario Cerame
Brignole, Bush & Lewis
73 Wadsworth Street
Hartford, CT 06106
Phone: (860) 527-9973
Fax: (860) 527-5929



---

**From:** Gooley, Brendan N. [mailto:BGooley@carltonfields.com]
**Sent:** Tuesday, October 29, 2024 4:41 PM
**To:** Mario Cerame
**Subject:** Khan

Mario:

Can you please let us know the current status of the USCIS Request so that we can properly respond to Mr. Khan's mandamus petition? For example, did Mr. Khan submit documents on October 24, 2024 and if so what documents did he submit? Did he obtain an extension of time to respond and if so what extension did he request/receive? Can you please let us know by tomorrow as we have to file a response by November 4, 2024?

Best,

Brendan



**Brendan N. Gooley**
Attorney at Law

One State Street
Suite 1800
Hartford, Connecticut 06103
Direct: 860.392.5036 | Fax: 860.392.5058

BGooley@carltonfields.com | www.carltonfields.com
bio | vcard

**Carlton Fields is ISO 27001:2022 certified**

*Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product. If you do not expect such a communication, please delete this message without*

*reading it or any attachment and then notify the sender of this inadvertent delivery.*

---

This transmittal may be a confidential attorney-client communication or may otherwise be privileged or confidential. If it is not clear that you are the intended recipient, you are hereby notified that you have received this transmittal in error; any review, dissemination, distribution, or copying of this transmittal is strictly prohibited. If you suspect that you have received this communication in error, please notify us immediately by telephone at 1-860-527-9973, and immediately delete this message and all of its attachments.

# Exhibit V



**Portfolio Media. Inc.** | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Ex-Yale Student Wants Full Acquittal Record Sent To DHS

By **Rae Ann Varona**

Law360 (October 22, 2024, 10:29 PM EDT) -- An expelled Yale University student on Tuesday urged the Second Circuit to quickly vacate orders barring him from giving the U.S. Department of Homeland Security an unredacted transcript that resulted in his acquittal of sex crimes, saying a delay could seal his deportation and thus his execution by the Taliban.

In a lawsuit against Yale and a fellow student who had accused him of rape, Afghan citizen Saifullah Khan told the federal appeals court that he has until Thursday to comply with the DHS request for certain documents including an official transcript of a criminal proceeding that resulted in his acquittal in 2018.

Khan told the Second Circuit that submitting an altered transcript risks delaying and jeopardizing his bid for asylum, which has been pending for eight years. He said that if he were to be deported to Afghanistan, where he has never lived, there was a likelihood he would be executed by the Taliban for being an atheist.

"This is not some remote, speculative kind of harm," Khan said in his emergency petition for a writ of mandamus.

Khan, who was born in a refugee camp in Pakistan, said that under Taliban rule, he would have three days to convert to Islam or be executed.

"These laws are enforced, and people are executed on this basis," Khan said, adding that the Taliban had killed his uncle for advocating for education for girls.

Khan lodged his suit in Connecticut federal court against Yale, its employees, and the student in December 2019, less than two years after a Connecticut jury acquitted him in March 2018 of all the state's criminal charges against him.

The state of Connecticut had charged Khan with sexual assault crimes after a student referred to in public federal court records as Jane Doe accused him of raping her on Halloween night in 2015.

Khan, whom Yale expelled following university disciplinary proceedings despite his acquittal, accused the university and several of its faculty and administrators of breach of contract, violation of implied warranty of fair dealing, negligent and intentional infliction of emotional distress, and breach of privacy.

In accusing Doe of defamation, Khan asserted that he and Doe had engaged in "consensual sexual intercourse" that Halloween night and that Doe "fabricated" a claim of rape. Doe was then encouraged to pursue and publicize the claim to campus officials, police officers, and others, he alleged.

U.S. District Judge Kari A. Dooley had initially tossed the case, but the Second Circuit revived it after **tapping** the Connecticut Supreme Court to weigh in on privilege issues.

In March, Doe moved for a **protective order**, saying Khan had "repeatedly, intentionally, and maliciously" exposed her name. She argued that Khan "cannot be trusted to respect the confidentiality of documents or information."

A month later, Doe moved to proceed in the case pseudonymously.

U.S. Magistrate Judge Maria E. Garcia granted that motion in June but also ordered that Khan be prohibited from directly or indirectly publicly disclosing or revealing Doe's identity, saying that a release or deliberate disclosure would warrant sanctions, including dismissal of Khan's case.

Khan said in his Tuesday emergency motion that he received a letter from DHS requesting the official transcript from the underlying criminal proceeding on Oct. 7.

But Judge Garcia, who earlier his month ordered Yale to **respond** to Khan's fears of execution if he were to be sent to Afghanistan, had ordered on Monday that Khan could only submit a redacted transcript to DHS, he said in his motion.

Khan said that the June 19 and Monday orders amount to an unconstitutional prior restraint.

In asking the Second Circuit to vacate the orders, Khan said he met the three factors for writs of mandamus.

Khan said that his asylum petition had already been delayed three years because he had previously given DHS documents that raised a question. He said that a delay now when he faces an Oct. 24 deadline is "tantamount" to a denial of his asylum bid.

"There is a real likelihood that deportation will result in execution, which would make any subsequent legal remedies meaningless," Khan argued.

He asserted that his right to a writ was also clear and indisputable.

In arguing that the June order restricting speech is "plainly a prior restraint," Khan said that Judge Garcia also failed to apply jurisprudence concerning prior restraints in both orders.

There was no compelling interest identified, Khan argued, adding that the burden was also "improperly flipped" in the Monday order such that he had to justify his speech.

"The Magistrate Judge had a duty to put the burden on Doe to show the speech restriction was lawful," Khan said.

Khan said that a mandamus was also appropriate under the circumstances. Quoting the 2013 Second Circuit ruling in Balintulo v. Daimler AG, Khan said that mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes."

A judicially enforced restraint, he said, is "really extraordinary" and a kind of order that "amounts to a judicial usurpation of power or a clear abuse of discretion, or otherwise works a manifest injustice."

Mario Cerame of Brignole Bush & Lewis LLC, counsel for Khan, told Law360 that the "law is very clear vis-a-vis free speech rights."

He added that few things are as "fundamental to American culture and jurisprudence as the freedom from prior restraints.

"The government can't stop you from saying something before you say it," Cerame said. "And that's what this case is about."

Counsel for Yale and Doe did not immediately respond to requests for comment on Tuesday.

Khan is represented by Mario Cerame of Brignole Bush & Lewis LLC and Alexander T. Taubes.

Yale is represented by Patrick M. Noonan, Giovanna T. Weller and Maria Laurato of Carmody Torrance Sandak & Hennessey LLP.

Jane Doe is represented by Brendan Gooley and James M. Sconzo of Carlton Fields PC.

The case is Saifullah Khan v. Yale University et al., case number 3:19-cv-01966, in the U.S. District Court for the District of Connecticut.

The federal appellate case is Saifullah Khan v. Yale University, case number 21-00095, in the U.S. Court of Appeals for the Second Circuit.

--Additional reporting by Aaron Keller and Ryan Harroff. Editing by Peter Rozovsky.

All Content © 2003-2024, Portfolio Media, Inc.